IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ROLAND T. DAVIS,

        Petitioner,

v.

DAVID BOBBY, Warden,

        Respondent.

Case No.  2:10-cv-107
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Norah McCann King

## OPINION AND ORDER

Petitioner, a prisoner sentenced to death by the State of Ohio, has pending before this

Court a habeas corpus action pursuant to 28 U.S.C. § 2254.  This matter is before the Court for

consideration of Respondent's Motion to Dismiss (ECF No. 65), Petitioner's Response in

Opposition (ECF No. 72), and Respondent's Reply (ECF No. 86).

### I.  Factual History

The Ohio Supreme Court set forth the facts and procedural history of this case in *State v.*

*Davis*, 116 Ohio St. 3d 404 (2008):

> During the late evening of July 10 or the early morning of July 11, 2000,
> an intruder entered 86-year-old Elizabeth Sheeler's Newark, Ohio apartment.  The
> intruder then murdered Sheeler by stabbing her in the neck and chest.  The
> intruder stole money from the apartment and fled the scene.
>
> The murder went unsolved for almost four years.  In 2004, DNA testing
> identified defendant-appellant, Roland Davis, as the murderer of Sheeler.
> Subsequently, Davis was convicted of the aggravated murder of Sheeler and
> sentenced to death.
>
> Davis now appeals, raising an array of challenges to his convictions and
> sentence.  We determine that none of his propositions of law has merit and affirm
> Davis's convictions.  We have also independently weighed the aggravating
> circumstances against the mitigating factors and have compared Davis's sentence

of death to those imposed in similar cases, as *R.C. 2929.05(A)* requires. As a result, we affirm Davis's sentence of death.

### State's Case

Sheeler was a widow who lived alone in a basement apartment at the Plaza Garden Apartments. Sheeler frequently used Yellow Cab taxis for transportation to the grocery store, the bank, and other locations in Newark.

Davis worked intermittently as a driver for Yellow Cab from 1995 until April 20, 2000. Sheeler often asked for Davis as her taxi driver because he helped Sheeler carry her groceries into her apartment. Yellow Cab records show that Davis provided Sheeler with taxi service on many occasions.

Davis and Sharon Wright lived together of and on from 1994 until July of August 2000. Wright was a driver with Yellow Cab for about a year. During their relationship, Wright said that Davis "carried a few bucks in his pocket, but most of the time he was broke." Davis was unemployed from June 2 to at least July 10, 2000.

Davis lived with Terri Geer from late October or early November 1999 until mid-May 2000. Geer said that Davis "never had a lot of money" during that time.

On the evening of July 10, 2000, Sheeler was at her apartment. Between 8:00 p.m. and 10:00 p.m., Sheeler and her close friend, Elladean Hicks, talked on the telephone. Hicks stated that nothing appeared to be out of the ordinary, and there was no indication that anyone else was at Sheeler's apartment or that she was expecting anyone.

Melissa Frost was Sheeler's next-door neighbor. At approximately 12:30 a.m. on July 11, 2000, Frost noticed that a light was still on in Sheeler's apartment. Frost also heard loud noise coming from the television in Sheeler's apartment, which stopped sometime after 12:30 a.m.

Frost did not see Sheeler for the next two days. Frost noticed that Sheeler's front door was not ajar, an unusual circumstance because Sheeler had the habit of keeping the door slightly open during the day. On July 12, Frost noticed two newspapers outside Sheeler's front door. Frost's husband then knocked on Sheeler's front door and called her name. He turned the door knob and noticed it was unlocked. The Frosts then contacted the apartment manager.

Kenneth Patterson, the co-owner of Plaza Garden Apartments, entered Sheeler's apartment to check on her well-being. The living room, dining room,

2

and kitchen looked normal. Patterson looked inside Sheeler's bedroom and saw blood on the bed and a foot sticking out from underneath bedding on the floor. The police were then called.

Around 1:30 p.m. on July 12, 2000, Newark police officers arrived at Sheeler's apartment. Officers found Sheeler's body on the floor next to her bed. Her body was covered by a mattress pad, mattress cover, fitted sheet, and comforter. Sheeler's face had been battered, and her neck and chest area had numerous sharp-instrument wounds. Her dentures were found underneath the bed. Sheeler's housecoat was open and bunched up under the middle of her back. Her panties were torn and cut in the crotch area and rolled up underneath her breasts.

Detective Timothy Elliget, a Newark police criminalist, found blood spatter that formed a misting pattern above the dresser on the bedroom wall. This blood spatter showed that Sheeler was standing when she was hit in the mouth or throat area. Bloodstain patterns on the bedding indicated that Sheeler had been face down on the bed for a period of time. Elliget also found a bloodstain pattern on the fitted sheet, which was consistent with a blood-covered hand "grabbing the item and pulling [it] off" [sic] Another bloodstain formed a butterfly pattern on the mattress pad, which was consistent with the wiping of an object such as a knife.

Sheeler's bedroom had been ransacked. Dresser drawers were on top of the mattress, a cedar chest had been opened, and items were scattered around the room. The spare bedroom had also been ransacked, with drawers opened and property strewn about.

Several purses were found in both bedrooms but none of them contained a wallet, identification, pictures, or keys. Police did find $500 in an envelope on the floor of the spare bedroom, two metal boxes containing $2,300 in the closet of the spare bedroom, and $210 in silver certificates elsewhere in the same closet.

Police found no evidence of forced entry. No knife or other possible murder weapon was found in the apartment. Investigators found 14 usable fingerprints and three usable palm prints. The fingerprints were later entered into the automated fingerprint identification system ("AFIS"), but no matches resulted.

Police found a bloodstain on a small kitchen towel next to the kitchen sink. It "tested presumptive for blood" and was forwarded for DNA analysis.

On July 13, 2000, Dr. Patrick Fardal, then the chief forensic pathologist for Franklin County, conducted the autopsy on Sheeler. Sheeler suffered blunt force injuries to her face and 11 sharp wounds to her chin, neck, and upper chest

3

area. Dr. Fardal found that a stab wound in Sheeler's chest and a stab wound in her neck that injured the left jugular vein were fatal wounds. Sheeler probably would have lived no more than "10 to 20 minutes after sustaining these wounds."

In 2000, Ramen Tejwani, a criminalist with the Columbus police crime lab, tested evidence from Sheeler's apartment. DNA analysis of the bloodstain on the kitchen towel did not match the DNA from Sheeler or other persons tested at that time. Additionally, presumptive testing of an oral swab taken from Sheeler showed the presence of semen. However, no useful DNA was extracted from the swab.

In 2001, Tejwani retested the DNA on the towel's bloodstain using the short tandem repeat ("STR") method. This analysis showed that the DNA was from a male contributor.

Nevertheless, the investigation moved into a cold-case status because there were few leads. On March 1, 2004, Davis became a suspect in the murder after Newark police obtained information from an out-of-state law enforcement agency.

After investigation of Davis began, police learned that he had purchased a Mercury Grand Marquis on July 10, 2000. He had paid $300 in cash for the car and had agreed to make regular payments.

Geer stated that after she had not seen Davis for a "week or more," Davis showed up at her house on July 11, 2000, driving the Grand Marquis. On the same day, Davis bought Geer's son a drum set with $1253.98 in cash. Davis also offered to purchase Geer "anything [she] wanted that night."

Wright had no contact with Davis on July 10 or July 11, 2000. However, on July 12, 2000, Davis drove the Grand Marquis to Wright's home. Davis said that he had obtained the money to pay for the car by "running drugs from Florida to Ohio." On July 13, David took Wright's daughter to a Columbus mall and bought her a $100 pair of tennis shoes and a car stereo, and he took her to dinner. On July 16 or 17, Davis and Wright drove to Florida and returned to Ohio about a week later.

After Davis became a suspect, police obtained a DNA sample from him and sent it to the Columbus police crime lab. Analysis showed that Davis's DNA matched the DNA from the bloodstain on the kitchen towel. According to Tejwani, the approximate frequency of this DNA type in the population is one in 547,000,000 for Caucasians, one in 332,400,000,000 for African-Americans, one in 1,939,000,000 for southeastern Hispanics, and one in 2,816,000,000 for southwestern Hispanics. Davis is Caucasian.

4

Following receipt of the DNA results, Newark detectives Stephen Vanoy and Melanie Mummey interviewed Davis in Florida, where he was living. After Davis waived his *Miranda* rights, he was shown a photograph of Sheeler. He said that she looked familiar, but he did not remember her name. Davis denied seeing Sheeler's photograph on reward posters following her death. He said, "I didn't know she got killed [until] you just told me." Davis also did not remember ever going into Sheeler's apartment.

Vanoy told Davis that his DNA was found in Sheeler's apartment. When asked for an explanation, Davis said there was no reason his semen or blood could be in her apartment. However, Davis said that he might have pricked his finger or left a hair in Sheeler's apartment when carrying her groceries.

As the interview progressed, Davis said, "I'm putting a face with a person * * *." Davis had just said that he had provided taxi service to Sheeler and "liked her a whole lot." Davis also said that Sheeler had shown him around her apartment. As a result, he might have touched a door knob. However, he denied entering the kitchen and touching any of her towels "or anything like that."

Davis told police that he obtained the money to buy the drum set and the Grand Marquis by taking "a load of Cocaine [to] * * * Elkart, Indiana." Davis said he delivered $40,000 worth of cocaine and made $10,000. However, he refused to divulge the name of his supplier.

Before the interview ended, Davis described his trips to Sheeler's apartment when he provided her taxi service. Davis said he would knock on her door, wait inside her apartment as she was getting ready, lock the door when they left, and escort her to his taxi by holding her arm. However, Davis said that he had not been in Sheeler's apartment since he quit driving a cab. Davis denied killing Sheeler and said, "I didn't do it at all!!"

Later, Vanoy reinterviewed Davis. After waiving his *Miranda* rights, Davis continued to deny any involvement in Sheeler's murder. However, Davis admitted lying about knowing Sheeler, saying, "[Y]ou guys were trying to pin a murder on 'me."

In late 2004, Susan Fowls, a former employee of Annie's Place restaurant in Newark, saw a photograph of Davis in a newspaper article about his arrest. Fowls remembered that during the late spring or early summer of 2003, Davis had entered the restaurant and had asked about Sheeler's murder after noticing a reward poster that displayed Sheeler's photograph inside the restaurant. According to Fowls, Davis repeatedly asked her, "Did they have any leads[?]  Do they know who did it[?]  Do the police have any suspects[?]"

5

Terianne Paxson, the restaurant's owner, also talked to Davis about Sheeler's murder. Davis thought that Sheeler used to be his neighbor, and he could not believe that someone would murder her. He asked Paxson if she knew whether Sheeler had been sexually assaulted. After Davis left the restaurant, Paxson wrote down his license number, but she did not notify police until after his photograph appeared in the newspaper.

During September 2004, DNA analysis using Y-chromosome ("YSTR") testing was conducted on the bloodstained fitted sheet from Sheeler's bedroom. According to Meghan Clement, the technical director for forensic identity testing at Laboratory Corporation of America Holdings, Inc. ("LabCorp"), three locations of the bloodstains matched Davis's DNA profile.

Further DNA analysis using autosomal STR testing was conducted on two of the bloodstains from the fitted sheet. Clement testified, "The profiles that were obtained from both samples were consistent with a mixture. * * * In looking at the profiles, we could not exclude Mr. Davis as a contributor to either of those particular mixtures. And for specifically [one location], * * * the male was the major contributor * * * and those [major characteristics in the DNA mixture] indeed matched Mr. Davis." The statistical frequency of that DNA's presence is one in 97.1 quadrillion in the Caucasian population, one in 2.62 sextillion in the African-American population, and one in 1.23 quintillion in the Hispanic population.

During October 2004, Richard Hummel and Davis were in the orientation module at the Licking County jail. Hummel testified that one day, he told Davis, "[C]heer up, they can't eat you, man." Davis responded, "Oh no, I did it." Davis then explained that he got to know the victim when he was driving a cab and helped her carry groceries and performed other jobs for her. Davis said he "stabbed her five, seven times or so."

### Defense Case

The defense presented the stipulated testimony of Dr. C. Jeff Lee, the Deputy Coroner for Licking County. Dr. Lee performed the autopsy on Randy L. Davis, the defendant's brother, who died in an automobile accident on November 26, 2002. Dr. Lee stated that a sample of Randy's blood had been collected and preserved and was available at the coroner's office.

The defense presented no other trial-phase evidence.

### Case History

6

The grand jury indicted Davis on one count of aggravated murder. Count 1 charged Davis with the aggravated murder of Sheeler while committing kidnapping, aggravated robbery, or aggravated burglary. Count 1 contained four death penalty specifications: murder for the purpose of escaping detection, apprehension, trial, or punishment, *R.C. 2929.04(A)(3)*; murder while committing, attempting to commit, or fleeing after committing kidnapping, *R.C. 2929.04(A)(7)*; murder while committing, attempting to commit, or fleeing after committing aggravated robbery, *R.C. 2929.04(A)(7)*; and murder while committing, attempting to commit, or fleeing after committing aggravated burglary, *R.C. 2929.04(A)(7)*.

Davis was charged with four additional counts: Count 2 charged Davis with murder, Count 3 charged kidnapping, Count 4 charged aggravated robbery, and Count 5 charged aggravated burglary.

Davis pleaded not guilty to all charges. The jury found him guilty of all charges, and he was sentenced to death.

*Davis*, 116 Ohio St. 3d at 404-09; ECF No. 51-5, at Page ID # 2256-2260.

Further into its opinion, the Ohio Supreme Court set forth the facts underlying

Petitioner's mitigation case as follows:

### INDEPENDENT SENTENCE EVALUATION

Having considered Davis's propositions of law, as required by *R.C. 2929.05(A)*, we now independently review Davis's death sentence for appropriateness and proportionality. The evidence at trial established beyond a reasonable doubt that Davis was properly convicted of the aggravated murder of Elizabeth Sheeler while committing or attempting to commit kidnapping, while committing or attempting to commit aggravated robbery, and while committing or attempting to commit aggravated burglary. *R.C. 2929.04(A)(7)*.

Against these aggravating circumstances, we now weight the mitigating factors contained in *R.C. 2929.04(B)*. Davis called five mitigation witnesses. He also introduced his medical records from Children's Hospital, his academic records, and a statement that he had not been disciplined while in pretrial confinement. Davis did not present a sworn or unsworn statement.

Ruth Cummings, the defendant's aunt, testified that Tom Davis, the defendant's father, never supported his family, and that the gas and electricity were shut off at their home because of unpaid bills. Tom did not work much and spent his money on "[b]eer, cigarettes, things of that nature." Tom was very

7

abusive to his family and would "just explode for no reason." Cummings witnessed Tom shove and hit defendant's mother.

Davis has four brothers and one sister. Cummings stated that the defendant's mother was "a good caring mother who took care of all their physical needs and fed them and clothed them and took care of everything." Davis and his siblings spent a lot of time with his grandparents, who lived in Newark. Davis was a "devoted grandson * * * [and] cared about them greatly."

Dana Davis, one of the defendant's younger brothers, testified that their father was an alcoholic who beat their mother four or five days a week. Once, Tom came home really drunk and kicked through the door. Their mother grabbed a butcher knife in self-defense and ended up stabbing Tom when he came at her. Dana also remembers Tom whipping the defendant "with a belt all the way up the stairs and all the way down the stairs one night." When the beatings took place, Dana and his siblings were young, and there was nothing they could do. They would "just scream and holler and beg [their father] not to do it."

Davis has been married four times and has five children. Davis has worked for an ice cream company, a dry-cleaning company, a cab company, a flower factory, and an oil rig. He also "ran equipment" for Dana's sea-wall and landscaping business.

Dolly Sidle, a friend of the Davis family, spent a great deal of time at the defendant's home over the years. Sidle stated that the defendant's father was "mean," and "in today's society, they would have probably locked Thomas up a long time ago." She never saw Tom interacting with his children in a positive way by helping them with homework or tossing a football or baseball with them.

Susan McGuire, a childhood friend of Davis, lived across the street from the Davis family. McGuire testified that Tom was "nice to [the] neighbor kids, but he was always yelling and carrying on at his family, mostly his wife." Davis would sometimes hand tools to Tom when he was working on cars. Tom would "rant and rave" and call Davis a "[r]etard" and "stupid" if Davis gave him a wrong tool. On one occasion, Davis's sister came to McGuire's home to call the police because Tom had hit their mother. At other times, the Davis children would come to McGuire's home to make phone calls because Tom "was always ripping the phone out of the wall."

Rose Weimer, the defendant's mother, testified that her marriage to Tom was "pure hell." Tom beat her "[e]very chance he got." At one point, Rose left home for three months because Tom "threatened [her] so much." Rose later found out that Tom had placed the kids in the Children's Home. She later returned to Tom and brought their five children home. However, Tom continued

8

to threaten and beat Rose.

Davis stutters when he gets excited or upset. Other children teased Davis in grade school because he stuttered. Davis also had a hearing problem when he was young. Davis had bad earaches, and Rose noticed an odor coming out of one of his ears. This problem persisted for three or four years, but Tom did not want to spend money on a doctor. Later, Davis was diagnosed with a perforated eardrum and had surgery to correct it. She said that Davis did not care much about school and quit after completing the ninth grade.

After 23 years of marriage, Rose left her husband and moved to Florida with Davis and two of her other children. Davis was 17 or 18 years old when they moved. He got a job, provided financial support for the family, and took care of the two younger children while Rose was at work. Davis helped his family for a long time in Florida. They would put their money together and buy food and pay the rent. About ten years ago, Davis moved back to the Newark area.

Davis's medical records verify his history of childhood ear problems. Davis's academic records from the Newark city schools show that he was a poor student who received mostly C's and D's. He dropped out of school in the 10th grade. His test scores show an IQ range between 74 and 84.

Licking County jail records show that Davis had no disciplinary infractions while he was in pretrial confinement between September 8, 2004 and July 12, 2005.

*Davis*, 116 Ohio St. 3d at 456-58; ECF No. 51-5, at Page ID # 2288-2290.

## II. State Court History

### A. Trial

On September 17, 2004, the Licking County Grand Jury returned a five-count indictment against Petitioner. (ECF No. 51-1, at Page ID # 910-916.) Count 1 charged Petitioner with aggravated murder in violation of O.R.C. § 2903.01(B) and included four specifications making Petitioner eligible for the death penalty. Petitioner was charge in Count 2 with murder in violation of O.R.C. § 2901.12; in Count 3 with kidnapping in violation of O.R.C. § 2905.01(A)(4); in Count 4 with aggravated robbery in violation of O.R.C. § 2911.01(A)(1) and

(A)(3); and in Count 5 with aggravated burglary in violation of O.R.C. § 2911.11(A)(1) and (A)(2). Following Petitioner's initial appearance on September 20, 2004, the trial court appointed attorneys Kirk McVay and Andrew Sanderson to represent Petitioner. (ECF No. 51-1, at Page ID # 918-925.) At his arraignment on September 27, 2004, Petitioner entered "Not Guilty" pleas to each of the charges.

Jury trial commenced on June 27, 2005 and concluded on July 7, 2005 with the jury finding Petitioner guilty on all counts. (ECF No. 52-1, at Page ID # 5972; ECF No. 52-5, at Page ID # 8186-8199.) Following a two-day mitigation hearing that began on July 11, 2005, the jury on July 12, 2005 issued a sentencing verdict recommending that Petitioner be sentenced to death. (ECF No. 52-5, at Page ID # 8524-8527.) On July 15, 2005, the trial court conducted a sentencing and sexual offender classification hearing. The trial court thereafter accepted the jury's recommendation and sentenced Petitioner to death. (ECF No. 52-5, at Page ID # 8565.) The trial court merged the Count 2 murder conviction, and sentenced Petitioner to consecutive ten-year prison terms on the kidnapping, aggravated robbery, and aggravated burglary convictions. (ECF No. 52-5, at Page ID # 8566.) Finally, the trial court deemed Petitioner a sexual predator. (ECF No. 52-5, at Page ID # 8592.)

### B. Direct Appeal

Represented by appointed attorneys David Stebbins and Carol Wright (ECF No. 51-3, at Page ID # 1580), Petitioner filed a notice of appeal to the Ohio Supreme Court on September 6, 2005.[1] (ECF No. 51-3, at Page ID # 1604.) On October 6, 2005, the Ohio Supreme Court issued

---

[1] Because attorneys Stebbins and Wright represent Petitioner in the instant federal habeas corpus proceeding, Petitioner expressly waived his right to challenge the performance of his attorneys on direct appeal. (ECF No. 17.)

an entry granting Petitioner's request for a stay of execution. (ECF No. 51-3, at Page ID # 1626.) Petitioner filed a 286-page Brief on the Merits on July 14, 2006 raising the following propositions of law:

Proposition of Law No. I: Roland Davis was entitled to a trial by a fair and impartial jury free from bias or preconceived opinions about guilt or punishment under Art. I, §§ 2, 9, 10 and 16 of the Ohio Constitution and the Fifth, Sixth, Eighth and Fourteenth Amendments. The jury selection process here denied Davis an opportunity to insure that a fair and impartial jury was seated.

Proposition of Law No. II: The admission of state's exhibits 12A.1 and 12A2, without identification or authentication violated Roland Davis' constitutional rights to due process, a fair trial, and the right to the effective assistance of counsel, as guaranteed by the federal and state constitutions.

Proposition of Law No. III: The admission of tape recordings as evidence without first presenting and authenticating the tape recording in open court in the presence of the defendant denied Davis his constitutional right to be present at a critical stage of the trial and to a trial in open court in violation to the Fifth, Sixth, Eighth, and Fourteenth Amendments and Article I, § 2, 9, 10 and 16 of the Ohio Constitution. Additionally the admission of a transcript of these unidentified tapes that were never played in the courtroom violated Davis' rights to due process, a fair trial, the effective assistance of counsel and a reliable sentencing determination.

Proposition of Law No. IV: The cumulative and gruesome photographs admitted at trial deprived Roland Davis of due process, a fair trial, and a fair and reliable sentencing determination in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments and Article I, Sections 2, 9, 10 and 16 of the Ohio Constitution.

Proposition of Law No. V: Unqualified opinion testimony concerning the truthfulness of a witness of a declarant usurps the function of the jury and denied Davis due process, a fair trial, the right of confrontation, and the effective assistance of counsel.

Proposition of Law No. VI: Before presenting "expert" testimony, the state must establish the scientific or other basis for the testimony and establish that the "expert" has the qualifications and training to render an opinion. *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The presentation of "expert" testimony without first establishing either the scientific basis or the qualifications of the "expert" deprived Davis of due process and a fair trial.

11

Proposition of Law No. VII: Reports prepared by an expert witness and relied on by that witness during her testimony and subject to cross-examination are admissible as exhibits when requested by the party opponent. The trial court's exclusion of such reports of the state's DNA expert denied Roland Davis his right to a fair trial, due process and a reliable sentencing determination in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments and Article I §§ 2, 9, 10 and 16 of the Ohio Constitution.

Proposition of Law No. VIII: Roland Davis was deprived of a fair and reliable determination of his guilt or[r] innocence in violation of his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments and Sections 2, 9, 10 and 16, Article I of the Ohio Constitution, by the trial court's erroneous jury instructions at the penalty phase.

Proposition of Law No. IX: Davis was denied his right to a fair trial, due process of law and a fair and reliable sentencing determination because the state offered insufficient evidence to support a conviction on the aggravating circumstance of kidnapping or the charge of kidnapping.

Proposition of Law No. X: The failure to merge the kidnapping and aggravated robbery specifications of statutory aggravating circumstances resulted in the jury weighing duplicative and cumulative aggravating circumstances thereby denying Davis due process and a fair and reliable sentencing phase as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, §§ 2, 9, 10 and 16 of the Ohio Constitution.

Proposition of Law No. XI: The failure to merge the kidnapping and aggravated robbery specifications of statutory aggravating circumstances resulted in the jury weighing duplicative and cumulative aggravating circumstances thereby denying Davis due process and a fair and reliable sentencing phase as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, §§ 2, 9, 10 and 16 of the Ohio Constitution.

Proposition of Law No. XII: The prosecutor has an obligation to seek justice and to refrain from unfairly seeking a conviction or sentence of death based on improper evidence, improper argument and other misconduct under the Fifth, Sixth, Eighth and Fourteenth Amendments and Article I, §§ 2, 9, 10 and 16 of the Ohio Constitution.

Proposition of Law No. XIII: The representation provided to Roland Davis fell far below the prevailing norms for counsel in a capital case, was unreasonable, and affected the outcome in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments as well as Art. I, § 2, 9, 10 and 16 of the Ohio Constitution.

12

Proposition of Law No. XIV: Roland Davis was convicted and sentenced to death in a trial conducted in an emotional atmosphere where the prosecutor exploited the emotional impact of evidence about the victim in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments as well as Article I, Sections 2, 9, 10 and 16 of the Ohio Constitution.

Proposition of Law No. XV: The death sentence imposed on Roland Davis is disproportionate in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

Proposition of Law No. XVI: The Ohio sentencing review process as implemented by the trial court denied Roland Davis an adequate safeguard against the arbitrary and capricious imposition of the death penalty. The death penalty in this case is inappropriate under the Fifth, Sixth, Eighth and Fourteenth Amendments as well as Article I, §§ 2, 9, 10, and 16 of the Ohio Constitution.

Proposition of Law No. XVII: Ohio's death penalty law is unconstitutional. Ohio Rev. Code Ann. §§ 2903.01, 2929.02, 2929.021, 2929.022, 2929.023, 2929.03, 2929.04, 2929.05, and 2929.06 are unconstitutional on their face and as applied to Roland Davis under the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and Art. I, §§ 2, 9, 10, 16 of the Ohio Constitution. Further, Ohio's death penalty statute violates the United States' obligations under international law.

Proposition of Law No. XVIII: A trial court may not sentence a defendant to maximum and consecutive sentences based on facts not found by the jury or admitted by defendant. This violated Davis' constitutional rights as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, § 10 and 16 of the Ohio Constitution.

(ECF No. 51-3, at Page ID # 1647-1933.)

After the state filed its merit brief on October 17, 2006 and Petitioner filed his reply brief on November 29, 2006, the Ohio Supreme Court issued a decision on January 3, 2008 rejecting Petitioner's propositions of law, affirming the judgment against Petitioner, and finding that his death sentence was appropriate and proportionate. *Davis*, 116 Ohio St. 3d 404; ECF No. 51-5, at Page ID # 2249. Following the Ohio Supreme Court's consideration and rejection of Petitioner's motion for reconsideration, the United States Supreme Court denied *certiorari* on October 6,

13

2008. (ECF No. 51-5, at Page ID # 2572.)

## C. *Murnahan* Appeal

Represented by attorneys Joseph Wilhelm and T. Kenneth Lee of the Ohio Public Defender's Office, Petitioner on April 2, 2008 filed a motion to reopen his direct appeal—the procedure in Ohio for raising claims of ineffective assistance of appellate counsel. (ECF No. 51-5, at Page ID # 2365-2375.) In that proceeding, Petitioner argued that his appellate attorneys performed deficiently and to his prejudice in failing to raise the following propositions of law:

> Proposition of Law No. 1: Appellate counsel are ineffective when they fail to raise the prejudicially deficient errors and omissions of trial counsel made in the culpability phase of a capital trial. U.S. Const. Amends V, VI, VIII, and XIV.
>
> A. Failure to challenge juror Boyer.
>
> B. Counsel diminished juror's responsibility for sentencing verdict.
>
> C. Counsel failed to question juror Neff about distracting influences.
>
> D. Counsel failed to investigate defense theory.
>
> E. Counsel failed to request curative instructions.
>
> F. Counsel failed to challenge over-stated expert testimony on DNA evidence.
>
> Proposition of Law No. 2: Appellate counsel are ineffective when they failed to raise a statutory defect, and a concomitant jury charge, that requires the capital sentencer to consider irrelevant mitigating factors. U.S. Const. amend. VIII and XIV.
>
> Proposition of Law No. 3: Appellate counsel are ineffective when they fail to raise prejudicially deficient errors and omissions made by trial counsel in the penalty phase of a capital trial. U.S. Const. amends. V, VI, VIII, and XIV.

According to a pleading referencing this application (ECF No. 51-9, at Page ID # 4015), it appears that the Ohio Supreme Court summarily denied Petitioner's application on September 10, 2008. *State v. Davis*, 119 Ohio St. 3d 1439 (2008).

14

D. Postconviction Pursuant to Ohio Rev. Code § 2953.21

Represented by the same attorneys who had represented him for his *Murnahan* appeal—

Joseph Wilhem and T. Kenneth Lee of the Ohio Public Defender's Office—Petitioner on June

23, 2006 filed in the trial court a petition for postconviction relief. (ECF No. 51-5, at Page ID #

2588-2622.) He raised the following grounds for relief:

First Ground for Relief: Petitioner Davis's convictions and sentences are void and/or voidable due to excessive security measures used throughout his trial, thus violating his right to fair and impartial trial, due process, the presumption of innocence, and the right to counsel. U.S. Const. amends. V, VI, VIII, IX, and XIV; Ohio Const. art. I, §§1, 2, 5, 9, 10, 16, and 20; Holbrook v. Flynn, 475 U.S. 560 (1986).

Second Ground for Relief: Petitioner Davis's convictions and sentences are void and/or voidable due to the trial counsel's failure to object or request a hearing to determine whether it was necessary to use excessive security measures throughout Petitioner's trial, thus violating his right to effective assistance of counsel, a fair and impartial trial, due process, the presumption of innocence, and the right to counsel. U.S. Const. amends. V, VI, VIII, IX, and XIV; Ohio Const. art. I, §§ 1, 2, 5, 9, 10, 16, and 20; Holbrook v. Flynn, 475 U.S. 560 (1986); Strickland v. Washington, 466 U.S. 668 (1984).

Third Ground for Relief: Petitioner Davis's judgment and sentence are void or voidable because the State failed to disclose any and all evidence favorable to the accused. As a result, Petitioner was denied his constitutional rights to due process, equal protection, and a fair trial. U.S. Const. amends. V, VI, VIII, XIV; Ohio Const. art. I, §§ 2, 5, 9, 10, 16, 20.

Fourth Ground for Relief: Petitioner Davis's convictions and/or sentences are void or voidable because he was denied the effective assistance of counsel in the mitigation phase of his capital trial as guaranteed by the Fifth, Sixth and Fourteenth Amendments of the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution.

\*\*\*

As a result of counsel's failure to investigate and prepare, counsel were unable to develop a complete social for Petitioner. If counsel had conducted a full investigation, and properly prepared to present compelling mitigation evidence, the following evidence are examples of what could have been introduced:

15

A.  There was no bond or connection between Petitioner's mom (Rose) and her children, because her home life was so stressful that her attention to her children was minimal.

B.  Petitioner's father was mean, not a good provider and was a very jealous person who physically and verbally abused not only Petitioner's mom, but also Petitioner and his siblings.

C.  Petitioner's father only had a third grade education, could not read or write, and told his children that they did not have to go to school.

D.  Petitioner did poorly in school and his parents did not help him with is lessons.

E.  Petitioner would bang his head on the headboard, and would always have a big bruise or a scab as a result of his self-inflicted head-banging injuries.

F.  The noise of Petitioner banging his head was shattering and his mother ignored it.

G.  Petitioner would not have killed Mrs. Sheeler, because he loved the elderly and was always helping them.

H.  Petitioner's mother was always black and blue from her husband's abuse.

I.  Petitioner had a perforated ear drum, that was very painful, and his parents did not seek medical attention for it.

J.  When Petitioner was in school other kids would make fun of him for having a hearing problem, speech impediment, and for stuttering and Petitioner would come home crying.

K.  Petitioner was very protective of his mom and would try and prevent his father from hitting her – the end result was his father would hit [Petitioner] instead.

L.  Petitioner delivered newspapers as a child and his mother would buy them so Petitioner could use the money to buy candy and for the neighborhood kids in an effort to get the kids to like him.

M.  Petitioner did not and does not have very many friends, and his only

true friends were his brothers.

N.   Petitioner's family struggled financially, and there were times they went hungry.

O.   Petitioner's father would be[at] and his siblings with his hands or a stick, and would hit Petitioner in the head.

P.   Petitioner's father would never do anything with Petitioner and his siblings, and would call Petitioner – retard, dummy, or stupid.

Q.   Petitioner has limited social skills because of his stuttering, and would attach himself to anybody and try and keep their friendship by pleasing them.

R.   Petitioner cannot function by himself and has to repeat things in order to learn how to do it.

S.   When Petitioner asked his wife to marry him, she told him that she did not love him and only said yes because she got tired of him asking her.

Fifth Ground for Relief:  The judgment and sentence against Petitioner Davis are void and/or voidable because the death penalty as administered by lethal injection violates his constitutional right to protection from cruel and unusual punishment as guaranteed by the Eighth Amendment and to due process of law.  U.S. Const. amends. V, VIII, IX, XIV; Ohio Const. art. I, §§ 1, 2, 5, 9, 10, 16, 20; Ohio Adult Parole Authority v. Woodard, 523 U.S. 272 (1998) (five justices holding that the Due Process Clause protects the "life" interest at issue in capital cases).

Sixth Ground for Relief:  Petitioner Davis's judgment and sentence are void or voidable because Ohio's post-conviction procedures do not provide an adequate corrective process, in violation of the constitution.  U.S. Const. amends. V, VI, VIII, IX, XIV; Ohio Const. art. I, §§ 1, 2, 5, 9, 10, 16, and 20.

Seventh Ground for Relief:  Petitioner Davis's judgment and sentence are void or voidable because, assuming *arguendo* that none of the Grounds for Relief in his Post-Conviction Petition individually warrant the relief sought from this court, the cumulative effects of the errors and omissions as presented in the Petition in paragraphs one through fourteen have been prejudicial to the Petitioner and have denied the Petitioner his rights as secured by the United States and Ohio Constitutions.  When reviewing a criminal case where numerous violations of the Rules of Evidence occurred at trial, the Ohio Supreme Court has held that "a conviction will be reversed where the cumulative effect of the errors deprives a defendant of the constitutional right to a fair trial."  State v. DeMarco, 31 Ohio St.

3d 191, syl. 2 (1987); See also, State v. Bunch, 62 Ohio App.3d 801 (1989).

Eighth Ground for Relief: Petitioner Davis's convictions are void or voidable because he was denied right to be present at a critical stage of the trial.

Ninth Ground for Relief: Petitioner Davis's convictions are void or voidable because his rights to equal protection and a fair cross-section of the community were violated by the under-representation of African-Americans from his jury.

Tenth Ground for Relief: Petitioner Davis's convictions are void or voidable because pervasive pre-trial publicity about this case warranted a change of venue from Licking County.

Eleventh Ground for Relief: Petitioner Davis's convictions are void or voidable because Petitioner was prejudiced by the errors and omissions of his counsel in the culpability phase of his capital trial. (Failure to investigate and present a defense, to wit: failed to investigate and present evidence that Petitioner was a drug mule for a cocaine deal in Elkhart, Indiana and failed to present evidence to rebut the State's circumstantial proof of guilty, based on Petitioner's supposed inquiries of a reward poster in the Newark diner, Annie's Place.)

Twelfth Ground for Relief: Petitioner Davis's death sentence is void or voidable because Petitioner was prejudiced by trial counsel's failure to present mitigating evidence from a clinical or forensic psychologist. (No psychological expert testified in the mitigation phase at Petitioner's trial—even though the court appointed Dr. Dennis Eshbagh for the defense in mitigation.)

***

Dr. Coleman's [subsequent] evaluation and opinion reveals the following relevant mitigation about Petitioner:

a. A culmination of his early, adolescent, and childhood experiences has shaped the person Mr. Davis is today and was at the time the offenses occurred.

b. The witnessing of violence during childhood and adolescence from his father against his mother has significantly affected Mr. Davis, creating greater risk for violent behavior in his adult life.

c. The ongoing difficulties with interpersonal relationships is likely due to a psychological and emotionally [sic] struggle between his father's violent behavior and his mother's passive behavior. Distressing sentiment has ensued, which his history has shown has manifested itself externally

18

with regard to his apparently genuine desire to help others.

    d.    His dependency on others for decision-making is likely due to insecurities and self-esteem issues developed throughout his life, as result of unsupportive experiences with his father and others.

    e.    Experiences he had and the way he processed them are independent of those of his siblings and further seemingly affected him in some similar, but also very different ways.

Thirteenth Ground for Relief: Petitioner Davis's convictions and sentences are void or voidable because he is actually innocent of the crimes charged in this case.

Fourteenth Ground for Relief: Petitioner Davis's convictions are void or voidable because trial counsel rendered prejudicially deficient performance by not raising a challenge to the jury pool based on the under-representation of African-Americans on juries in Licking County death penalty cases. (See Ninth Ground for Relief.)

Petitioner Davis's convictions are void or voidable because trial counsel rendered prejudicially deficient performance by not moving for a change of venue following voir dire. (See Tenth Ground for Relief.)

Petitioner Davis's convictions are void or voidable because trial counsel rendered prejudicially deficient performance by not objecting when the jury was permitted to view State's Exhibits 12-A.1 and 12-A.2 outside of Petitioner's presence. (See Eighth Ground for Relief.)

(ECF No. 51-5, at Page ID # 2588-2622.)

    Following the State's June 28, 2006 answer, motion for summary judgment, and

opposition to Petitioner's motion for a scheduling order concerning discovery and an evidentiary

hearing, (ECF No. 51-6, at Page ID # 2784, 2791, 2840), Petitioner on July 20, 2006 filed a

motion for leave to amend his postconviction petition (ECF No. 51-6, at Page ID # 2855) to add

the following two grounds for relief:

Fifteenth Ground for Relief: Petitioner Davis's convictions are void or voidable because trial counsel failed to call Damien Turner as a witness.

> Sixteenth Ground for Relief: Petitioner's convictions and sentences are void or voidable because his trial counsel rendered ineffective assistance by not making a cogent challenge to the State's Y-STR DNA evidence.

(ECF No. 51-6, at Page ID # 2894-2897.)

On July 20, 2006, Petitioner filed motions requesting funds to employ a clinical psychologist (ECF No. 51-7, at Page ID # 313), requesting a DNA test (ECF No. 51-7, at Page ID # 3139), and requesting discovery and an evidentiary hearing (ECF No. 51-7, at Page ID # 3169). The State opposed those motions on November 8, 2007. (ECF No. 51-7, at Page ID # 3182.) On November 14, 2007, without entertaining any replies by Petitioner, the trial court summarily denied all three of Petitioner's motions. (ECF No. 51-7, at Page ID # 3190.) On that same date, the trial court also issued a Judgment Entry rejecting Petitioner's claims and denying his postconviction petition. (ECF No. 51-7, at Page ID # 3184.)

On November 21, 2007, Petitioner filed a motion for a new trial pursuant to Civil Rule 59, essentially challenging the trial court's action in proceeding to judgment on Petitioner's postconviction petition and motions for factual development without entertaining replies that the rules entitled Petitioner to file. (ECF No. 51-7, at Page ID # 3199-3201.) The trial court issued a Judgment Entry on January 14, 2008 treating Petitioner's new-trial motion as an opportunity to consider Petitioner's replies and still denying Petitioner's postconviction petition. (ECF No. 51-7, at Page ID # 3212-3213.)

Petitioner on February 13, 2008 filed a Notice of Appeal to the intermediate court of appeals as to the trial court's denials of Petitioner's postconviction petition and motion for a new trial. (ECF No. 51-7, at Page ID # 3216-3217.) In a merit brief filed on June 2, 2008 (ECF No. 51-7, at Page ID # 3269), Petitioner raised the following assignments of error:

First Assignment of Error: Appellant's right to due process and equal protection was violated because the trial court dismissed his post-conviction petition on procedural grounds. U.S. Const. amend. XIV; Ohio Const. art. I, §§ 2, 16.

Issue(s) Presented for Review and Argument:

1. The trial court incorrectly denied Appellant's amended petition for post-conviction review on the basis of res judicata because Appellant's claims were supported by evidence de hors the records.

2. The trial court improperly relied on O.R.C. § 2969.25(A) to dismiss Appellant's amended petition.

Second Assignment of Error: Appellant's due process and equal protection rights were violated because the trial court denied motions that were necessary to fully and fairly litigate his grounds for post-conviction relief. U.S. Const. amend. XIV; Ohio Const. art. I, § 16.

Issue(s) Presented for Review and Argument:

1. The trial court erred when it denied Appellant's request for discovery.

2. The trial court erred when it denied Appellant's request for an evidentiary hearing.

3. The trial court violated Appellant's due process rights by denying him expert assistance.

4. The trial court erred to Appellant's material prejudice when it denied his motion for DNA test of Randy Davis's blood sample and Appellant's alternative request for a court order to require the State to preserve Randy Davis's blood sample for future testing.

Third Assignment of Error: The trial court erred in dismissing Appellant's Post-Conviction Petition when he presented sufficient operative facts to merit relief or, at minimum, an evidentiary hearing.

Issue Presented for Review and Argument:

A trial court must grant relief, or at a minimum, an evidentiary h earing where a post-conviction petitioner has presented sufficient evidence to support claims of constitutional error during capital proceedings.

1. Appellant was denied his right to a fair trial and his presumption of

21

innocence when the trial court allowed him to be shackled throughout trial without first conducting a hearing on the necessity of shackling. (First Ground for Relief.)

2.     Appellant was denied his right to a fair trial and his presumption of innocence when trial counsel failed to object to or request a hearing to determine whether Davis should be shackled throughout trial. (Second Ground for Relief.)

3.     Appellant was denied his right to a fair trial when the State failed to disclose favorable evidence, in violation of Brady v. Maryland, 373 U.S. 83 (1963). (Third Ground for Relief.)

4.     Appellant was denied his right to effective assistance of counsel in the mitigation phase of his capital trial in violation of his Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution when counsel failed to investigate his background for mitigating factors. (Fourth Ground for Relief.)

5.     Lethal injection violates Appellant's constitutional right to protection from cruel and unusual punishment as guaranteed by the Constitution. (Fifth Ground for Relief.)

6.     Ohio's post-conviction procedures [are] not adequate. (Sixth Ground for Relief.)

7.     Cumulative error. (Seventh Ground for Relief.)

8.     Appellant was denied his right to be present during a critical stage of the proceeding against him in violation of the Sixth and Fourteenth Amendments to the United States Constitution and art. I, §§ 5 and 16 of the Ohio Constitution. (Eighth Ground for Relief.)

9.     Appellant was denied his Equal Protection Right under the Fourteenth Amendment to [the] United States Constitution because of the under-representation of African-Americans on his jury. (Ninth Ground for Relief.)

10.    Appellant was denied his rights to due process, a fair trial, and an impartial jury when he was forced to stand trial in Licking County amidst pervasive pre-trial publicity, in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. (Tenth Ground for Relief.)

11.    Appellant was denied his right to the effective assistance of counsel when counsel failed to investigate Davis's case and to present a defense, in violation of Davis's Fifth, Sixth, and Fourteenth Amendments rights. (Eleventh Ground for

22

Relief.)

12.  Appellant was denied his right to the effective assistance of counsel when counsel failed to present mitigation evidence from a clinical or forensic psychological, in violation of Davis's Fifth, Sixth, and Fourteenth Amendments rights. (Twelfth Ground for Relief.)

13.  Appellant was denied his rights to due process and a fair trial, because he is actually innocent, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution. (Thirteenth Ground for Relief.)

14.  Appellant was denied his right to the effective assistance of counsel, in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. (Fourteenth Ground for Relief.)

15.  Appellant was denied his right to the effective assistance of counsel, when counsel failed to call Damien Turner, in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. (Fifteenth Ground for Relief.)

16.  Appellant was denied his right to the effective assistance of counsel, when counsel failed to object when the State and its DNA experts misled the jury by declaring a match between Davis and the DNA results, in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. (Sixteenth Ground for Relief.)

(ECF No. 51-7, at Page ID # 3269-3306.)

The state filed its merit brief on August 19, 2008 (ECF No. 51-8, at Page ID # 3365-

3401) and Petitioner filed his reply on September 3, 2008 (ECF No. 51-8, at Page ID # 3409-

3416). On December 23, 2008, the Licking County Court of Appeals issued a decision affirming

the trial court's judgment denying Petitioner postconviction relief. (ECF No. 51-8, at Page ID #

3431-3473.)

Petitioner filed a notice of appeal to the Ohio Supreme Court on February 8, 2009. (ECF

No. 51-8, at Page ID # 3477.) On the same date, Petitioner filed a Memorandum in Support of

Jurisdiction raising the following propositions of law:

Proposition of Law No. 1: A capital post-conviction petitioner's rights to due process and equal protection are violated when the petitioner is denied discovery, expert assistance, and a hearing to fully develop the factual basis for the petitioner's constitutional claims. U.S. Const. amend. XIV.

Proposition of Law No. 2: It is error to deny a capital post-conviction petitioner's claims for relief on the basis of res judicata when the claims are supported with evidence de hors the trial record. U.S. Const. amend. XIV.

Proposition of Law No. 3: It is error to deny relief on the merits to a capital post-conviction petitioner who has presented claims of constitutional errors that are supported with evidence de hors the trial court. U.S. Const. amends. V, VI, VIII, XIV.

Proposition of Law No. 4: A claim of factual innocence is cognizable on post-conviction review under O.R.C. § 2953.21 et seq. U.S. Const. amends. VIII, XIV.

(ECF No. 51-8, at Page ID # 3480-3499.) The state filed a response in opposition on March 5, 2009 (ECF No. 51-8, at Page ID # 3546-3560) and on June 17, 2009, the Ohio Supreme Court issued an Entry summarily declining jurisdiction (ECF No. 51-8, at Page ID # 3564).

### E. Motion for New Trial Proceedings

Represented by Joseph Wilhelm of the Ohio Public Defender's Office, Petitioner on October 31, 2008, filed in the trial court a Motion For Finding Defendant Was Unavoidably Prevented From Discovery New Evidence Within 120 Days of Verdict Under Ohio R. Crim. P. 33(B). (ECF No. 51-8, at Page ID # 3576-3581.) With that, Petitioner submitted a Motion For New Trial Under Ohio R. Crim. P. 33(A)(6) With Request For Discovery And Evidentiary Hearing (ECF No. 51-8, at Page ID # 3582-3590), as well as an affidavit by DNA expert Dr. Laurence Mueller (ECF No. 51-8, at Page ID # 3592-3602). The state filed its response on November 26, 2008 (ECF No. 51-8, at Page ID # 3641-3648) and a supplemental response on January 20, 2009 (ECF No. 51-8, at Page ID # 3649-3653). On January 30, 2009, the trial court issued a Judgment Entry denying Petitioner's motion for a finding that he was unavoidably

prevented from discovering new evidence. (ECF No. 51-8, at Page ID # 3656-3660.)

On February 2, 2009, Petitioner filed a Motion For Appointment of DNA Expert and Independent Review of DNA Test of Randy Davis. (ECF No. 51-8, at Page ID # 3661-3663.) On the same day, he also filed a Motion To Preserve Item 76, Randy Davis's DNA, For Independent Evaluation. (ECF No. 51-9, at Page ID # 3682-3684.) The state responses on March 6, 2009 (ECF No. 51-9, at Page ID # 3686-3687, 3688-3689) and on March 10, 2009, the trial court issued a Judgment Entry denying Petitioner's motion for appointment of a DNA expert but granting Petitioner's motion to preserve Item 76. (ECF No. 51-9, at Page ID # 3690.)

On March 2, 2009, Petitioner filed a notice of appeal to the Licking County Court of Appeals challenging the trial court's January 30, 2009 decision not to entertain Petitioner's motion for a new trial. (ECF No. 51-9, at 3696.) In a merit brief filed on June 15, 2009, Petitioner raised the following assignment of error and correlating issue for review:

> Assignment of Error: The trial court violated Appellant's due process rights when it denied his request for leave to file a new trial motion. U.S. Const. amend. XIV.
>
> Issue Presented for Review
>
> Appellant was unavoidably prevented from discovering his new evidence within one hundred and twenty days of the jury verdict under Criminal Rule 33(B).

(ECF No. 51-9, at Page ID # 3738-3751.) The state filed its merit brief on June 24, 2009 (ECF No. 51-9, at Page ID # 3738-3794) and Petitioner filed his reply on July 7, 2009 (ECF No. 51-9, at Page ID # 3797-3805). In an Opinion issued on September 24, 2009, the Licking County Court of Appeals affirmed the judgment of the trial court, concluding that the trial court was without jurisdiction to entertain Petitioner's new trial motion. (ECF No. 51-9, at Page ID # 3838-3843.)

25

On October 5, 2009, Petitioner filed a motion to extend his time to file an application for reconsideration. (ECF No. 51-9, at Page ID # 3845-3848.) New counsel, Pam Prude-Smithers of the Ohio Public Defender's Office, pointed to the departure of former counsel Joseph Wilhelm. The state opposed Petitioner's motion (ECF No. 51-9, at Page ID # 3849-3852) and on November 3, 2009, the appellate court issued a Judgment Entry denying Petitioner's motion (ECF No. 51-9, at Page ID # 3853).

Represented by Ruth Tkacz of the Ohio Public Defender's Office, Petitioner on November 6, 2009 filed a notice of appeal to the Ohio Supreme Court, as well as a memorandum in support of jurisdiction. (ECF No. 51-9, at Page ID # 3880-3900.) In his memorandum in support, Petitioner raised the following propositions of law:

> Proposition of Law No. 1: when the issue to be decided by the trial court does not fall within the judgment on appeal, the trial court retains jurisdiction to decide the motion before it. Further, to meet due process, a trial court must be able to consider a motion for a new trial based on newly discovered evidence even after an appeal has been taken. U.S. Const. amend. XIV.

> Proposition of Law No. 2: A trial court errs and violates the defendant's right to due process when it denies a motion for a new trial filed beyond the time limit in Ohio R. Crim. P. 33(B) when the defendant has shown that he was unavoidably prevented from discovering the relevant new evidence. U.S. Const. amend. XIV.

(ECF No. 51-9, at Page ID 3880-3900.) Days later, on November 9, 2009, the Ohio Association of Criminal Defense Lawyers and Cuyahoga County Public Defender's Office filed an *amicus* brief and memorandum in support of jurisdiction supporting Petitioner's position. (ECF No. 51-9, at Page ID # 3909-3919.)

On November 23, 2009, the state filed a response urging the Ohio Supreme Court to decline jurisdiction. (ECF No. 51-9, at Page ID # 3920-3932.) The state raised the following propositions of law in response to Petitioner's propositions of law:

26

> Proposition of Law No. I: A trial court has no jurisdiction to hear a motion for new trial after the conviction has been affirmed on appeal. *[State ex rel. Special Prosecutors v. Judges (1978), 55 Ohio St. 2d 94, followed]*

> Proposition of Law No. II: The Supreme Court will not entertain an issue decided by a trial court, but never passed upon by the court of appeals because that court decided the matter on jurisdictional ground, rendering the need to review the trial court's reasoning moot. *[Thirty-Four Corp. v. Sixty-Seven Corp. (1984), 15 Ohio St. 3d 350, 352, followed]*

(ECF No. 51-9, at Page ID # 3920-3932.)

Following the Ohio Supreme Court's decision accepting jurisdiction over Petitioner's appeal, Petitioner filed his merit brief on May 24, 2010. (ECF No. 51-9, at Page ID # 3948-3963.) He raised a single proposition of law:

> Proposition of Law: When the issue to be decided by the trial court does not fall within the judgment on appeal, the trial court retains jurisdiction to decide the motion before it. Further, to meet due process, a trial court must be able to consider a motion for a new trial based on newly discovered evidence even after an appeal has been taken. U.S. Const. amend. XIV.

(ECF No. 51-9, at Page ID # 3948-3963.) *Amicus* briefs supporting Petitioner's argument were filed on May 24, 2010 by the Ohio Association of Criminal Defense Lawyers and Cuyahoga County Public Defender's Office (ECF No. 51-9, at Page ID 3995-4005) and on May 25, 2010 by the Innocence Network (ECF No. 51-9, at Page ID # 4006-4036). The state filed its merit brief on July 13, 2010 (ECF No. 51-9, at Page ID # 4039-4079) and Petitioner filed his reply brief on July 29, 2010 (ECF No. 51-10, at Page ID # 4148-4163). On August 2, 2010, the Innocence Network filed an *amicus* reply brief. (ECF No. 51-10, at Page ID # 4169-4188.)

On December 29, 2010, the Ohio Supreme Court issued an Entry establishing a briefing schedule for the parties to address the following issue:

> Whether the court of appeals had jurisdiction to consider the trial court's denial of Davis' motion for a new trial based on newly discovered evidence under

27

Section 2(B)(2)(c) and Section 3(B)(2), Article IV of the Ohio Constitution.

(ECF No. 51-10, at Page ID # 4189.) Petitioner filed his supplemental brief on January 18, 2011

(ECF No. 51-10, at Page ID # 4190-4203) and the state filed its supplemental brief on January

25, 2011 (ECF No. 51-10, at Page ID # 4221-4239.)

On October 4, 2011, the Ohio Supreme Court issued a decision reversed the court of

appeals' judgment and remanded the case to that court based on the following holdings:

> 1. Pursuant to Sections 2(B)(2)(c) and 3(B)(2), Article IV of the Ohio Constitution, a court of appeals has jurisdiction in case in which a death penalty has been imposed to consider the appeal of a trial court's denial of a motion for a new trial based on newly discovered evidence.
>
> 2. A trial court has jurisdiction to decide a motion for a new trial based on newly discovered evidence in a case in which the imposition of the death penalty has been affirmed on appeal.

*State v. Davis*, 131 Ohio St. 3d 1, paragraphs one and two of the syllabus (2011); ECF No. 51-

10, at Page ID # 4249-4257.

Pursuant to the Ohio Supreme Court's decision, the Ohio Court of Appeals for the Fifth

Appellant District on November 14, 2011 issued a Judgment Entry reactivating the case. (ECF

No. 51-9, at Page ID 3854.) A little over a month later, the appellate court on January 4, 2012

issued an Opinion affirming the judgment of the trial court denying Petitioner's request for a

finding that he was unavoidably prevented from discovering his new evidence and accordingly

denying Petitioner's motion for a new trial as untimely. (ECF No. 51-9, at Page ID # 3855-

3860.)

Represented by substitute counsel Randall Porter of the Ohio Public Defender's Office

(ECF No. 51-9, at Page ID # 3862-3864), Petitioner on January 13, 2012 filed a Motion for

Rehearing, asking the appellate court to reconsider its decision to affirm the trial court's denial of

28

Petitioner's new trial motion without affording Petitioner the opportunity to submit briefing.

(ECF No. 51-9, at Page ID # 3865-3869.)  The state opposed Petitioner's motion (ECF No. 51-9,

at Page ID # 3871-3873) and, on February 7, 2012, the appellate court issued a Judgment Entry

denying Petitioner's Motion for Rehearing (ECF No. 51-9, at Page ID # 3874).

On March 21, 2012, Petitioner filed in the Ohio Supreme Court a Notice of Appeal (ECF

No. 51-10, at Page ID # 4260-4262) and Memorandum in Support of Jurisdiction raising the

following propositions of law:

> Proposition of Law No. I:  When the Supreme Court of Ohio remands a case for
> further consideration by the court of appeals, the lower appellate court on remand
> must afford the parties an opportunity to submit supplemental briefing.
>
> Proposition of Law No. II:  A trial court must grant a new trial when it determines
> that due to trial counsel's deficient performance two expert witnesses at trial
> substantially misrepresented the probability that the defendant's DNA matched
> DNA found at the crime scene.  U.S. Const. amend. VI and XIV.
>
> Proposition of Law No. III:  A defendant is unavoidably prevented from
> discovering relevant new evidence for purposes of Crim. R. 33(B), when the new
> evidence consists of the testimony of an expert and there is no judicial funding
> mechanism available for the defendant to obtain the funding to retain the expert.
> U.S. Const. amend. XIV.

(ECF No. 51-10, at Page ID # 4263-4280.)  The state filed an opposition to Petitioner's

memorandum in support (ECF No. 51-10, at Page ID # 4303-4317) and, on June 5, 2013, the

Ohio Supreme Court issued an Entry summarily declining to accept jurisdiction over Petitioner's

appeal (ECF No. 51-10, at Page ID # 4318).  The United States Supreme Court denied *certiorari*

on January 13, 2014.  (ECF No. 51-9, at Page ID # 3876.)

### III.  Habeas Corpus Petition

Petitioner initiated these proceedings on February 5, 2010 by filing a motion for leave to

proceed *in forma pauperis* (ECF No. 1) and a motion for appointment of counsel (ECF No. 2).

29

The Court on March 26, 2010 issued an order granting those motions and appointing Attorneys David Stebbins and Carol Wright of the Federal Defender's Office, as well as Attorney Kort Gatterdam, to represent Petitioner. (ECF No. 6.)

Pursuant to the Court's April 9, 2010 scheduling order (ECF No. 11), Petitioner on June 15, 2010 filed his Petition (ECF No. 15). On that same date, Petitioner also filed an unopposed motion to stay the petition and holding the proceedings in abeyance, pending completion of state court proceedings that Petitioner was still pursuing. (ECF No. 16.) On September 8, 2010, this Court issued an order granting Petitioner's motion. (ECF No. 18.)

On July 5, 2012, after temporarily reopening Petitioner's case, this Court issued an Opinion and Order granting Petitioner's March 8, 2012 motion for leave to file an amended petition (ECF No. 28). (ECF No. 34.) Petitioner filed his Amended Petition on July 30, 2012, essentially adding to his petition two claims raising method-of-execution challenges. (ECF No. 35.)

Promptly following completion of the state court proceedings that Petitioner was pursuing, Petitioner on February 12, 2014 filed an unopposed motion to reopen this case. (ECF No. 44.) This Court conducted an initial preliminary pretrial conference on February 26, 2014 and issued a Scheduling Order that same day. (ECF No. 49.) Pursuant to that scheduling order, Petitioner on September 2, 2014, filed a Second Amended Petition. (ECF No. 61) On April 23, 2015, pursuant to an April 13, 2015 Opinion and Order by this Court declining to stay consideration of Petitioner's "lethal injection" claims (ECF No. 79), a Substitute Second Amended Petition, with updated "lethal injection" claims, was filed on April 23, 2015. (ECF

30

No. 85.)[2]  That 435-page Petition raises the following thirty-four grounds for relief:

**PRETRIAL GROUNDS FOR RELIEF**

**First Ground for Relief:**  Roland Davis was deprived of his right to a fair trial, to counsel, to present a defense and to present mitigation and have that mitigation evidence considered and given effect by the jury when the trial court ordered him to wear a stun belt device on his arm without first holding a hearing on the necessity for shackling.

**JURY SELECTION GROUNDS FOR RELIEF**

**Second Ground for Relief:**  Roland Davis was deprived of his rights to due process, a fair trial and an impartial jury contrary to the Fifth, Sixth, and Fourteenth Amendments when he was forced to stand trial in Licking County, Ohio, amidst pervasive pre-trial publicity.

**Third Ground for Relief:**  Davis was denied a trial by jury drawn from a fair cross section of the community and equal protections under the Fifth, Sixth, Eighth, and Fourteenth Amendments because of the under-representation of African-Americans on his jury.

**Fourth Ground for Relief:**  The jury selection process in Roland Davis' trial denied him an opportunity to ensure that a fair and impartial jury, free from bias or preconceived opinions about guilt or punishment, was seated in violation of his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments.

> A.  Davis was denied the thorough and adequate voir dire necessary to develop the factual bases for challenges for cause and exercise peremptory challenges of jurors who were exposed to extensive pretrial publicity or who were biased on questions of guilt, innocence, or sentence.

> B.  The trial court applied an improper standard in excusing prospective jurors who expressed objections to capital punishment but who were not unequivocally opposed to capital punishment under all circumstances and could fairly consider death as a sentence.

> C.  Trial counsel failed to fully examine jurors about whether their opinions on the death penalty would prevent them from following the court's instructions and fairly considering the imposition of the death penalty.

---

[2]  All of this Court's references to the Petition will be to the substituted second amended petition that Petitioner filed on April 23, 2015.  (ECF No. 85.)

D. The trial court refused to permit counsel to fully examine prospective jurors about potential mitigating evidence, about whether they could consider a life sentence for someone who had killed an elderly woman in her home or whether they would automatically vote for death upon a showing of guilt. The failure to fully examine on these subjects resulted in jurors who would automatically vote for the death penalty and who would not consider mitigating evidence.

E. Comments by the prosecutor during voir dire misled the jurors about their role in the determination of sentence and prevented the jury from considering compelling mitigating evidence.

F. The trial court failed to excuse jurors who knew too much about the crime, the victim, or Roland Davis.

G. The prosecutor and the trial court impermissibly sought commitments from the prospective jurors that they impose the death penalty.

H. The court and counsel failed to question a juror about personal problems that would distract from performing duties as a juror and failed to remove that juror.

I. Conclusion.

## TRIAL PHASE GROUNDS FOR RELIEF

**Fifth Ground for Relief:** Unqualified opinion testimony concerning the truthfulness of a witness or a declarant usurped the function of the jury and denied Davis due process, a fair trial, the right of confrontation, and the effective assistance of counsel.

**Sixth Ground for Relief:** The trial court's refusal to grant Davis' request to admit reports prepared and relied upon by the witness of a party opponent—the state's DNA expert witness—denied Davis his right to confront witnesses against him, a fair trial, due process and a reliable sentencing determination in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments.

**Seventh Ground for Relief:** The presentation of "expert" testimony without first establishing either the scientific basis or the qualifications of the "expert" deprived Davis of due process and a fair trial.

A. Detective Elliget's testimony.

32

B. Testimony was improper.

C. Davis was denied his right to due process because scientifically unsupported and unsupportable, misleading, and unreliable evidence undermined the fundamental fairness of the entire trial.

D. The stated failed to disclose material exculpatory and impeachment evidence in violation of Davis' rights under *Brady*.

E. Davis was denied a meaningful opportunity to present a complete defense by the failure to disclose material exculpatory and impeachment evidence.

F. The state's evidence and argument rendered Davis' trial fundamentally unfair and violated his right to a jury verdict based solely upon the facts of the offense proven beyond a reasonable doubt.

G. Davis' right to due process was violated because Detective Elliget's scientifically unsupported and unsupportable, misleading and unreliable testimony led to the conviction of an innocent man.

H. Davis' conviction must be overturned because of the cumulative prejudice from all of the constitutional errors.

I. Detective Elliget's scientifically unsupported and unsupportable, misleading and unreliable testimony violated Davis' Eighth Amendment right to heightened reliability in capital sentencing.

J. Davis' death sentence violates due process because its imposition was based upon a material misapprehension of fact.

K. Davis was denied his right to an impartial penalty-phase jury.

L. Davis is entitled to relief based upon the cumulative prejudicial effect of these constitutional errors.

M. Conclusion.

**Eighth Ground for Relief:** Davis was denied a fair trial, due process of law and a fair and reliable sentencing determination because the state offered insufficient evidence to support a conviction on the aggravated circumstance of kidnapping or the charge of kidnapping.

A. The state presented insufficient evidence of purpose to engage in

sexual activity.

B.  The state failed to present sufficient proof beyond a reasonable doubt on the second statutory aggravating circumstance.

C.  Conclusion.

**Ninth Ground for Relief:**  The trial court's erroneous jury instructions during the trial phase deprived Davis of a fair and reliable determination of his guilt or innocence in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments.

A.  The trial court failed to give an instruction prohibiting the jury from stacking inferences.

B.  The instructions permitted Davis to be convicted on less than a unanimous verdict.

C.  The trial court's definition of "beyond a reasonable doubt" relieved the state of its burden of proof.

D.  The trial court erroneously instructed the jury on the fundamental element of causation.

E.  Conclusion.

**Tenth Ground for Relief:**  The cumulative and gruesome photographs admitted at the trial and penalty phases deprived Roland Davis of due process, a fair trial, and a fair and reliable sentencing determination in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments.

**Eleventh Ground for Relief:**  The admission of state's exhibits 12A.1 and 12A.2, without identification or authentication, violated Roland Davis' constitutional rights to due process, a fair trial, and the right to the effective assistance of counsel, as guaranteed by the federal constitution.

**Twelfth Ground for Relief:**  The admission of tape recordings as evidence without first presenting and authentication in open court in the presence of the defendant denied Davis his constitutional right to be present at a critical stage of the trial and to a trial in open court, in violation to the Fifth, Sixth, Eighth, and Fourteenth Amendments.  Additionally, the admission of a transcript of these unidentified tapes that were never played in the courtroom violated Davis' rights to due process, a fair trial, the effective assistance of counsel and a reliable sentencing determination.

A. The court admitted tapes of what the state alleged was an interview with Davis without ever requiring identification of the evidence.

B. The court also permitted the jury to have a transcript of the taped interview as "an aid" even though it had not been authenticated or admitted as evidence.

## PENALTY PHASE GROUNDS FOR RELIEF

**Thirteenth Ground for Relief:** Roland Davis was convicted and sentenced to death in a trial conducted in an emotional atmosphere where the prosecutor exploited the emotional impact of evidence about the victim in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments.

**Fourteenth Ground for Relief:** The failure to merge the kidnapping and aggravated robbery specifications of statutory aggravating circumstances resulted in the jury weighing duplicative and cumulative aggravating circumstances thereby denying Davis due process and a fair and reliable sentencing phase as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments.

**Fifteenth Ground for Relief:** The jury instructions at the penalty phase failed to convey to the jury adequate information to properly guide exercise of its discretion, in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments.

A. The jury was permitted to consider trial phase evidence that was not relevant to the penalty phase determination.

B. The trial court's instructions under Ohio Rev. Code § 2929.03, 2929.04 and 2929.05 failed to properly allocate and define the burden of proof for the penalty phase.

C. The Ohio "beyond a reasonable doubt" standard of proof fails to meet the requirement of higher reliability for the guilt determination phase of a capital case.

D. The trial court failed to instruct the jury on residual doubt.

E. The trial court gave an incorrect parole-eligibility instruction.

F. The trial court failed to give a mercy instruction.

G. Conclusion.

## PROSECUTORIAL MISCONDUCT GROUNDS FOR RELIEF

35

**Sixteenth Ground for Relief:** The prosecutor violated Davis' rights under the Fifth, Sixth, Eighth and Fourteenth Amendments by failing to meet his obligation to seek justice and to refrain from unfairly seeking a conviction or sentence of death based on improper evidence, improper argument and other misconduct.

    A. The prosecutor repeatedly vouched for witnesses and expressed personal beliefs.

    B. The prosecutor improperly commented on a missing witness.

    C. The prosecutor improperly elicited victim impact evidence.

    D. The prosecution improperly commented on Davis' silence and attempted to shift the burden of proof.

    E. The prosecution improperly denigrated defense counsel.

    F. The prosecutor improperly requested a conviction to bring justice.

    G. The prosecutor engaged in other improper conduct during the penalty phase.

    H. The state improperly withheld *Brady* material.

    I. Conclusion.

**Seventeenth Ground for Relief:** Davis was denied his right to due process and to a fair trial when the state failed to disclose material, favorable evidence.

## INEFFECTIVE ASSISTANCE OF COUNSEL GROUNDS FOR RELIEF

**Eighteenth Ground for Relief:** Roland Davis was denied the effective assistance of counsel under the Fifth, Sixth, Eighth and Fourteenth Amendments.

    A. Davis was denied the effective assistance of counsel during the pre-trial stage.

    B. Davis was denied the effective assistance during the trial phase.

    C. Davis was denied the effective assistance of counsel at the penalty phase.

    D. Davis was denied the effective assistance of counsel regarding his

intellectual disability.

E. Conclusion.

**STYSTEMIC GROUNDS FOR RELIEF**

**Nineteenth Ground for Relief:**  The death sentence imposed on Roland Davis is disproportionate in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments.

>  A.  Davis' substantive Eighth Amendment right to a death sentence that was not imposed in an arbitrary or capricious manner was violated.

>  B.  The Ohio Supreme Court's refusal to consider life sentences in Davis' proportionality review denied him due process.

>  C.  Ohio has created a liberty interest in proportionality review.

>  D.  Conclusion.

**Twentieth Ground for Relief:**  The Ohio sentencing review process as implemented denied Roland Davis an adequate safeguard against the arbitrary and capricious imposition of the death penalty.  The death penalty in this case is inappropriate under the Fifth, Sixth, Eighth and Fourteenth Amendments.

**Twenty-First Ground for Relief:**  Davis was denied due process and equal protection because Ohio's post-conviction procedures did not provide him with an adequate corrective process to fully and fairly vindicate his federal constitutional claims in the state courts under principles of comity and federalism.

**Twenty-Second Ground for Relief:**  Davis was denied due process because the Ohio courts improperly denied his motion for leave to file a new trial motion, thus denying him any opportunity to demonstrate his actual innocence based on newly discovered evidence.

**Twenty-Third Ground for Relief:**  Ohio's death penalty law is unconstitutional. Ohio Rev. Code Ann. §§ 2903.01, 2929.02, 2929.021, 2929.022, 2929.023, 2929.03, 2929.04, 2929.05, and 2929.06 are unconstitutional on their face and as applied to Roland Davis under the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution.  Further, Ohio's death penalty statute violates the United States' obligations under international law.

>  A.  Davis' death sentence represents arbitrary and unequal punishment.

B.  Ohio's system employs unreliable sentencing procedures.

C.  The Ohio scheme impermissibly burdened Davis' right to a jury.

D.  Ohio Rev. Code §§ 2929.03(D)(1) and 2929.04 are unconstitutionally vague.

E.  Ohio's scheme impermissibly lacks individualized sentencing.

F.  The Ohio system unconstitutionally creates a mandatory death penalty and impermissibly fails to require a thorough appropriateness analysis.

G.  Ohio's statutory death penalty scheme violates international law.

H.  Conclusion.

## LETHAL-INJECTION GROUNDS FOR RELIEF

### FACTUAL INTRODUCTION TO LETHAL-INJECTION CLAIMS

I.  History of methods of execution in Ohio.

II.  Lethal injection in Ohio.

A.  There is no sound medical or clinical basis for selecting drugs for use in lethal-injection executions.

B.  The relevant professional societies ethically prohibit their members' participation in executions.

C.  The three-drug method of lethal injection from 2004 to 2009.

D.  Introduction of the one-drug method of execution.

1.  November 30, 2009 execution protocol.

2.  March 9, 2011 execution protocol:  change to pentobarbital.

E.  Introduction of compounded drugs and intravenously administered midazolam and hydromorphone.

1.  The 2013 execution protocol.

2.  Botched execution of Dennis McGuire:  the first and only

38

execution using the intravenous combination of 10 mg of midazolam and 40 mg of hydromorphone.

F. 2014 execution protocol.

G. January 9, 2015 execution protocol.

H. Problems with the use of compounded drugs in executions.

    1. Compounded drugs are not as safe or effective as FDA-approved drugs.

    2. Difficulties in obtaining compounded execution drugs.

I. DRC has no remaining drug options.

J. Roland Davis's particular health characteristics.

**Twenty-Fourth Ground for Relief:** Roland Davis's execution by lethal injection under Ohio law will violate the Supremacy Clause.

I. DRC's method of obtaining execution drugs, its possession of those drugs, and its administration of those drugs contravenes the CSA.

    A. The Ohio lethal-injection statute and DRC's Execution Protocol, as written and as implemented, permit DRC to obtain controlled substances used in executions without a valid prescription, in contravention of the CSA and DEA regulations.

    B. The Ohio lethal-injection state and DRC's Execution Protocol, as written and as implemented, authorize DRC, Central Pharmacy, and Southern Ohio Correctional Facility to provide controlled substances to Drug Administrators in contravention of the CSA and DEA regulations.

II. DRC's method of obtaining execution drugs, its possession and its administration of those drugs, contravene the FDCA because those drugs used in an execution constitute an unapproved Investigational New Drug.

III. DRC's method of obtaining compounded controlled substances for use as execution drugs, its possession, and administrations of those drugs violate federal law.

    A. DRC's method of obtaining compounded execution drugs, its possession, and its administrations of those drugs, violate federal law

because compounding drugs for use in an execution violates 21 U.S.C. § 353a and/or § 353b.

B. DRC's method of obtaining compounded execution drugs, its possession, and its administrations of compounded controlled substances violate various other provisions of the federal drug laws.

**Twenty-Fifth Ground for Relief:** Roland Davis's execution by lethal injection under Ohio law will violate the Eighth Amendment because any drug DRC can procure for use in lethal injections has a substantial, objectively intolerable risk of causing unnecessary, severe pain, suffering, degradation, humiliation, and/or disgrace.

I. Lethal injection of pentobarbital or thiopental sodium is cruel and unusual punishment.

II. Conclusion.

**Twenty-Sixth Ground for Relief:** Roland Davis's execution by lethal injection under Ohio law will violate the Eighth Amendment because it causes a lingering death.

**Twenty-Seventh Ground for Relief:** Roland Davis's execution by lethal injection under Ohio law will violate the Eighth Amendment because lack of legally available, effective drugs to conduct lethal-injection executions will result in the arbitrary and capricious imposition of the death penalty.

**Twenty-Eighth Ground for Relief:** Roland Davis's execution by lethal injection under Ohio law will be a human experiment on a nonconsenting prisoner in violation of the Fourteenth Amendment.

**Twenty-Ninth Ground for Relief:** Roland Davis's execution by lethal injection under Ohio law will violate the Eighth Amendment because the lack of legally obtainable, effective drugs to conduct lethal-injection executions will cause psychological torture, pain and suffering.

**Thirtieth Ground for Relief:** Roland Davis's execution by lethal injection under Ohio law will violate the Eighth Amendment because of the substantial, objectively intolerable risk of serious harm due to DRC's maladministration of Ohio's execution protocol.

**Thirty-First Ground for Relief:** Roland Davis's execution by lethal injection under Ohio law will violate the Equal Protection Clause of the Fourteenth Amendment.

**Thirty-Second Ground for Relief**: Roland Davis's execution by lethal injection under Ohio law will violate the Due Process Clause of the Fourteenth Amendment.

**Thirty-Third Ground for Relief**: Roland Davis's execution by lethal injection under Ohio law will violate the Eighth Amendment because of his unique, individual physical and/or mental characteristics.

**CATEGORICAL EXCLUSION GROUND FOR RELIEF**

Roland Davis is intellectually disabled. His sentence of death violates the Eighth and Fourteenth Amendments.

(ECF No. 85, at Page ID # 9865-10299.)

IV.  Procedural Default

This matter is before the Court upon Respondent's motion to dismiss claims on the basis

of exhaustion, procedural default, or statute of limitations. (ECF Nos. 65 and 88.)  It does not

appear that every claim that Petitioner has raised in his habeas corpus petition was presented to

the Ohio courts either during the direct appeal or on collateral review. As a general matter, a

defendant who is convicted in Ohio of a criminal offense has available to him more than one

method of challenging that conviction.  Claims appearing on the face of the trial record must be

raised on direct appeal, or they will be waived under Ohio's doctrine of *res judicata*. *State v.*

*Perry*, 10 Ohio St. 2d 175 (1967).  Issues that must be raised in a postconviction action pursuant

to R.C. §2953.21 include claims that do not appear on the face of the record and claims of

ineffective assistance of trial counsel where the defendant was represented on direct appeal by

the same attorney who represented him at trial. *State v. Cole*, 2 Ohio St. 3d 112 (1982).  In 1992,

a third procedure of review emerged.  Claims of ineffective assistance of appellate counsel must

be presented to the appellate court (in this case the Ohio Supreme Court) in a motion for delayed

reconsideration or application for reopening pursuant to *State v. Murnahan*, 63 Ohio St. 3d 60 (1992) and Ohio R. App. P. 26(B). In addition to raising each claim in the appropriate forum, a habeas litigant, in order to preserve his constitutional claims for habeas review, must present those claims to the state's highest court. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999).

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. §2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present his claims, then his petition is subject to dismissal, or stay and abeyance, for failure to exhaust state remedies. *Id.*; *Rhines v. Weber*, 544 U.S. 269 (2005); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). But if, because of a procedural default, the petitioner can no longer present his claims to the state courts, then he has also waived those claims for purposes of federal habeas corpus review unless he can demonstrate both cause for the procedural default, as well as actual prejudice from the alleged constitutional error. *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a district court must undertake a four-part analysis when the state argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must decide that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, it must be decided

42

whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id*. Finally, if the Court has determined that a petitioner did not comply with a state procedural rule, and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. *Id*. This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).

In addition to the foregoing, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established time limits for commencing attacks on state convictions through habeas corpus proceedings under 28 U.S.C. § 2254. Under the AEDPA, a state prisoner must commence the collateral attack within one year from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Respondent alleges that many of Petitioner's grounds for relief, in their entirety or in part, are subject to dismissal as unexhausted, procedurally defaulted, or time-barred. (ECF Nos. 65 and 88.) Specifically, Respondent asks the Court to dismiss the following grounds as

43

procedurally defaulted and/or unexhausted: 2 in part; 4 in part; 5; 6 in part; 7; 9 in part; 11; 12; 13; 15; 16 in part; 17 in part; 18 in part; 21; 31; and 34. Additionally, Respondent moves for the dismissal of the following grounds as barred by the statute of limitations: 18 in part; 31; and 34.

The Court will address each of Respondent's allegations, as well as Petitioner's response (ECF No. 72) and Respondent's reply (ECF No. 86).

A. Ground Two: Change of Venue.

Respondent alleges that the change of venue portions of Petitioner's second ground for relief are barred by procedural default. (ECF No. 65, at Page ID # 9355.) According to Respondent, the first time that Petitioner raised a claim asserting his entitlement to a change of venue was on direct appeal to the Ohio Supreme Court. The Ohio Supreme Court, Respondent continues, denied Petitioner's claim on the ground that he had failed to request a change of venue at the time of trial. Respondent further notes that when Petitioner additionally raised this claim in postconviction, the state courts dismissed it as barred by *res judicata*, due to the fact that the claim had been raised and addressed on direct appeal.

Petitioner raises several arguments in response. (ECF No. 72, at Page ID # 9453-9456.) First, with respect to Respondent's reliance on the fact that the Ohio Supreme Court denied Petitioner's claim on the basis of trial counsel's failure to request a change of venue at trial, Petitioner argues that "the Ohio Supreme Court's ruling ignored applicable state law." (*Id.* at Page ID # 9453.) Petitioner reasons that because Ohio Crim. R. P. 18(B) and Ohio Rev. Code § 2901.12(K) contemplate a trial court on its own ordering a change of venue where warranted, Petitioner's failure to request a change of venue at trial did not constitute a violation of state procedural law. (ECF No. 72, at Page ID # 9454.)

44

Second, Petitioner also challenges Respondent's reliance on the fact that the state courts in postconviction dismissed his claim on the basis of *res judicata*. (*Id*. at Page ID # 9454-9455.) Petitioner explains that when he raised his claim in postconviction, he supported the claim with material, competent evidence outside the trial record, to wit: newspaper articles demonstrating the publicity that surrounded the trial. Petitioner thus argues that his reliance on, and presentation of, evidence outside the record was sufficient to defeat any application of *res judicata* and that he accordingly violated no state procedural rule when he raised the claim in postconviction.

Petitioner's third argument in response to Respondent's procedural default allegation is that Petitioner can demonstrate cause and prejudice to excuse any default of the change-of-venue allegations set forth in his second ground for relief. (*Id*. at Page ID # 9455-9456.) "Here," Petitioner asserts, "trial counsel's ineffectiveness excuses any procedural default." (*Id*. at Page ID # 9455.) Petitioner argues that counsel performed deficiently not only for failing to request a change of venue, to the extent a change-of-venue motion should have been filed, but also for failing to fully develop the record as to the extent of pretrial publicity that occurred and to fully examine prospective jurors as to their exposure to that pretrial publicity. Petitioner further argues that he was prejudiced by trial counsel's deficient performance, in view of the fact that the murder in question received substantial and vivid news coverage, that the community was relatively small and had had few aggravated murder trials, and that many jurors were exposed to the biases of other jurors because jurors were *voir dired* in groups of six.

In reply, Respondent addresses only the ramifications of Petitioner's raising the claim on direct appeal, not the implications of Petitioner's also raising the claim in postconviction. (ECF

No. 86, at Page ID # 10362-10363.)  With respect to Petitioner's argument that the Ohio

Supreme Court misapplied state law in finding that Petitioner had waived his change-of-venue

challenge by failing at trial to request a venue change or otherwise object, Respondent first notes

that Petitioner concedes that he failed request a venue change or otherwise raise an objection.

Respondent then argues that "failure to object" is an adequate and independent state court ground

which bars this Court from reaching the claim."  (*Id*. at Page ID # 10362.)  With respect to

Petitioner's suggestion that the instant default may be excused by trial counsel's ineffectiveness

in failing to object, Respondent asserts that Petitioner cannot overcome the state court findings

that his trial attorneys were not ineffective.  (*Id*.)

The Court turns first to Respondent's assertion that Petitioner defaulted any change-of-

venue arguments set forth in his second ground for relief when he failed at trial to request a

change of venue or to otherwise raise an objection.  The first part of the *Maupin* test requires the

Court to determine whether a state procedural rule applied to Petitioner's claim and, if so,

whether Petitioner violated that rule.  The Court answers both questions in the affirmative.  The

Ohio Supreme Court has held that the failure to request a change of venue at the time of trial

constitutes a violation of Ohio's contemporaneous objection rule. *State v. Trimble*, 122 Ohio St.

3d 297, 306 (2009); *State v. Nields*, 93 Ohio St. 3d 6, 20 (2001).  Petitioner violated the

contemporaneous objection rule when he failed to request a change of venue at the time of his

trial.

The Court rejects Petitioner's argument that because Ohio law imposes on trial courts a

duty to change venue where warranted, defendants violate no state rule by failing to request a

venue change or otherwise raise an objection.  There exist all kinds of duties a trial court can,

46

should, or must perform in presiding over a criminal trial, some of which are spelled out explicitly and many more of which are implicit. Petitioner provides no authority for the proposition that this reality somehow relieves a defense attorney of the duty to make specific requests or lodge specific objections. Were the Court to find otherwise, an accused's failure to object would never result in the forfeiture of claims. That result not only flies in the face of long-established law, *i.e.*, Ohio's contemporaneous objection rule, it also undermines the well-established interests underlying that law, *i.e.*, to facilitate the correction of trial errors at the time or even before those errors occur so the accused may have a fair trial.

Having found that Petitioner violated Ohio's contemporaneous objection rule when he failed to request a change of venue at the time of his trial, the Court turns to the remaining parts of the *Maupin* test. Under the second part of the test, violation of a state procedural rule does not result in procedural default unless the state courts actually enforced the procedural rule at issue. *Maupin*, 785 F.2d at 138. In the instant case, the Ohio Supreme Court actually enforced the contemporaneous objection rule against Petitioner's claim. (ECF No. 51-5, at Page ID # 2260.)

Under the third part of the *Maupin* test, the Court must determine that the state procedural rule at issue is an adequate and independent state ground upon which to deny habeas corpus relief. The Sixth Circuit in *Maupin* explained that "[t]his question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims." *Maupin*, 785 F.2d at 138. Courts must also determine that the rule is consistently enforced and independent of federal law. The Sixth Circuit has held that Ohio's contemporaneous objection rule satisfies the adequate-and-independent requirement. *See, e.g., Scott v. Mitchell,* 209 F.3d 854, 866-71 (6th Cir. 2000) (holding that Ohio's

47

contemporaneous objection rule is adequate and independent).

Before addressing the fourth part of the *Maupin* test, *i.e.*, whether the default of

Petitioner's claim may be excused by the cause-and-prejudice exception, *Maupin*, 785 F.2d at

138-39, the Court turns to Petitioner's argument that notwithstanding the fact that he included his

change-of-venue claim on direct appeal, the claim was properly raised in his original

postconviction action because the claim relied on and was supported by evidence that the trial

record did not contain, to wit: newspaper articles demonstrating the level of news coverage that

surrounded the facts of the case and Petitioner's trial. In determining whether *res judicata*

applies to a constitutional claim, the inquiry is properly focused on whether the claim genuinely

relies on and is supported by evidence that is outside the trial record and that was not available at

trial. *State v. Cole*, 2 Ohio St. 3d 112. Thus, non-record evidence submitted during

postconviction proceedings to support a constitutional claim, in order to defeat the application of

Ohio's *res judicata* rule, must genuinely support the claim in a manner that no record evidence

could. *See State v. Powell*, 90 Ohio App. 3d 260, 268 (Ohio App. Dist. 1 1993) (holding that

additional evidence offered in postconviction to support claim of trial counsel ineffectiveness

during mitigation was merely cumulative to evidence presented at trial).

In his postconviction action, Petitioner argued in his tenth ground for relief that his

constitutional rights were violated because he was tried in a small community that was saturated

with news coverage about the facts of the crime and the case against Petitioner, which violations

were exasperated by the fact that prospective jurors were not *voir dired* individually. (ECF No.

51-5, at Page ID # 2614-2615.) Petitioner supported his claim with copies of news articles

describing the crime, the police investigation of Petitioner, and the trial. (*Id*. at Page ID # 2646-

2674.) Petitioner accordingly argues that he did not violate Ohio's *res judicata* rule when he raised this claim in postconviction. The Court disagrees.

Review of the trial record and transcript concerning jury selection confirms the observations of the Ohio Supreme Court on direct appeal and the state courts in postconviction that there was sufficient evidence in the trial record demonstrating the fact that the crime, investigation, and trial had been the subject of a fair amount of news coverage. (ECF No. 51-5, at Page ID # 2260; ECF No. 51-5, at Page ID # 3187-3188; ECF No. 51-8, at Page ID # 3458-3459.) This belies any determination that the non-record evidence at issue supported Petitioner's claim in a manner in which no record evidence could. Moreover, it is beyond dispute that news articles from the time before and during Petitioner's trial were available at the time of trial. The Court accordingly concludes that Petitioner committed two violations of Ohio's *res judicata* rule when he raised this claim in postconviction—first, because he had already raised the claim on direct appeal and second, because the claim did not genuinely rely on evidence outside the trial record.

With respect to the second part of the *Maupin* test, the Court is satisfied that the state courts in postconviction actually enforced the *res judicata* rule against Petitioner's claim as to the fact that the claim had already been litigated on direct appeal. As a result of that determination, the state courts in postconviction did not have the opportunity to enforce the *res judicata* bar as to Petitioner's failure to support his claim with evidence that was outside the trial record and not available at the time of trial. As for the third part of the *Maupin* test, the Sixth Circuit has consistently held that Ohio's *res judicata* rule is an adequate and independent state ground upon which to deny habeas corpus review. *See, e.g., Coleman v. Mitchell*, 268 F.3d 417,

49

427-29 (6th Cir. 2001).

Returning now to the fourth part of the *Maupin* test, Petitioner asserts as cause to excuse the default of the change-of-venue components of his second ground for relief ineffective assistance of trial counsel. Petitioner argues that his attorneys performed unreasonably and to his prejudice by failing to develop the record with evidence about the extent of news coverage, to sufficiently *voir dire* prospective jurors about the issue of pretrial publicity, and to request a change of venue. Before a claim of ineffective assistance of counsel can be considered as cause to excuse procedural default, the claim must first be fairly presented to the state courts. *See Edwards v. Carpenter*, 529 U.S. 446, 452-53 (2000)(holding that an ineffective assistance of counsel claim offered as cause for the default of a substantive federal claim must first be properly presented to the state courts). Petitioner presented this claim of trial counsel ineffectiveness on direct appeal to the Ohio Supreme Court and in his postconviction action.

Petitioner's argument falls short. Having reviewed the record and transcript in view of the Ohio Supreme Court's decision on direct appeal and the decisions of the state trial and appellate courts in postconviction, this Court cannot disagree with those decisions much less find that they are unreasonable within the meaning of 2254(d). The record demonstrates that prospective jurors filled out questionnaires and were then subjected to several layers of *voir dire* during the selection process. (ECF No. 52-1, at Page ID # 6036-6121; 6147-6197; 6205-6500; ECF No. 52-2, at Page ID # 6535-7004; 7037-7034.) It is evident from the record that both the trial court and the attorneys were aware of and inquisitive about the extent to which any prospective jurors had been exposed to or influenced by news coverage or any other information about the case. In view of the comprehensive nature of the *voir dire* concerning the impact of

50

pretrial publicity, this Court cannot disagree with, much less find unreasonable, the determinations by the state courts that Petitioner's trial attorneys were not ineffective for failing to more fully develop the record or more fully question prospective jurors on the issue. (ECF No. 51-5, at Page ID # 2260; 3187-3188; ECF No. 51-8, at Page ID # 3458-3459; 3467-3468.) In view of the foregoing and the substantial presumption of competence that attorneys enjoy, this Court also agrees with the Ohio Supreme Court's conclusion that defense counsel reasonably could have elected as a matter of trial strategy, rather than oversight, not to request a change of venue. This Court accordingly cannot find that trial counsel rendered ineffective assistance sufficient to excuse the default of the change-of-venue components of Petitioner's second ground for relief.

Beyond the four-part *Maupin* test, this Court may reach the merits of an otherwise defaulted claim to prevent a fundamental miscarriage of justice if the Court finds a compelling demonstration that Petitioner is actually innocent. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Williams v. Bagley*, 380 F.3d 932, 966 (6th Cir. 2004). Although Petitioner makes mention in other parts of his response of actual innocence, Petitioner raised no such arguments in connection with the alleged default of this claim.

For the foregoing reasons, the Court **GRANTS** Respondent's motion to dismiss as procedurally defaulted the change-of-venue components of Petitioner's second ground for relief (Substitute Second Amended Petition, ECF No. 85, at ¶¶ 89-90).

B. Ground Four: Jury Selection.

Respondent next argues that several sub-parts of ground four are barred by procedural default. (ECF No. 65, at Page ID # 9356-9357.)

1. Sub-Part (A)(1).

Respondent asserts that sub-part (A)(1), where Petitioner argues that he was denied the thorough *voir dire* necessary to determine which prospective jurors were unduly influenced by pretrial publicity, is procedurally defaulted due to Petitioner's failure to request a change of venue at trial. In response, Petitioner raises the same arguments in opposition that he raised when Respondent argued that the change-of-venue components of his second ground for relief were defaulted. (ECF No. 72, at Page ID # 9457.)

Sub-part (A) of Petitioner's fourth ground for relief states: Davis was denied the thorough and adequate *voir dire* necessary to develop the factual bases for challenges for cause and to exercise peremptory challenges of jurors who were exposed to extensive pretrial publicity or who were biased on questions of guilt, innocence, or sentence. (ECF No. 85, at Page ID # 9921.) Paragraphs 101-102, which constitute sub-section (1) of sub-part (A), state essentially that because of widespread publicity and saturation of the small community with information about the crime and investigation, Petitioner was entitled to a change of venue. (*Id.* at Page ID # 9921-9923.) Those are the same allegations that Petitioner set forth in paragraphs 89-90 of his second ground for relief and that this Court found to be defaulted. For the same reasons the Court set forth above in granting Respondent's motion to dismiss paragraphs 89 through 90 of Petitioner's second ground for relief, the Court grants Respondent's motion to dismiss sub-part (A)(1) of Petitioner's fourth ground for relief.

2. Sub-Part (D).

Sub-part (D), where Petitioner alleges that the trial court did not permit defense counsel to question prospective jurors about whether they could consider mitigating factors and imposing

a life sentence on someone convicted of murdering an elderly woman in her home, according to Respondent, is procedurally defaulted because Petitioner never explicitly argued in the state courts that it was the trial court that had prohibited such questioning. "While the headings of the claims in his habeas petition and his direct appeal are identical," Respondent explains, "the argument in his direct appeal brief was that '[c]ounsel and the court *failed to examine* prospective jurors' whereas the claim in his habeas petition is '[t]he *court did not permit* counsel to question prospective jurors." (ECF No. 65, at Page ID # 9356 (emphasis in original).) Because Petitioner did not present this claim to the state courts under the same legal theory he raises here, and now no longer can, Respondent argues, Petitioner defaulted sub-part (D) of his fourth ground for relief.

After first clarifying that only paragraph 132 is at issue, Petitioner challenges Respondent's argument as "a distinction without a difference." (ECF No. 72, at Page ID # 9458.) Insisting that the argument he raises here is "substantially equivalent" to the argument he raised in state court, Petitioner appears to reason that the essence of both claims is not necessarily *why* jurors were not asked about views and biases about imposing the death penalty, but *that* they were not asked those questions. (*Id*. at Page ID # 9458-9459.)

In reply, Respondent asserts that the claims are "vastly different." (ECF No. 86, at Page ID # 10364.) Respondent reasons that in state court, Petitioner argued an error of omission on the part of the trial court, while in habeas, Petitioner argues an error of prohibition. "Because these are different legal theories based upon different actions," Respondent concludes, "Davis has defaulted this claim." (*Id*.)

As noted earlier, a state criminal defendant who seeks to present federal constitutional

53

claims in habeas is required to first fairly present those claims to the state courts for consideration. 28 U.S.C. § 2254(b)(1). A petitioner "fairly presents" the "substance of his federal habeas corpus claim "when the state courts are afforded sufficient notice and a fair opportunity to apply controlling legal principles to the facts underlying the constitutional claim. *Anderson v. Harless*, 459 U.S. 4, 6 (1982). Thus, a petitioner must present to the state courts both the legal theory and factual basis of any claim that he or she seeks to present in habeas corpus. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996); *Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987). If a petitioner did present the substance of his or her claim to the state courts, "an elaboration of the facts or legal theories will not result in a new claim." *Nichols v. Bell*, 440 F. Supp. 2d 730, 755 (E.D. Tenn. 2006) (citing *Jones v. Washington*, 15 F.3d 671, 674-75 (7th Cir. 1994)). If, on the other hand, additional facts or arguments "fundamentally alter the legal claim already considered by the state courts," then the petitioner cannot be said to have fairly presented that component of the claim. *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986); *Richey v. Bradshaw*, 498 F.3d 344, 352 (6th Cir. 2007).

Comparison of the allegations as phrased and argued on direct appeal to the Ohio Supreme Court to the allegations that Petitioner presents to this Court in sub-part (D) of his fourth ground for relief does confirm Respondent's assertion that the two presentations are not one and the same. That said, because the Ohio State Supreme Court actually addressed the essence of the claim Petitioner raises here, any failure by Petitioner to fairly present the claim does not preclude this Court from addressing Petitioner's claim on the merits.

Petitioner argues in sub-part (D) of his fourth ground for relief that defense counsel and the trial court failed to examine prospective jurors about their ability and/or willingness to

consider mitigation evidence and the possibility of recommending a life sentence under the particular facts of the case. (ECF No. 85, at Page ID # 9932-9935.) Although Petitioner includes here language that shifts the focus from a passive omission on the part of the trial court to an active prohibition by the trial court (*Id*. at ¶ 132), Petitioner is still essentially challenging the fact that questions about prospective jurors' ability to consider a sentence less than death for this crime were not asked. And the Ohio Supreme Court essentially addressed that challenge.

In rejecting Petitioner's claim challenging the fact that prospective jurors were not sufficiently examined about their ability to consider mitigating circumstances under the facts of this case, the Ohio Supreme Court twice addressed any suggestion that the trial court had a role in alleged dearth of such questions. Initially, the Ohio Supreme Court concluded that the trial court had given defense counsel considerable leeway to examine prospective jurors about their ability to consider mitigation evidence in this case. (ECF No. 51-5, at Page ID # 2261.) Later, the Ohio Supreme Court also rejected any suggestion that the trial court had a duty to *sua sponte* examine jurors about their ability to consider mitigating circumstances under the facts of the case. (*Id*. at Page ID # 2262.)

The United States Supreme Court has stated that "the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts[,]" *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Jimenez v. Walker*, 458 F.3d 130, 148-49 (2nd Cir. 2006) ("The exhaustion requirement is principally designed to protect the state courts' role in the enforcement of federal law.") In view of the fact that the Ohio Supreme Court addressed the federal question presented by sub-part (D) of Petitioner's fourth ground for relief, this Court concludes that the exhaustion

55

(and fair presentment) requirement have been satisfied. The allegations that Petitioner raised in state court were not so vastly different from the allegations he raises here in sub-part (D) of his fourth ground for relief that the Ohio Supreme Court was deprived of the opportunity to meaningfully address the claim that Petitioner intimated on direct appeal and raises here, which is what the exhaustion doctrine was intended to facilitate.

The Court **DENIES** Respondent's motion to dismiss sub-part (D) of Petitioner's fourth ground for relief.

3. Sub-Part (E).

Respondent next argues that sub-part (E), where Petitioner challenges allegedly misleading comments made by the prosecutor during *voir dire*, is procedurally defaulted because Petitioner failed to object at trial to the comments.

Petitioner disagrees, first insisting that the Ohio Supreme Court's review of the claim for plain error provided that court a full and fair opportunity to review the claim that Petitioner now asks this Court to review. "Because the Ohio Supreme Court addressed the federal constitutional question," Petitioner asserts, "this Court may also address the federal constitutional question and federal review is not barred on the ground of procedural default." (ECF No. 72, at Page ID # 9459.) For essentially the same reasons, Petitioner further asserts that although Ohio's contemporaneous objection rule *can* be an adequate and independent ground for denying habeas corpus review, that is not *always* the case where, as here, the Ohio Supreme Court appears to have reached the federal question despite the absence of an objection. (ECF No. 72, at Page ID # 9459-9461.) Finally, Petitioner offers ineffective assistance of trial counsel as cause to excuse any default of this claim.

56

In reply, Respondent argues that Petitioner is mistaken in asserting both that the Ohio Supreme Court's plain error review negated any default and that Ohio's contemporaneous objection rule is not adequate and independent. (ECF No. 86, at Page ID 10365-10366.) In other words, "[t]he Ohio Supreme Court's plain error review was an enforcement of the adequate and independent state court ground barring review of his claim." (*Id*. at Page ID # 10367.) Respondent also argues that trial counsel were not ineffective for failing to object to the comments, sufficient to excuse the default, "because the comments made were correct summations of the law concerning mitigation." (*Id*. at Page ID # 10366.)

Turning to *Maupin*, Ohio's contemporaneous objection rule applies to *voir dire*. Failure of a party to object to allegedly improper conduct during *voir dire* results in forfeiture of the right to challenge that conduct going forward. *State v. Bryan*, 101 Ohio St. 3d 272, 292 (2004); *State v. Mason*, 82 Ohio St. 3d 144, 164 (1998); *State v. Lundgren*, 73 Ohio St. 3d 474, 481-82 (1995). The record demonstrates, and Petitioner apparently concedes, that he did not object at trial to the prosecutorial remarks during *voir dire* that Petitioner seeks to challenge in sub-part (E) of his fourth ground for relief. The first part of the *Maupin* test has been met.

The second part of *Maupin* has been satisfied as well. The Ohio Supreme Court, when it addressed Petitioner's challenge to certain questions concerning mitigation that the prosecutor had posed to prospective jurors during *voir dire*, stated unambiguously that because defense counsel had not objected to the comments during trial, Petitioner had waived all but plain error. (ECF No. 51-5, at Page ID # 2262.) The Ohio Supreme Court proceeded to evaluate the challenged comments in determining both that they did not constitute plain error and that defense counsel were not ineffective for failing to object to them. (ECF No. 51-5, at Page ID # 2262-

57

2263.)

The Court has already noted that Ohio's contemporaneous objection rule is an adequate and independent state ground upon which to preclude federal review. But Petitioner disputes that in this instance. In *Slagle v. Bagley*, 457 F.3d 501, 514-15 (6th Cir. 2006), Petitioner notes, "the Sixth Circuit refused to apply a procedural bar to prosecutorial misconduct claims, despite the petitioner failing to make a contemporaneous objection at trial to the offending statements, because the respondent did not specify which statements were allegedly defaulted and because it was 'unclear the extent to which the Supreme Court of Ohio reached the merits of the prosecutorial misconduct claim instead of relying on a procedural bar.' " (ECF No. 72, at Page ID # 9460 (quoting *Slagle*, 457 F.3d at 514-15.) Petitioner insists that here, as in *Slagle*, "the Ohio Supreme Court did not actually rely upon the contemporaneous objection rule to preclude a merits review of the improper comments." (ECF No. 72, at Page ID # 9461.) This Court disagrees.

First, it is beyond dispute that when a state appellate court conducts plain error review, it is enforcing, not ignoring, a state procedural bar. *Williams v. Bagley*, 380 F.3d 932, 968-69 (6th Cir. 2004) (and cases cited therein). Petitioner's argument appears to be not that the Ohio Supreme Court's plain error review forgave his default, but that the Ohio Supreme Court never engaged in plain error review but instead reviewed Petitioner's claim on the merits. (ECF No. 72, at Page ID # 9461.) That is simply not the case.

To be clear, the Ohio Supreme Court began its analysis of Petitioner's claim by stating unambiguously that Petitioner had waived all but plain error due to his failure to object at trial. (ECF No. 51-5, at Page ID # 2262.) When the Ohio Supreme Court proceeded to evaluate the

58

challenged comments and determine that they were correct summations of state law, the court did so expressly for the purpose of holding that the challenged comments did not constitute plain error and that counsel were not ineffective for failing to object to them. (ECF No. 5105, at Page ID # 2262-2263.) *Slagle* is distinguishable. In the instant case, there was no ambiguity as to which challenged comments concerning mitigation the Ohio Supreme Court found to have been waived—it was all of them. Similarly, the Ohio Supreme Court left no room to question whether it was reviewing Petitioner's claim for anything but plain error and to determine whether trial counsel had been ineffective. And the Ohio Supreme Court in the instant case, unlike in *Slagle*, did not apply federal law in determining that the challenged questions did not constitute plain error.

Petitioner argues that "[h]ad the Ohio Supreme Court merely stated that Davis waived his claim for review upon appeal without further analysis, then perhaps the Warden's procedural default assertion would be correct." (ECF No. 72, at Page ID # 9461.) This Court strongly disagrees with Petitioner's suggestion. A fair and reliable appellate process is essential to a fair and reliable system of jurisprudence and demands that reviewing courts be encouraged, not discouraged, from providing reasoning for their decisions. A reviewing court that endeavors to explain why a claimed error does not constitute plain error should be lauded, not punished.

The Court rejects Petitioner's argument that Ohio's contemporaneous objection rule did not constitute an adequate and independent state ground upon which to preclude habeas review of sub-part (E) of ground for.

That leaves the fourth part of the *Maupin* test to evaluate, and Petitioner does offer ineffective assistance of trial counsel for the failure to object to the prosecutor's statements to

59

jurors about what constituted mitigation and what the jurors' roles would be in considering mitigating factors. The state courts rejected that claim, precluding this Court from finding otherwise unless it can find that the state courts' decision contravened clearly established federal law, involved an unreasonable application of federal law, or involved an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). This Court can find none of those.

It is well settled that "[a]ttorney error short of ineffective assistance of counsel does not constitute cause for a procedural default…." *Murray v. Carrier*, 477 U.S. 478, 492 (1986).

4. Sub-Part (G). As the Supreme Court has explained, "[a]n ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest 'intrusive post-trial' inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Strickland*, 466 U.S. at 689-90). The Supreme Court proceeded to note that "[e]ven under *de novo* review, the standard for judging counsel's representation is a most deferential one[]" and that "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 562 U.S. at 105. Thus, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from the best practices or most common custom." *Id.*

Viewed against this backdrop, Petitioner fails to establish ineffective assistance sufficient to excuse the default of sub-part (E) of his fourth ground for relief. In addition to reviewing the specific instances highlighted by Petitioner, this Court also reviewed the *voir dire* conducted

60

over the course of two full days, with a particular focus on any remarks or questions by the prosecution to prospective jurors relating to the definition or concept of mitigation. The Court is not persuaded that any of the instances highlighted by Petitioner were so inaccurate or prejudicial that the failure to object to them is a mistake only an incompetent attorney would make. For example, Petitioner faults the prosecution for telling prospective jurors that they could decide for themselves whether a fact was mitigating. Not only is that not an inaccurate statement of law— jurors are to decide for themselves how much weight to give any particular mitigating factor or evidence in support of that factor—it is in fact consistent with the important principle that jurors need not be unanimous as to the existence of a mitigating factor, but rather, must decide for herself or himself whether a mitigating factor exists. Nor is the Court persuaded that the prosecutor's remarks about unanimity requirements in the sentencing decision or hypothetical questions about similar offenses being committed by individuals with different backgrounds were so misleading or prejudicial that only an incompetent attorney would fail to recognize and them as error. In sum, the Court is not persuaded that ineffective assistance of trial counsel constitutes cause to excuse the default of sub-part (E) of Petitioner's fourth ground for relief.

The Court **GRANTS** Respondent's motion to dismiss sub-part (E) of Petitioner's fourth ground for relief.

3. Sub-Part (E).

Finally, Respondent argues that Petitioner defaulted sub-part (G), where Petitioner challenges the fact that jurors were asked to commit to sign death verdicts without also being "life-qualified." As with sub-part (E) above, Respondent charges that Petitioner failed to object at trial to the challenged questions. In opposing Respondent's position, Petitioner likewise

reiterates the arguments he raised in connection with sub-part (E)—namely that the Ohio

Supreme Court reached the federal question, rendering the contemporaneous objection rule in

this case not adequate and independent, and further that trial counsel's failure to object excuses

any default. (ECF No. 72, at Page ID # 9462-9463.)

      For the reasons set forth above in connection with sub-part (E) of Petitioner's fourth

ground for relief, the Court concludes that the first three parts of the *Maupin* test have been

satisfied as to Respondent's argument that Petitioner defaulted sub-part (G) when he failed to

object during *voir dire* to the absence of "life-qualifying" questions to correspond with "death-

qualifying" questions. All that remains for the Court to determine here is the fourth part of the

*Maupin* test—*i.e.*, whether defense counsel were ineffective for failing to object, sufficient to

excuse the default and permit federal review of sub-part (G). The Court cannot so find.

      The essence of Petitioner's argument in sub-part (G) is that although prospective jurors

were repeatedly asked whether they could sign their names to a sentencing verdict

recommending death, they were not asked whether they could sign one of the life verdicts or if

they understood that if any one juror concluded that the aggravating circumstances did not

outweigh the mitigating factors beyond a reasonable doubt, he or she would be obligated to sign

a life verdict. (ECF No. 85, at Page ID # 9943-9945.) The Court is not persuaded that defense

counsel performed deficiently and to Petitioner's prejudice in failing to object to those un-asked

questions. The Court concludes as much because review of the *voir dire* reveals that those ideas

were sufficiently conveyed to prospective jurors throughout death-penalty specific portion of

jury selection. There are examples throughout the *voir dire* where questioning conveyed to

prospective jurors that a singular juror could consider a factor mitigating sufficient to take the

sentence a "notch" down from death (ECF No. 52-2, at Page ID # 6565-6566); that signing a life

verdict was a "duty" if a juror found that the aggravating circumstances did not outweigh the

mitigating factors (ECF No. 52-2, at Page ID # 6669-6670); and that jurors needed to answer

whether they could consider voting for a life verdict if the prosecutor did not sustain its burden to

prove that the aggravating circumstances outweighed the mitigating factors (ECF No. 52-2, at

Page ID # 6683-6684; 6742-6743; 6809). On direct appeal, the Ohio Supreme Court found no

merit to Petitioner's claim that his defense attorneys were ineffective for failing to object to

"death-qualifying" questions and for failing to ask "life-qualifying" questions. In view of this

Court's examination of the *voir dire*, the Court cannot conclude that that determination was

unreasonable. Petitioner has not established cause and prejudice sufficient to excuse the default

of sub-part (G) of his fourth ground for relief.

5. Conclusion.

For the foregoing reasons, Respondent's motion to dismiss Petitioner's fourth ground for

relief is **GRANTED** as to sub-parts (A)(1); (E); and (G); but **DENIED** as to sub-part (D).

C. Ground Five: Unqualified opinion testimony as to a witness's truthfulness.

In his fifth ground for relief, Petitioner argues that Detective Vanoy, despite not being

offered or qualified as an expert on any subject, numerous times throughout his extensive

testimony offered unsupported opinions on such matters as the meaning of evidence, why

Petitioner did and said certain things during police interviews, Petitioner's thought processes,

and when Petitioner was lying or telling the truth. (ECF No. 85, at Page ID # 9949-9960.)

Respondent argues that Petitioner's fifth ground for relief is barred in its entirety, due to

Petitioner's failure to object during Detective Vanoy's testimony. (ECF No. 65, at Page ID #

63

9358.)

According to Petitioner, Respondent fails to acknowledge that defense counsel did in fact

object to much of the impermissible testimony, "which the Supreme Court of Ohio recognized."

(ECF No. 72, at Page ID # 9463-9464 (quoting ECF No. 51-5, at Page ID # 2267).) Petitioner

proceeds to argue as follows:

> Indeed, the Supreme Court of Ohio considered seven instances identified
> by Davis as objectionable. When it considered the second part of the third
> instance and the fourth instance, the Supreme Court did not mention plain error,
> which connotes a merits review. (ECF 51-5, PageID 2267-68.) Regarding the
> sixth instance, the Supreme Court of Ohio stated that "this argument lacks merit,"
> again with no mention of plain error. (ECF 51-5, PageID 2268.) Finally,
> regarding the seventh instance, the Supreme Court again did not mention plain
> error. (ECF 51-5, PageID 2268.) The omission of any reference to plain error on
> these instances is significant because, regarding the first, second, fifth, and the
> first part of the third instance, the Supreme Court of Ohio specifically mentioned
> the plain error standard. (ECF 51-5, PageID 2267-68.)

(ECF No. 72, at Page ID # 9464.) Petitioner thus argues that his fifth ground is not barred by

default, either because Petitioner did lodge an objection at trial or because the Ohio Supreme

Court did not enforce any procedural sanction regarding the fourth instance, sixth instance,

seventh instance, or second part of the third instance. (*Id*. at Page ID # 9464-9466.) Petitioner

also argues that "because the court was given a full and fair opportunity to rule on Davis' claims

and addressed the federal constitutional question without relying upon the contemporaneous

objection rule to preclude a merits review, federal review is not barred." (*Id*. at Page ID # 9466.)

Finally, Petitioner argues that to the extent an instance was not objected to or addressed by the

Ohio Supreme Court, trial counsel ineffectiveness constitutes cause to excuse any default. (*Id*. at

Page ID # 9466-9468.)

In reply, Respondent stands by the argument that Petitioner's fifth ground for relief is

64

barred in its entirety. (ECF No. 86, at Page ID # 10368-10373.) First, Respondent notes that Petitioner conceded that four instances of Detective Vanoy's allegedly objectionable testimony were waived and were reviewed by the Ohio Supreme Court only for plain error. (*Id*. at Page ID # 10368-10369.)

Next, Respondent disputes Petitioner's suggestion that he did in fact object to some instances of Detective Vanoy's testimony. In response to Petitioner's assertion that he omitted that fact, Respondent stresses that he "omitted that 'fact' because it is actually a *fiction*; Davis' counsel *did not* lodge even a *single objection* to Det. Vanoy's testimony." (*Id*. at Page ID # 10369 (emphasis in original).) Respondent explains that when the Ohio Supreme Court stated that Petitioner had failed to object to any instances "except where noted," the resulting failure of the Ohio Supreme Court to note any such instances means that there were no such instances. "To overcome this problem," Respondent continues, "Davis asks this Court to parse the state court's review and find that the state court's failure to *specifically mention* plain error in a particular sub-claim necessitates the denial of a default finding." (*Id*. (emphasis in original).) Respondent urges the Court to reject Petitioner's position, arguing that it would contravene the Ohio Supreme Court's clear enforcement of the contemporaneous objection rule.

Finally, Respondent asserts that Petitioner's defense counsel made a strategic decision not to object during Detective Vanoy's testimony and, in fact, twice managed to elicit testimony that Petitioner subsequently assailed as improper. (*Id*. at Page ID # 10370.) Addressing the seven instances of Detective Vanoy's testimony one by one, Respondent explains why none constituted plain error or warranted an objection by defense counsel. (*Id*. at Page ID # 10370-10373.)

65

Turning to the first part of the *Maupin* test, the Court concludes that Ohio's contemporaneous objection rule applied to Petitioner's claim and that he violated it when he failed to object to the portions of Detective Vanoy's testimony that Petitioner seeks to challenge in his fifth ground for relief. To this point, the Court categorically and emphatically rejects Petitioner's assertion that "Davis' counsel did object to much of the impermissible testimony, which the Supreme Court of Ohio recognized." (ECF No. 72, at Page ID # 9463-9464.) First, to be clear, a review of Detective Vanoy's testimony confirms Respondent's position that "Davis' counsel *did not* lodge even a *single objection* to Det. Vanoy's testimony." (ECF No. 86, at Page ID # 10369.)

In reply to Petitioner's incomprehensible assertion otherwise, Respondent posits as follows:

> In reviewing Davis' direct appeal, the Ohio Supreme Court held that, "except where noted, Davis failed to object and waived all but plain error." *State v. Davis*, 116 Ohio St.3d at 421, Doc.51-5, PAGEID#:2267. The Ohio Supreme Court's "except where noted" language indicated the court's intention to note where (if any) an objection was made. Therefore, the absence of anything "noted" demonstrated that the court found no objections, and thus, examined the entire claim only for plain error.

(ECF No. 86, at Page ID # 86.) The Court agrees with Respondent's observation. The Ohio Supreme Court's inclusion of the qualifying phrase "except where noted," which as Respondent also correctly observes turned out to be superfluous, provided neither permission nor leeway for Petitioner to argue to this Court that defense counsel made objections the record clearly demonstrates counsel did not. Ohio's contemporaneous objection rule applied to the entirety of Petitioner's fifth ground for relief and Petitioner violated that rule as to the entirety of his fifth ground for relief.

66

Pursuant to the second part of the *Maupin* test, Petitioner's failure to object does not preclude this Court from reviewing Petitioner's claim unless the Ohio courts actually enforced the rule against Petitioner's claim. Here, Petitioner asks the Court to conclude that the Ohio Supreme Court addressed the merits of, rather than enforced a rule against, any instance of Petitioner's fifth ground for relief where the Ohio Supreme Court did not expressly wrap up its discussion with the magic words "plain error." (ECF No. 72, at Page ID # 9464-9465 (discussing *Bowling v. Parker*, 344 F.3d 487, 498-99 (6th Cir. 2003).) This, the Court declines to do.

The Ohio Supreme Court opened its discussion of Petitioner's claim by stating that "except where noted, Davis failed to object and waived all but plain error[]" and that "[a]dditionally, Davis argues that his counsel were ineffective by failing to object to Vanoy's testimony." (ECF No 51-5, Page ID # 2267.) Nowhere in the remainder of its discussion did the Ohio Supreme Court "note" where defense counsel had made an objection. And the court concluded its discussion by rejecting Petitioner's argument that his defense counsel were ineffective for failing to object to Detective Vanoy's testimony. (*Id.* at Page ID # 2268.) Consequently, the Supreme Court's discussion of the seven instances of challenged testimony in between logically can only be read as examining for plain error or ineffective assistance. To deduce from the fact that the court included the words "plain error" as to four instances while omitting them as to three other instances that the court examined the former for plain error and addressed the latter on the merits would require a strained and disingenuous reading of the court's discussion. This Court is satisfied that the Ohio Supreme Court rejected Petitioner's claim not on the merits, but on the basis of Petitioner's failure to object. This Court finds none

of the ambiguity that the Sixth Circuit addressed in *Bowling v. Parker*.

Turning to the fourth part of the *Maupin* test, Petitioner offers as cause to excuse any default the unreasonable and prejudicial failure of his counsel to object to Detective Vanoy's testimony. This Court rejects that argument. The Ohio Supreme Court denied Petitioner's claim that his attorneys were ineffective for failing to object to Detective Vanoy's testimony, explaining that even if counsel had been deficient for failing to object to Detective Vanoy's improper testimony about Petitioner having been "very deceptive" during the interview(s), Petitioner had failed to establish prejudice in view of the overwhelming evidence of Petitioner's guilt. (ECF No. 51-5, at Page ID # 2268.) After scrutiny of Petitioner's arguments (ECF No. 72, at Page ID # 9466-9468), re-review of Detective Vanoy's testimony (ECF No. 52-3, at Page ID # 7505-7562 through ECF No. 52-4, at Page ID # 7572-7587), and consideration of the trial transcript, this Court cannot find a basis for determining that the Ohio Supreme Court's adjudication contravened or unreasonably applied clearly established federal law.

Regarding the deficient-performance component of *Strickland*, it bears noting that most of the challenged aspects of Detective Vanoy's testimony were not improper or, at a minimum, were not so outrageous that any competent attorney would object. For example, Petitioner complains that Detective Vanoy's testimony about how an unexplained tip made Petitioner a potential suspect "permitted Detective Vanoy to destroy the presumption of innocence for Davis." (ECF No. 72, at Page ID # 9466.) The minimal likelihood that this particular testimony had such a dramatic effect, combined with the Ohio Supreme Court's observation that Detective Vanoy's testimony was proper as an explanation for his actions, undermines the argument that defense counsel were deficient for failing to object to this testimony.

Similarly, with respect to the fact that Detective Vanoy's recounting his first interview with Petitioner was offered in place of the actual recording and transcript of the interview, Petitioner complains that this permitted a police officer to testify under oath that Petitioner was a liar, essentially usurping the jury's role to determine Petitioner's truthfulness. (ECF No. 72, at Page ID # 9467-9468.) But this Court cannot find that defense counsel fell below professional norms in failing to object, (or that the Ohio Supreme Court unreasonably applied federal law in finding otherwise), because the "best evidence rule" did not render Detective Vanoy's testimony improper. An attorney is not deficient for failing to object to that which is not improper.

Beyond these examples, having reviewed the Ohio Supreme Court's discussion of the seven instances of Detective Vanoy's testimony that Petitioner challenged (ECF No. 51-5, at Page ID # 2267-2268), the Court cannot find unreasonable any determination by the Ohio Supreme Court that the failure of defense counsel to object did not constitute deficient performance.

As for the prejudice component of the *Strickland* standard, even where the Ohio Supreme Court intimated that defense counsel were deficient for failing to object to Detective Vanoy's testimony that he was being very deceptive with detectives, the Ohio Supreme Court found no prejudice because of the overwhelming evidence of Petitioner's guilt. This Court cannot find that unreasonable because review of Detective Vanoy's testimony and the record as a whole leaves this Court unable to conclude that, but for counsel's failure to object to the above or any of the other challenged instances of Detective Vanoy's testimony, there is a reasonable probability that the outcome of Petitioner's trial would have been different. Petitioner has not demonstrated cause and prejudice sufficient to excuse the default of his fifth ground for relief.

For the foregoing reasons, Respondent's motion to dismiss Petitioner's fifth ground for relief **GRANTED**.

D. Ground Six:  Trial court's refusal to admit reports on which state's DNA expert relied.

In his sixth ground for relief, Petitioner argues that the trial court's refusal to grant Petitioner's requests to admit reports prepared by and relied upon the state's DNA expert denied Petitioner his rights to confront witnesses against him, to a fair trial, to due process, and to a reliable sentencing determination.  (ECF No. 85, at Page ID # 9961-9972, ¶¶ 196-239.) Respondent argues that the arguments set forth in paragraphs 200-205, 212-214, 223, 229, and 232 are barred by procedural default because Petitioner did not include them when he raised this claim on direct appeal and now has no remedy by which to present them to the state courts. (ECF No. 65, at Page ID # 9358-9359.)  According to Respondent, although Petitioner argued on direct appeal that, based on state evidentiary rules, the trial court erred in not admitting the report labeled as Defense Exhibit L, Petitioner here "includes several arguments alleging that the state's expert gave misleading testimony."  (*Id*. at Page ID # 9358.)

Petitioner answers that Respondent's arguments are contrary to the record.  (ECF No. 72, at Page ID # 9468-9475.)  With respect to paragraphs 200-205, where Petitioner alleges that state DNA expert Meghan Clement's language changed from "could not be excluded" to "matched" and/or equating an inability to exclude with a match, Petitioner asserts that he raised all of these concerns in his merit brief as a reason why the refusal to admit her report was prejudicial error. (*Id*. at Page ID # 9469.)  Petitioner also alleges that he included in his postconviction action a claim that his counsel failed to mount a cogent defense to the state's DNA evidence, supported by the affidavit of attorney Gregory Myer demonstrating how Clement's

70

testimony was incorrect and misleading. (*Id.* at Page ID # 9469-9470.) Petitioner additionally argues that in his motion for a new trial, he "raised additional concerns about the DNA testing and the misleading testimony of Meghan Clement, supported by the affidavit of Dr. Laurence Mueller." (*Id.* at Page ID # 9470.)

Petitioner next argues that he "specifically challenged" on direct appeal (ECF No. 51-3, at Page ID # 1762-1764) the allegations he sets forth in paragraphs 212 through 214 (ECF No. 61, at Page ID # 9001-9002). (*Id.* at Page ID # 9470-9471.) The allegations set forth in paragraphs 212 through 214 concern Ms. Clement's testimony about issues of similarity of DNA profiles of male relatives, in contrast to testimony about the probability of randomly selecting an individual with a DNA profile consistent with Petitioner's profile at twelve of the tested loci found on exhibit 4.6. (ECF No. 85, at Page ID # 9965-9966.)

Petitioner likewise contends that "[a]ll of the allegations contained in paragraph 223 were clearly presented to the state courts in Davis' Merit Brief on direct appeal to the Supreme Court of Ohio." (ECF No. 72, at Page ID # 9472.) To illustrate his point, Petitioner first sets forth verbatim paragraph 223 from his Petition, followed by excerpts from his Merit Brief on direct appeal (ECF No. 51-3, at Page ID # 1762, 1765-1766, 1768-1769.)

Petitioner takes a similar approach with respect to Respondent's assertion that the allegations Petitioner sets forth in paragraph 229 were never presented to the Ohio Supreme Court in direct appeal. (ECF No. 72, at Page ID # 9472-9473.) That is, Petitioner juxtaposes paragraph 229 verbatim with a paragraph from his Merit Brief on direct appeal (ECF No. 51-3, at Page ID # 1768-1769).

Finally, with respect to paragraph 232, Petitioner again lays out that paragraph verbatim,

71

followed by a paragraph from his Merit Brief on direct appeal (ECF No. 51-3, at Page ID # 1769), to illustrate his contention that they are one and the same. (ECF No. 72, at Page ID # 9473-9474.) Petitioner concludes his argument by insisting that "[t]here is no requirement that Davis must demonstrate that he raised this claim in state court using precisely the same language he used to raise the claim in federal court[]" and that "[t]his claim was clearly presented in substantially the same manner and language to the state courts as it is presented in federal court." (ECF No. 72, at Page ID # 9474.)

In reply, Respondent continues to insist that "Davis never presented his claims regarding Ms. Clement's 'match' testimony to any state court in the manner that he does in his amended habeas petition in paragraphs 200 through 205, 212 through 214, 223, 229, and 232." (ECF No. 86, at Page ID # 10374.) Respondent reasons that these habeas proceedings mark the first time that alleges that Ms. Clement gave misleading testimony regarding a DNA match in the context of an evidentiary violation. (*Id.*) To overcome the discrepancy between the allegation he raises here and the allegation he raised on direct appeal, Respondent explains, Petitioner argues that he presented the "substance" of his claim to the state courts. (*Id.* at Page ID # 10374-10375.)

Respondent points out that on direct appeal, Petitioner "argued only that the trial court erred in excluding Defense Exhibit L (Ms. Clement's report) as a violation of Ohio Evidence Rule 803(6), which the Ohio Supreme Court rejected because Davis never offered the report as a business record." (*Id.* at Page ID # 10375.) Respondent continues that "Davis made no mention of Ms. Clement's providing 'misleading' testimony within this argument, nor did Davis make any more than a fleeting reference to his federal constitutional rights; his focus was squarely on an alleged violation of state evidence rules." (*Id.*)

72

Respondent also disputes Petitioner's assertions that he presented the claim he raises here to the state courts in postconviction. Respondent notes that "[i]n postconviction, Davis argued his trial counsel were ineffective for the way they handled the State's DNA experts." (*Id.*) Respondent contends that claim falls short of a "fair presentation" of the claim Petitioner raises now his in his sixth ground for relief, first because it contained no mention of Ms. Clement providing "misleading" testimony, but also because that claim was an allegation of ineffective assistance of counsel for the failure to object to misleading DNA match testimony, not an allegation that Ms. Clement provided misleading DNA match testimony. (*Id.* at Page ID # 10375-10376.)

Respondent proceeds to assert that Petitioner never raised the allegations set forth in his sixth ground for relief in any other state collateral proceedings. To this point, Respondent asserts that in his application to reopen his direct appeal, the most that Petitioner argued was that his appellate attorneys should have argued that defense counsel were ineffective for failing to object to Dr. Tejawani's overstatement of the DNA evidence. In his motion for a new trial, Respondent continues, Petitioner "again only raised this issue in the context of ineffective assistance of trial counsel." (*Id.* at Page ID # 10376.)

Finally, Respondent concludes that the arguments set forth in paragraphs 200 through 205, 212 through 214, 223, 229, and 232 are barred by procedural default, absent a showing of either cause and prejudice or a fundamental miscarriage of justice, either of which would clear the way for this Court to review Petitioner's otherwise defaulted allegations. Respondent notes, however, that Petitioner has pleaded neither. (*Id.* at Page ID # 10376-10377.) Respondent further notes that because each of the paragraphs at issue refers to trial testimony, Petitioner

73

defaulted the allegations set forth in those paragraphs when he failed to include them on direct appeal. (*Id.*)

As a preliminary matter, Respondent is correct that because the allegations set forth in Petitioner's sixth ground for relief concerned trial testimony, Petitioner was required to raise those on direct appeal to avoid forfeiture under Ohio's *res judicata* rule. Not at issue, therefore, is whether or to what extent Petitioner may have included these allegations in any state collateral proceedings. *State v. Cole*, 2 Ohio St. 3d 112. What is at issue is whether Petitioner fairly presented his sixth ground for relief sufficient to escape forfeiture.

As noted earlier, a petitioner "fairly presents" the "substance of his federal habeas corpus claim "when the state courts are afforded sufficient notice and a fair opportunity to apply controlling legal principles to the facts underlying the constitutional claim. *Anderson v. Harless*, 459 U.S. 4, 6 (1982). Thus, a petitioner must present to the state courts both the legal theory and factual basis of any claim that he or she seeks to present in habeas corpus. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996); *Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987). If a petitioner did present the substance of his or her claim to the state courts, "an elaboration of the facts or legal theories will not result in a new claim." *Nichols v. Bell*, 440 F. Supp. 2d 730, 755 (E.D. Tenn. 2006) (citing *Jones v. Washington*, 15 F.3d 671, 674-75 (7th Cir. 1994)). If, on the other hand, additional facts or arguments "fundamentally alter the legal claim already considered by the state courts," then the petitioner cannot be said to have fairly presented that component of the claim. *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986); *Richey v. Bradshaw*, 498 F.3d 344, 352 (6th Cir. 2007).

Cursory comparison of the claim that Petitioner presented on direct appeal (proposition of

law VII, ECF No. 51-3, at Page ID # 1762-1770) to the claim that Petitioner raises here (sixth ground for relief, ECF No. 85, at Page ID # 9961-9972) reveals that they are not mirror images of each other. The issue for this Court to determine is whether the differences—particularly the allegations set forth in paragraphs 200-205, 212-214, 223, 229, and 232 of Petitioner's sixth ground for relief—constitute mere tinkering that altered the style but not substance of what Petitioner presented to the Ohio Supreme Court on direct appeal; or amount to a rearrangement or restatement so comprehensive that the claim as a whole constitutes a substantive departure from the claim that Petitioner presented to the Ohio Supreme Court on direct appeal. Resolving this issue requires the Court to examine whether the tenor of the claim Petitioner raised on direct appeal gave the Ohio Supreme Court sufficient notice to address the tenor of the claim that Petitioner asks this Court to address. Framed in that manner, the Court concludes that it did.

Acknowledging that he is required to present the substance of his federal habeas claims to the state courts, Petitioner asserts that "[t]here is no requirement that Davis must demonstrate that he raised this claim in state court using precisely the same language he used to raise the claim in federal court." (ECF No. 72, at Page ID # 9474.) The Court agrees. The focus is not on the language—*i.e.*, terms, phrases, and assertions parsed and lifted out of context—but on the substance of the claim read in its entirety. It is not enough that certain terms, phrases, and assertions were *included* on direct appeal; if they were not *organized and set forth* in a manner that gave the state courts sufficient notice and a fair opportunity to address the same operative facts and legal theory that Petitioner seeks to have this Court address, then they were not fairly presented within the meaning of the exhaustion doctrine. The practice of recasting certain terms and phrases in a habeas claim that read as a whole advances a different substantive theory than

75

the same terms and phrases presented to the state courts constitutes a gamesmanship that undermines the principles of federalism and comity that lie at the heart of, and are in fact essential to, the exhaustion doctrine. But that did not happen here.

The Court is satisfied that Petitioner presented the substance of his sixth ground for relief to the Ohio Supreme Court. Clearly, the focus there, as here, was on the effect of the trial court's exclusion of Ms. Clement's report (Defense Exhibit L), *not* on the effect of Ms. Clement's allegedly misleading testimony. Any remarks that Petitioner added characterizing certain aspects of Ms. Clement's testimony as "misleading" were offered only to illustrate the effect of the trial court's exclusion of the report. Case law governing fair presentment expressly permits this sort of elaboration or inclusion of additional facts. Stated another way, having reviewed the Ohio Supreme Court's decision (ECF No. 51-5, at Page ID # 2271-2272), the Court is not persuaded that Petitioner's inclusion in his merit brief of the remarks about Ms. Clement's testimony he adds here would have changed the Ohio Supreme Court's focus or reasoning. It cannot be said, therefore, that additional facts Petitioner raises in ground six fundamentally altered the legal claim presented to and considered by the Ohio Supreme Court.

It bears emphasizing that Petitioner's sixth ground for relief is styled (and was fairly presented) as a claim challenging that the trial court's exclusion of Ms. Clement's report—*not* that allegedly misleading testimony by Ms. Clement—violated Petitioner's federal constitutional rights. That is how the claim should be argued going forward because that is how the claim will be addressed. For the foregoing reasons, Respondent's motion to dismiss any part of Petitioner's sixth ground for relief is **DENIED**.

E. Ground Seven: Detective Elliget's alleged "expert" testimony.

In his seventh ground for relief, Petitioner presents extensive arguments challenging the prosecution's alleged presentation of numerous elements of Detective Elliget's testimony as "expert" testimony without proper foundation. (ECF No. 85, at Page ID # 9973-9998.) Respondent argues that Petitioner's claim should be dismissed in its entirety for several reasons. (ECF No. 65, at Page ID # 9359-9360.) First, Respondent asserts that numerous components of ground seven were not presented to the Ohio Supreme Court on direct appeal and now no longer can be. Specifically, Respondent contends that "[t]he arguments contained in paragraphs 245-46, 249-52, 254-58, 261-65, 269, 272, 276, 278-82, and 283-320 were never presented to the state courts, and therefore, are procedurally defaulted because there is no longer an available means for Davis to raise them in state court." (*Id*. at Page ID # 9359.)

Second, Respondent asserts that any arguments based on a 2009 National Academy of Sciences report are barred not only by procedural default but also by *Cullen v. Pinholster*, 131 S.Ct. 1388 (2011). Respondent also emphasizes that he does not waive exhaustion and that, should the Court determine that this or any other part of Petitioner's claim is unexhausted in the sense that state court remedies remain available, the Court should summarily dismiss those allegations as patently meritless. (*Id*. at Page ID # 9359 n. 4.)

Finally, Respondent argues that "[a]s for the portions of habeas ground seven which *were* presented on direct appeal, the Ohio Supreme Court found Davis waived review by failing to object to Det. Elliget's testimony and for inviting any error by stipulating to Det. Elliget's qualifications." (ECF No. 65, at Page ID # 9359-9360.)

In response, Petitioner argues that none of Respondent's arguments are well taken. (ECF No. 72, at Page ID # 9475.) Petitioner asserts that "[t]his claim was clearly presented in

77

substantially the same manner and language to the state courts as it is presented in federal court."
(*Id*.) Petitioner proceeds to set forth examples demonstrating why "any differences between the
wording of Davis' allegations in state court and before this Court are irrelevant and do not
establish grounds for a procedural default." (*Id*. at Page ID # 9476, 9476-9491.)

"To the extent that Davis' trial counsel failed to object to portions of Detective Elliget's
testimony or stipulated to his qualifications," Petitioner continues, "Davis has argued that
counsel's ineffective assistance excuses any procedural default of these underlying claims." (*Id*.
at Page ID # 9476.) In fact, Petitioner "requests an evidentiary hearing to establish cause and
prejudice on those allegedly defaulted claims where there is a question of whether the claim was
fairly presented to the state courts as well as for those claims where he relies on cause and
prejudice to excuse the alleged default." (*Id*.)

With respect to the components of his claim relying on the 2009 NAS Report, Petitioner
asserts that should this Court conclude that those arguments were not fairly presented to the state
courts or are not a logical extension of the arguments that he made in state courts, the Court
should find that "they actually constitute a separate claim based on newly discovered evidence
(the 2009 NAS Report) and are therefore unexhausted, not procedurally defaulted." (*Id*. at Page
ID # 9491.) "If the Warden is not willing to waive exhaustion," Petitioner contends, "the Ohio
courts should be given the first opportunity to address these claims." (*Id*.) Petitioner
accordingly requests that, if this Court determines that allegations based on the 2009 NAS
Report are unexhausted, the Court stay this action and hold the proceedings in abeyance, pending
Petitioner's return to the state courts to exhaust these allegations. (*Id*. at Page ID # 9492-9493.)

Respondent raises numerous arguments in reply. (ECF No. 86, at Page ID # 10377-

78

10392.)

The Court turns first to Respondent's argument that the allegations set forth in paragraphs 245-46, 249-52, 254-58, 261-65, 269, 272, 276, 278-82, and 283-320 were never presented to the state courts. According to Respondent, comparison of the claim that Petitioner raises here and the claim that Petitioner raised on direct appeal to the Ohio Supreme Court "reveal[s] marked differences." (ECF No. 86, at Page ID # 10377.) Going into only as much detail as is necessary, the Court for the reasons that follow rejects Respondent's assertion _except_ as to paragraphs 265 and 269 ("the DNA paragraphs") and paragraphs 283 through 320 ("the other legal theories paragraphs"). The Court is satisfied under fair presentment principles that the allegations set forth in the remaining paragraphs were fairly presented in Petitioner's direct appeal brief.

As the Court has noted and as is well-established, a petitioner must present to the state courts both the legal theory and factual basis of any claim that he or she seeks to present in habeas corpus. *Picard*, 404 U.S. at 275-76; *Gray*, 518 U.S. at 162-63; *Pillette*, 824 F.2d at 496. If a petitioner did present the substance of his or her claim to the state courts, "an elaboration of the facts or legal theories will not result in a new claim." *Nichols v. Bell*, 440 F. Supp. 2d 730, 755 (E.D. Tenn. 2006) (citing *Jones v. Washington*, 15 F.3d 671, 674-75 (7th Cir. 1994)). Supplementing or clarifying supporting evidence does not undermine fair presentment if that does not "fundamentally alter the legal claim already considered by the state courts." *Vasquez v. Hillery*, 474 U.S. at 260; *Richey v. Bradshaw*, 498 F.3d at 352; *see also Hodges v. Bell*, 548 F. Supp. 2d 485, 560 (M.D. Tenn. 2008). To this point, the focus must be on whether the habeas petitioner withheld essential facts when presenting his or her claim to the state courts, which would defeat fair presentment, or whether the petitioner merely supplemented or updated the

facts supporting the claim presented to the state courts. *Vasquez*, 474 U.S. at 259-60.

The latter is all that Petitioner here did with respect to the allegations set forth in paragraphs 245-46, 249-52, 254-58, 261-65, 269, 272, 276, 278-82 (except as to paragraphs 265 and 269, *i.e.*, the DNA paragraphs). For example, paragraphs 245 through 246, paragraphs 249 through 252, and paragraph 276 constitute a mere expansion or update of an assertion that Petitioner did present to the state courts—namely, a description of what can or should qualify a witness as a fingerprint, blood spatter, and/or trace evidence expert.[3] Moreover, paragraphs 254 through 256 were presented verbatim in Petitioner's direct appeal brief (ECF No. 51-3, at Page ID # 1758-1759), while paragraphs 257 through 258 constitute little more than a "wrapping up" or emphasis of allegations that were the very essence of the claim Petitioner presented to the state courts and presents here, to wit: that much of Detective Elliget's testimony was presented as "expert" testimony when he was never legally established or perhaps factually qualified as an expert. The allegations set forth in paragraphs 261 through 264, and paragraphs 271 through 275 are more of the same—that is, restatements or a repackaging of what Petitioner argued on direct appeal throughout his claim. Similarly, paragraphs 277 through 282 consist of merely expanding on or repackaging the principles for qualifying a witness as an expert as set forth in *Daubert v. Merrill Dow Pharmaceuticals, Inc.* and its progeny.

An exception to the foregoing, as the Court has alluded to, are the allegations set forth in paragraphs 265 and 269. There, Petitioner challenges references to or suggestions of Detective Elliget being an expert in the field of DNA evidence. Nowhere in his sixth proposition of law on

---

[3]  To this point, the Court expresses no opinion in this decision about whether or to what extent the decision of *Cullen v. Pinholster*, 131 S.Ct. 1388 (2011), precludes this Court from considering Petitioner's references to the 2009 National Academy of Sciences (NAS) report.

direct appeal challenging the legitimacy of Detective Elliget's "expert" testimony did Petitioner

mention DNA evidence. Those are relatively important supporting facts that the state courts

were not given notice to address. For the foregoing reasons, the Court **DENIES** Respondent's

motion to dismiss paragraphs 245-46, 249-52, 254-58, 261-65, 269, 272, 276, 278-82 and

**GRANTS** Respondent's motion to dismiss as to paragraphs 265 and 269.

In stark contrast to the foregoing, the allegations set forth in paragraphs 283 through 320

go leaps and bounds beyond mere repackaging or restatement. In those paragraphs, Petitioner

uses the same operative facts to support a host of different legal theories that the state courts did

not have a scintilla of notice to address. Specifically, Petitioner takes essentially the same facts

that supported his sixth proposition of law challenging the legitimacy and prejudicial effect of

Detective Elliget's "expert" testimony, and attempts to plug them into entirely different legal

claims, to wit: a due process claim alleging that Detective Elliget's testimony undermined the

fundamental fairness of Petitioner's trial; a claim that the state withheld "evidence" that

Detective Elliget was not an expert in violation of *Brady v. Maryland*; corresponding claims that

the state's misconduct deprived Petitioner of his right to meaningfully present a defense and that

the prosecution knowingly misrepresented forensic evidence through Detective Elliget's

testimony; a claim that but for Detective Elliget's testimony an innocent man would not have

been found guilty; and claims that Detective Elliget's testimony undermined the fairness of

Petitioner's mitigation hearing and the reliability of the jury's verdict recommending a death

sentence. These are not variations of the claim presented to the state courts. They are all distinct

legal claims with different elements of proof. *See Kimmelman v. Morrison*, 477 U.S. 365, 374-

(ECF No. 65, at Page ID # 9359.) That discussion is reserved for another day.

75 (1986); *see also Jells v. Mitchell*, 538 F.3d 478, 504 (6th Cir. 2008) ("Here, the state courts would not have been alerted that the alleged information supported his *Brady* claim through Jells's presentation of the information in the sufficiency-of-the-evidence context.")

It bears reminding that "[a] legal theory urged in a habeas petition that is different than what was raised in the state court briefs does not satisfy the 'fair presentment' requirement." *Jamison v. Collins*, 100 F. Supp. 2d 521, 550 (S.D. Ohio, West. Div. 1998) (citations omitted). The sixth proposition of law that Petitioner briefed on direct appeal sufficiently alerted the Ohio Supreme Court that it was being asked to decide whether the trial court and/or defense counsel erred to Petitioner's prejudice in allowing the state to present Detective Elliget's testimony as "expert" testimony without proper foundation. Nothing about Petitioner's direct appeal brief alerted the Ohio Supreme Court that it was also being asked to decide whether Detective Elliget's testimony gave rise to a *Brady* violation and other acts of prosecutorial misconduct such as misrepresentation and denying Petitioner his right to present a defense; whether Detective Elliget's testimony so tainted Petitioner's entire trial as to deprive Petitioner of fundamental fairness; whether Detective Elliget's testimony resulted in the conviction of one who is actually innocent; or whether Detective Elliget's testimony invalidated Petitioner's penalty phase and resulting death sentence. Petitioner did not fairly present the allegations set forth in paragraphs 283 through 320. The Court **GRANTS** Respondent's motion to dismiss those paragraphs as procedurally defaulted.[4]

---

[4]  Petitioner asks in the alternative that this Court stay this action and hold these proceedings in abeyance, pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005), to permit him to return to the state courts to exhaust his unexhausted claims. (ECF No. 72, at Page ID # 9491-9493.) The Court declines to do that at this time. *Rhines v. Weber* does permit the stay-and-abeyance that Petitioner requests but only under limited circumstances where it is apparent that

Having determined that Petitioner fairly presented all but paragraphs 265, 269, and 283 through 320, the Court turns to Respondent's next argument that "[a]s for the portions of habeas ground seven which *were* presented on direct appeal, the Ohio Supreme Court found Davis waived review by failing to object to Det. Elliget's testimony and for inviting any error by stipulating to Det. Elliget's qualifications." (ECF No. 65, at Page ID # 9359-9360.) The Court is constrained to reject Respondent's argument because it appears to fail the *Maupin* test in two respects.

First, the second part of the *Maupin* test requires the Court to determine whether the state courts clearly enforced the procedural rule(s) at issue, in this case the contemporaneous objection rule and the invited error doctrine. The Court wholly agrees with Respondent that the Ohio Supreme Court began its discussion of Petitioner's Detective Elliget proposition of law by clearly noting that Petitioner had waived all but plain error because he had failed to object to Detective Ellliget's testimony and by additionally noting that Petitioner had invited any error to Detective Elliget's qualifications by stipulating to them. (ECF No. 51-5, at Page ID # 2269.)

---

the petitioner has been diligent in attempting to exhaust his claims, good cause exists to excuse his failure to exhaust his claims, and his claims are potentially meritorious. 544 U.S. at 269. Although the availability of state court remedies seems remote at best, the Court recognizes that it is for the state courts to decide whether to entertain Petitioner's claims. *See Godbelt v. Russell*, 82 F. App'x 447, 449-50 (6th Cir. 2003). In any event, in view of the substantial unlikelihood that Petitioner will succeed in obtaining state court review of claims such as the Brady claim and actual innocence claims set forth in paragraphs 283-320, given that they are based on the same operative facts that were known to Petitioner when he litigated his direct appeal and postconviction action, the Court is reluctant to stay a case that was already stayed at its outset for three years while Petitioner pursued state court remedies. Of course, Petitioner should not be deterred by this Court's refusal to stay this case from pursuing any state court remedies he wishes. But he should not construe anything from this decision as a guarantee that he would be granted leave to amend his petition should he attempt to obtain state court review. Similarly, the Court reminds the parties that it expresses no opinion at this time about whether or to what extent it may be able to consider the NAS report to which Petitioner refers.

The Court is less certain that the remainder of the Ohio Supreme Court's decision was a clear enforcement of those doctrines. Because that matter is ambiguous at best, the Court is reluctant to find that the second part of the *Maupin* test has been satisfied.

Beyond that, the Court further finds the fourth part of the *Maupin* test to be problematic. In short, the parts of Petitioner's seventh ground for relief that Petitioner did fairly present to the Ohio Supreme Court (but that *might* be barred under Ohio's contemporaneous objection rule) are inextricably intertwined with trial counsel ineffectiveness claims that were fairly presented (ECF No. 51-3, at Page ID # 1754-1761, 1855, 1858-1859), considered and rejected on the merits (ECF No. 51-5, at Page ID # 2285, 2269-2271), and properly before this Court for review on the merits. That is particularly so where, as here, trial counsel definitively and unambiguously stipulated to the very qualifications that Petitioner now seeks to challenge. It would be inadvisable if not impossible to address the merits of Petitioner's challenge to Detective Elliget's testimony without addressing the reasonableness of counsel's decisions to stipulate to Detective Elliget's qualifications and to (as a logical result) not object to the instances of Detective Elliget's testimony when, according to Petitioner, Detective Elliget improperly testified as an "expert." The Court reserves those intertwined merits decisions for another day. To be clear, therefore, the Court is not holding at this time that counsel were ineffective sufficient to satisfy the fourth part of the *Maupin* test—only that that issue will be addressed at a later time.

For the foregoing reasons, Respondent's motion to dismiss Petitioner's seventh ground for relief is **DENIED**, subject to reconsideration should the Court determine that Petitioner's attorneys were *not* ineffective sufficient to excuse the default.

F. <u>Ground Nine</u>: Allegedly erroneous trial-phase jury instructions.

In his ninth ground for relief, Petitioner raises several challenges to the trial court's culpability-phase jury instructions. Respondent contends that the arguments contained in subsections B, C, and D (paragraphs 341-366) are barred by procedural default because Petitioner did not object to them at trial. (ECF No. 65, at Page ID # 9360.)

In response, Petitioner first intimates without explicitly asserting that defense counsel did object to certain portions of the trial court's jury instructions. (ECF No. 72, at Page ID # 9493-9494.)

Petitioner next disputes that the Ohio Supreme Court actually enforced default against the un-objected to components of his claim. With respect to subsection B, where Petitioner challenges the trial court's unanimity instructions, Petitioner asserts that the Ohio Supreme Court "did not expressly conduct a plain error review." (*Id*. at Page ID # 9494.) With respect to subsection C, where Petitioner challenges the trial court's reasonable doubt instruction, Petitioner concedes that the Ohio Supreme Court reviewed this challenge for plain error. Petitioner proceed to argue, however, that "because the court was given a full and fair opportunity to rule on Davis' claims and addressed the federal constitutional question without relying upon the contemporaneous objection rule to preclude a merits review, federal review is not barred." (*Id*.) Finally, Petitioner asserts that "because the Court did not expressly and unambiguously review under plain error analysis or otherwise rely on a procedural rule in rejecting the argument raised in Section D, it is not procedurally defaulted." (*Id*. at Page ID # 9496.)

In the alternative, Petitioner asserts that trial counsel's failure to object to subsection C, and failure to more zealously object to subsections B and D, constitutes cause and prejudice to

85

excuse any default and permit federal review.

In reply, Respondent reiterates that subsections B, C, and D are barred by procedural default, due to Petitioner's failure to object to those portions of the jury instructions, and that the Ohio Supreme Court actually enforced the default by clearly reviewing those allegations only for plain error. (ECF No. 86, at Page ID # 10392-10396.)

The first part of the *Maupin* test requires the Court to determine whether Petitioner violated a state procedural rule. The Court finds that he did. Petitioner stopped short of explicitly asserting that defense counsel objected to any portion of his ninth ground for relief because Petitioner had to. As Respondent points out, "[i]ncredibly, Davis contends that the Ohio Supreme Court's statement that 'except where noted, trial counsel failed to object and waived all but plain error' somehow 'suggests that counsel did make a contemporaneous objection at trial regarding some of the issues presented in the Ninth Ground for Relief.' " (ECF No. 86, at Page ID # 10392-10392 (quoting Response, ECF No. 72, at Page ID # 9493-9494).) Review of the trial court's jury instructions (ECF No. 52-5, at Page ID # 8130-8167) reveals indisputably that trial counsel did <u>not</u> object to the allegations Petitioner sets forth in subsections B, C, and D (paragraphs 341-366) of his ninth ground for relief. The Court thus finds that Ohio's contemporaneous objection rule applied to subsections B, C, and D and that Petitioner violated it.

The second and third parts of the *Maupin* test require the Court to determine whether the state courts actually enforced the procedural rule and whether the rule is an adequate and independent basis for precluding federal review. It is with respect to these *Maupin* components that Petitioner argues that any failure on the part of the Ohio Supreme Court to expressly pair the

86

words "plain review" and/or "Ohio's contemporaneous object rule" with its discussion of every component of Petitioner's claim paves the way for federal review. This Court has already rejected that argument and rejects it again here.

Respondent asserts that the Ohio Supreme Court's "except where noted language" made clear that in the absence of anything noted, such as an objection or an express intention to conduct a merits review, the court's examination of Petitioner's claim was for only plain error. Respondent further argues that "any apparent merits review of subsections B, C, and D was either in furtherance of examining the sub-claims for plain error or was an alternative merits analysis." (*Id*. at Page ID # 10393.) This Court agrees.

Just as with Petitioner's claim on direct appeal challenging portions of Detective Vanoy's testimony, the Ohio Supreme Court opened its discussion of Petitioner's claim challenging the trial court's culpability-phase jury instructions by stating that "except where noted, trial counsel failed to object and waived all but plain error." (ECF No 51-5, Page ID # 2272.) Nowhere in the remainder of its discussion did the Ohio Supreme Court "note" where defense counsel had made an objection. The court also noted at the outset of its discussion that "[a]dditionally, Davis argues that counsel's failure to object constituted ineffective assistance of counsel." (*Id*.) And the court concluded its discussion by rejecting Petitioner's argument that his defense counsel were ineffective for failing to object to the portions of the jury instructions that Petitioner had sought to challenge. (*Id*. at Page ID # 2273.) Consequently, the Supreme Court's discussion of the components of the trial court's jury instructions that Petitioner challenged on direct appeal logically can only be read as examining for plain error or ineffective assistance. In fact, in examining the trial court's unanimity instruction, reasonable doubt instruction, and purpose

instruction, the Ohio Supreme Court expressly mentioned "plain error." (*Id.*) This Court is satisfied that the Ohio Supreme Court rejected Petitioner's claim not on the merits, but on the basis of Petitioner's failure to object.

Turning to the fourth part of the *Maupin* test, Petitioner offers as cause to excuse any default the failure of his counsel to object to the trial court's instructions on unanimity, reasonable doubt, and the element of purpose/causation. This Court rejects that argument. Finding that the jury had been properly instructed on the elements of Count 1, reasonable doubt, and purpose, the Ohio Supreme Court concluded that defense counsel were not deficient for failing to object to those instructions. (ECF No. 51-5, at Page ID # 2273.) Although the Ohio Supreme Court did not expressly make a determination of whether counsel were ineffective for failing to object to the trial court's unanimity instruction, the Ohio Supreme Court's noted in its discussion of that portion of the instructions that it found no error, plain or otherwise. (*Id.*) That finding implies a corresponding determination that counsel were not ineffective for failing to object. After scrutiny of Petitioner's arguments (ECF No. 72, at Page ID # 9495-9496), re-review of trial court's culpability-phase jury instructions (ECF No. 52-5, at Page ID # 8130-8167), and consideration of relevant case law, this Court cannot find a basis for determining that the Ohio Supreme Court's adjudication contravened or unreasonably applied clearly established federal law.

Regarding the deficient-performance component of *Strickland*, even *de novo* review of any claim that counsel were ineffective for failing to object to the trial court's unanimity instructions does not persuade this Court that counsel performed deficiently or to Petitioner's prejudice. The essence of Petitioner's challenge is that the failure of the trial court to require the

jury to find unanimously which underlying felony—kidnapping, aggravated robbery, or aggravated burglary—it had found in support of a conviction of the aggravated murder charged in Count 1, to wit: that Petitioner purposely caused the death of Elizabeth Sheeler while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit, one or more of the offenses of kidnapping, aggravated robbery, or aggravated burglary. (ECF No. 51-1, at Page ID # 910-911.) That type of instruction has been upheld as constitutional in Ohio and federal courts alike. *See, e.g., State v. Williams*, 99 Ohio St. 3d 439, 455-56 (2003); *Brown v. Bergh*, Civil No. 2:11-CV-10571, 2013 WL 2338415, at *6 (E.D. Mich. May 29, 2013); *McLemore v. Bell*, No. 07-11340, 2009 WL 909578, at *2 (E.D. Mich. Mar. 31, 2009). Under these circumstances, the Court cannot find that the failure to object to this instruction was a misstep only an incompetent attorney would make.

Similarly, the reasonable doubt instruction and purpose/causation instruction about which Petitioner complains have been repeatedly upheld as constitutional. The trial court's "reasonable doubt" instruction tracked Ohio's statutory definition and courts have repeatedly and consistently upheld that definition. *State v. Jones*, 90 Ohio St. 3d 403, 417 (2000); *State v. Jenkins*, 15 Ohio St. 3d 164, paragraph eight of the syllabus (1984); *Buell v. Mitchell*, 274 F.3d 337, 366 (6th Cir. 2001) (citing *Thomas v. Arn*, 704 F.2d 865, 867-69 (6th Cir. 1983)). The trial court's instruction on the element of purpose/specific intent, by giving rise at most to a permissible inference as opposed to a problematic presumption, has been upheld in Ohio and federal courts. *State v. Phillips*, 74 Ohio St. 3d 72, 100 (1995); *Campbell v. Coyle*, 260 F.3d 531, 557 (6th Cir. 2001); *Loza v. Mitchell*, 705 F. Supp. 2d 773, 845-47 (S.D. Ohio 2010). The foregoing precludes any finding that counsel were deficient for failing to object to these instructions, much less that the

Ohio Supreme Court's decision finding no deficient performance was unreasonable.

As for the prejudice component of the *Strickland* standard, the Court notes some ambiguity as to whether the Ohio Supreme Court adjudicated this component on the merits. On the one hand, the Ohio Supreme Court stated that it was overruling Petitioner's ineffectiveness claims. Because an ineffectiveness claim, by definition, involves both a deficient-performance component and a prejudice component, the court's statement could fairly be construed as finding no deficient performance and no prejudice. On the other hand, although the Ohio Supreme Court proceeded to state that counsel were not deficient for failing to object to the instructions on the elements of count one, unanimity, reasonable doubt, or prejudice—nowhere did the Ohio Supreme Court make a statement about prejudice. In any event, for the reasons set forth above, even *de novo* review of the prejudice component fails to persuade this Court that, but for counsel's failure to object to the components of the jury instructions discussed above, there is a reasonable probability that the outcome of Petitioner's trial would have been different.

For the foregoing reasons, Respondent's motion to dismiss subsections B, C, and D of Petitioner's ninth ground for relief (paragraphs 341 through 366) is **GRANTED**.

G. <u>Ground Eleven</u>: Trial court's admission of audiotape and transcript of first interview.

In his eleventh ground for relief, Petitioner argues that the trial court's admission of the audiotape and transcript of his first interview with Newark detectives, without proper identification or authentication, violated his rights to due process, a fair trial, and effective assistance of counsel. (ECF No. 85, at Page ID # 10026-10029 ¶¶ 383-392.) Respondent argues that Petitioner's claim is defaulted in its entirety, due to Petitioner's failure to object at trial. "[I]n fact," Respondent notes, "he stipulated to their admission." (ECF No. 65, at Page ID #

9360 (citing *Davis*, 116 Ohio St. 3d at 416-17).) Respondent argues that paragraph 389 is subject to an additional procedural default because Petitioner never presented that allegation on direct appeal and now no longer can. (ECF No. 65, at Page ID # 9360-9361.)

Petitioner essentially concedes that he failed to preserve the issue at trial. He devotes his entire response to the argument that his defense attorneys were ineffective for failing to object (and in fact stipulating) to admission of the tape and transcript, and that this ineffective assistance constitutes cause and prejudice to excuse the procedural default. (ECF No. 72, at Page ID # 9467-9500.) The crux of his argument is that there is no evidence that defense counsel's actions were tactical decisions supported by sufficient investigation. (*Id*. at Page ID # 9498-9499.) Petitioner also references case law governing claims of ineffective assistance of appellate counsel offered as cause, without making any corresponding argument that he is actually offering appellate counsel ineffectiveness as cause. Petitioner additionally requests an evidentiary hearing. Finally, Petitioner argues that he did fairly present paragraph 389, insisting that any differences between the allegation he presented on direct appeal and the allegation he raises here are illusory. (*Id*. at Page ID # 9501.)

In reply, Respondent argues that "Davis is unable to demonstrate that the stipulation to the admission of the tapes and transcript 'worked to his *actual* and substantial disadvantage.' " (ECF No. 86, at Page ID # 10398 (quoting *Murray v. Carrier*, 477 U.S. at 494).) Respondent continues:

> Davis was not prejudiced by trial counsel's decision to stipulate to the admission of the tapes. As the Ohio Supreme Court found, "[b]y introducing the tapes, counsel had the benefit of presenting Davis' proclamations of innocence to the jury, without the risk of having Davis take the stand." *State v. Davis*, 116 Ohio St. 3d at 417, Doc. 51-5, PAGEID#:2264. The record demonstrates that counsel wanted to use the tapes in this manner because they believed it was beneficial to

91

> Davis' defense. *See* Tr.T. pp. 1861-62, 1866, 1875, Doc. 52, PAGEID#:8069-70, 8074, 8083. Because Davis cannot establish *Strickland* prejudice, he certainly cannot satisfy the "actual prejudice" necessary to overcome the procedural default. *See Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009) (stating that if the defendant fails to establish prejudice from his attorney's failure to object, then the court cannot excuse his default); *O'Rourke v. Endell*, 153 F.3d 560, 570-71 (8th Cir. 1998).

(ECF No. 86, at Page ID # 10398.) This Court wholeheartedly agrees.

Review of Petitioner's claim as pleaded in the Substitute Second Amended Petition (ECF No. 85, at Page ID # 10026-10029), as well as Petitioner's arguments attempting to establish cause and prejudice (ECF No. 72, at Page ID # 9497-9501), fails utterly to persuade this Court how Petitioner was prejudiced by counsel's stipulation to the admission of exhibits that were not properly authenticated or identified. To be clear, Petitioner's claim is styled and pleaded as one challenging not the *substance* of the exhibits, but the *authenticity* of the exhibits. And yet, nowhere does Petitioner *actually* allege that the tape or transcript is not authentic. (ECF No. 86, at Page ID # 10399-10400.) Petitioner notes at length that "[n]o witness identified or authenticated State's Exhibit 12A as the tape of the interview of Roland Davis[,]" but does not assert or even suggest that State's Exhibit 12A is *not* the tape of his interview. (ECF No. 85, at Page ID # 10027 ¶ 384.) He states that "[n]o witness identified the voices on State's Exhibit 12A as belonging to Davis and/or Det. Vanoy[,]" but does not assert or even suggest that the voices are *not* those of himself and/or Detective Vanoy. (*Id.*) Petitioner continues:

> There was no stipulation offered in regards to the tape. There is no evidence that the operator of the device that allegedly recorded the device was competent to operate the device. There is no evidence that the recording on the tape was authentic or correct. There is no evidence that changes, additions, or deletions had not been made to the recording. There is no evidence of who the speakers on the recording are. There is no evidence that all portions of the tape are audible. There is no evidence that the tape was properly redacted.

92

(ECF No. 85, at Page ID # 10027 ¶ 384.) Nowhere does Petitioner assert, however, that the operator of the recording device was incompetent, that the tape was not authentic or correct, that the tape was altered, that the speakers are anyone other than Petitioner and Detective Vanoy, that any portions of the tape are inaudible, or that the tape was not properly redacted. Petitioner thus fails entirely to establish either that defense counsel performed deficiently or to Petitioner's prejudice with respect to the authentication or identification of these exhibits.

Petitioner complains that authentication or identification is a prerequisite to admissibility under Evid. R. 901(A). Counsel's stipulation to the admission satisfied that prerequisite. And Petitioner falls well short of demonstrating that counsel performed deficiently or to his prejudice in doing so—especially where Petitioner's complaint about the evidence stipulated to concerns not its content, but its authenticity. The Ohio Supreme Court rejected Petitioner's claim that his attorneys were ineffective. This Court cannot disagree, much less find any degree of unreasonableness.

As for paragraph 389, although the Court is satisfied that Petitioner sufficiently presented to the Ohio Supreme Court the substance of what he pleads here, the fact remains that Petitioner's eleventh ground for relief is defaulted in its entirety. Petitioner did not preserve the issue at trial and has not satisfied the cause-and-prejudice standard for excusing the default.[5] Respondent's motion to dismiss Petitioner's eleventh ground for relief as procedurally defaulted is **GRANTED**.

H. Ground Twelve: Failure to authenticate/identify exhibits in open court in accused's presence.

_____

[5] To the extent Petitioner asserts ineffective assistance of appellate counsel satisfies the cause-and-prejudice standard, this Court agrees with Respondent that appellate counsel *did* raise this issue on direct appeal and that Petitioner expressly waived the right to challenge the

Petitioner in his twelfth ground for relief argues that the trial court's admission of the tape and transcript of investigators' first interview with Petitioner without anyone authenticating and identifying them in open court, in Petitioner's presence, deprived him of among other rights the right to be present at a critical stage of the trial proceedings. (ECF No. 85, at Page ID # 10030-10039, ¶¶ 393-413.) Respondent argues that the claim should be dismissed in its entirety, due to Petitioner's failure to object at trial. (ECF No. 65, at Page ID # 9361.) Respondent further argues that Petitioner's attempt to resurrect the claim in postconviction falls short of overcoming procedural default because the state courts rejected the claim as barred by *res judicata*. Finally, Respondent argues that the argument Petitioner raises in paragraph 410 is defaulted because Petitioner never presented it to any state court and now no longer can.

Petitioner asserts that "[n]one of the Warden's claims of procedural default have any merit." (ECF No. 72, at Page ID # 9502.) As with the allegations set forth in his eleventh ground for relief, Petitioner essentially concedes that he failed to preserve his twelfth ground at trial but argues that his trial counsel's ineffectiveness satisfies the cause-and-prejudice standard for excusing his default and allowing federal review. (*Id*. at Page ID # 9502-9505.) Petitioner also argues that this claim was properly raised in postconviction, and should not have been dismissed on the basis of *res judicata*, because the claim was supported by evidence outside the trial record. (*Id*. at Page ID # 9506-9507.) Also as with his eleventh ground for relief, Petitioner curiously references case law governing claims of ineffective assistance of appellate counsel offered as cause, without making any corresponding argument that he is actually offering appellate counsel ineffectiveness as cause, and requests an evidentiary hearing on the issue of

---

effectiveness of his appellate attorneys. See ECF No. 17, at Page ID # 431.

cause and prejudice. Finally, Petitioner disputes Respondent's assertion that paragraph 410 was never presented to the state courts, asserting that any differences between what Petitioner argued on direct appeal to the Ohio Supreme Court and what he argues here to this Court are illusory. (*Id.* at Page ID 9507-9508.)

In reply, Respondent reiterates that Petitioner's claim should be dismissed in its entirety. (ECF No. 86, at Page ID # 10400-10402.) Respondent asserts that Petitioner has failed to establish either ineffective assistance of trial counsel or ineffective assistance of appellate counsel sufficient to excuse the default of his claim. (*Id.* at Page ID # 10401.) With respect to Petitioner's contention that he did include on direct appeal the allegations he raises in paragraph 410, Respondent argues that the paragraphs to which Petitioner points in his brief on direct appeal are conclusions and raise no arguments or case law about the reliability of the exhibits at issue. (*Id.* at Page ID # 10402.)

As a preliminary matter, because Petitioner's claim focuses squarely on whether the admission of the tape and transcript, combined with the failure to authenticate and play that tape in open court, violated Petitioner's rights, Petitioner's claim involved matters that occurred at trial, relied in no way on evidence outside of the trial record, and accordingly belonged on direct appeal. Petitioner's inclusion of the claim in postconviction and submission of non-record exhibits in support could have revived his otherwise defaulted claim only if the state courts ignored *res judicata* and reached the merits of the claim. But they did not. They denied Petitioner's claim on the basis of *res judicata*. (ECF No. 51-7, at Page ID # 3186; ECF No. 51-8, at Page ID # 3454-3455.)

In view of the foregoing, as well as the fact that Petitioner conceded that he failed to

preserve his claim at trial, the only issue for the Court to determine is whether Petitioner's claim of ineffective assistance of trial counsel meets the cause-and-prejudice standard for excusing procedural default. The Court concludes that it does not.

In rejecting Petitioner's claim that his trial attorneys were ineffective for stipulating to the admission of the tape and transcript, the Ohio Supreme Court noted that "[b]y introducing the tapes, counsel had the benefit of presenting Davis's proclamations of innocence to the jury, without the risk of having Davis take the stand." (ECF No. 51-5, at Page ID # 2264.) Addressing both Petitioner's claims that the tape and transcript had not been authenticated and that the admission without his presence and/or failure to play the tape in open court violated his right to be present at a critical stage, the Ohio Supreme Court twice stated that trial counsel's stipulation to the admission of the tape and transcript was a tactical decision. (*Id*. at Page ID # 2264-2265.) Petitioner argues that there was no evidence in the record to suggest that the decision was tactical or was based on any investigation (ECF No. 72, at Page ID # 9503); the Court disagrees.

Review of the record reveals ample evidence that defense counsel's decision to stipulate to the admission of the tape and transcript was a tactical one borne of sufficient investigation. Specifically, review of defense counsel's opening and closing statements, as well as cross-examination of Detective Vanoy, demonstrates that defense counsel had listened to the tape, had reviewed the transcript, and wanted the jury to do to the same. The record supports the Ohio Supreme Court's observation that "[b]y introducing the tapes, counsel had the benefit of presenting Davis's proclamations of innocence to the jury, without the risk of having Davis take the stand." (ECF No. 51-5, at Page ID # 2264.) Defense counsel utilized their cross-

96

examination of Detective Vanoy about his first interview with Petitioner to elicit from Detective

Vanoy, on the stand and under oath, that at no time had Petitioner ever acknowledged being the

person who had murdered Elizabeth Sheeler. (ECF No. 52-4, at Page ID # 7580-7581.) During

that cross-examination, defense counsel several times voiced his belief that the jury would be

able to hear that tape. (*Id*. at Page ID # 7576, 7580.) And it is evident from defense counsel's

closing arguments that they had listened to the tape and reviewed the transcript of the tape. (ECF

No. 52-5, at Page ID # 8069, 8083.) Defense counsel concluded their closing arguments by

beseeching the jury to listen to the tape. (*Id*. at Page ID # 8108.) Contrary to Petitioner's

argument that "[t]here was no evidence in the record before the Supreme Court of Ohio to

suggest that there had been a 'tactical decision to permit the introduction of the tapes and

transcript' " (ECF No. 72, at Page ID # 9503), the record contains ample evidence that counsel's

decision to stipulate to the admission of these exhibits was a tactical one, that counsel intended to

rely on the exhibits in support of the defense theory of actual innocence/mistaken identity, and

that counsel's decision was supported by investigation into the exhibits and the state's case

against Petitioner. Petitioner has accordingly failed to demonstrate ineffective assistance of

counsel sufficient to satisfy the cause-and-prejudice standard for excusing procedural default.

Although the foregoing is dispositive of the entirety of ground twelve, the Court also

agrees with Respondent's argument that the allegations set forth in paragraph 410 of the Petition

are defaulted because they were never presented to the state courts. There, Petitioner adds the

argument, citing *Evitts v. Lucey*, 469 U.S. 387, 401 (1985), that when a state elects to act in a

field involving discretionary elements, the state must nonetheless act in accord with the dictates

of the Due Process Clause. (ECF No. 85, at Page ID # 10037-10038.) Although Petitioner

included references to due process and reliability throughout the claim he raised on direct appeal, nowhere did he make the argument set forth in paragraph 410. That is, the claim that Petitioner argued on direct appeal did not provide the Ohio Supreme Court with sufficient notice or opportunity to address the distinct argument that Petitioner raises in paragraph 410. On that basis, the Court finds that paragraph 410 is subject to the additional default of never having been presented to the state courts.

That said, the fact remains that Petitioner's twelfth ground for relief is defaulted in its entirety. Petitioner did not preserve the issue at trial, did not revive the claim in postconviction, and has not satisfied the cause-and-prejudice standard for excusing the default.[6] Respondent's motion to dismiss Petitioner's twelfth ground for relief as procedurally defaulted is **GRANTED**.

I. Ground Thirteen: Pervasive introduction in both phases of prejudicial victim impact evidence.

Respondent asserts that ground thirteen, where Petitioner challenges the prosecutor's pervasive introduction and emphasis of emotionally charged victim impact evidence, is barred by procedural default in its entirety, due to Petitioner's failure to object to the evidence at trial. (ECF No. 65, at Page ID # 9362.)

Petitioner disagrees. First, Petitioner asserts that because the Ohio Supreme Court noted that defense counsel objected when the prosecutor referenced the victim's age in arguing that Petitioner's abusive childhood was not mitigating, the Ohio Supreme Court addressed that component of his claim on the merits and did not unambiguously enforce default against it. (ECF No. 72, at Page ID # 9508-9509.) Next, Petitioner argues that to the extent the Ohio

---

[6] For the reasons discussed above in connection with Petitioner's eleventh ground for relief, ineffective assistance of appellate counsel cannot establish cause and prejudice to excuse the default of ground twelve.

Supreme Court reviewed the remaining components of Petitioner's claim for plain error, the

Ohio Supreme Court addressed the federal constitutional question sufficient to permit federal

review of the claim. (*Id*. at Page ID # 9509.) Petitioner devotes the remainder of his response to

the argument that his trial attorneys were ineffective for failing to object to the victim-impact

evidence. (*Id*. at Page ID # 9509-9512.)

Respondent takes issue with each of Petitioner's arguments. First, with respect to

Petitioner's assertion that the Ohio Supreme Court addressed on the merits that the prosecutor

should not have referenced the victim's age in arguing that there was no connection between

Petitioner's abusive childhood and the murder, Respondent points out that "Davis' petition does

not even reference this comment; rather he argues *generally* that it was improper to display Ms.

Sheeler's photograph and comment on her age." (ECF No. 86, at Page ID # 10403 (emphasis in

original) (citing Sub. Second Amend. Pet., ECF No. 85, at Page ID # 10039-10042 ¶¶ 414-423).)

Respondent continues:

> He makes no reference to what *specific* facts or comments he believes were
> improper. Habeas Rule 2 requires Davis to specify his grounds for relief and the
> facts supporting each ground. "Notice pleading is not sufficient[.]" *Mayle v.
> Felix*, 545 U.S. 644, 655 (2005). But, mere notice pleading is precisely what
> Davis has attempted.

(ECF No. 86, at Page ID # 10403 (emphasis in original).)

Next, Respondent disputes Petitioner's suggestion that because he raised the claim on

direct appeal and the Ohio Supreme Court had the "opportunity" to address the federal question,

his default should be excused. "This is insufficient[,]" Respondent argues, because "the Ohio

Supreme Court's plain error review is an enforcement of the adequate and independent state

court procedural bar which mandates a finding of procedural default." (*Id*.)

99

Finally, Respondent argues that Petitioner cannot establish cause and prejudice to excuse his default. To the extent Petitioner raises trial counsel ineffectiveness as "cause," Respondent asserts that "Davis cannot escape the reasonable findings of the Ohio Supreme Court, to which this Court must defer, that his counsel were not ineffective." (*Id.* at Page ID # 10404.) To the extent Petitioner suggests appellate counsel ineffectiveness constitutes "cause," Respondent maintains that Petitioner's argument "again seems out of place[,]" both because appellate counsel *did* raise these issues on direct appeal and because Petitioner expressly waived any challenge to the effectiveness of his appellate counsel at the outset of these habeas corpus proceedings. (*Id.* (citing ECF No. 17, at Page ID # 431).) Respondent's arguments are well taken—with one notable exception.

The record demonstrates that Petitioner sufficiently preserved any claim challenging the prosecutor's references during penalty-phase closing arguments to the victim's age. During the prosecutor's initial penalty-phase closing argument, defense counsel made an objection. At the bench and out of the hearing of the jury, defense counsel explained as follows:

> Your Honor, I have heard Mr. Oswalt mention at least five times that we're talking about an 86-year old victim. To me that would be a nature and circumstance of the offense and his argument is aggravating circumstance, not as mitigating factor. I'm not going to stand up and argue that it's a mitigating factor clearly, but again, the fact that she was an 86-year old woman goes to the nature and circumstance of the offense. It's being argued as – being argued as an aggravating circumstance in my opinion.

(ECF No. 52-5, at Page ID # 8442-8443.) Subsequently, during the prosecutor's rebuttal penalty-phase closing arguments, defense counsel immediately objected when the prosecutor asked again, "[s]o, what about this man's childhood would cause him to sexually assault, or attempt to do so, kidnapping, rob and burglarize the apartment of an 86-year old woman -- " (*Id.*

at Page ID # 8491.)  Although it was when the prosecutor asked where the connection was between Petitioner's abusive family history and his assault and restraint of an 86-year-old woman that defense counsel twice objected, the substance of defense counsel's initial objection strikes this Court as a universal challenge to any reference by the prosecutor during penalty-phase closing arguments to the victim's age.

In his thirteenth ground for relief, Petitioner three times challenges the prosecutor's repeated references to the victim's age.  (ECF No. 85, at Page ID # 10040 ¶ 417, ¶ 418, ¶ 420.)  The last of these three references took specific aim at the prosecutor's penalty-phase references to the victim's age—albeit not specifically those that occurred during the prosecutor's penalty-phase closing arguments.  The Court concludes that to the extent Petitioner argues in his thirteenth ground for relief that the prosecutor's references during penalty-phase closing arguments to the victim's age was improper and prejudicial, that argument is properly before this Court for review on the merits.  The first part of the *Maupin* test is not satisfied as to that component because Petitioner complied with Ohio's contemporaneous objection rule as to that component—but only that component.

The Court rejects Petitioner's assertion that when the Ohio Supreme Court reviewed the remaining parts of his claim for plain error, it addressed the federal constitutional question sufficient to permit federal review.  (ECF No. 72, at Page ID # 9509.)  The Court likewise rejects any suggestion by Petitioner that in rejecting the merits of certain components of the claim *en route* to finding no plain error, the Ohio Supreme Court somehow failed to enforce default against those components of the claim.  As this Court previously explained, when a state appellate court conducts plain error review, it is enforcing, not ignoring, a state procedural bar.

101

*Williams v. Bagley*, 380 F.3d at 968-69 (and cases cited therein).  The Court accordingly rejects any suggestion that the Ohio Supreme Court never engaged in plain error review but instead reviewed Petitioner's claim on the merits.  That is simply not the case.  When the Ohio Supreme Court proceeded to evaluate the challenged comments and determine that they were correct summations of state law, the court did so expressly for the purpose of holding that the challenged comments did not constitute plain error and that counsel were not ineffective for failing to object to them.  (ECF No. 51-5, at Page ID # 2276-2277.)  Along those lines, this Court also previously explained that a reviewing court that endeavors to explain why a claimed error does not constitute plain error should be lauded, not punished.  The Court is satisfied that all but a challenge to the prosecutor's references during penalty-phase closing arguments to the victim's age is subject to procedural default, absent a showing of cause and prejudice.

Petitioner fails, however, to show cause and prejudice.  The Ohio Supreme Court rejected Petitioner's claim that his attorneys had been ineffective for failing to object to the allegedly improper victim impact evidence.  (ECF No. 51-5, at Page ID # 2277.)  With respect to the display of and frequent references to a photograph of the victim, the Ohio Supreme Court noted that admission of photographs is left to the discretion of the trial court, that the prosecutor showed it to the jury to acquaint the jury with the victim, and that the prosecutor properly showed the photograph to witnesses so they could identify her.  The Ohio Supreme Court also found no evidence that Petitioner was prejudiced.  As for the prosecutor's repeated references to the fact that the victim was 86-years old, the Ohio Supreme Court noted that the victim's age was relevant to the facts of the case, such as demonstrating why neighbors were concerned when they had not seen the victim for a few days and how little force was needed to overcome the victim.  In

the only instance where reference to the victim's age was arguably objectionable, defense counsel did object to—twice. And the first of those objections prompted the trial court to caution the prosecutor to clarify what was aggravating—the statutory aggravating circumstances the jury found beyond a reasonable doubt—and what was not, *i.e.*, the fact that the victim was 86-years-old vis-à-vis the mitigating evidence Petitioner had presented about his abusive childhood.

In view of the foregoing, it is difficult to find either deficient performance or prejudice sufficient to find unreasonableness in the Ohio Supreme Court's decision that counsel were not ineffective. The Ohio Supreme Court identified valid evidentiary reasons for the introduction of and references to the allegedly improper victim impact evidence. The Court is not persuaded that the evidence at issue was so inflammatory or unduly prejudicial in view of the well-established facts of the case that prevailing professional norms demanded repeated objections. Counsel in this case did not perform deficiently or to Petitioner's prejudice in failing to object to evidence or remarks that at worst barely brushed the margins of impropriety and but could scarcely be viewed as unduly prejudicial. *Cf. Seymour v. Walker*, 224 F.3d 542, 556 (6th Cir. 2000) (finding no ineffective assistance for failing to object to allegedly improper remarks by the prosecutor); *see, e.g., Bates v. Secretary, Florida Dept. of Corrections*, 768 F.3d 1278, 1297-99 (11th Cir. 2014) (discussing the difficulty in finding ineffective assistance for the failure to object); *Hooper v. Mullin*, 314 F.3d 1162, 1174 (10th Cir. 2002) (finding no ineffective assistance for the failure to object to victim impact evidence that was harmless). Petitioner's assertion of ineffective assistance of trial counsel does not satisfy the cause-and-prejudice standard. For reasons already discussed, appellate counsel ineffectiveness does not and cannot

103

excuse this default.

With the exception of any challenges to the prosecutor's reference during penalty-phase closing arguments to the victim's age, Respondent's motion to dismiss ground thirteen as procedurally defaulted is **GRANTED**.

J. Ground Fifteen: Penalty-phase jury instructions.

Respondent argues that ground fifteen, where Petitioner raises numerous challenges to the trial court's penalty-phase instructions, is defaulted in its entirety, due to Petitioner's failure to object to any of the challenged instructions at trial. (ECF No. 65, at Page ID # 9362.)

In response, Petitioner first suggests that "defense counsel *did* make contemporaneous objections to most of the instructions at trial." (ECF No. 72, at Page ID # 9513 (emphasis added).) Petitioner further argues that "[b]ecause the Ohio Supreme Court did not expressly and unambiguously review under a plain error analysis or otherwise rely on a procedural rule in rejecting the argument raised in Section C, it is not procedurally defaulted." (*Id*.) Petitioner similarly argues that "because the court was given a full and fair opportunity to rule on Davis' claims and addressed the federal constitutional question without relying upon the contemporaneous objection rule to preclude a merits review, federal review is not barred." (*Id*. at Page ID # 9514.) Petitioner devotes the remainder of his response to arguing the merits of his claim. (*Id*. at Page ID # 9514-9518.)

Respondent asserts in reply that any argument by Petitioner that his defense counsel *did* object to *any* part of the penalty-phase instructions is a "mischaracterize[ation] of the record." (ECF No. 86, at Page ID # 10405.) To that point, Respondent emphasizes that defense counsel raised no objections to penalty-phase instructions, save for one objection to the use of the word

"recommend" in describing the jury's sentencing verdict, which instruction Petitioner does not

even challenge. "And once again," Respondent continues, "Davis mischaracterizes the Ohio

Supreme Court's treatment of the claim." (*Id.*) According to Respondent, the Ohio Supreme

Court clearly and unambiguously stated that it was reviewing Petitioner's claim only for plain

error if the court did not expressly note an objection. That plain error review, Respondent

reminds, constitutes an enforcement of the contemporaneous objection rule, not an opening for a

merits review in habeas corpus. (*Id.* at Page ID # 10405-10406.) Finally, Respondent notes that

"[u]nlike many of his other claims, Davis does not assert that ineffective assistance of counsel

provides cause and prejudice to excuse his default." (*Id.* at Page ID # 10406.) Respondent

asserts that even if Petitioner had, the argument would fail because this Court must defer to the

Ohio Supreme Court's determination that there was no ineffective assistance in this regard.

As a preliminary matter, review of the transcript (ECF No. 52-5, at Page ID # 8494-8510)

confirms Respondent's assertion that with the exception of the trial court's use of the word

"recommend" in describing the jury's sentencing verdict (*Id.* at Page ID # 8511) Petitioner did

not object to any portion of the penalty-phase instructions. Petitioner will not be heard to

suggest otherwise. Within the parameters of the *Maupin* test, that means that Petitioner violated

a state procedural rule that plainly applied to his claim.

Turning to the second and third parts of the *Maupin* test, for reasons this Court has

already explained and reiterated, Petitioner will not be heard to argue that the Ohio Supreme

Court failed to include the words "plain error" often enough to constitute a clear and

unambiguous enforcement of Petitioner's default. Where, as here, the Ohio Supreme Court

began its discussion of Petitioner's claim by noting that Petitioner had waived all but plain error

due to his failure to object, and then proceeded to expressly mention finding no plain error not

once, not twice, not three times, but four times—it tests the limits of credulity to suggest that the

Ohio Supreme Court was reviewing Petitioner's claim for anything but plain error or an instance

of ineffective assistance of trial counsel. For the same reasons, the Court rejects any argument

that the mere act of raising on direct appeal a claim that was waived at trial somehow gave the

Ohio Supreme Court a full and fair opportunity to address the federal question sufficient to

forgive the unmistakable forfeiture and permit federal review.

The fourth part of the *Maupin* allows federal review of an otherwise-defaulted claim

where Petitioner satisfies either the cause-and-prejudice test or the fundamental miscarriage of

justice/actual innocence exception. Petitioner argues neither. For the foregoing reasons,

Respondent's motion to dismiss Petitioner's fifteenth ground for relief is **GRANTED**.

K. Ground Sixteen: Prosecutorial misconduct.

Petitioner in his sixteenth ground for relief raises a myriad of allegations of prosecutorial

misconduct. (ECF No. 85, at Page ID # 10059-10089, ¶¶ 462-534.) Respondent argues that

most of this claim is procedurally defaulted, due to Petitioner's failure to timely object at trial.

(ECF No. 65, at Page ID # 9362-9365.) Respondent additionally argues that certain components

of Petitioner's sixteenth ground for relief are defaulted because they were never presented and

now no longer can be. In response, Petitioner asserts either that the Ohio Supreme Court did not

enforce default against his claims or that ineffective assistance of trial counsel constitutes cause

to excuse any default.[7] (ECF No. 72, at Page ID # 9518-9523.)

---

[7] To the extent Petitioner also includes nonspecific references to appellate counsel ineffectiveness as cause to excuse any default, this Court has already noted that Petitioner at the outset of these proceedings waived the right to challenge his appellate counsel's effectiveness.

As to sub-part (A), where Petitioner alleges that the prosecutor improperly vouched for witnesses, Respondent argues that, with one exception (paragraph 465), the allegations are defaulted due to Petitioner's failure to object. Petitioner counters that in addressing the alleged vouching for witnesses Tarianne Paxson, Susan Fowls, and Richard Hummel, the Ohio Supreme Court did not rely on plain error analysis and simply ruled on the merits. (ECF No. 72, at Page ID # 9519.)

Petitioner complains in sub-part (B) that "[t]he prosecutor improperly elicited and argued that the defense had no expert witnesses by repeatedly eliciting testimony from his experts that all test results and notes had been turned over to the defense." (ECF No. 85, at Page ID # 10064, 10064-10065.) Respondent argues that this sub-part, with one exception, is defaulted because Petitioner failed to object at trial. Respondent concedes that the last sentence of paragraph 473, as well as paragraph 474 in its entirety, were objected to and preserved for habeas review. (ECF No. 65, at Page ID # 9363.) Petitioner contends that "the Ohio Supreme Court again did not rely on plain error analysis, but instead ruled on the merits[.]" (ECF No. 72, at Page ID # 9519.)

In sub-part (C), Petitioner asserts that the prosecutor repeatedly argued improper victim impact evidence—the same allegations, essentially, that comprised Petitioner's thirteenth ground for relief. Respondent argues that the entire sub-part is defaulted because Petitioner failed to object to the questions and comments at issue. (ECF No. 65, at Page ID # 9363.)

As to sub-part (D), where Petitioner charges that the prosecutor improperly commented on Petitioner's silence and shifted the burden of proof, Respondent argues that the sub-part is defaulted in its entirety due to Petitioner's failure to object to any of those instances at trial. (ECF No. 65, at Page ID # 9364.)

Respondent also argues that sub-part (E) is defaulted in its entirety, due to Petitioner's failure to object. (ECF No. 65, at Page ID # 9364.) Petitioner argues there that the prosecutor improperly denigrated defense counsel.

In sub-part (F), Petitioner alleges that it was improper for the prosecutor to request that the jury return a conviction to bring justice. Respondent argues again that this entire sub-part is defaulted due to Petitioner's failure to object.

Finally, Respondent argues that sub-part (G) is defaulted in its entirety because of Petitioner's failure to object. There, Petitioner raises several allegations of alleged penalty-phase misconduct. Petitioner asserts that with respect to his allegations challenging improper remarks during the penalty-phase opening statement, "the Ohio Supreme Court did not rely on plain error analysis." (ECF No. 72, at Page ID # 9519.)

Although it does not appear that Respondent directed a procedural default defense at Petitioner's allegation in ground sixteen that the prosecutor failed to disclose impeachment information, Petitioner asserts that the Ohio Supreme Court did not rely on plain error analysis in rejecting that allegation. (ECF No. 72, at Page ID # 9519.)

In reply, Respondent reiterates that "the only paragraphs *not defaulted* are paragraph 465, the last sentence of paragraph 473, paragraph 474, and paragraphs 524 through 529." (ECF No. 86, at Page ID # 10407 (emphasis in original).) As to any parts of ground sixteen that are subject to default, Respondent disputes Petitioner's contention that ineffective assistance of counsel constitutes cause to excuse the default. "Again," Respondent asserts, "Davis incorrectly maintains that merely *raising* a claim of ineffective assistance of counsel *proves* he was, in fact, denied the effective counsel." (*Id*. (emphasis in original).) Finally, Respondent maintains that

the Ohio Supreme Court was unambiguous in its enforcement of default against Petitioner's claim, and that Petitioner continues to misconstrue "the effect of the Ohio Supreme Court saying 'except where noted, trial counsel failed to object and waived all but plain error.' " (*Id.* at Page ID # 10407, 10407-10415.)

As a preliminary matter, Respondent concedes that the following components of Petitioner's sixteenth ground were objected to at trial and are properly before this Court for review on the merits: paragraph 465 (where Petitioner alleges generally that prosecutor improperly expressed personal opinions about the credibility of witnesses); the last sentence of paragraph 473 (where Petitioner faults the prosecutor for asking state DNA expert Meghan Clement whether she had provided documentation to any defense expert); paragraph 474 (where Petitioner attacks the prosecutor's arguments suggesting that the failure of defense counsel to present a DNA expert could be construed as a concession that the state's DNA experts were correct); and paragraphs 524 through 529 (where Petitioner alleges that the prosecutor failed to disclose impeachment evidence about inmate-witness Richard Hummel). The Court accordingly will review those components of ground sixteen on the merits.

Having read in its entirety—rather than favorably parsing—the Ohio Supreme Court's decision addressing Petitioner's claims of prosecutorial misconduct, the Court agrees with Respondent that the Ohio Supreme Court unambiguously enforced the contemporaneous objection rule against Petitioner's claim. The Ohio Supreme Court began its analysis by stating, "except where noted, trial counsel failed to object and waived all but plain error." (ECF No. 2277.) That means that unless the Ohio Supreme Court specifically noted an instance to which trial counsel objected, the Ohio Supreme Court was conducting plain error analysis. Although

109

recitation of that qualifying language was all that the Ohio Supreme Court needed to do to enforce default against Petitioner's claim, the Ohio Supreme Court proceeded to specifically mention finding no plain error twice in discussing Petitioner's allegations of improper vouching (ECF No. 51-5, at Page ID # 2277-2278), twice in discussing Petitioner's allegations of improper arguing of victim impact evidence (*Id*. at Page ID # 2278-2279), three times in discussing Petitioner's allegations of improper comment on his silence (*Id*. at Page ID # 2279-2281), once in discussing Petitioner's allegations of improper denigration of defense counsel (*Id*. at Page ID # 2281), once in discussing Petitioner's allegations of improperly calling for justice (*Id*. at Page ID # 2282), and seven times in discussing Petitioner's allegations of improper penalty-phase conduct (*Id*. at Page ID # 2282-2284). The Court categorically rejects Petitioner's assertion that the Ohio Supreme Court failed to unambiguously enforce default against his allegations of prosecutorial misconduct except where the Ohio Supreme Court expressly noted otherwise.

All that remains to be determined, therefore, is whether Petitioner has demonstrated that trial counsel performed deficiently and to Petitioner's prejudice in failing to object to the alleged instances of prosecutorial misconduct, sufficient to satisfy the cause-and-prejudice standard for excusing default. The Court cannot find that. First, to the extent the Ohio Supreme Court expressly found that Petitioner's trial attorneys had not provided ineffective assistance for failing to object to certain alleged instances of prosecutorial misconduct, that constitutes an adjudication on the merits within the meaning of 28 U.S.C. § 2254(d). This Court accordingly cannot find that those instances provide cause unless the Court finds that the Ohio Supreme Court's determinations were not just erroneous, but unreasonable. Petitioner's arguments certainly do not make that case and the record does not otherwise demonstrate as much. Beyond that, even

110

outside the reach of § 2254(d)'s strictures, this Court is not persuaded that Petitioner's attorneys performed deficiently and to his prejudice sufficient to satisfy the cause-and-prejudice standard.

In *Schauer v. McKee*, 401 Fed. App'x 97 (6th Cir. 2010), the Sixth Circuit addressed a claim of ineffective assistance of counsel for the failure to object to alleged prosecutorial misconduct. The Sixth Circuit observed that, even assuming the prosecutor's challenged remarks were improper:

> To breach the unreasonableness threshold, "defense counsel must so consistently fail to use objections, despite numerous and clear reasons for doing so, that counsel's failure cannot reasonably have been said to have been part of a trial strategy or tactical choice." *Lundgren v. Mitchell*, 440 F.3d 754, 774-75 (6th Cir. 2006). Conversely, "any single failure to object [to closing arguments] usually cannot be said to have been error." *Id*. at 774; *see also Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010) (finding that defense counsel's failure to object to one instance of alleged prosecutorial misconduct was not deficient). Together, these precepts suggest that Schauer's defense counsel's failure to object to this aspect of the prosecution's closing argument falls within the broad range of reasonable trial conduct under *Strickland*.

*Id*. at 101.

To the extent Petitioner argues that his trial attorneys performed deficiently and to his prejudice in failing to object to the alleged instances of prosecutorial misconduct that Petitioner raises, the Court notes as a preliminary matter that the Ohio Supreme Court reasonably concluded that many of the challenged instances were not improper. (ECF No. 51-5, at Page ID # 2277-2288.) Defense counsel's failure to object to those challenged instances was neither unreasonable deficient nor prejudicial.

Characterizing his counsel's ongoing failure to object to alleged prosecutorial misconduct as "woefully deficient," Petitioner implies that his counsel's failure to object was neither tactical nor strategic. (ECF No. 72, at Page ID # 9520.) The Court cannot find, however, that the Ohio

Supreme Court's determination otherwise was unreasonable. Petitioner's trial counsel announced at the outset that despite the volume of exhibits and witnesses the state planned to present, counsel's defense theory would focus on a single issue—namely, the identity of the person who killed the victim. (ECF No. 52-3, at Page ID # 7125-7127.) Explaining that Petitioner had become a suspect on the basis of a drop of blood on a towel, defense counsel implored the jury to carefully consider the DNA evidence in light of the fact that there were other explanations for the presence of the blood and other individuals who had the same opportunity, motive, means, relationship with the victim, and DNA characteristics as Petitioner. Whether counsel's defense theory was reasonable trial strategy is not at issue in this instance; it is sufficient for purposes of this discussion to note it was the strategy counsel formulated, announced, and pursued. Repeated objections to the alleged misconduct highlighted by Petitioner would not have materially assisted the theory of defense and, in some circumstances, would have run the risk of drawing attention the jury's attention away from that theory. Further, to the extent that any of the alleged misconduct focused on unfavorable evidence or facts, or involved information immaterial to counsel's defense theory, the Court notes that abstaining from objections so as not to draw undue attention to damaging remarks can be a valid strategic decision. *Schauer*, 401 Fed. App'x at 100-01. When the prosecutor did, according to Petitioner, improperly suggest to the jury that it should construe against Petitioner the fact that he presented no DNA expert despite having access to the state's DNA reports and accept as true the state's DNA expert testimony— questionable suggestions that went to the heart of the defense theory— trial counsel did make an objection which the trial court sustained. (ECF No. 52-5, at Page ID # 7969-7970.)

112

It is untenable in view of the foregoing to conclude that defense counsel fell below prevailing professional norms in failing to object to the instances of alleged prosecutorial misconduct that Petitioner raises. Moreover, the Court is equally unpersuaded that Petitioner was prejudiced. That is, the Court the record does not demonstrate that, had counsel lodged the many objections Petitioner asserts they should have, there is a reasonable probability that the outcome of Petitioner's trial would have been different. That is especially so where counsel in closing arguments undermined several of the prosecutor's allegedly improper arguments, such as comments by the prosecutor highlighting Petitioner's silence and bolstering certain witnesses. (ECF No. 52-5, at Page ID # 8066-8109.) It also bears noting that the trial court properly instructed the jury on such matters as the burden of proof (ECF No. 52-5, at Page ID # 8134-8135), the fact that it was within jurors' province alone to determine credibility (*Id*. at Page ID # 8137-8138) , and the fact that counsel's arguments are not evidence (*Id*. at Page ID # 8136-8137).

This is not a case such as *Hodge v. Hurley*, 426 F.3d 368, 375-76 (6th Cir. 2005), where the outcome of the trial depended primarily on the jury's belief as to whether the accused or accuser was more credible. There, Sixth Circuit deemed it outside the wide range of professional conduct and prejudicial for defense counsel not to object to numerous instances of patent misconduct that went directly to the central issue of who was more credible: the accused or the accuser. Here, it was neither deficient performance nor prejudicial for counsel to have failed to make repeated objections to conduct that was not glaringly improper or unduly damaging. That being so, Petitioner fails to demonstrate cause and prejudice sufficient to excuse the default of his sixteenth ground for relief. Respondent's motion to dismiss ground sixteen is **GRANTED**,

113

except as to paragraph 465.

L. Ground Seventeen: State's alleged failure to disclose *Brady* evidence.

In his seventeenth ground for relief, Petitioner argues that the prosecution failed to disclose material impeachment evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Specifically, Petitioner faults the prosecution for failing to disclose that jailhouse informant Richard Hummel and violated his probation, as well as reliability issues concerning hair, blood spatter, bodily fluids, trace, fingerprint, DNA and other forensic evidence. (ECF No. 85, at Page ID # 10090-10092, ¶¶ 535-548.)

Respondent argues that the arguments contained in the last two sentences of paragraph 536 and in paragraphs 539 and 540, concerning the failure to disclose impeachment evidence about Richard Hummel, are procedurally defaulted because Petitioner never presented them to the state courts and now no longer can. (ECF No. 65, at Page ID # 9364-9365.) Respondent raises the same argument against paragraphs 541 through 545, concerning the failure to disclose the unreliability of certain forensic evidence. (*Id*. at Page ID # 9365.)

Pointing to arguments he raised on direct appeal and in postconviction, Petitioner asserts that the allegations he makes now concerning Richard Hummel are the same as or substantially equivalent to allegations he presented to the state courts. (ECF No. 72, at Page ID # 9523-9525.) Petitioner makes the same argument as to the alleged unreliability of certain forensic evidence and Detective Elliget's testimony about that evidence, by referring the Court to arguments he raised in connection with his seventh ground for relief, *i.e.*, ECF No. 72, at Page ID # 9476-9491. The Court agrees with the former but not the latter.

The Court is satisfied that Petitioner sufficiently presented to the state courts the

114

substance of the arguments he raises here concerning the prosecutor's failure to disclose as impeachment evidence the fact that jailhouse informant Richard Hummel had violated his probation. Petitioner presented that claim on direct appeal (ECF No. 51-3, at Page ID # 1844-1846), as well as in postconviction (ECF No. 51-5, at Page ID # 2600-2601). The essence of Respondent's motion to dismiss is that here, Petitioner adds allegations that he never presented to the state courts, to wit: that the prosecution's failure to disclose Hummel's probation violation hampered Petitioner's right under the Sixth Amendment's Confrontation Clause to fully challenge Hummel's truthfulness. (ECF No. 65, at Page ID # 9364-9365; ECF No. 86, at Page ID # 10416-10417). The Court is not persuaded, however, that those additional allegations so dramatically change the claim that it cannot be said the claim Petitioner raises here is not the claim the state courts considered. The allegations at issue are more akin to an elaboration as to the manner in which the suppressed evidence prejudiced Petitioner's rights than they are to a new legal theory or factual argument that fundamentally alters the claim the Ohio courts considered. Paragraphs 536, 539, and 540 are properly before the Court.

That is not the case as to those components of ground seventeen alleging that the prosecution failed to disclose reliability issues concerning certain forensic evidence. (ECF No. 85, at ¶¶ 541-545.) Those allegations were not fairly presented to the state courts. Nowhere in his direct appeal or postconviction claims raising a *Brady* allegation did Petitioner include an assertion that the prosecution suppressed evidence related to the reliability of the forensic evidence. (ECF No. 51-3, at Page ID # 1844-1845; ECF No. 51-5, at Page ID # 2600-2601.) Petitioner does contend otherwise.

The only time that Petitioner questioned the reliability of forensic evidence was when

115

Petitioner alleged that Detective Elliget's testimony concerning the forensic evidence was erroneously presented as "expert testimony" because it was without proper foundation as required by *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). That *Daubert* claim is wholly distinct from a *Brady* claim. Nowhere in his state-court pleadings did Petitioner link his arguments about the forensic evidence and Detective Elliget's testimony about the forensic evidence to any alleged suppression by the prosecutor. The only conduct on the part of the prosecutor that Petitioner challenged as improper with respect to Detective Elliget's testimony was the prosecutor's eliciting of testimony about the availability of the forensic evidence for defense testing. (ECF No. 51-3, at Page ID # 2270.) Nowhere in arguments concerning Detective Elliget's testimony about forensic evidence did Petitioner mention or hint to *Brady v. Maryland*. Under these circumstances, it is far-fetched to suggest that the state courts were given sufficient notice and opportunity to address any semblance of a *Brady* claim.

Pursuant to the *Maupin* test, that component of Petitioner's seventeenth ground for relief is subject to dismissal as procedurally defaulted, absent a showing of either cause and prejudice or a fundamental miscarriage of justice. Petitioner demonstrates neither. Paragraphs 541 through 545 are barred by procedural default.

For the foregoing reasons, Respondent's motion to dismiss ground seventeen is **GRANTED** only as to paragraphs 541 through 545.

M. Ground Eighteen: Ineffective assistance of trial counsel.

In his eighteenth ground for relief, Petitioner devotes 246 paragraphs over 67 pages to raising roughly 30 instances of alleged ineffective assistance of trial counsel. (ECF No. 85, at Page ID # 10094-10161.) Respondent argues that several of these are barred by procedural

116

default and one of them is barred by the statute of limitations.  (ECF No. 65, at Page ID # 9365-9369.)  Petitioner disputes every one of Respondent's contentions.  (ECF No. 72, at Page ID # 9525-9558.)

Respondent concedes that ground 18(A)(2), where Petitioner argues he received ineffective assistance in connection with the security restraints he was forced to wear during trial, was largely presented on direct appeal to the Ohio Supreme Court in the thirteenth proposition of law and in postconviction as the second ground for relief.  "However," Respondent asserts, "the allegations Davis raised in paragraphs 563 through 570 were never raised in the state courts."  (ECF No. 65, at Page ID # 9365.)  Respondent argues that because those allegations were never presented and now no longer can be, they are procedurally defaulted.  Petitioner asserts that Respondent's argument has no basis in fact because "[a]ll of these allegations were presented to the state courts on direct appeal, in post-conviction, or both[]" and that Petitioner's "state court filings are substantively equivalent to those claims presented in his habeas petition."  (ECF No. 72, at Page ID # 9526, 9526-9529.)

The essence of this particular procedural default argument is that here, unlike in the state courts, Petitioner adds an assertion that his trial counsel were ineffective for not raising controlling case law arguments.  (ECF No. 86, at Page ID # 10420-10422.)  The Court disagrees and is satisfied that Petitioner fairly presented the allegations set forth in ground 18(A)(2) asserting ineffective assistance of counsel in connection with the security shackles Petitioner was compelled to wear during trial.  When Petitioner argued on direct appeal and in postconviction that his trial attorneys were ineffective for failing to object to the security restraints Petitioner was compelled to wear or to request a hearing or trial court determination on the specific

117

reason(s) security restraints (ECF No. 51-3, at Page ID # 1851-1854; ECF No. 51-5, at Page ID # 2597-2599), implicit in those arguments was an assertion that trial counsel did not sufficiently point to the controlling authority governing challenges to the wearing of security restraints. That is, Petitioner's claim gave the state courts sufficient notice and opportunity that they were being asked to adjudicate a claim that trial counsel performed deficiently and to Petitioner's prejudice in failing to challenge the security restraints that Petitioner was compelled to wear. The alleged additional argument that Petitioner raises here in sub-part(A)(2)—that counsel failed to cite and argue controlling case law in objecting to the security restraints—was essentially presented to and addressed by the state courts because the concepts that Petitioner argued derived directly from case law (ECF No. 51-7, at Page ID # 3188-3185; ECF No. 51-8, at Page ID # 3441-3445). It is specious to suggest that Petitioner's alleged addition of an argument here that trial counsel failed to cite and argue controlling case law arguing against security restraints so drastically alters the claim that it cannot be said to have been the same claim the state courts considered and rejected. The Court **DENIES** Respondent's motion to dismiss any part of ground 18(A)(2).

Respondent argues that ground 18(B)(4), where Petitioner asserts that counsel were ineffective in their investigation and presentation of a viable defense against the state's DNA and other forensic evidence, is defaulted as to paragraphs 611 through 613, paragraph 614 (parts 1 through 7, and 9), and paragraphs 615 through 619. Respondent asserts that those allegations were never presented to the state courts and now no longer can be. (ECF No. 65, at Page ID # 9365-9366.) Petitioner asserts that Respondent's allegations are contrary to the record. (ECF No. 72, at Page ID # 9530.) The Court largely agrees and finds that most of Respondent's arguments constitute parsing.

Respondent begins her default allegations with paragraphs 611 through 613. She asserts as to paragraph 611 that Petitioner "argues that counsel had a duty to investigate *before* settling on a trial strategy[,]" and that Petitioner never made that argument to the state courts. (ECF No. 86, at Page ID # 10423 (emphasis in original).) She then argues that in paragraphs 612 and 613, Petitioner, "for the first time, asserts additional standards that he believes this Court should apply." (*Id.*) "Not only were these standards not previously raised," she continues, "but they are also inaccurate recitations of the law on which they purport to rely." (*Id.*) Specifically, she takes aim Petitioner's interpretation of the scope and applicability of the ABA "*Guidelines*." She concludes by arguing that these paragraphs should be dismissed as procedurally defaulted and patently meritless. (*Id.* at Page ID # 10423.)

Petitioner counters that "[p]aragraphs 611-613 merely set out the legal standards for assessing whether counsel's performance was deficient in determining whether Davis was denied the effective assistance of counsel." (ECF No. 72, at Page ID # 9530.) The Court agrees. Paragraphs 611 through 613 consist of perhaps one-third of a page and generically set forth the well-known standards governing counsel's duty to investigate as set forth by the well-established authorities of *Strickland v. Washington*, 466 U.S. 668, 690-91 (1984); *Wiggins v. Smith*, 539 U.S. 510, 525 (2003); and ABA Guidelines 10.8 and 10.11. (ECF No. 85, at Page ID # 10113.) To the extent this particular recitation differs in some way from the recitation Petitioner presented to the state courts, any difference constitutes a nuance that does not undermine fair presentation. And whatever issue Respondent has with Petitioner's interpretation of what the ABA Guidelines require does not warrant dismissal, in view of the fact that the Court considers itself capable of identifying, interpreting, and applying controlling authority. Respondent's motion to dismiss

119

paragraphs 611 through 613 is **DENIED**.

Respondent next turns her attention to paragraph 614. For the sake of convenience and exactness, the Court sets forth that paragraph verbatim from Petitioner's Substitute Second Amended Petition:

614. Counsel's performance fell far below prevailing professional norms when:

1) counsel failed to involve an expert in DNA or any other forensic evidence, even though the trial court authorized funding for a DNA expert to assist Davis' defense;

2) counsel failed to thoroughly and reasonably investigate, including the DNA and other forensic evidence and any forensic witnesses, before settling on their trial strategy of advancing third-party-culpability as the central theory without employing independent DNA and other forensic experts to overcome the state's unrebutted DNA and other forensic evidence testimony;

3) counsel failed to investigate and present forensic evidence in support of the third-party-culpability theory and a cogent challenge to the state's DNA evidence;

4) counsel failed to investigate and exploit weaknesses in the state's DNA evidence and other forensic evidence, including contextual bias in the testing and analysis process;

5) counsel failed to thoroughly and reasonably investigate before trial to determine what forensic evidence might be available for them to introduce, or how expert testimony might support the theory they had chosen, or rebut any forensic evidence the state might present that would rebut this theory;

6) counsel failed to thoroughly and reasonably investigate and consult forensic experts who could assist during trial in such matters as how to effectively cross examine the state's forensic evidence witnesses in light of the numerous problems with forensic evidence highlighted in the NAS Report, including such things as contextual bias, or to counter the state's forensic expert testimony with expert testimony of his own.

7) counsel failed to ensure through pretrial motions or

contemporaneous objections that improper and incorrect testimony from the state's expert witnesses was not given to the jury;

8)      counsel failed to object when the state and its DNA experts misled the jury be repeatedly declaring a "match"—which is improper individualization unsupported by the science—between the evidence and DNA test results, "matching" the evidence to either Sheeler or Roland Davis, or used similarly misleading individualization language himself, (*see* Tr. At 870; 1566; 1588; 1589-90; 1597-98; 1600-01; 1602-03; 1604; 1623; 1625; 1631-32; 1686; 1688; 1689-90; 1692; 1693; 1695-96; 1765) (ECF 52 at page ID #: 7072, 7771, 7793, 7794-95, 7802-03, 7805-06, 7807-08, 7809, 7828, 7830, 7836-37, 7892, 7894, 7895-96, 7898, 7899, 7901-02, 7971);

9)      counsel failed to ensure that the prosecution and its witnesses were not permitted to testify to a "match" between Roland Davis and the DNA test results, and/or to ensure that the prosecution and its witnesses were only permitted to testify about the odds of exclusion rather than implying that the DNA tests resulted in individualized identification determinations that purported to "confirm" Roland Davis as the perpetrator of the crime, (*see id.*);

10)     counsel failed to rebut the fallacy in the state's DNA case that Randy Davis—Roland Davis' brother—could not be the source of the DNA found at the crime scene simply because Roland and Randy Davis were not identical twins, despite the defense's central theory of third-party culpability in the form of Randy Davis (*see, e.g.*, Tr. At 1799; ECF 52 at Page ID #: 8005);

11)     counsel failed to confront the state's DNA evidence by pointing out and emphasizing that the statistical probabilities of excluding Roland Davis offered by the state's experts were much lower when a male relative or a sibling, such as Randy, is put into the equation. Again, this was especially prejudicial to Davis because defense counsel offered Randy as an alternate suspect;

12)     counsel failed to confront the evidence of statistical probabilities from the state's experts—aimed at identifying Roland Davis with DNA evidence—through use of the "product rule";

13)     counsel failed to inform the jury—and rebut the state's case—by way of mathematical concepts and genetic inheritance rules. Counsel should have demonstrated to the jury the odds of the DNA

from the crime scene excluding Roland Davis were far less than that to which the State's experts testified;

14) counsel failed to reduce witness Ramen Tejwani's opinion of "1 in 547" million to as low as 1.33 or 1 in 128 by way of expert testimony. Similarly, counsel could have reduced witness Meghan Clement's opinion of "1 in 97.1 quadrillion" by a factor of a trillion, but failed to do this as well; and/or

15) counsel failed to ensure that the presumption of innocence was followed, in accordance with mathematical statistical inferences in Davis' favor, through cross examination, closing argument, development and presentation of testimony from a defense expert, and proffered jury instructions.

(*See* Post Conviction Pet. Ex. X at 26-27, Aff. of Gregory Meyers; ECF 51 at Page ID #: 3094-95.)

(ECF No. 85, at Page ID # 10113-10116.) Respondent contends that sub-parts 1 through 7, as well as sub-part 9, are procedurally defaulted because they were never raised in state court and now no longer can be. (ECF No. 86, at Page ID # 10424.) Petitioner counters that he raised substantively equivalent claims on direct appeal, and that all of these allegations were included in his postconviction action, supporting affidavit of Gregory L. Meyers, postconviction reply memorandum, motion for a new trial, and supporting affidavit of Dr. Lawrence Mueller. (ECF No. 72, at Page ID # 9531-9532.) The record supports Petitioner's contention.

Initially, the Court is skeptical that the claim Petitioner raised on direct appeal alleging ineffective assistance for failing to challenge the state's DNA evidence (ECF No. 51-3, at Page ID # 1854-1856) is substantively equivalent to the allegations Petitioner sets forth here in paragraph 614 of his eighteenth ground for relief (ECF No. 85, at Page ID # 10113-10116). That is understandable, in view of the fact that in challenging on direct appeal the effectiveness of his trial counsel, Petitioner was limited to arguing only the evidence and testimony that was

122

established at trial. That left Petitioner able to raise only a general challenge to manner in which his defense counsel attacked the state's DNA case. By lacking the many critical details set forth in paragraph 614 before this Court, that general challenge cannot reasonably be construed as a fair presentment of the allegations before this Court. The additional details and facts set forth in paragraph 614 do not alter the legal theory of the direct appeal claim but, as far more than mere elaborations of the claim that Petitioner presented on direct appeal, they nonetheless change the substance of the claim that was presented to and considered by the Ohio Supreme Court on direct appeal.

The Court is more than satisfied, however, that the substance of the allegations set forth in sub-parts 1 through 7 and 9 were fairly presented in Petitioner's amended postconviction petition. The essence of those allegations is that Petitioner's trial attorneys were ineffective for failing to utilize experts in DNA and other forensic sciences in developing and supporting their defense theory of third-party (Petitioner's brother Randy) culpability, in preparing to challenge the prosecution's DNA experts and other forensic evidence, and specifically in failing to challenge any testimony or evidence characterizing the DNA evidence in terms of a "match." The substance of those allegations was fairly conveyed to, and in fact considered by, the state courts in the sixteenth ground for relief of Petitioner's amended postconviction action (ECF No. 51-6, at Page ID # 2895-2896) and at the outset of the supporting affidavit by attorney Gregory Meyers (ECF No. 51-7, at Page ID # 3073-3075). The state courts rejected that claim on the merits, largely by rejecting the evidence in support (ECF No. 51-8, at Page ID # 3469-3473), and Respondent does not argue otherwise. Instead, Respondent hyper-focuses on specific words and phrases, and essentially on whether the state courts were presented verbatim with what Petitioner

123

presents here. (ECF No. 86, at Page ID # 10425-10426.) The fair presentment doctrine imposes no such requirement, so long as the state courts were given sufficient notice and opportunity to address the same operative facts and legal theory that the petitioner asks the federal court to consider. Here, the state courts were.[8] The Court accordingly **DENIES** Respondent's motion to dismiss any part of paragraph 614, as set forth in ECF No. 85, at Page ID # 10113-10116.

For the same reasons set forth above, the Court wholly rejects Respondent's assertions that paragraphs 615 and 616 were not fairly presented to the state courts. There, Petitioner argues that his counsel had an obligation under prevailing professional norms to do the things set forth in paragraph 614 and that Petitioner was prejudiced by counsel's failure to do so because the state's experts repeatedly (and misleadingly) gave testimony that the victim and Petitioner "matched" the biological evidence. As noted above, those allegations were fairly presented to and considered by the state courts in ground sixteen of Petitioner's amended postconviction action and supporting affidavit. Respondent's motion to dismiss paragraphs 615 and 616 is **DENIED**.

Respondent's procedural default argument against paragraphs 617 through 619, on the other hand, is well taken. There, Petitioner argues that the state's DNA evidence was questionable, overstated, and flawed, because the state' s experts did not account for the database "hit" in their statistical analysis or mention sources of uncertainty in DNA profiling, and gave incorrect testimony about non-identical-twin siblings having the same DNA. Petitioner argues that defense counsel's failure to consult an expert left them unprepared to challenge this

---

[8] The Court expresses no opinion as to whether Petitioner's raising these ineffective assistance allegations in his motion for a new trial sufficiently or additionally preserved them, in view of the fact that the state courts rejected that motion not on the merits, but as untimely.

testimony. (ECF No. 85, at Page ID # 10117-10118.) Initially, Respondent argues in her motion to dismiss only that those allegations are defaulted because Petitioner never raised them in the state courts and now no longer can. (ECF No. 65, at Page ID # 9366.) In response to Petitioner's assertion that he included all of these allegations in his motion for a new trial and supporting affidavit of Dr. Lawrence Mueller (ECF No. 72, at Page ID # 9533-9534), Respondent changes course and argues that Petitioner's inclusion of these allegations in his motion for new trial is irrelevant because the state courts denied that motion as untimely. (ECF No. 86, at Page ID # 10427-1028.) Although the Court frowns upon Respondent's raising this procedural default argument in a reply pleading, rather than in her motion to dismiss, the Court has little choice but to sustain her argument.

The record supports Petitioner's contention that he included the allegations in his motion for a new trial and supporting affidavit by Dr. Lawrence Mueller. (ECF No. ECF No. 51-8, at Page ID 3576-3603.) The record lends equal support to Respondent's contention that the state courts denied Petitioner's motion as untimely, based on a determination that Petitioner failed to demonstrate that he was unavoidably prevented from discovering his new evidence in time to comply with the rule. (ECF No. 51-9, at Page ID # 3855-3860.) Under the *Maupin* analysis, accordingly, the Court concludes that Petitioner violated an adequate and independent state procedural rule that the state courts clearly enforced. *See Minor v. Warden, Lebanon Correctional Inst.*, No. 1;08-cv-583, 2014 WL 1276582 (S.D. Ohio Mar. 26, 2014) (collecting cases). Absent a showing of cause and prejudice or fundamental miscarriage of justice, neither of which Petitioner pleads, these allegations are barred by procedural default. Respondent's

---

(ECF No. 51-9, at Page ID # 3855-3860.)

motion to dismiss paragraphs 617 through 619 of ground 18(B)(4) is **GRANTED**.

Ground 18(B)(5), where Petitioner argues that his counsel failed to present a viable defense to the charges Petitioner faced, includes an allegation that counsel failed to present evidence explaining that the reason Petitioner had come into an abundance of money right after the victim was murdered because he had worked as a "drug mule." (ECF No. 85, at Page ID # 10119 ¶ 624.) Respondent argues that the "drug mule" allegations set forth in paragraphs 631-636 are procedurally defaulted under Ohio's *res judicata* doctrine because they were matters of trial record and Petitioner raised them in postconviction instead of on direct appeal. (ECF No. 65, at Page ID # 9366.) In response, Petitioner asserts that this on-the-record allegation of ineffective assistance was properly raised in postconviction because it was "part of a larger claim of the denial of the effective assistance of trial counsel for failing to investigate and present any defense, which could only be sustained by evidence *dehors* the record." (ECF No. 72, at Page ID # 9534.) In so arguing, Petitioner reasons that "[t]his portion of the claim standing alone would not have supported a claim that [Petitioner] was denied the effective assistance of counsel during the trial phase and thus could not have supported such a claim on direct appeal." (*Id.*) The Court does not agree.

As the Court noted earlier, in determining whether *res judicata* applies to a constitutional claim, the inquiry is properly focused on whether the claim genuinely relies on and is supported by evidence that is both outside the trial record and was not available at trial. *State v. Cole*, 2 Ohio St. 3d 112. Petitioner satisfies neither of those prerequisites for defeating application of *res judicata* against the "drug mule" allegations set forth in paragraph 624 of his eighteenth ground for relief. As the state appellate court noted in its postconviction decision, evidence that

126

Petitioner had been paid money to deliver drugs in Indiana around the time the victim was robbed and murdered was a matter of trial record through testimony and evidence about statements Petitioner made to Newark detectives. The only non-record evidence that Petitioner offered in support of this claim when he raised it in postconviction was his own affidavit (ECF No. 51-5, at Page ID # 2631-2632) and an affidavit by Petitioner's maternal aunt, Ruth Cummings, containing twenty-some paragraphs describing Petitioner's childhood and a single sentence that Petitioner's brother Randy sold drugs (ECF No. 51-5, at Page ID # 2675-2678, ¶ 21). Beyond the foregoing, Petitioner has not cited and the Court is not otherwise aware of any authority suggesting that a habeas applicant can insulate a claim of ineffective assistance otherwise subject to waiver by lumping it with other instances to form a larger claim of ineffective assistance. In short, the Court concludes under the *Maupin* analysis that the "drug mule" allegations comprising paragraph 624 are barred by procedural default because Petitioner violated Ohio's *res judicata* rule when he raised them in postconviction instead of on direct appeal. Respondent's motion to dismiss paragraph 624 (ECF No. 85, at Page ID # 10119) is **GRANTED**.

Also within ground 18(B)(5)'s allegations that defense counsel failed to present viable defenses, Petitioner argues that counsel failed to thoroughly investigate DNA and other forensic evidence before advancing third-person culpability as a theory of defense and failed to challenge alleged weaknesses in the DNA testimony. (ECF No. 85, at Page ID # 10120-10121, ¶¶ 631-636.) Respondent argues that those allegations are procedurally defaulted because they were never presented to the state courts and now no longer can. (ECF No. 65, at Page ID # 9366.) But Petitioner asserts and the Court agrees that Respondent's argument is "contrary to the state

court record." (ECF No. 72, at Page ID # 9534.)  Despite Respondent's persistent arguments to the contrary (ECF No. 86, at Page ID # 10430-10431), the Court has determined that Petitioner presented the essence of these allegations in the sixteenth ground for relief of his amended postconviction action and in the supporting affidavit of Gregory Meyers.  (ECF No. 51-6, at Page ID # 2895-2896; ECF No. 51-7, at Page ID # 3073-3075).  Respondent's motion to dismiss paragraphs 631-636 as procedurally defaulted is **DENIED**.

In ground 18(B)(6), Petitioner challenges counsel's failure to call Damien Turner as a witness to undermine the truthfulness of jailhouse informant Richard Hummel.  (ECF No. 85, at Page ID # 10122-10123, ¶¶ 640-649.)  Respondent argues that this sub-part is procedurally defaulted because in state court, Petitioner offered as the reason defense counsel should have called Turner "that Turner's testimony would have established a 'pattern by law enforcement of inducing confessions of jailhouse snitches in exchange for consideration.' "  (ECF No. 65, at Page ID # 9366-9367.)  Petitioner counters that he included nearly verbatim in ground fifteen of his amended postconviction petition the theory set forth in paragraphs 640 through 649 before this Court.  (ECF No. 72, at Page ID # 9537.)  To the extent Petitioner includes in his habeas claim an additional allegation that counsel's failure to call Turner deprived Petitioner of the opportunity to undermine Hummel's truthfulness, Petitioner asserts that this language is "virtually indistinguishable" from language in his amended postconviction asserting that calling Turner as a witness could have undercut weight and credibility of Hummel's testimony against Petitioner.  (*Id.* at Page ID # 9538.)  Petitioner is correct.

Review of the record confirms that Petitioner presented the essence of the "Damien Turner" allegations set forth in paragraphs 640 through 649 to the state courts in ground fifteen

of his amended postconviction action.  Respondent insists that Petitioner's claim before this

Court "significantly expands" on Petitioner's postconviction claim about undercutting the weight

and reliability of Richard Hummel's testimony.  (ECF No. 86, at Page ID # 10431-10432.)  But

Respondent's argument goes well beyond what the fair presentment doctrine requires.

    Below is the "Damien Turner" claim, verbatim, that Petitioner presented to the state

courts in ground fifteen of his amended postconviction action:

> 103.  Petitioner herein incorporates by reference all previous paragraphs as if fully rewritten herein.

> 104.  Petitioner Davis's convictions are void or voidable because trial counsel failed to call Damien Turner as a witness.

> 105.  Petitioner alleges that he and Turner were inmates in the Licking County Jail together before Petitioner's trial.

> 106.  Petitioner alleges that Turner apprised of [sic] him a conversation between Turner and Newark Police Detective Vanoy.  Turner told Petitioner that Vanoy offered to make "some of Turner's charges go away if Turner testified that [Petitioner] confessed to killing Mrs. Sheeler.  (Exhibit A.)

> 107.  Petitioner alleges that he apprised defense counsel of this conversation.  However, Turner was not called as a witness and Petitioner alleges that his counsel never explained to him why Turner was not called.

> 108.  Counsel were deficient to Petitioner's prejudice.  Testimony from Turner on this point would have established a pattern by law enforcement of inducing confessions of jailhouse snitches in exchange for consideration.

> 109.  Testimony from Turner would have undercut the weight and credibility of Hummel's testimony against Petitioner.

(ECF No. 51-6, at Page ID # 2894.)  Below are the "Damien Turner" allegations, verbatim, that

Petitioner presents here:

> 640.  Counsel had a duty to investigate and present all available legal claims and defenses.  *See, e.g.*, ABA *Guidelines*, Guidelines 10.7, 10.8.

641. Counsel failed to investigate and subsequently call Damien Turner as a witness. Turner's testimony would have undercut the weight and credibility of the prosecution's witness, Richard Hummel, who testified that he met Davis in the Licking County Jail and that Davis informed him that Davis stabbed and killed Sheeler. (Tr. At 1389; 1391; 1393-96; ECF 52 at Page ID #: 7593, 7595, 7597-7600.)

642. During his testimony, Hummel implied that he did not receive any benefit from the State of Ohio in exchange for his testimony against Davis.

643. Hummel was a key witness. His credibility was questionable. *See* Seventeenth Ground for Relief, *supra*; Twenty-First Ground for Relief, *infra*. Davis could have challenged Hummel's credibility with Turner's testimony. (*See* Post Conviction Pet., Ex. A (ECF 51 at Page ID #: 2900).)

644. Davis informed trial counsel that Turner had told Davis that Det. Vanoy offered to make "some of Turner's charges go away if Turner testified that [Davis] confessed to killing Mrs. Sheeler." (*Id*. at ¶14 (ECF 51 at Page ID #: 2902).)

645. Trial counsel failed to investigate Turner, and then failed to call Turner to testify in Davis defense.

646. Counsel's failures were unreasonable, and could not have been reasoned trial strategy, especially because Turner's testimony would have impeached the credibility of one of the prosecution's main witnesses.

647. Davis was prejudiced by trial counsel's unreasonable failure to investigate thoroughly and to call Turner as a witness because counsel's failures deprived Davis of the opportunity to challenge Hummel's character for truthfulness. *See, e.g., Davis v. Alaska*, 415 U.S. 308, 316 (1974) ("The partiality of a witness is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his testimony.' ") (internal citation omitted).

648. But for counsel's deficient performance in failing to investigate Turner, there is a reasonable probability that at least one juror would have had a reasonable doubt respecting guilt, or that death was the appropriate punishment.

649. Counsel's errors rendered Davis' trial fundamentally unfair and denied Davis a defense, due process, a fair trial, and the effective assistance of counsel under the Fifth, Sixth, Eighth, and Fourteenth Amendments.

(Substitute Second Amended Petition, ECF No. 85, at Page ID # 10122-10123.)

Before the state courts, Petitioner argued that his trial attorneys performed unreasonably in failing to investigate and call Damien Turner to establish that Detective Vanoy had prodded Turner to testify that Petitioner had confessed to killing Mrs. Sheeler and that counsel's error prejudiced Petitioner by depriving Petitioner of the opportunity both to demonstrate that detectives were prone to induce inmates to testify as to jailhouse confessions by fellow inmates and to undercut the credibility of Richard Hummel's testimony that Petitioner had admitted to killing Mrs. Sheeler. Here, after first setting forth the exact same operative facts, Petitioner argues to this Court that defense counsel performed unreasonably in failing to investigate and call Damien Turner and that counsel's unreasonable performance prejudiced Petitioner by depriving Petitioner of the opportunity to challenge Richard Hummel's truthfulness. When both claims are read as a whole instead of parsed, it is untenable to suggest that the former did not give the state courts sufficient notice and opportunity to address the latter. If anything, the claim before this Court is a contracted version, not expanded version, of what Petitioner presented to the state courts. Respondent's motion to dismiss paragraphs 640 through 649 is **DENIED**.

Respondent next asserts that certain parts of ground 18(C)(1), where Petitioner argues that his attorneys were ineffective in their investigation and presentation of mitigation evidence, are barred by procedural default because Petitioner never presented them to the state courts and now no longer can.[9]

In ground 18(C)(1)(a), Petitioner challenges aspects of counsel's presentation of mitigation evidence. Respondent concedes that although Petitioner presented much of that claim on direct appeal in the thirteenth proposition of law and in postconviction in the fourth ground

---

[9] Respondent withdraws the procedural default argument against paragraphs 664 and

for relief, nowhere did Petitioner raise the allegation that his perforated ear drum exaggerated and/or caused his speech impediment. (ECF No. 65, at Page ID # 9367.) Respondent accordingly alleges that the "ear drum" component of ground 18(C)(1)(a) is barred because Petitioner never raised it and now no longer can. Petitioner states that this allegation was documented in several affidavits that he submitted in support of his amended postconviction, to wit: the Affidavit of Monique N. Coleman, Psy.D. labeled as Exhibit V; the Affidavit of Petitioner's maternal aunt, Ruth Cummings, labeled as Exhibit K; the Affidavit of Petitioner's mother, Rose Weimer, labeled as Exhibit L; and the Affidavit of Petitioner's sister, Sharon Scanlon, labeled as Exhibit S. (ECF No. 72, at Page ID # 9542-9543.) The record supports Petitioner's assertion.

In ground four of his amended postconviction action, Petitioner argued that his defense counsel performed unreasonably and to Petitioner's prejudice in failing to discover, develop, and present a host of available mitigation evidence. Included in the list of information that counsel failed to investigate and present was the fact Petitioner had suffered from a perforated eardrum that was painful and went untreated for years, followed immediately by the fact that because of hearing problems, a speech impediment, and suffering, Petitioner was teased and often came home from school crying. (ECF No. 51-6, at Page ID # 2875.) Dr. Monique Coleman's affidavit referenced records that explicitly drew a causal connection between Petitioner's hearing problems and speech impediments/stuttering. (ECF No. 51-7, at Page ID # 3039-3040.) Petitioner's aunt, mother, and sister all referenced his hearing problems and/or speech impediments growing up. (ECF No. 51-6, at Page ID # 2593, 2597, 2978, 2979.)

---

668 through 670. (ECF No. 86, at Page ID # 10432.)

Respondent contends that Petitioner's argument is tantamount to after-the-fact parsing of portions of affidavits in an effort to paint a picture of a cogent allegation that was fairly presented to the state courts. (ECF No. 86, at Page ID # 10433.) But viewed through the lens of fair presentment principles, the foregoing record evidence makes it implausible to conclude that the state courts were not given sufficient notice and opportunity to address Petitioner's allegation that his suffering a perforated eardrum caused or exasperated his speech impediment. Although Petitioner makes that allegation more succinctly in his habeas claim before this Court, his perforated eardrum and persistent hearing problems were sufficiently linked in his state court pleadings to his speech impediment and stuttering such that it cannot be said that the claim before this Court is now manifestly different than the claim the state courts considered. Respondent's motion to dismiss the "perforated eardrum" component of ground 18(C)(1)(a) is **DENIED**.

In ground 18(C)(1)(b), where Petitioner argues that his attorneys were ineffective in connection with mitigation experts and investigators, Respondent notes that although Petitioner argued on both direct appeal and in postconviction that he never had the assistance of a psychologist, Petitioner argues in the instant proceeding that he never had the assistance of a "mental health expert." Respondent thus argues that, "[t]o the extent Davis means he did not have the services of a psychologist, his claim is preserved, but if Davis now means he did not have the assistance of mental health professionals other than a psychologist, then the claim would be defaulted." (ECF No. 65, at Page ID # 9367-9368.)

Petitioner argues first that he did not solely use the term "psychologist" in his state court

133

pleadings and that his interchangeable use of the terms "psychiatrist, psychologist, and mental health professional" provided the state courts with fair notice that Petitioner was claiming that, due to counsel's ineffectiveness, Petitioner was without the assistance of a competent mental health professional. (ECF No. 72, at Page ID # 9543.) Beyond that, Petitioner argues more broadly that he never limited his claim to lack of the assistance of a "psychologist" and that the fact that the terms he used to refer to a mental health expert varied occasionally did not change the substantive meaning of his claim. (*Id*. at Page ID # 9544.) The Court agrees.

On direct appeal, Petitioner began his argument by stating unambiguously that he was challenging his counsel's failure to fully investigate and present compelling mitigating evidence arising from Petitioner's psychosocial history and to obtain all of the expert and investigative assistance that was reasonably necessary to investigate and present Petitioner's compelling story. (ECF No. 51-3, at Page ID # 1864-1865.) In making this argument, Petitioner proceeded to use the following terms "clinical or forensic psychologist," "psychological expert," "psychologist," "psychologist or psychiatrist," "mental health professional or someone similar," "mental heatlh professional." (*Id*. at Page ID # 1866, 1867, 1868, 1871.) From this reading, the Ohio Supreme Court was not just *fairly*, but in fact *squarely*, presented with a claim that Petitioner was challenging the mitigation-phase failure of his counsel to utilize the services of any and all reasonably necessary mental health experts. The Court is not persuaded that Petitioner's repeated use of the term "psychologist" or reliance on the affidavit of a clinical and forensic psychologist in postconviction defeats fair presentment (ECF No. 51-6, at Page ID # 2890-2891; (ECF No. 51-7, at Page ID # 3020), in view of the comprehensive nature of the allegations Petitioner raised there. Respondent's motion to dismiss the "mental health expert" components

134

of ground 18(C)(1)(b) is **DENIED**.

Respondent raises a similar argument against ground 18(C)(1)(c), where Petitioner raises questions about counsel's failure to formulate and present a mitigation theory throughout the entire trial. (ECF No. 85, at Page ID # 10133-10134, ¶¶ 688-693.) According to Respondent, although Petitioner argued in his thirteenth proposition of law on direct appeal that his trial counsel did not have a mitigation theory at the beginning of the penalty phase, Petitioner asserts here that his "counsel 'failed to develop, *in advance of voir dire*, a comprehensive mitigation theory that could be advanced through all stages of the trial.' " (ECF No. 65, at Page ID # 9368 (quoting ECF No. 61, at Page ID 9169) (emphasis in original).) Respondent thus argues that "[t]o the extent Davis changed the theory of his claim which he did not, and now cannot, raise in state court, the allegations in this subpart are procedurally defaulted." (ECF No. 65, at Page ID # 9368.) Petitioner counters that Respondent's argument focuses on one statement in Petitioner's direct appeal brief and ignores Petitioner's claim as a whole that "trial counsel failed from the start to develop and objectively reasonable mitigation strategy." (ECF No. 72, at Page ID # 9545.) Petitioner's contention is not supported by the record.

The unmistakable essence of this sub-part is Petitioner's claim that his attorneys were ineffective for failing to investigate and formulate a mitigation strategy at the outset of Petitioner's case so that counsel could expose jurors to that strategy during every phase of Petitioner's trial. (ECF No. 85, at Page ID # 10133-10134, ¶¶ 688-693.) Review of the thirteenth proposition of law that Petitioner litigated on direct appeal to the Ohio Supreme Court, as well as the fourth and twelfth grounds for relief that Petitioner litigated in postconviction, reveal no mention by Petitioner of this argument.

135

The claims that Petitioner presented to the state courts focused on the effectiveness of counsel's preparation for and performance during the penalty phase itself. The allegations that Petitioner present here in paragraphs 688 through 693 focus not just on counsel's allegedly incomplete and inartful presentation of mitigation evidence during the penalty phase, but on the very investigation (or lack thereof) and decision-making process from the onset of the case that prompted counsel to decide to devote their central efforts to proving during the culpability phase that Petitioner was not the person who robbed and killed the victim, that the only forensic evidence upon which the state relied to link Petitioner to the crime was flawed, and that there was another viable suspect with the means, motive, and similar DNA profile. That is starkly different claim than what Petitioner presented to the state courts. Stated more succinctly the essence of the claim presented to the state courts focuses on counsel's performance *during* the penalty-phase presentation, while the essence of the sub-part at issue here focuses more comprehensively on counsel's conduct *in connection with* the penalty-phase presentation. Thus, the claims that Petitioner raised on direct appeal and in postconviction cannot reasonably be read as providing the state courts with sufficient notice that Petitioner was challenging counsel's penalty-phase conduct as it related to anything but their preparation for and performance during the penalty phase itself.

Petitioner did not fairly present paragraphs 688 through 693 and now no longer can. He demonstrates neither cause-and-prejudice nor a fundamental miscarriage of justice to excuse the default. The Court accordingly **GRANTS** Respondent's motion to dismiss ground 18(C)(1)(c).

In ground 18(C)(1)(d), Petitioner argues that counsel failed to effectively humanize Petitioner for the jury and to effectively present and explain the wealth of mitigation evidence

that was available. (ECF No. 85, at Page ID # 10135-10138, ¶¶ 694-710.)  Respondent argues

that paragraphs 694 and 704, where Petitioner asserts that his counsel failed to humanize him, is

barred by procedural default because Petitioner never presented those allegations to the state

courts and now no longer can. (ECF No. 65, at Page ID # 9368.)

Petitioner asserts that Respondent's allegations are contrary to the record and, further,

that paragraph 704 "merely restates the legal standard the legal standard by which the court must

assess claims of the denial of the effective assistance of counsel, *i.e.*, that they must weigh all of

the mitigation evidence that was not presented in conjunction with the evidence that was

presented." (ECF No. 72, at Page ID # 9546-957.)

In reply, Respondent changes tack and argues first that, to the extent Petitioner raised the

"humanizing" allegation on direct appeal, he did so for the first time in his reply brief rather than

his merit brief.  As such, Respondent explains, the allegation is still defaulted because state law

prohibits appellants from raising new arguments in a reply brief. (ECF No. 86, at Page ID #

10438 (citing *Hoskins v. Simones*, 173 Ohio App. 3d 186, 194 (2007)).)  Respondent continues

that, to the extent Petitioner raised the "humanizing" allegation in postconviction, it is still barred

by procedural default because the state court appellate court found the claim to be barred by *res

judicata*.  The Court expresses no opinion on Respondent's first argument because the Court

rejects Petitioner's second argument.

Paragraph 694 before this Court states as follows: "Counsel failed to investigate,

develop, and/or present available mitigation evidence to the jury that would have humanized

Davis.  Relevant and compelling information about Davis' social history was not discovered,

presented and/or sufficiently explained to the jury." (ECF No. 85, at Page ID # 10135.)

137

Petitioner points in his postconviction pleadings (ECF No. 72, at Page ID # 9546) to where he expressly argued:

> Furthermore, defense counsel failed to elicit vital information from many of the mitigation witnesses they did call to humanize and personalize Petitioner to the jury. (ECF No. 51-6, at Page ID # 2875, ¶ 32.)
>
> At Petitioner's capital trial, his counsel were ineffective for failing to introduce available mitigating evidence that would have humanized and personalized Petitioner Davis for the sentencer when deciding whether he would live or die. (ECF No. 51-6, at Page ID # 2877, ¶ 34.)
>
> Counsel's deficient performance prejudiced Davis because counsel failed to humanize him properly before the jury. (ECF No. 51-7, at Page ID # 3295.)

Although Respondent argues that the claim is barred because the state appellate court enforced *res judicata*, the Court concludes that Respondent's argument fails *Maupin*. The second part of the *Maupin* test requires this Court to determine whether the state courts clearly enforced a state procedural rule against Petitioner's claim. Here, the Court cannot so find. First, it is beyond dispute that the trial court did not deny the mitigation-phase ineffective assistance claim set forth in ground four on the basis of *res judicata*. (ECF No. 51-7, at Page ID # 3185.) Although subject to somewhat more debate, this Court ultimately concludes that the state appellate court did not sufficiently invoke *res judicata* either.

The state appellate court began its discussion of ground four by noting that a mitigation-phase ineffective assistance claim had been raised and decided on direct appeal and that the evidentiary materials Petitioner had submitted in postconviction were merely cumulative to evidence that had been presented at trial and argued on direct appeal. (ECF No. 51-8, at Page ID 3448.) Although the appellate court next stated that the trial court could have enforced *res judicata*, the state appellate court did not then expressly do so either and then proceeded to reject

Petitioner's claim on the basis of substantive ineffective assistance law, not *res judicata*. The appellate court concluded its discussion by finding that Petitioner's fourth ground for relief failed to demonstrate sufficient operative facts to establish substantive grounds for relief and that there was no reasonable probability that testimony by family members or other mitigating evidence set forth in ground four would have swayed the jury to impose life. Under these circumstances, the appellate court's characterization of the evidence *dehors* the record as largely cumulative was more akin to finding that the evidence carried little weight than to rejecting it outright as legally insufficient. That is a merits-based decision, not a *res judicata*-based decision. Alternatively, it is murky enough that it fails the second part of the *Maupin* test.

As for paragraph 704, where Petitioner simply states "[e]ach of these distinct but related failures by counsel, individually and in the aggregate, prejudiced Davis[]" (ECF No. 85, at Page ID # 10137), the Court agrees with Petitioner that the paragraph is more of a conclusion than a free-standing allegation. Construed as that, and only that, it was fairly presented to the state courts. (ECF No. 72, at Page ID # 9546-9547.) Respondent's motion to dismiss paragraphs 694 and 704 is **DENIED**.

Respondent raises two procedural default arguments in connection with ground 18(C)(2), where Petitioner faults his counsel for failing to utilize mitigation evidence from a mental health expert. "As with Ground 18(C)(1)(b)," Respondent asserts, "to the extent Davis means that he did not have the services of a psychologist, his claim is preserved, but if Davis now means he did not have the assistance of mental health professionals other than a psychologist, then the claim would be defaulted." (ECF No. 65, at Page ID # 9368.) The Court has considered and rejected that assertion.

139

Respondent additionally argues that the allegations presented in paragraphs 721 through

725 were never presented to the state courts and now no longer can.  There, Petitioner raised

various arguments about how counsel's failure to employ a mental health expert prejudiced

Petitioner:

> 721.  A mental health expert would have demonstrated that the evidence indeed provided a causal connection for the crime.  (record citations omitted.)
>
> 722.  Employing a mental health expert from the inception of their representation of Davis would have allowed counsel to conduct a thorough background investigation and then to exercise their reasonable professional judgment in determining the mitigation evidence to present during the penalty phase of the trial.  Conversely, failing to employ a mental health expert rendered counsel's investigation, if any, into myriad avenues of mitigation evidence insufficient.
>
> 723.  Davis' counsel unreasonably failed to investigate, develop, and/or present to the jury any of this critical mitigation evidence from a mental health expert. Given the importance of Davis' mental health and psychosocial background to understanding the crime and to accurately painting a compelling mitigation picture, which counsel failed to investigate and present for lack of employing a mental health expert, there is a reasonable probability that a competent attorney aware of the evidence would have introduced it at sentencing.
>
> 724.  Furthermore, but for counsel's deficient investigation, development, presentation and explanation of mitigation evidence through a mental health expert,there is a reasonable probability that all of the aforementioned evidence would have provided at least one juror with sufficient mitigating circumstances upon which to vote for a sentence less than death.
>
> 725.  Counsel's errors rendered Davis' trial fundamentally unfair and denied Davis a defense, due process, a fair trial, the chance to have his sentencing jury give full consideration and effect to his mitigation evidence, and the effective assistance of counsel under the Fifth, Sixth, Eighth, and Fourteenth Amendments.

(ECF No. 85, at Page ID # 10141-10142.)

Petitioner argues that the "causal" arguments set forth in paragraph 721 were clearly

presented on direct appeal.  (ECF No. 72, at Page ID # 9548.)  "In fact," Petitioner continues,

"all of the allegations presented in paragraphs 721-25 were presented on direct appeal to the

Supreme Court of Ohio." (*Id.* (citing ECF No. 51-3, at Page ID # 1868-1873; 1870; 1870-1873).)  Petitioner also argues that these allegations were included with additional non-record support in his postconviction proceedings.  (ECF No. 72, at Page ID # 9548-9550 (record citations omitted).)

Initially, the Court rejects Petitioner's false assertion that "[o]n direct appeal to the Supreme Court of Ohio, Davis clearly argued that with proper investigation, including with the assistance of mental health experts, 'the jury would have been presented . . . an explanation for how [Davis'] upbringing *__would__* have contributed to his behavior.' "  (ECF No. 72, at Page ID # 9548 (emphasis added) (quoting ECF No. 51-3, at Page ID # 1870).)  That is not what Petitioner's direct appeal brief said.  What Petitioner's direct appeal brief actually said is: "Had counsel fulfilled their obligation to thoroughly and completely investigate Davis' background, the jury would have been presented with not only an outline of Davis' childhood but also the compelling details as well as an explanation of how brutal and abusive upbringing affected his development, and *__may__* have contributed to his behavior here."  (ECF No. 51-3, at Page ID # 1870 (emphasis added).)  This may be a difference without distinction.  But because Petitioner purported to support his argument against procedural default with a direct quotation from his direct appeal brief (*i.e.*, what he said), rather than an explanation of what his direct appeal brief said (*i.e.*, what he meant), this Court would be remiss if it did not acknowledge that he misquoted his own direct appeal brief on the central point of his argument—namely that he <u>did</u> argue on direct appeal that there was a causal connection between his unfortunate upbringing and his commission of the crimes.

That said, the record more than supports Petitioner's contention that he fairly presented

elsewhere this "causation" argument and all of the allegations set forth in paragraphs 721 through 725 set forth above. Petitioner argued in ground twelve of his amended postconviction action that his defense attorneys were ineffective for failing to present mitigation evidence from a psychologist or mental health expert. (ECF No. 51-6, at Page ID # 2890-2891.) Petitioner supported that claim with the affidavit of Dr. Monique Coleman. (ECF No. 51-7, at Page ID # 3020-3060.) That there was a causal connection between Petitioner's childhood, adolescent, and adulthood experiences and his commission of the offenses, which counsel's ineffectiveness prevented Petitioner's jury from hearing, was the entire gist of Petitioner's claim and supporting affidavit. Respondent insists that it is only now, for the first time, that Petitioner is asserting unequivocally that there was a definitive causal connection between his upbringing and the crime. (ECF No. 86, at Page ID # 10440.) The Court disagrees. Under fair presentment principles, any nuances in the "causation" arguments Petitioner presents here are little more than honing or tightening. By no means do they so alter the claim that it cannot be said to have been the same claim the state courts considered. Respondent's motion to dismiss paragraphs 721 through 725 is **DENIED**.

Finally, in ground 18(D), Petitioner argues that his attorneys were ineffective in connection with the intellectual disability that Petitioner contends makes him ineligible for the death penalty. (ECF No. 65, at Page ID # 10144-10159, ¶¶ 732-788.) Respondent argues that this ineffective assistance claim is defaulted in its entirety because Petitioner never argued on direct appeal or in his application to reopen his direct appeal that his trial attorneys were ineffective for failing to raise Petitioner's intellectual disability at trial. (ECF No. 65, at Page ID # 9369.) Respondent also argues that Petitioner added this claim of ineffective assistance of trial

142

counsel to his second amended petition in violation of the AEDPA's one-year statute of limitations. (*Id.*)

Petitioner raises several arguments in response. First, Petitioner argues that ineffective assistance of postconviction counsel excuses any default of this ineffective assistance of trial counsel claim. (ECF No. 72, at Page ID # 9550-9555.) To this point, Petitioner asserts that the proper forum for litigating this particular claim of trial counsel ineffectiveness was in postconviction, due to the claim's reliance on evidence outside the trial record, and not on direct appeal (or in a motion to reopen the direct appeal) as Respondent asserts. (*Id.* at 9550-9551.) Petitioner further points out that "[d]ue to a recent change in federal habeas corpus procedural default law, the ineffectiveness of Davis' initial post-conviction counsel can now excuse the default of this claim." (*Id.* at Page ID # 9551 (citing and discussing *Martinez v. Ryan*, 132 S.Ct. 1309, 1320 (2012); and *Trevino v. Thaler*, 133 S.Ct. 1911, 1921 (2013)).) Stated more succinctly, Petitioner argues that his postconviction counsel were ineffective for failing to raise in postconviction a claim challenging trial counsel's ineffectiveness for not raising Petitioner's intellectual disability at trial. Petitioner requests an evidentiary hearing to prove these allegations. (ECF No. 72, at Page ID # 9552.)

Respondent begins her arguments in reply by disputing Petitioner's assertion that the proper forum for litigating the trial counsel ineffectiveness claim set forth in ground 18(D) was in postconviction instead of direct appeal. (For only if Petitioner is correct may Petitioner in turn assert a *Martinez* ineffective assistance of postconviction counsel as cause and prejudice to excuse the default of the ground 18(D) trial counsel ineffectiveness claim.) According to Respondent, "[Petitioner] claims that his intellectual disability claim relies on evidence outside

143

of the trial record, *see* Response, Doc.72, PAGEID#:9552, but yet he presents this Court with

nothing but information contained *in* the state trial court record." (ECF No. 86, at Page ID

10441-10442 (emphasis in original).)  Respondent continues:

> [Petitioner] presents as "evidence" of his trial counsel's alleged ineffectiveness
> only trial transcript references and the references of his school records which were
> admitted at trial.  *See* Sub. Second Amend. Pet., Doc.85, ¶¶732-88,
> PAGEID#:10144-159.  He fails to present this court with *anything* extrinsic at all.
> Instead, [Petitioner] now maintains his claim "needs further investigation and the
> evidentiary record before this Court needs to be developed[.]"  Response, Doc.72,
> PAGEID#:9552.  However, [Petitioner's] failure to present this Court with even
> one piece of evidence outside of the trial record confirms his concession that his
> claim does not really rely on outside evidence.

(ECF No. 86, at Page ID # 10442.)

"Since his intellectual disability claim does not rely upon evidence *de hors* the record,"

Respondent explains, "the claim of ineffective assistance of counsel properly needed to be raised

on direct appeal." (*Id.*)  To that point, Respondent notes that Petitioner can no longer pursue a

direct appeal or motion to reopen his direct appeal, and cannot assert appellate counsel

ineffectiveness as cause for the failure to raise this trial counsel ineffectiveness claim on direct

appeal in the first place because Petitioner at the outset of this habeas corpus proceeding waived

the right to challenge appellate counsel's performance. (*Id.* (citing ECF No. 17, at Page ID #

431).)

To avoid the consequences of this fact, according to Respondent, Petitioner attempts to

establish that *Martinez* and *Trevino* provide an exception that ultimately permits this Court to

consider the ground 18(D) trial counsel ineffectiveness claim.  Respondent argues, however, that

*Martinez/Trevino* provide no such exception in Ohio. (*Id.* at 10442-10444 (citing *Moreland v.

Robinson*, No. 3:05-cv-334, 2015 WL 127977, at * 9 (S.D. Ohio West. Div. Jan. 8, 2015)).)  The

144

Court need not address this part of Respondent's argument in detail because the Court agrees with Respondent's primary argument that trial counsel ineffectiveness claim set forth in ground 18(D) could have been litigated on direct appeal because the trial record contained sufficient evidence to support such a claim.

Review of the record confirms Respondent's observation that in arguing he is subject to intellectual disability that renders him ineligible for the death penalty, and that his trial attorneys were ineffective for failing to investigate and raise that claim at trial, Petitioner points to and relies *solely* on evidence and testimony presented at trial. (ECF No. 85, at Page ID # 10144-10151, ¶¶ 732-759; Page ID # 10152-10160, ¶¶ 760-788.) There, Petitioner cites to school records that trial counsel submitted during the penalty phase, as well as arguments and testimony presented during the penalty phase. That being so, the trial record contained sufficient supporting evidence for petitioner to have meaningfully argued on direct appeal that his trial attorneys were ineffective for failing to raise his intellectual disability at trial. He raised no such trial counsel ineffectiveness claim on direct appeal and has waived the right to challenge appellate counsel's failure to do. That satisfies all four parts of the *Maupin* test.

The result might be otherwise, were the trial record in this case devoid of the evidence necessary to support a cogent claim of ineffectiveness of trial counsel for the failure to raise Petitioner's intellectual disability at trial *and* had postconviction counsel actually raised, albeit adequately, this trial counsel ineffectiveness claim. But that is not the case. Here, the *trial* record contains evidence of the alleged intellectual limitations, adaptive struggles, and early onset to which Petitioner refers in support of his claim that he is intellectually disabled. That evidence made it possible for Petitioner to argue on direct appeal that trial counsel had

145

performed deficiently and to Petitioner's prejudice in failing to raise Petitioner's intellectual disability trial. Under Ohio's *res judicata* rule, if a claim <u>can</u> be raised on direct appeal, it <u>must</u> be raised on direct appeal.

The gist of Petitioner's position appears to be that whatever evidence concerning his alleged intellectual disability the trial record contained and whatever shape that evidence would have given a trial counsel ineffectiveness claim raised on direct appeal, additional evidence outside of the trial record would have enabled Petitioner to raise an expanded or more thorough claim of trial counsel ineffectiveness in postconviction. In the human realm of "anything is possible," however, that will almost always be the case. And it simply cannot be asserted to avert the well-established principle that claims involving evidence on the trial record must be raised on direct appeal. Further, as Magistrate Judge Merz observed in *Moreland*, it is difficult to construe *Martinez* as allowing postconviction ineffectiveness to excuse default of a trial counsel claim that postconviction counsel failed to raise altogether. Specifically, Magistrate Judge Merz clarified that:

> If *Martinez* applies in Ohio, it is available only to excuse the procedural default of an ineffective assistance of trial counsel claim which happens when post-conviction counsel provides ineffective assistance in failing to adequately raise that claim. A district court's final judgment in a habeas case will be in error and therefore amendable to correction under Fed. R. Civ. P. 60(b)(6) only if the district court dismissed a particular ineffective assistance of trial counsel claim because of the procedural default of not presenting it in post-conviction due to the ineffectiveness of post-conviction counsel.***

*Moreland*, 2015 WL 127977, at * 7.

For the foregoing reasons, the Court concludes that ground 18(D) is barred by procedural default. Petitioner failed to raise this ineffective assistance of counsel claim on direct appeal and now no longer can. Further, he waived the right to challenge his appellate counsel's

146

performance in failing to raise this alleged trial counsel ineffectiveness on direct appeal.[10]

N. Ground Twenty-One: Inadequacy of Ohio's postconviction procedures.

In his twenty-first ground for relief, Petitioner argues that he was deprived of his rights to due process and equal protection because Ohio's postconviction procedures did not provide an adequate corrective process for full vindication of Petitioner's federal constitutional rights. (ECF No. 85, at Page ID # 10173-10179, ¶¶ 825-840.) Respondent argues that this claim is defaulted in its entirety, due to Petitioner's failure to raise a claim on direct appeal challenging Ohio's postconviction statute. (ECF No. 65, at Page ID # 9369.) Respondent further argues that, even to the extent Petitioner raised some of his challenges in the sixth ground for relief in his amended postconviction petition, Petitioner violated Ohio's doctrine of *res judicata* in including them in postconviction, instead of on direct appeal, when they did not depend on evidence outside the trial record. (*Id.*)

Petitioner insists that he did raise the inadequacy of Ohio's postconviction process in his amended postconviction action and that he supported his challenge with evidence *dehors* the record based on his inability to obtain discovery, funding, or other tools necessary to investigate and prove his federal claims. (ECF No. 72, at Page ID # 9560.) In response to the argument that he should have raised this challenge on direct appeal, Petitioner asserts that "[b]ecause [his] claims that Ohio's post-conviction procedures—as applied to him—were inadequate to vindicate

_____

[10]     Petitioner raises the defense of equitable tolling, as well as the exception of fundamental miscarriage of justice/actual innocence in relation to Respondent's statute of limitations argument, not to Respondent's procedural default argument. (ECF No. 72, at Page ID # 9555-9559.) Because the Court has determined that Petitioner defaulted ground 18(D) for failing to raise the claim on direct appeal, the Court declines to address here the equitable tolling and fundamental miscarriage of justice/actual innocence arguments that Petitioner raised in response to Respondent's statute of limitations defense.

his federal constitutional rights are based on the Ohio post-conviction courts' denial of these necessary tools in post-conviction, these are claims that could not have been raised earlier on direct appeal." (*Id*. at Page ID # 9561.) The Court agrees and shares Petitioner's view that the Ohio courts erred in rejecting Petitioner's claim on the basis of *res judicata*.

The first part of the *Maupin* test requires the Court to determine whether Petitioner violated a state procedural rule. The Court is not certain that Petitioner did. As a practical matter, it seems to this Court that claims challenging the adequacy of Ohio's postconviction process logically belong in postconviction, irrespective of whether the claim relies on evidence outside of the trial record. Concomitantly, it is difficult to conceive of how a claim challenging the adequacy of Ohio's postconviction process could be raised on direct appeal, in view of the fact that such claims generally do not involve trial matters. Ohio case law appears to support this Court's view. Specifically, this Court found numerous postconviction cases in which claims challenging the constitutional adequacy of the postconviction process were raised and addressed in postconviction. *See, e.g., State v. Elmore*, No. 2005-CA-32, 2005 WL 2981797, at * 22 (Ohio App. 5 Dist. Nov. 3, 2005); *State v. Jackson*, No. 01AP-808, 2002 WL 1379001, at * 13 (Ohio App. 10 Dist. June 27, 2002); *State v. Goff*, No. CA2000-05-014, 2001 WL 208845, at * 9-10 (Ohio App. 12 Dist. Mar. 5, 2001). In fact, some appellate courts in postconviction addressing claims alleging the inadequacy of Ohio's postconviction procedures enforce waiver if the petitioner did not first raise the claim at the trial court level in postconviction.

The foregoing suggests to this Court that a petitioner who raises a claim challenging the adequacy of Ohio's postconviction procedures in the postconviction action itself violates no state procedural rule. Respondent's reliance on "traditional" *res judicata* principles, however

148

understandable at first glance, upon further consideration and research seems misplaced in this instance. Respondent's motion to dismiss Petitioner's twenty-first ground for relief as procedurally defaulted is **DENIED**.

O. Grounds Twenty-Four through Thirty-Three: Method-of-Execution claims.

In grounds twenty-four through thirty-three, Petitioner raises a host of Eighth and/or Fourteenth Amendment challenges to Ohio's execution policy, procedures, and practices. (ECF No. 85, at Page ID # 10200-10293.) In her original motion to dismiss, Respondent argued that only ground thirty-one, raising a Fourteenth Amendment equal protection violation, was barred by procedural default and was untimely. (ECF No. 65, at Page ID # 9370.) Since then, Petitioner has amended his method-of-execution claims (ECF No. 85, at 10200-10293) and the parties have filed new pleadings addressing whether any of those claims is defaulted. (ECF Nos. 88, 89, 90, 93.) Respondent's motion to dismiss ground thirty-one (ECF No. 65) is accordingly **DENIED** as moot. The Court will issue a separate order addressing Respondent's (revised) motion to dismiss (ECF No. 88), Petitioner's response in opposition (ECF No. 89), Respondent's reply (ECF No. 90), and Petitioner's surreply (ECF No. 93).

P. Ground Thirty-Four: Intellectual disability.

Petitioner argues in his thirty-fourth and final ground for relief that because he is intellectually disabled, his execution would violate the Eighth and Fourteenth Amendments. (ECF No. 85, at Page ID # 10294-10297, ¶¶ 883-891.) Respondent argues that Petitioner's claim is defaulted in its entirety due to Petitioner's failure to present at trial, as required by *State v. Lott*, 97 Ohio St. 3d 303, 308 (2002). (ECF No. 65, at Page ID # 9370-9371.) Respondent additionally argues that Petitioner's claim is time-barred under the AEDPA's one-year statute of

limitations.

Petitioner raises several arguments in response. First, Petitioner argues that ineffective assistance of trial counsel, as raised in ground eighteen, excuses any default of Petitioner's *Atkins* claim. (ECF No. 72, at Page ID # 9567.) Next, Petitioner argues that his mental incompetence should equitably toll the statute of limitations for his claim. Finally, Petitioner asserts that "even if [he] may not pursue relief for this claim directly, he properly included it in his Second Amended Petition as a gateway claim to reach the merits of his claim of ineffective assistance of counsel for failing to raise his *Atkins* claim at trial. (*Id*. at Page ID # 9567-9568.)

In reply, Respondent argues that because Petitioner has not demonstrated that he is intellectually disabled, he cannot demonstrate that his trial counsel were ineffective for failing to raise an intellectual disability claim. (ECF No. 86, at Page ID # 10455.) Respondent continues to maintain that Petitioner's claim is also time-barred and not eligible for equitable tolling. (*Id*. at Page ID # 10456.) Finally, Respondent dismisses Petitioner's "gateway claim" argument, reasoning that his claim cannot stand independently in habeas corpus and that, put simply, Ohio requires *Atkins* claims to be raised during trial.

Turning first to Respondent's procedural default argument, the first part of the *Maupin* test requires the Court to determine whether Petitioner violated a state procedural rule. Here, Petitioner clearly did. In *Atkins v. Virginia*, 536 U.S. 304 (2002), the United States Supreme Court held that the execution of mentally retarded (hereinafter "intellectually disabled") criminals violates the Eight Amendment's ban on cruel and unusual punishments. The Supreme Court left it to the states to establish procedures and substantive guidelines for addressing "*Atkins*" claims. The Ohio State Supreme Court established those procedures and substantive

guidelines in *State v. Lott*, 97 Ohio St. 3d 303 (2002).  The Ohio Supreme Court held that for defendants already sentenced to death, Ohio's postconviction statute provided an adequate corrective process for raising an *Atkins* claim.  Respondent is correct that according to *Lott*, a criminal defendant charged after the *Lott* decision with a capital offense must raise any *Atkins* claim in the trial court.  *Lott*, 97 Ohio St. 3d at 308 ("[A]s to capital cases currently pending at trial, the trial court should consider defense *Atkins* claims, and hold hearings, in accordance with the standards set out in this opinion."); *see also State v. Jackson*, 141 Ohio St. 3d 171, 181 (2014 ("*Lott* also held that the appropriate time to present an *Atkins* claim is at trial.")

Petitioner, who went to trial three years after the *Lott* decision, violated *Lott* and its progeny when he failed to raise his *Atkins* claim at trial.  Because Petitioner's failure to present his claim deprived the state courts of the opportunity to enforce or ignore the procedural rule, this Court deems the second part of the *Maupin* test to have been met.  The Court also concludes that the procedural rule is an adequate and independent state ground to preclude habeas review, insofar as it furthers the well-established principal of requiring criminal litigants to raise claims at the earliest opportunity.

That leaves to be addressed the fourth part of the *Maupin* test—namely, whether Petitioner can satisfy either the cause and prejudice test or fundamental miscarriage of justice/actual innocence exception for excusing the apparent default of his *Atkins* claim. Petitioner argues that ineffective assistance of trial counsel—*i.e.*, the ineffective assistance claim set forth in ground 18(D)—satisfies the cause and prejudice test.  The Court determined above that Petitioner defaulted that claim of trial counsel ineffectiveness.  That being so, the Court cannot consider that trial counsel ineffectiveness claim as cause to excuse the default of

151

Petitioner's thirty-fourth ground for relief. *Edwards v. Carpenter*, 529 U.S. 446 (2000).  For the foregoing reasons, the Court **GRANTS** Respondent's motion to dismiss ground thirty-four as procedurally defaulted.

V.  Conclusion

For the foregoing reasons, Respondent's motion to dismiss (ECF No. 65) is **GRANTED** in part and **DENIED** in part as set forth in this opinion.  Pursuant to this Court's February 26, 2014 scheduling order (ECF No. 49), Respondent shall have sixty (60) days from the date this Opinion and Order to file an Answer/Return of Writ.

**IT IS SO ORDERED.**

9-29-2015
**DATE**

**EDMUND A. SARGUS, JR.**
**Chief United States District Judge**