IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ROLAND T. DAVIS,

    Petitioner,

v.

CHARLOTTE JENKINS, Warden,

    Respondent.

Case No. 2:10-cv-107
Chief Judge Edmund A. Sargus, Jr.
Magistrate Judge Kimberly A. Jolson

## OPINION AND ORDER

Petitioner Roland Davis, a prisoner sentenced to death by the State of Ohio, has pending before this Court a habeas corpus action pursuant to 28 U.S.C. § 2254. This matter is before the Court for consideration of Respondent-Warden's Second Renewed Motion to Dismiss the 24th through 27th Grounds for Relief (ECF No. 134), in which the Warden seeks to dismiss all of Davis's method-of-execution claims, Davis's Memorandum in Opposition (ECF No. 137), and the Warden's Reply (ECF No. 138). For the following reasons, the Warden's Renewed Motion to Dismiss (ECF No. 134) is **GRANTED**.

### Procedural History

Davis filed his initial Petition on June 15, 2010 (ECF No. 15), after which the Court stayed the case and held the proceedings in abeyance while Petitioner completed certain state-court proceedings (ECF No. 18). It was on March 8, 2012, while this case was stayed, that Davis first sought leave to amend his Petition to add one ground raising an Eighth Amendment challenge to Ohio's lethal-injection execution protocol and another ground raising a Fourteenth Amendment Equal Protection challenge to the same. (ECF No. 28.) After vacating its stay for

the limited purpose of addressing Davis's motion (ECF No. 33), the Court on July 5, 2012 granted that motion (ECF No. 34). The Court concluded among other things that Davis's proposed claims did not run afoul of the habeas corpus statute of limitations, 28 U.S.C. § 2244(d)(1), and that Davis's claims were cognizable in habeas corpus pursuant to *Adams v. Bradshaw*, 644 F.3d 481, 484 (6th Cir. 2011), hereinafter "*Adams I*."[1] Davis filed his First Amended Petition on July 30, 2012 (ECF No. 35), adding his two method-of-execution challenges as sub-parts K and J to his twenty-third ground for relief.

The case remained stayed until Davis completed state-court proceedings, and was eventually reopened on February 19, 2014. (ECF No. 46.)

Nearly seven months later, on September 2, 2014, Davis filed a Second Amended Petition (ECF No. 61) pursuant to the reopening of the case. Davis replaced his two general method-of-execution claims with ten detailed method-of-execution claims, numbered twenty-four through thirty-three, that essentially mirrored claims being litigated in the § 1983 action captioned *In re: Ohio Execution Protocol Litigation*, Case No. 2:11-cv-1016.

Just one month later, on October 1, 2014, Davis filed a Motion to Stay consideration of his lethal-injection claims. (ECF No. 62.) Specifically, Davis requested sixty (60) days from the date Ohio conducted its first execution under the most recent iteration of Ohio's execution protocol—the planned February 11, 2015 execution of Ronald Phillips—to revise Davis's method-of-execution claims. (*Id.*) On November 10, 2014, the Court granted Davis's motion,

---

[1] In *Adams I*, the Sixth Circuit rejected the Warden's argument that challenges to a particular method by which lethal injection will be conducted are not cognizable in habeas corpus. The Sixth Circuit dismissed the Warden's position as "too broad," explaining that Adams had not conceded the existence of an acceptable alternative method and that Adams's claim, if successful, could render his death sentence effectively invalid.

2

reiterating that his claims were cognizable in habeas corpus and concluding that facts stemming from the Phillips execution would be critical to Davis's ability to meaningfully plead his method-of-execution claims. (ECF No. 69.) The Court gave Davis sixty (60) days from the Phillips execution, to and including April 13, 2015, to revise his method-of-execution claims.[2]

On that April 13, 2015 deadline, the Court issued an order denying Davis's motion for an extension of time to address Ohio's issuance of new protocols and developments in the § 1983 case and state legislature (ECF No. 76). (ECF No. 79.) The Court gave Davis a new deadline of April 20, 2015 to revise his method-of-execution claims. (*Id.*)

On that date, Davis filed a Motion for Leave to File an Amended Petition to Include Amended Lethal Injection Claims (ECF No. 80), and attached those proposed claims in an exhibit (ECF No. 80-1). On April 23, 2015 (ECF No. 81), the Court granted Davis's motion, and Davis filed a Substituted Second Amended Petition on May 1, 2015. (ECF No. 85.)[3]

On September 29, 2015, the Court issued an Opinion and Order denying in part and granting in part the Warden's motion to dismiss procedurally defaulted claims. (ECF No. 94.) As to the method-of-execution challenges set forth in grounds twenty-four through thirty-three, the Court noted that those claims had been the subject of supplemental briefing (ECF Nos. 88, 89, 90, and 93) and that the Court would accordingly issue a separate order addressing those claims.

Specifically, the Warden in her July 14, 2015 Reply in support of her motion to dismiss

---

[2] Phillips was not executed on that date, but was eventually executed on July 26, 2017.

[3] Davis filed a Substituted Second Amended Petition (ECF No. 85) to remedy the fact that what was initially docketed as a Second Amended Petition (ECF No. 82) was the exhibit

3

the lethal injection claims addressed the impact of the Supreme Court's *Glossip v. Gross*, 135 S.Ct. 2726 (2015) decision on the Sixth Circuit's *Adams I* decision vis-à-vis the continued viability of method-of-execution claims raised in habeas corpus. (ECF No. 90.) Davis likewise addressed *Glossip* in an August 10, 2015 Sur-Reply. (ECF No. 93.) *Glossip* involved a § 1983 challenge by Oklahoma death row inmates to the use of midazolam as the first drug in Oklahoma's three-drug execution protocol. *Glossip* included a comment characterizing the Supreme Court's prior precedent as holding that a method-of-execution claim must be brought under § 1983 because such a claim does not attack the validity of the prisoner's conviction or death sentence. *Glossip*, 135 S.Ct. at 2738.

Before the Court could address the supplemental pleadings concerning Davis's lethal injection claims, the Sixth Circuit, on March 15, 2016, issued another decision in *Adams v. Bradshaw*, 817 F.3d 284 (6th Cir. 2016), hereinafter "*Adams II*." After ruling in *Adams I* that Adams could pursue his lethal injection claim in habeas, the Sixth Circuit remanded the case to the district court for factual development on that lethal injection claim. The district court complied, after which it again denied relief. On appeal, the Sixth Circuit acknowledged as an initial matter, "our recent holding that lethal injection does not violate the Constitution." *Id.* at 296-97 (citing *Scott v. Houk*, 760 F.3d 497, 512 (6th Cir. 2014) ("Simply put, lethal injection does not violate the Constitutional per se.")). The Sixth Circuit ultimately affirmed the denial of relief on Adams's lethal injection claim, but as to the claim's viability in habeas corpus, noted as follows:

> Lastly, notwithstanding the warden's assertion that a method-of-execution challenge can only be brought in a § 1983 action under *Hill v. McDonough*, 547

---

(ECF No. 80-1) setting forth just Davis's proposed revised lethal-injection claims.

4

> U.S. 573, 126 S.Ct. 2096, 165 L.Ed.2d 44 (2006), Adams can bring this claim in a § 2254 proceeding. As the warden submits, *Glossip* stated that *Hill* "held that a method-of-execution claim must be brought under § 1983 because such a claim does not attack the validity of the prisoner's conviction or death sentence." *Glossip*, 135 S.Ct. at 2738. As we observed in *Adams*, 644 F.3d at 483, however, Adams's case is distinguishable from that presented in *Hill* because at least some of Adams's claims, if successful, would bar his execution, and Adams does not concede that lethal injection can be administered in a constitutional manner. *Cf. Hill*, 547 U.S. at 580, 126 S.Ct. 2096.

*Adams II*, 817 F.3d at 299. The Sixth Circuit proceeded to note that despite not prevailing in habeas corpus, Adams could "still have a means of exploring his method-of-execution claim in his § 1983 action challenging Ohio's lethal injection protocol." *Id.* (citing *In re Ohio Execution Protocol Litigation*, No. 2:11-cv-1016 (S.D. Ohio)).

In response to *Adams II*, this Court, on March 25, 2016, issued an Opinion and Order denying the Warden's Motion to Dismiss the Lethal-Injection Grounds, (ECF No. 88), without prejudice and subject to renewal following briefing on the impact of *Adams II*. (ECF No. 101.) Specifically, the Court gave the Warden fourteen (14) days from the date that the *Adams II* mandate issued to file a supplemental memorandum in support of her motion to dismiss Davis's lethal-injection claims.

In response to that Order, as well as similar orders issued in other capital habeas corpus cases, the Warden, on March 30, 2016 filed a Motion to Clarify in the Sixth Circuit. (Case No. 07-3688, Doc. 175-1.) After agreeing that the panel had rightly dismissed Adams's petition on the merits, the Warden issued the following request:

> The Warden respectfully asks, in the interest of judicial economy, for clarification of one paragraph of the panel opinion that is causing confusion among the lower courts in a significant number of cases. The panel should clearly state that *Adams I* only allows a "*per se*" challenge to lethal injection brought under § 2254. Any challenge to "the particular procedure" for lethal injection laid out in Ohio's lethal injection protocol, Panel op. at 16, must be brought under § 1983."

5

*Id.* at Page 2. The Sixth Circuit granted the Warden's motion (Doc. 176), and on June 13, 2016, issued an Amended Opinion and Judgment (Doc. 177): *Adams v. Bradshaw*, 826 F.3d 306 (6th Cir. 2016), hereinafter "*Adams III.*"

In *Adams III*, the Sixth Circuit left unchanged its holdings from *Adams II* that lethal injection does not violate the Constitution per se, *Id.* at 318, and that Adams's lethal injection challenge did not warrant habeas corpus relief, *Id.* at 319-20. With respect to the issue of whether Adams could even bring his lethal injection claim in habeas corpus, the Sixth Circuit expanded on the "yes" it had set forth in *Adams II* as follows:

> Lastly, notwithstanding the warden's observation that a method-of-execution challenge can only be brought in a § 1983 action under *Hill v. McDonough*, 547 U.S. 573, 126 S.Ct. 2096, 165 L.Ed.2d 44 (2006), Adams can bring this claim in a § 2254 proceeding. As the warden submits, *Glossip* stated that *Hill* "held that a method-of-execution claim must be brought under § 1983 because such a claim does not attack the validity of the prisoner's conviction or death sentence." *Glossip*, 135 S.Ct. at 2738. As we observed in *Adams*, 644 F.3d at 483, however, Adams's case is distinguishable from *Hill* because Adams argues that lethal injection cannot be administered in a constitutional manner, and his claim "could render his death sentence effectively invalid." *Cf. Hill*, 547 U.S. at 580, 126 S.Ct. 2096. Our decision in *Adams* is consistent with the Supreme Court's reasoning in *Nelson*, which suggested that, under a statutory regime similar to Ohio's, "a constitutional challenge seeking to permanently enjoin the use of lethal injection may amount to a challenge to the fact of the sentence itself." 541 U.S. at 644, 124 S.CT. 2117. Thus, to the extent that Adams challenges the constitutionality of lethal injection in general and not a particular lethal-injection protocol, his claim is cognizable in habeas. *Adams*, 644 F.3d at 483. However, as the Supreme Court observed in *Glossip*, a challenge to a particular procedure that concedes the possibility of an acceptable alternative procedure is properly brought in a § 1983 action. *Glossip*, 135 S.Ct. at 2738.

*Adams III*, 826 F.3d at 320-21.

The *Adams III* mandate issued on January 23, 2017 and, on January 31, 2017, the Warden filed a Renewed Motion to Dismiss the Twenty-Fourth through Thirty-Third Grounds (the

6

"Lethal-Injection Grounds"). (ECF No. 114.) Davis filed a Response on February 14, 2017 asking to withdraw his lethal-injection grounds and for leave to amend his petition to revise his lethal-injection grounds. (ECF No. 117.) The Warden filed a Reply on February 15, 2017 objecting to Davis's request and supporting her motion to dismiss the lethal-injection grounds. (ECF No. 118.)

As he stated he would, Davis on March 16, 2017 filed a Motion to File an Amended Petition to Include Revised Lethal Injection Grounds for Relief. (ECF No. 119.) The Warden filed an Opposition on March 20, 2017 (ECF No. 120) and Davis filed a Reply on April 3, 2017 (ECF No. 121).

Davis proposed to add the following four lethal-injection claims:

TWENTY-FOURTH GROUND FOR RELIEF: The State of Ohio cannot constitutionally execute Petitioner because the only manner available under the law to execute him violates his Eighth Amendment rights.

A. Any drug DRC can procure to use to execute Petitioner via lethal injection has a substantial, objectively intolerable risk of causing unnecessary, severe pain, suffering, degradation, humiliation, and/or disgrace in violation of the Eighth Amendment, and Ohio has no other manner of execution available to execute Petitioner that complies with the Constitution.

B. Any drug DRC can procure to use to execute Petitioner via lethal injection poses an objectively intolerable risk of causing a lingering and/or undignified death in violation of the Eighth Amendment, and Ohio has no other manner of execution available to execute Petitioner that complies with the Constitution.

C. The lack of legally obtainable, effective drugs to conduct Petitioner's lethal-injection execution, and the reality that Ohio has no other manner of execution that complies with the Constitution, will cause Petitioner psychological torture, pain and suffering in violation of the Eighth Amendment.

D. The unavoidable variations inherent in Ohio's lethal-injection system and DRC's continued and consistent inability to properly administer its execution protocols present a substantial, objectively intolerable risk of serious harm to Petitioner in violation of the Eighth Amendment, and Ohio has no other manner

7

of execution available to execute Petitioner that complies with the Constitution.

E.   Petitioner's unique, individual physical and/or mental characteristics will cause any execution by lethal injection under Ohio law to violate the Eighth Amendment, and Ohio has no other manner of execution available to execute Petitioner that complies with the Constitution.

TWENTY-FIFTH GROUND FOR RELIEF: The State of Ohio cannot constitutionally execute Petitioner because the only manner available for execution violates the Due Process Clause or the Privileges or Immunities Clause of the Fourteenth Amendment.

A.   Execution by lethal injection under Ohio law will deny Petitioner's interests in expecting and receiving a quick and painless death in violation of the Due Process Clause of the Fourteenth Amendment, and Ohio has no other manner of execution available to execute Petitioner that complies with the Constitution.

B.   Execution by lethal injection under Ohio law will deny Petitioner's interests in expecting and receiving a humane and dignified death in violation of the Due Process Clause of the Fourteenth Amendment, and Ohio has no other manner of execution available to execute Petitioner that complies with the Constitution.

C.   Petitioner's execution by lethal-injection under Ohio law will be a human experiment on a non-consenting prisoner in violation of the Due Process or Privileges or Immunities Clauses of the Fourteenth Amendment, and Ohio has no other manner of execution available to execute Petitioner that complies with the Constitution.

TWENTY-SIXTH GROUND FOR RELIEF: DRC cannot constitutionally execute Petitioner because the only manner of execution available for execution under Ohio law violates the Equal Protection Clause of the Fourteenth Amendment.

A.   Equal Protection – Fundamental Rights.

B.   Equal Protection – "Class-of-One" Disparate Treatment.

TWENTY-SEVENTH GROUND FOR RELIEF: The State of Ohio cannot constitutionally execute Petitioner because Ohio's violations of federal law constitute a fundamental defect in the execution process, and the only manner of execution available for execution depends on state execution laws that are preempted by federal law.

> A. DRC's actions in obtaining execution drugs, its import, purchase, possession, dispensing, distribution and/or administration (and any other terms of art under the CSA) of those drugs violate the CSA.
>
> B. DRC's actions in obtaining execution drugs, its import, purchase, possession, dispensing, distribution and/or administration (and any other terms of art under the FDCA) of those drugs contravene the FDCA because those drugs used in an execution are unapproved drugs and/or misbranded drugs and/or constitute unapproved Investigational New Drugs.
>
> C. DRC's actions in obtaining compounded controlled substances for use as execution drugs, its import, purchase, possession, dispensing, distribution and/or administrations (and any other terms of art under the CSA or FDCA) of those drugs violate federal law.
>
> D. The violations of federal statutory law committed by the State of Ohio will amount to a fundamental defect in the execution process warranting habeas corpus relief.

(ECF No. 119-1, at PageID 11376-11378.)

On September 28, 2017, the Court issued an Opinion and Order denying the Warden's renewed motion to dismiss Davis's method-of-execution claims (ECF No. 114) and granting Davis's motion to file an amended petition with revised method-of-execution claims (ECF No. 119). (ECF No. 128.) Specifically, the Court determined that the claims Davis sought to add – grounds twenty-four through twenty-seven set forth above – appeared to fit within *Adams III*'s definition of cognizability. The Court found that they were not so broad as to constitute a *per se* challenge to lethal injection executions, which Sixth Circuit precedent forecloses, but not so narrow as to be protocol-specific, which the *Adams* decisions would require to be raised in a § 1983 civil rights action. The Court then reasoned that because Davis's proposed claims, if successful, would effectively enjoin the State of Ohio from executing him by the only means authorized by state statute, his claims would effectively, even if not technically, render his death sentence invalid. Pursuant to *Adams III*, those types of claim appeared to sound in habeas

9

corpus.

The Warden sought reconsideration, which this Court denied on September 29, 2017. (ECF No. 130; *Davis v. Jenkins*, Case No. 2:10-cv-107, 2017 WL 4366249 (S.D. Ohio Sep. 29, 2017).) The Court rejected the Warden's argument that the subsequent decision of *In re: Tibbetts*, 869 F.3d 403 (6th Cir. 2017), calling into question the viability in habeas corpus of method-of-execution claims such as the ones Davis added, could overrule the earlier published *Adams II* and *Adams III* decisions, and reiterated that *Adams III* remained binding. 2017 WL 4366249, at *2.

Pursuant to the Court's opinions, Davis on October 18, 2017 filed an Amended Petition including his revised method-of-execution claims. (ECF No. 130.)

Exactly one week later, the Sixth Circuit issued *In re: Campbell*, 874 F.3d 454, 460-67 (6th Cir. 2017), holding that Campbell's claims[4] attacking the constitutionality of Ohio's lethal-injection protocol were *not* cognizable in Campbell's second-in-time petition. The *Campbell* panel explained that despite Campbell's argument that Ohio's inability to constitutionally execute him by lethal injection effectively invalidated his death sentence:

> [I]t is clear that Campbell is seeking an injunction against a particular method of execution as applied to him, rather than an order vacating his death sentence entirely. *See id.* at 407 n. 2. That relief is not available in a habeas corpus action. He has therefore not pled any new facts that, if proven, would absolutely prohibit his execution. Neither has he brought any newly ripe legal challenges that would, if successful, require us to vacate his death sentence. ***

---

[4] The Sixth Circuit characterized Campbell's claims as: "(1) that recent changes to Ohio's execution protocols raise new factual claims that could not have been brought in his first habeas petition; (2) that his newly worsened medical conditions render all lethal injections unconstitutionally painful; and (3) that there is no meaningful difference between mental incompetency (which precludes execution under the Eighth Amendment) and his severe physical ailments." *Campbell*, 874 F.3d at 464.

10

*Campbell*, 874 F.3d at 467.

In so holding, the *Campbell* panel dismissed as dictum the *Adams III* panel's characterization of *Adams I*, *Adams II*, and *Glossip* as allowing method-of-execution claims to be raised in habeas corpus. *Id.* at 464. The *Campbell* court reminded, "[O]f course, dictum in a prior decision—as opposed to a *holding*—does not bind future panels, including this one." *Id.* The *Campbell* court then announced in no uncertain terms that *Glossip* is controlling and makes clear that, "in the peculiar context of method-of-execution claims—the death row inmate must proceed under § 1983." *Id.*

In response to *Campbell*, the Warden on October 26, 2017 renewed her motion to dismiss Davis's "lethal-injection grounds." (ECF No. 134.)

**Analysis**

The Sixth Circuit's *Campbell* decision is dispositive. In *Campbell*, the Sixth Circuit explained as follows:

> *Glossip* therefore closed the hypothetical door left open by *Nelson*, *Hill*, and *Adams II*. No longer can a method-of-execution claim impair a death sentence itself. And since a method-of-execution claim can no longer "attack the validity of the prisoner's conviction or death sentence," a habeas court cannot act upon it. *Id.* at 2738. Thus, the *Glossip* Court necessarily barred all habeas petitions challenging "a particular application of a particular protocol to a particular person" as unconstitutionally painful. *In re Tibbetts*, 869 F.3d 403, 406 (6th Cir. 2017). These challenges are properly remedied by an injunction prohibiting the state from *taking certain actions*, rather than a writ of habeas corpus that vacates the sentence entirely.

*Campbell*, 874 F.3d at 462 (emphasis in original).

As Magistrate Judge Merz recently observed in *Bays v. Warden, Ohio State Penitentiary*, Case No. 3:08-cv-076, 2017 WL 5128277 (S.D. Ohio Nov. 6, 2017), as to four method-of-execution claims Magistrate Judge Merz had previously allowed to be added to the habeas

11

corpus petition:

> *Campbell* is fatal to the cognizability of Bays' Sixteenth, Seventeenth, and Eighteenth Grounds for Relief in habeas corpus. Each of them is a method/manner of execution claim under the Eighth or Fourteenth Amendment seeking to have Bays' death sentence invalidated without pleading an alternative method or manner. As noted above, Bays is a plaintiff in the Protocol Case and has in that case pleaded an alternative method of execution. Under *Campbell*, he must be remanded to that remedy.

*Bays*, 2017 WL 5128277, at *4.[5] *See also McKnight v. Bobby*, Case No. 2:09-cv-059, 2018 WL 524872, at *1-2 (S.D. Ohio Jan. 24, 2018) (Dlott, D.J.); *Raglin v. Mitchell*, Case No. 1:00-cv-767, 2017 WL 6629102, at *3-5 (S.D. Ohio Dec. 29, 2017) (Merz, M.J.); *Turner v. Hudson*, Case No. 2:07-cv-595, 2017 WL 6209022, at *3-5 (S.D. Ohio Dec. 6, 2017) (Merz, M.J.). In a Supplement to his November 6, 2017, Report and Recommendations in *Bays*, Magistrate Judge Merz observed:

> [W]hether or not *Campbell* creates binding precedent, it is clearly intended to provide guidance to the district courts by sorting out the appropriate forum in which to bring method-of-execution claims. Whether or not we are bound to follow Campbell, we should do so because it makes the appropriate allocation of those claims to § 1983 cases.

*Bays v. Warden*, Case No. 3:08-cv-076, 2017 WL 6035231, at *7 (S.D. Ohio Dec. 6, 2017).

The various iterations of method-of-execution claims that Davis has raised, like Bays' claims, constitute method/manner claims under the Eighth or Fourteenth Amendment. Under *Campbell*, such claims are not cognizable in habeas corpus. This conclusion does not leave Davis without remedy, however, as he, like Bays, is a plaintiff in *In re: Ohio Execution Protocol*

---

[5] Magistrate Judge Merz originally recommended dismissal of the fourth of Bays' method-of-execution claims as non-cognizable because it was based on federal statutory law instead of the federal Constitution, but changed his recommendation to dismissal on the basis of *Campbell*. *Bays*, 2017 WL 5128277, at * 4.

*Litigation*, Case No. 2:11-cv-1016. That is where Davis can and must pursue his method-of-execution claims.

Relying on this Court's opinion denying the Warden's motion for reconsideration, Davis insists that the *Campbell* panel could not overrule the *Adams III* panel and that *Adams III* remains binding. (ECF No. 137, at PageID 12028.) Davis's argument is specious. First, Davis is well aware that this Court issued its decision on the Warden's motion for reconsideration a month before *Campbell* was issued. Moreover, the *Campbell* panel made clear that on the issue of whether method-of-execution claims could be raised in habeas corpus, the *Campbell* panel was not overruling the earlier published decisions of *Adams II* and *Adams III*; rather, the *Campbell* panel was regarding the *Adams* panel's discussion of that issue as dicta that did not bind the *Campbell* panel or any other panels considering that issue. *Campbell*, 874 F.3d at 463-64.

This result is consistent with the Sixth Circuit's recent opinion in *In re: Kenneth W. Smith*, No. 17-4090, 2018 U.S. App. LEXIS 8083 (6th Cir. Mar. 29, 2018). In *Smith*, Smith appealed from the District Court's order transferring his amended second-in-time petition to the Sixth Circuit as an unauthorized second or successive petition. At issue were four claims that Smith had added challenging his impending execution by lethal injection. Smith argued that his second-in-time petition was not second or successive because Ohio's switch of its method from electrocution to lethal injection constructively amended the judgment against him. A three-judge panel denied his request for fuller briefing on that issue, explaining:

> [S]mith's argument is both creative and debatable, and were it capable of determining the result in this case, we would grant Smith's motion for fuller briefing on the question. Unfortunately for Smith, however, binding precedent makes clear that there is a more foundational problem with Smith's petition: he is

13

challenging a particular method of execution, and this court has declared that such claims "must proceed under § 1983." *In re Campbell*, 874 F.3d 454, 464 (6th Cir.), *cert. denied*, 138 S.Ct. 466 (2017); *see also id.* at 465-67. There is thus no remedy for him in habeas, and no indication that he otherwise qualifies to evade or satisfy the demands of § 2244(b). *See id.* at 467.

[S]mith seeks to elude this result by arguing that the precedent that compels it, *Campbell*, lacks the power to bind us. He points out that it conflicts with a statement that we made in *Adams v. Bradshaw*, 826 F.3d 306 (6th Cir. 2016), *cert. denied*, 137 S.Ct. 814 (2017), and argues that the *Adams* statement should control, given our circuit's stare decisis rule, *see Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 696 (6th Cir. 1985) ("A panel of this Court cannot overrule the decision of another panel. The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision."). But Smith fails to reckon with an important limit to this rule: that the rule protects holdings, but not dicta, against invasion by later panels. *See Williams v. Anderson*, 460 F.3d 789, 811 (6th Cir. 2006). And as the majority in *Campbell* emphasized, the contradictory statement at issue was not "necessary to" *Adams*'s result, and thus was, instead, dictum. *Campbell*, 874 F.3d at 464 (quotation marks omitted); *see Adams*, 826 F.3d at 320 (noting that Adams's claim was "precluded" because he had "failed to present [it] to the state courts, nor did he raise it in his habeas petition," before proceeding to discuss the merits of Adams's arguments); *see also, e.g., United States v. Stevenson*, 676 F.3d 557, 561-62 (6th Cir. 2012) (distinguishing holdings from dicta). In other words, we are indeed required to apply *Campbell*, and *Campbell* forecloses Smith's claim.

*Smith*, 2018 U.S. App. LEXIS 8083, at *4-5.

In view of the foregoing, this Court finds wholly unpersuasive Davis's argument that *Adams III* remains binding. *See Bays*, 2017 WL 6035231, at *2-3 ("However, the *Campbell* court did not purport to overrule *Adams III*, but rather to explain why *Adams III* did not control the case before it.")

Davis also argues that the procedural posture of *Campbell*—a dismissal under 28 U.S.C. § 2244(b) of second or successive habeas corpus petition--weighs against treating it as controlling authority on the issue of whether method-of-execution claims are cognizable in habeas corpus. (ECF No. 137, at PageID 12029.) As Magistrate Judge Merz observed in *Bays*,

14

among other decisions, "the *Campbell* court took considerable time to discuss the issue and plainly intended its decision to provide guidance to the district courts, whether or not it is binding precedent." *Bays*, 2017 WL 6035231, at *6. This Court agrees that in view of the *Campbell* panel's purposeful discussion of the kinds of claims that properly sound in habeas corpus, there is nothing about the fact that it was a decision denying permission to file a second or successive habeas corpus petition that undermines its weight on the issue of whether method-of-execution claims may be raised in habeas corpus. That is especially so after the Sixth Circuit's *Smith* opinion making unmistakably clear that it is *Campbell*, not the *Adams* decisions, that controls on the issue of whether method-of-execution claims are cognizable in habeas corpus. To reiterate—they are not.

Davis also argues that several recently issued district court decisions on *Campbell*'s applicability—*Turner v. Warden*, Case No. 2:07-cv-595, and *Bays v. Warden*, Case No. 3:08-cv-076 (S.D. Ohio Nov. 6, 2017)—are still being litigated and are not final. (ECF No. 137, at PageID 12027, n. 1.) That may be so, but this Court is in agreement with those and other decisions from this district concluding that *Campbell* controls and closes the door on raising method-of-execution claims in habeas corpus.

Finally, Davis argues that even if this Court finds that *Campbell* precludes Davis's constitutional challenges to Ohio's execution procedures, the Court should nonetheless allow Davis to proceed on the statutory claim set forth in his twenty-seventh ground. The Court disagrees.

Magistrate Judge Merz recently considered this argument at length, and concluded that "[a]lthough *Campbell* only expressly addressed Eighth Amendment claims under *Baze* and

15

*Glossip*, its logic is fully applicable here [to Bays's claim that Ohio's execution protocol and practices violate federal statutory law]." *Bays*, 2017 WL 6035231, at *9. Davis, like Bays, raises in his twenty-seventh ground for relief a claim that Ohio's violations of federal law constitute a fundamental defect in the execution process, and the only manner of execution available for execution depends on state execution laws that are preempted by federal law. After agreeing that habeas relief will lie for federal statutory violations that create a fundamental defect in the process and that § 2254(d) deference is not applicable to a claim that was never presented to the state courts, Magistrate Judge Merz nevertheless determined that even if Bays's claim pleads a violation of federal law that qualifies as a fundamental defect, "[t]he time horizon of these claims makes clear that they belong in a forward-looking § 1983 complaint and not in a habeas corpus petition." *Id*. Magistrate Judge Merz explained:

> [A]lthough Ohio has execution dates set through August 24, 2022, it has none set for Petitioner Bays. What will happen in Ohio execution law, policy, and practice between now and then? Projections are difficult to make, given the dynamic nature of this area of the law, but it is very likely there will be a great deal of change of various kinds. This Court stands ready to adjudicate in a § 1983 case the claims Bays makes in his Nineteenth Ground for Relief when his execution is imminent and it is at least known what method Ohio then proposes to use. 42 U.S.C. § 1983, as noted above, provides the full range of federal civil remedies both pre- and post-hearing, to prevent an execution that would be unconstitutional. As also noted above, Bays is a plaintiff in just such a case. *In re Ohio Execution Protocol Litig.*, Case No. 2:11-cv-1016. But Bays claims that § 1983 remedy is not adequate to protect his rights. In addition, he seeks to have his conviction, now more than twenty years old, declared void on the basis of facts which may not yet have happened.

*Bays*, 2017 WL 6035231, at *9. Magistrate Judge Merz ultimately recommended that "[f]ollowing the guidance of *Campbell*, this Court should hold that method-of-execution claims, whether or not they are *Baze/Glossip* claims, belong in § 1983 litigation and not in habeas." *Id.* at *10. This Court agrees.

16

Davis, who is still litigating his initial habeas corpus action in this Court, is even further removed from an imminent execution date than Bays and countless other Ohio death row inmates. Beyond that, Davis cannot credibly assert in a backward-looking habeas corpus action defects surrounding his as-yet hypothetical execution that have not occurred and may never occur sufficient to invalidate his death sentence within the parameters of habeas corpus. That is precisely the type of claim, whether based on the federal Constitution or federal statutory law, that belongs in § 1983.

## Conclusion

For the foregoing reasons, the Court concludes that Davis's method-of-execution claims are not cognizable in habeas corpus. The Court **GRANTS** the Warden's Second Renewed Motion to Dismiss (ECF No. 134), and **DISMISSES as not cognizable** grounds twenty-four, twenty-five, twenty-six, and twenty-seven.

**IT IS SO ORDERED.**

9-28-2018

**EDMUND A. SARGUS, JR.**
**Chief United States District Judge**

17