# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

ROLAND DAVIS,

                  Petitioner,             :     Case No. 2:10-cv-107

     - vs -

                                       District Judge Sarah D. Morrison
                                       Magistrate Judge Kimberly A. Jolson

RICHARD A. BOWEN, JR., Warden,
Ohio State Penitentiary,

                                        :

             Respondent.

## OPINION AND ORDER AS TO PETITION FOR WRIT OF *HABEAS CORPUS*

This capital habeas corpus case is before the Court for decision on the merits on the Petitioner Roland Davis's Third Amended Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 ("Petition," ECF No. 133.)

In 2005, Petitioner was convicted of aggravated murder and sentenced to death for the killing of Elizabeth Sheeler. *State v. Davis*, 110 Ohio St. 3d 408, 2008-Ohio-2 ("*Davis I*"), ¶¶ 1-2. On appeal, the Supreme Court of Ohio rejected all eighteen of Petitioner's propositions of law and affirmed his conviction and death sentence in 2008. *Id.* at ¶ 405. Petitioner's conviction became final on October 6, 2008, when the United States Supreme Court denied his petition for *certiorari*. *Davis v. Ohio*, 555 U.S. 861, 129 S.Ct. 137 (Mem.) (2008). On June 15, 2010,

Petitioner filed his initial petition for writ of habeas corpus (ECF No. 15), and on

October 18, 2017, filed the instant Third Amended Petition (ECF No. 133.)  For the

reasons set forth below, the Petition is **DENIED** and the action is **DISMISSED**

**WITH PREJUDICE**.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.     Pretrial and Trial

The factual background has been extensively set forth in previous opinions by

this Court and elsewhere, most notably this Court's September 29, 2015, Opinion

and Order dismissing the Substitute Second Amended Petition in part. (ECF No.

94, PageID 10624-30, quoting *Davis I*, 2008-Ohio-2, ¶¶ 1-41.)  The Court

incorporates that discussion by reference, and the summary discussion below is

limited to those facts germane to the Claims for Relief in the instant Petition.

Elizabeth Sheeler, an elderly woman, was found dead in her apartment on

July 12, 2000. (Petition, ECF No. 133, PageID 11626, ¶ 41, citing Trial Tr., ECF No.

52-3, PageID 7174.)  Petitioner's ex-girlfriend testified that the next day, Petitioner

showed up at her house "in a new car with two envelopes full of cash" and told her

that he had been running drugs.  (*Id*. at PageID 11626-27, ¶ 46, citing Trial Tr.,

ECF No. 52-3, PageID 7358-60.)  Another ex-girlfriend stated that Petitioner always

carried a pocketknife and bought her son a $1200 drum set the same month as the

murder.  (*Id*. at PageID 11627, ¶ 47, citing Trial Tr., ECF No. 52-3, PageID 7419,

7423, 7429-30.)  Sheeler had asked for Petitioner to be her taxi driver in the past.

(*Id*., ¶ 48.)  In 2003, Petitioner went to a restaurant called Annie's Place and asked

2

if there were any leads in the case.  (*Id.*, ¶ 49, citing Trial Tr., ECF No. 52-3, PageID 7459-60, 7485-88.)  Detective Steven Vanoy eventually identified Petitioner as a suspect, claiming that the DNA on the towel found in Sheeler's apartment matched that of Petitioner.  (*Id.* at PageID 11628, ¶¶ 50-51, citing Trial Tr., ECF No. 52-3, PageID 7519-20, 7531.)  Vanoy interviewed Petitioner once pre-arrest and once post-arrest.  Petitioner did not confess either time.  (*Id.*, ¶¶ 52-54, citing State Court Record, ECF No. 52-3, PageID 7533-63, 7580-81.)

Petitioner was indicted on one count of aggravated murder of Elizabeth Sheeler, along with four statutory aggravating circumstances, and separate counts of murder, kidnapping, aggravated robbery, and aggravated burglary (Petition, ECF No. 133, PageID 11611, ¶ 5.)  The trial began on June 27, 2005, in Licking County, Ohio, Court of Common Pleas.  (*Id.* at ¶ 6.)  During the trial, Richard Hummel, in Licking County Jail for a drunken driving offense, testified that Petitioner informed him that Petitioner had stabbed Sheeler.  (*Id.* at PageID 11629, ¶ 55, citing Trial Tr., ECF No. 52-3, PageID 7593, 7598.)  Detective Timothy Elliget testified that none of the fingerprints was a match for Petitioner.  (*Id.* at PageID 11629-30, ¶¶ 56-57, citing Trial Tr., ECF No. 52-3, PageID 7633, 7635, 7651-53, 7702-03.)  Meghan Clement, "the technical director in the forensic identity testing department at Laboratory Corporation of America Holdings, Incorporated[,]" testified that the DNA found on the victim was male, and that neither Petitioner nor his male relatives could be ruled out as the perpetrator.  (*Id.* at PageID 11630, ¶ 59, citing Trial Tr., ECF No. 52-3, PageID 7861, 7889-93.)  The jury returned guilty verdicts

on all counts and specifications on July 7, 2005.  (*Id.* at PageID 11631, ¶ 61, citing Trial Tr., ECF No. 52-3, PageID 8186-89.)

"The penalty phase began on Monday, July 11, 2005.  The Court merged the escaping detection specification with the remaining specifications but refused to merge the kidnapping specification with the aggravated robbery specification." (Petition, ECF No. 133, PageID 11631, ¶ 62, citing Trial Tr., ECF No. 52-5, PageID 8210.)  "The state moved to admit all evidence, testimony and exhibits from the trial phase into evidence and then rested."  (*Id.*, citing Trial Tr., ECF No 52-3, PageID 8239.)  Petitioner presented the testimony of his aunt, Ruth Cummings, who described the physical and emotional abuse of Petitioner's father against his mother.  (*Id.* at ¶ 63, citing Trial Tr., ECF No. 52-5, PageID 8248, 8254-55.) Cummings further testified that Petitioner was placed in an orphanage for a time as a child.  (*Id.* at PageID11632, ¶ 64, citing Trial Tr., ECF No. 52-5, PageID 8262-63.)  Dana Davis, Petitioner's younger brother, corroborated the stories of abuse against their mother and recounted abuse against Petitioner by their father.  (*Id.* at PageID 11632-33, ¶ 67, citing Trial Tr., ECF No. 52-5, PageID 8296-97.) Petitioner's mother, Rose Weimer, testified that "after years of abuse and threats she left for Florida.  Roland helped with the younger kids and helped for a long time to help pay bills.  He would buy food and pay the rent and was always available if she needed him."  (*Id.* at PageID 11635, ¶ 72.)  Despite this evidence, the jury returned a verdict of death on July 12, 2005 (*id.* at ¶ 74, citing Trial Tr., ECF No. 52-5, PageID 8524-25), and "[o]n July 15, 2005, the court sentenced Davis to death

and ten years consecutive sentences on the other felonies." (*Id*. at ¶ 75, citing Trial Tr., ECF No. 52-5, PageID 8565-66.)

**B.     Direct Appeal**

Petitioner undertook a direct appeal to the Supreme Court of Ohio, raising eighteen Propositions of Law. (Petition, ECF No. 133, PageID 11613-17.)  The court rejected all eighteen propositions and, after conducting an independent review of Petitioner's sentence, affirmed his conviction and death sentence. *Davis I*, 2008-Ohio-2, at ¶ 405.

The court rejected subclaim one of Petitioner's First Proposition, that he had been denied a fair and impartial jury, concluding that the *voir dire* done by the trial judge as to pretrial publicity was comprehensive.  *Id*. at ¶¶ 42, 45.  The court also rejected Petitioner's ineffective assistance of counsel claim contained therein.  *Id*. at ¶ 46.  The court agreed that trial counsel's *voir dire* regarding pretrial publicity was brief, but concluded that that did not constitute ineffective assistance, as counsel was not required to repeat topics already covered by the trial judge.  *Id*. at ¶ 47. Due to the overall comprehensiveness of the *voir dire*, it was also not ineffective assistance for counsel to fail to seek a change of venue or develop the record regarding pretrial publicity.  *Id*. at ¶¶ 49-50.  Moreover, as Petitioner did not identify the information that should have been obtained, it was not ineffective assistance for failing to develop the record to support for cause and peremptory challenges of venire members.  *Id*. at ¶ 51.  Finally, the court's decision to continue *voir dire* past regular court hours, even if improper, was not prejudicial, because none of the venire members questioned during that time actually served on the jury.

5

*Id*. at ¶ 54.

In subclaim two of Proposition I, Petitioner claimed that the trial court applied the improper standard for excusing jurors who were reticent about capital punishment; the trial court applied the standard set forth in *Wainwright v. Witt*, 469 U.S. 412 (1985), rather than that set forth in Ohio Rev. Code § 2945.25(C). *Davis I*, 2008-Ohio-2, ¶ 55. The Supreme Court of Ohio rejected that argument, concluding that "*Witt* enunciates the correct standard for determining when a prospective juror may be excluded for cause based on his or her opposition to the death penalty." *Id*., citing *State v. Rogers*, 17 Ohio St.3d 174, 478 N.E.2d 984 (1985), paragraph three of the syllabus, *vacated on other grounds in Rogers v. Ohio*, 474 U.S. 1002 (1985). As the proper standard was applied, counsel could not have been ineffective in failing to object. *Id*.

In subclaim three, Petitioner claimed that counsel was ineffective in failing to question fully and rehabilitate five prospective jurors who expressed opposition to capital punishment and indicated that they could not sign a death warrant. *Davis I*, 2008-Ohio-2, ¶¶ 56-57. The court rejected this argument, noting that counsel had attempted to rehabilitate each of the potential jurors and had objected to the removal for cause of four of the five potential jurors. *Id*. at ¶ 58. In subclaim four, the court rejected both of Petitioner's arguments as to the extent of questioning jurors as to their willingness to consider mitigation evidence, finding the *voir dire* by counsel to be within the broad range of acceptable conduct. *Id*. at ¶¶ 59-67. In subclaim five, the court rejected Petitioner's claim that the prosecutor's statements

during *voir dire* were misleading, or that counsel was ineffective in failing to object to them. *Id.* at ¶¶ 68-72.

The Supreme Court of Ohio dismissed subclaim six, failure to excuse jurors who knew too much about the case, as non-meritorious. *Davis I*, 2008-Ohio-2, ¶¶ 73-74. The court similarly found no merit in subclaim seven, in either that the prosecutor and trial court "improperly sought commitments from the prospective jurors to sign a death verdict[,]" *id.* at ¶ 75, or that "his counsel were ineffective by failing object to such remarks." *Id.* at ¶¶ 75-77. Finally, as to subclaim eight, Petitioner "argue[d] that he was denied a fair trial because the trial court and counsel failed to question juror Wallace after learning that she had been fired from her job for serving on the jury." *Id.* at ¶ 78. The court disagreed, noting that the trial court had broad discretion as to whether to remove a juror for lack of impartiality, and concluding that the trial court was permitted to rely upon juror Wallace's testimony that her job situation would not impede her ability to be an impartial juror. *Id.* at ¶ 81.

In Proposition of Law II, Petitioner claimed that the admission of audiotaped interviews without being authenticated or identified violated his right to a fair trial, and that counsel was ineffective in failing to object. *Davis I*, 2008-Ohio-2, ¶ 83. The Court noted that the parties jointly agreed to admit the tape into evidence, thus waiving all but plain error. *Id.* at ¶¶ 85-86. The court held that the joint introduction of the tapes obviated the need for authentication, and that "[b]y introducing the tapes, counsel had the benefit of presenting Davis's proclamations

of innocence to the jury, without the risk of having Davis take the stand." *Id*. at ¶ 88.

In Proposition III, Petitioner "argue[d] that the failure to play the tape recordings in open court violated his right to be present at all stages of his criminal trial and violated his right to a public trial." *Davis I*, 2008-Ohio-2, ¶ 89. "He also claims that the admission of the transcript of the tape recording violated the 'best evidence' rule. In the alternative, Davis argues that his counsel were ineffective by failing to object." *Id*. The Supreme Court of Ohio rejected all three subclaims. The court noted that Petitioner's right to be present was not violated, as "[h]e was present in court when the tape recording and transcript were offered and admitted into evidence. He could review the verbatim transcript of the tapes when the tapes were admitted." *Id*. at ¶ 91. The court also concluded that the trial court instruction that only the tapes, and not the transcript, were evidence, was proper. *Id*. at ¶¶ 96-97. Further, the court held that the decision not to object was tactical and within the broad range of acceptable representation. *Id*. at ¶ 99.

"In proposition of law IV, Davis argue[d] that the trial court erred in admitting gruesome autopsy and crime-scene photographs during both phases of the trial." *Davis I*, 2008-Ohio-2, ¶ 100. As to subclaim one, Petitioner claimed that the five crime scene photographs admitted were needlessly cumulative and designed to inflame the jury. *Id*. at ¶ 102. The court instead concluded that the pictures "were probative of Davis's intent and the manner and circumstances of Sheeler's death." *Id*. at ¶ 107. As to subclaim two, the admission of twelve autopsy

8

photographs, *id*. at ¶ 108, the court concluded that they "were limited in number, noncumulative, and had substantial probative value. Each of these photographs supported Dr. [Patrick] Fardal's[1] testimony and demonstrated Davis's intent to murder Sheeler." *Id*. at ¶ 113. With respect to subclaim three, the re-admission of photographs in the penalty phase, *id*. at ¶ 114, the court held that the trial court did not abuse its discretion in merely re-admitting the evidence that had already been admitted in the guilt phase. *Id*., citing Ohio Rev. Code § 2929.03(D)(1).

Proposition of Law V pertained to Detective Stephen Vanoy's allegedly improper testimony regarding his investigation and interviews of Petitioner. In addition to the underlying claim, Petitioner also claimed that, to the extent that there were no objections to Vanoy's testimony, counsel was ineffective in failing to object. *Davis I*, 2008-Ohio-2, ¶ 116. The Supreme Court of Ohio conceded that Vanoy's testimony that he thought Petitioner was "being very deceptive" in his interviews was improper and should not have been allowed. *Id*. at ¶ 123. However, the court found that there was no plain error (the only grounds for reversal, as counsel failed to object): "There was overwhelming evidence of Davis's guilt. His DNA was found in bloodstains at the murder scene. This evidence was corroborated by testimony that Davis had had frequent contact with Sheeler as a taxi driver and that he went on a buying spree near the time of her murder." *Id*. In light of that evidence, the court also concluded that, even if counsel was ineffective in failing to

---

[1]Chief forensic pathologist for Franklin County, Ohio. *Davis I*, 2008-Ohio-2, ¶ 18.

object to Vanoy's inappropriate testimony, Petitioner was not prejudiced.  *Id*. at ¶ 132.

In Proposition VI, Petitioner argued that Detective Elliget improperly testified on expert matters without being qualified as an expert or having the basis for his opinions established, and that counsel was ineffective in stipulating to Elliget's qualifications and failing to object.  *Davis I*, 2008-Ohio-2, ¶ 134.  The court ruled that, in the absence of objections, it was not error for the trial court not to conduct a hearing on fingerprints and blood splatter evidence, or on the method used to detect unseen bloodstains.  *Id*. at ¶¶ 140-42.  The court also concluded that counsel was not ineffective in not objecting, because the lack of inculpatory fingerprint evidence presumably helped the defense.  *Id*. at ¶ 145.  As to expert qualifications, the court found that:  Elliget was qualified to offer the opinions he did; counsel was not ineffective in stipulating, as contesting his qualifications could have unintentionally bolstered his credibility; and that any failure by the prosecution to tender Elliget as an expert was not plain error.  *Id*. at ¶¶ 147-53.  The court also rejected Petitioner's claims that the prosecutor improperly vouched for Elliget and overruled the proposition.  *Id*. at ¶¶ 154-64.

As to Proposition VII, Petitioner claimed that the court erred in refusing to admit a report showing that Randy Davis, Petitioner's brother, or another of Davis's male relatives may have been the source of the DNA in the blood found on Sheeler's bedsheet.  Petitioner also argued that counsel was ineffective in failing to object fully to the document's exclusion as hearsay.  *Davis I*, 2008-Ohio-2, ¶¶ 165-70.  The

10

court rejected Petitioner's claim that the document fell under the business records exception, and concluded that any error of exclusion was harmless, as Clement was authorized to testify as an expert on the report, and her testimony was compelling evidence that it was Petitioner's DNA found on the victim's bedsheet. *Id*. at ¶¶ 172-76.

In Proposition VIII, Petitioner claimed that he was deprived of a fair trial due to erroneous jury instructions and that counsel was ineffective in failing to object. *Davis I*, 2008-Ohio-2, ¶ 177. Specifically, Petitioner argued that the trial judge erred in not giving an instruction that jurors were prohibited from stacking inferences. *Id*. at ¶ 178. He also claimed that the jury's ability to convict him of aggravated murder based on kidnapping, aggravated robbery, *or* aggravated burglary deprived him of a unanimous verdict. *Id*. at ¶¶ 187-88. The court concluded that a "stacking" instruction was unnecessary and that the instruction framing the aggravating offenses in the disjunctive was proper. *Id*. at ¶¶ 182, 188-89. Finally, the court rejected Petitioner's argument that the instructions misstated reasonable doubt, as the instructions conformed to Ohio Rev. Code § 2901.05(D), the constitutionality of which had been repeatedly upheld. *Id*. at ¶ 190, citing *State v. Hancock,* 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 76; *State v. Stallings*, 89 Ohio St.3d 280, 293-94 (2000). As the instructions were proper, counsel could not have been ineffective in failing to object. *Id*. at ¶ 192.

Petitioner challenged the sufficiency of the evidence in the kidnapping specification and underlying kidnapping charge in Proposition IX. *Davis I*, 2008-

Ohio-2, ¶ 194.  Concluding that the State produced sufficient evidence of intent to engage in sexual activity (kidnapping charge) and that Sheeler was moved against her will (kidnapping specification), the court rejected Petitioner's challenge.  *Id*. at ¶¶ 197, 199-200.  In Proposition X, Petitioner claimed that the trial court erred in refusing to merge the kidnapping and aggravated robbery specifications at the penalty phase.  *Id*. at ¶ 202.  The court concluded that there was separate animus for each act, and thus, non-merger was proper.  *Id*. at ¶ 206.  In Proposition XI, Petitioner argued that erroneous penalty-phase jury instructions deprived him of a fair trial, and that counsel was ineffective in failing to object.  *Id*. at ¶ 207.  The court accepted Petitioner's contention that the trial court erred by instructing the jury that it was to make relevancy determinations as to the State's evidence admitted in the penalty phase.  *Id*. at ¶ 208.  However, it concluded that the instruction was not plain error, and that counsel was not ineffective in failing to object to it, as so much of the evidence admitted *was* relevant to the aggravating circumstances.  *Id*. at ¶¶ 208-09.  The court rejected the remainder of Petitioner's challenges as non-meritorious or not plain error.  *Id*. at ¶¶ 210-21.

In Proposition XIV, Petitioner argued that victim-impact evidence and argument were improperly admitted in both phases of the trial, and that counsel was ineffective in failing to object. *Davis I*, 2008-Ohio-2, ¶ 222.  The court found that the only improper admission was the unnecessary mentioning of the victim's age during penalty phase closing argument, that Petitioner was not prejudiced by its mention, and that the lack of prejudice meant that counsel was not ineffective in

failing to object. *Id.* at ¶¶ 227-28. As to Proposition XII, prosecutorial misconduct, the court rejected Petitioner's claims of the prosecutor improperly vouching for witnesses, *id.* at ¶¶ 232-47, commenting on the lack of a defense expert, *id.* at ¶¶ 251-52, eliciting improper testimony regarding the victim's character, *id.* at ¶¶ 254-55, and allegedly commenting on Petitioner's silence. *Id.* at ¶¶ 256-304. The court concluded that the prosecutor's comment about the only two individuals potentially liable for the crime being Petitioner or a "'loose primate' running around Newark" improperly denigrated defense counsel to the jury. *Id.* at ¶ 307. Nonetheless, the court concluded there was no plain error because the denigration did not pervade closing argument, and there was no indication that the trial outcome would have been different absent such a comment. *Id.* at ¶ 308. The court also rejected claims of prosecutorial misconduct by the prosecutor calling for justice in closing argument, *id.* at ¶¶ 311-12, alleged malfeasance during the penalty phase, *id.* at ¶¶ 313-34, and failure to disclose exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963). *Id.* at ¶¶ 335-39.

Proposition XIII was Petitioner's general ineffective assistance of counsel claim. In addition to the instances alleged above, Petitioner alleged that counsel was ineffective in: (1) failing to obtain adequate investigative and expert assistance; (2) request a hearing over the propriety of Petitioner being shackled during trial; (3) stipulating to the admissibility of DNA evidence; (4) entering into ten stipulations with the State; and (5) failing to investigate and prepare fully for the penalty phase. The court concluded that all claims were meritless. *Davis I*,

2008-Ohio-2, ¶¶ 341-57.  In Proposition XVI, the court rejected as meritless

Petitioner's claims that, in the sentencing opinion, the trial court:  (1) failed to

explain why the aggravating circumstances outweighed the mitigating factors

beyond a reasonable doubt; (2) improperly evaluated mitigation evidence; and (3)

ignored other mitigation evidence.  *Id.* at ¶¶ 360-63.  Finally, the Supreme Court of

Ohio summarily dismissed Propositions XV (constitutionality of death penalty

proportionality review) and XVII (constitutionality of death penalty).  *Id.* at ¶¶ 381-

83.[2]

Having rejected each proposition of law, the court turned to its statutorily

required independent sentencing evaluation.  The court concluded that "[t]he

evidence at trial established beyond a reasonable doubt that Davis was properly

convicted of the aggravated murder of Elizabeth Sheeler while committing or

attempting to commit kidnapping, while committing or attempting to commit

aggravated robbery, and while committing or attempting to commit aggravated

burglary." *Davis I*, 2008-Ohio-2, ¶ 384.  The court weighed those aggravating

circumstances against the statutorily required mitigation factors and found "that

the aggravating circumstances outweigh the mitigating factors beyond a reasonable

doubt.  Davis's murder of Sheeler during the course of a burglary, robbery, and

kidnapping are grave circumstances.  In contrast, Davis's mitigating evidence has

little significance." *Id.* at ¶ 404.  "Finally, we hold that the death penalty is

---

[2]The court also rejected Proposition XVIII, which addressed sentencing of
noncapital offenses.  *Davis I*, 2008-Ohio-2, ¶¶ 365-80.  As this proposition does not
relate to the instant Petition, the Court does not address it.

proportionate to death sentences approved for other robbery-murder and burglary-murder cases.  The death penalty is also proportionate to death sentences approved for other cases involving a kidnapping specification." *Id*. at ¶ 405 (citations omitted).  Consequently, Petitioner's conviction and sentence were affirmed.  *Id*.

Petitioner filed a motion for reconsideration, which the Supreme Court of Ohio denied without opinion.  *State v. Davis*, No. 2005-1656, 2008-Ohio-969, 882 N.E.2d 446 (TABLE) (Mar. 12, 2008).  The United States Supreme Court denied *certiorari* on October 6, 2008.  *Davis v. Ohio*, 555 U.S. 861 (2008).

### C.    Postconviction Petition

While his direct appeal was pending, Petitioner filed a timely postconviction petition on June 23, 2006, as amended July 20, 2006, raising sixteen grounds for relief (Petition, ECF No. 133, PageID 11618-21 ¶¶ 20-22.)  "In Orders dated November 14, 2007, and January 14, 2008, the Court of Common Pleas denied Davis [*sic*] Petition for Post Conviction Relief and overruled all of Davis' motions." (*Id*. at PageID 11622, ¶ 25.)  Davis appealed this decision to the Fifth District Court of Appeals.  He incorporated his 16 grounds of relief into three assignments of error on appeal:

> **First Assignment of Error:**
>
> Appellant's right to due process and equal protection was violated because the trial court dismissed his post conviction petition on procedural grounds.
>
> **Second Assignment of Error:**
>
> Appellant's due process and equal protection rights were violated because the trial court denied motions that were necessary to fully and fairly litigate his grounds for post conviction relief.

15

**Third Assignment of Error:**

The trial court erred in dismissing Appellant's Post Conviction Petition when he presented sufficient operative facts to merit relief or, at minimum, an evidentiary hearing.

(*Id*. at PageID 11622, ¶ 26; *see also State v. Davis*, 5th Dist. Licking No. 08CA 16, 2008-Ohio-6841, ¶¶ 9-11 (Dec. 23, 2008) ("*Davis II*").)

The appellate court first addressed the second portion of Assignment I, "that the trial court improperly denied his amended PCR petition based, in part, upon his failure to comply with the provisions of R.C. 2969.25(A)." *Davis II*, 2008-Ohio-6841, ¶ 22. The Fifth District noted that the trial court's findings of facts and conclusions of law addressed the substantive merits of his petition, so that any error in referring to Ohio Rev. Code § 2969.25(A) as grounds for denial was harmless. *Id*. at ¶ 25. The appellate court also quickly dispensed with Assignment II, noting that discovery is not authorized in postconviction in Ohio and concluding that Petitioner had failed to demonstrate prejudice from the denial. *Id*. at ¶¶ 28-30.

In the first issue of his first assignment of error appellant contends that the trial court erred in denying his amended PCR petition on the basis of *res judicata*. In his third assignment of error, appellant argues that the trial court erred in dismissing his amended PCR petition without first conducting an evidentiary hearing. The assignments of error are interrelated and will be addressed together.

For clarity this Court will address each ground raised in the amended PCR petition in the order they were raised in the petition.

*Davis II*, 2008-Ohio-6841, ¶¶ 32-33.

In Grounds I and II of the amended postconviction petition in the trial court, Petitioner claimed that his conviction and sentence were void or voidable because he was forced to wear a stun belt during trial and that counsel was ineffective in

16

failing to object or request a hearing on the issue, respectively. *Id.* at ¶¶ 34-35. The appellate court found that there was no error in failing to conduct a hearing prior to requiring the stun belt, as there was no evidence that Petitioner was prejudiced. *Id.* at ¶ 44. The court further held that the lack of prejudice meant that Petitioner's ineffective assistance claim could not stand. *Id.* at ¶ 45, citing *State v. Calhoun*, 86 Ohio St. 3d 279, 289 (1999).

"In his third ground for relief, the appellant claimed that he was not provided with impeachment evidence related to the testimony of the state's jail house informant witness Richard Hummel regarding a claim that he had violated the terms of probation." *Davis II*, 2008-Ohio-6841, ¶ 49. The court noted that, while probation violations are generally permissible impeachment evidence, *id.* at ¶ 52, citing *State v. Greer*, 39 Ohio St. 3d 236 (1988); Ohio R.Evid. 608(B), "[a] *Brady* violation did not occur in the case at bar because the records concerning Hummel's charges and probation violation were publicly available and appellant could have obtained access to them." *Id.* at ¶ 57.

In Ground IV, Petitioner again argued that counsel was ineffective by inadequately investigating and presenting mitigation evidence. *Davis II*, 2008-Ohio-6841, ¶ 59. Noting that the claim had been raised previously, *id.* at ¶ 60, citing *Davis I*, 2008-Ohio-2, ¶¶ 348-53, the court found that the new evidence submitted by Petitioner was "merely cumulative [to] that which was presented at trial[,]" *id.*, and that "there is no reasonable probability that the testimony by family members or other mitigating evidence set forth in appellant's fourth claim

17

for relief would have swayed the jury to impose a life sentence." *Id*. at ¶ 66. In Ground VI[3], Petitioner challenged the adequacy of Ohio's postconviction statutes. *Id*. at ¶ 80. The court concluded that the claim was barred by *res judicata*, since the issue could have been fully and fairly litigated on direct appeal, and that Petitioner failed to set forth sufficient facts to establish a claim for relief. *Id*. at ¶¶ 81, 84. The court summarily dismissed Ground VII, cumulative error, as there were no errors to cumulate. *Id*. at ¶¶ 86-88.

In Ground VIII, Petitioner "claimed that presenting the jury a tape of appellant's statements to police without first playing this tape in open court violated his rights to be present at a critical stage of the proceedings." *Davis II*, 2008-Ohio-6841, ¶ 89. The appellate court found this claim foreclosed by *res judicata*, as the Supreme Court of Ohio had already ruled upon it, and that the "self-serving affidavit" of Petitioner was not substantial evidence upon which relief could be granted. *Id*. at ¶¶ 91-94, citing *Davis I*, 2008-Ohio-2, ¶¶ 89-92. The Fifth District rejected Ground IX, absence of African Americans in the jury venire, because it pertained to Petitioner's specific venire, not the systematic exclusion of African Americans. *Id*. at ¶ 100, citing *State v. McNeill*, 83 Ohio St. 3d 438, 444 (1998). Petitioner's claim was also unfounded, the court concluded, because "[t]his was not a case of a racially motivated crime. Race was simply never an issue in

---

[3]Ground V, in which Petitioner argues that Ohio's method of execution violates the Eighth Amendment, pertains to the already dismissed Claims Twenty-Four through Twenty-Seven in the instant Petition. Thus, this Court will not review the appellate court's discussion and rejection of that ground. *See*, *Davis II*, 2008-Ohio-6841, ¶¶ 68-79.

18

appellant's case." *Id*. at ¶ 102.  Ground X, failure to change venue, was denied on *res judicata* grounds.  *Id*. at ¶¶ 107-10, citing *Davis I*, 2008-Ohio-2, ¶¶ 42-51.

In Ground XI, Petitioner "alleged that trial counsel failed to investigate the case and presented 'no defense' to the charges in this case." *Davis II*, 2008-Ohio-6841, ¶ 111.  The court concluded that Petitioner "failed in his initial burden to submit evidentiary material containing sufficient operative facts that demonstrate a substantial violation of any of defense counsel's essential duties to his client and prejudice arising from counsel's ineffectiveness." *Id*. at ¶ 120.  As to Ground XII, failure to use a clinical or forensic psychologist as a witness, *id*. at ¶ 123, the Fifth District noted that this claim had been raised and rejected by the Supreme Court of Ohio on direct appeal, *id*. at ¶¶ 124-25, citing *Davis I*, 2008-Ohio-2, ¶¶ 348-56, and concluded that Petitioner "failed to demonstrate a reasonable probability that, but for his counsel's failure to employ a different mitigation specialist, the mitigating factors would have been assigned such weight as to compel the conclusion that the aggravating factors did not outweigh the mitigating factors." *Id*. at ¶ 134, citing *State v. Keith*, 79 Ohio St. 3d 514, 530 (1997).  In Ground XIII, Petitioner claimed he was "actually innocent." *Id*. at ¶ 136.  The Fifth District rejected this claim as non-cognizable in postconviction absent new DNA testing, *id*. at ¶ 138 (citations omitted), concluded that the trial court was correct in giving the affidavits supporting Petitioner's innocence claim little or no weight, *id*. at ¶¶ 139-41, and reiterated that the United States Supreme Court has not recognized actual innocence as a constitutional claim.  *Id*. at ¶ 142, quoting *State v. Watson*, 126 Ohio

19

App. 3d 316, 323 (12th Dist. 1998).

The Fifth District summarily rejected Ground XIV, in which Petitioner claimed ineffective assistance of counsel as to the gravamen of Grounds VIII, IX, and X, as the court did not find the underlying claims meritorious. *Davis II*, 2008-Ohio-6841, ¶¶ 144-45.  As to Ground XV, ineffective assistance of counsel in failing to call Damien Turner as a defense witness, *id*. at ¶ 146, the court concluded that the decision not to call Turner fell within the purview of sound trial strategy.  *Id*. at ¶¶ 147-49, 151.  Finally, as to Ground XVI, Petitioner "claimed that his convictions and sentences are void or voidable because his trial counsel failed to adequately address the state's DNA evidence." *Id*. at ¶ 153.  The appellate court gave little or no weight to the affidavit of attorney Gregory Meyers, as he merely set forth the supposed prevailing norms of representation, not what a DNA expert would have testified to.  *Id*. at ¶¶ 156, 158.  Concluding that Petitioner "did not proffer or present anything of evidentiary quality to challenge the reliability of the FBI database or the method of arriving at the statistical conclusion[,]" *id*. at ¶ 160, the court rejected the principal claim.  *Id*.  Further, as nothing in the affidavit showed that the DNA evidence either excluded Petitioner as a suspect or conclusively showed that the DNA belonged to Petitioner's brother, it was not ineffective assistance for counsel not to challenge the DNA evidence more vigorously.  *Id*. at ¶¶ 165-66.

Petitioner appealed the judgment to the Supreme Court of Ohio, raising four propositions of law.  Without opinion, the court declined to accept jurisdiction

20

(Petition, ECF No. 133, PageID 11623, ¶¶ 28-29, citing *State v. Davis*, 122 Ohio St. 3d 1409, 2009-Ohio-2751.)

### D.    Application to Reopen Direct Appeal

On April 2, 2008, Petitioner also filed in the Supreme Court of Ohio an application to reopen his direct appeal under Ohio S.Ct.Prac.R. XI(6), raising three propositions of law.  (Petition, ECF No. 133, PageID 11623, ¶ 30.)  Without opinion, the Supreme Court of Ohio denied the application on September 10, 2008.  *State v. Davis*, 119 Ohio St. 3d 1439, 2008-Ohio-4487.

### E.    Motion for New Trial

On October 31, 2008, Petitioner filed a Motion for New Trial based on trial counsel's failure to challenge DNA evidence, which, had a challenge been undertaken, would have revealed that Petitioner was actually innocent of Sheeler's murder.  The Licking County, Ohio, Court of Common Pleas denied his motion on January 30, 2009 (Petition, ECF No. 133, PageID 11624, ¶¶ 32-33, citing State Court Record, ECF No. 51-8, PageID 3656-60.)  The Fifth District affirmed the denial, *State v. Davis*, 5th Dist. Licking No. 09-CA-0019, 2009-Ohio-5175 (Sept. 24, 2009), but the Supreme Court of Ohio reversed and remanded for further consideration (Petition, ECF No. 133, PageID 11624, ¶ 38, citing *State v. Davis*, 131 Ohio St. 3d 1, 2011-Ohio-5028.)  On remand, and without permitting new briefing, the Fifth District again affirmed the trial court's denial of the motion.  The Supreme Court of Ohio declined to exercise jurisdiction.  (*Id*. at PageID 11624-25, ¶¶ 39-40, citing *State v. Davis*, 5th Dist. Licking No. 09-CA-0019, 2012-Ohio-32 (Jan. 4, 2012), *appeal not allowed at* 135 Ohio St. 3d 1458, 2013-Ohio-2285, *cert. denied at Davis v.*

21

*Ohio*, 571 U.S. 1141, 134 S.Ct. 933 (Mem.) (2014).)

**F.    Federal Practice**

On June 15, 2010, Petitioner filed his initial Petition in this Court (ECF No. 15), on September 2, 2014, his First Amended Petition (ECF No. 61), and on May 1, 2015, his Substitute Second Amended Petition (ECF No. 85.[4])  On October 31, 2014, the Respondent Warden moved to dismiss certain claims or subclaims based on procedural default (Motion, ECF No. 65.)  On September 29, 2015, this Court issued an Opinion and Order recapitulating much of the case and dismissing the following claims[5]:

- o Claim Two:  Change of venue components, paragraphs 89 and 90 (Opinion and Order, ECF No. 94, PageID 10674.)
- o Claim Four:  Subclaims (A)(1), (E), and (G), paragraphs 101-02, 138-49, 155-63 (Opinion and Order, ECF No. 94, PageID 10675, 10684, 10686.)
- o Claim Five:  Entire claim (Opinion and Order, ECF No. 94, PageID 10693.)
- o Claim Seven:  Paragraphs 265 and 269 (Opinion and Order, ECF No. 94, PageID 10704.)
- o Claim Nine:  Subclaims (B), (C), and (D), paragraphs 341-366 (Opinion and Order, ECF No. 94, PageID 10713.)
- o Claim Eleven:  Entire claim (Opinion and Order, ECF No. 94, PageID 10716.)
- o Claim Twelve:  Entire claim (Opinion and Order, ECF No. 94, PageID 10721.)
- o Claim Thirteen:  Entire claim except for penalty-phase closing argument reference to victim's age (Opinion and Order, ECF No. 94, PageID 10727.)
- o Claim Fifteen:  Entire claim (Opinion and Order, ECF No. 94, PageID 10729.)

---

[4]The claims have been maintained in the same order across all petitions.

[5]In so doing, the Court examined the issues of exhaustion and procedural default (Opinion and Order, ECF No. 94, PageID 10664-67.)

- o Claim Sixteen: Entire claim except for paragraph 465 (Opinion and Order, ECF No. 94, PageID 10736-37.)
- o Claim Seventeen: Paragraphs 541 through 545 (Opinion and Order, ECF No. 94, PageID 10739.)
- o Claim Eighteen: Subclaims 18(b)(4), 18(c)(1)(C), 18(D), paragraphs 617 through 619, 624, 688-93, 732-93 (Opinion and Order, ECF No. 94, PageID 10749, 10750, 10759, 10769-70.)
- o Claim Thirty-Four: Entire claim (Opinion and Order, ECF No. 94, PageID 10775.)

On October 18, 2017, Petitioner filed the instant Petition, raising twenty-seven claims. Claims One through Twenty-Three are identical to the claims in the Substitute Second Amended Petition (ECF No. 133.) On October 26, 2017, the Warden filed a Second Motion to Dismiss Claims Twenty-Four through Twenty-Seven—method-of-execution claims (ECF No. 134.) On September 28, 2018, the Court granted the Warden's Motion (Order, ECF No. 141), leaving Claims One through Twenty-Three, subject to the previous order dismissing all or parts of those claims and Petitioner's withdrawal of Claim Twenty-Two (Petition, ECF No. 133, PageID 11878, ¶ 841.)

## II.   LEGAL STANDARDS

As Petitioner is imprisoned based on a state court judgment, he may petition for a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petition "shall not be granted with respect to any claim" that:

> [W]as adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an

> unreasonable determination of the facts in light of the
> evidence presented[.]

28 U.S.C. § 2254(d). A habeas corpus petitioner must also satisfy additional

procedural requirements, including but not limited to exhaustion of State court

judicial remedies. 28 U.S.C. § 2254(b). Pursuant to the Antiterrorism and Effective

Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104-132, 110 Stat. 1214, the Court's

review of a claim adjudicated on its merits in a State court proceeding is sharply

circumscribed; "a determination of a factual issue made by a State court shall be

presumed to be correct. The applicant shall have the burden of rebutting the

presumption of correctness by clear and convincing evidence." 28 U.S.C. §

2254(e)(1).

A state court may be found to have acted "contrary to" federal law in two

ways: (1) if the state court's decision is "substantially different from the relevant

precedent" of the U.S. Supreme Court; or (2) if "the state court confronts a set of

facts that are materially indistinguishable from a decision of [the U.S. Supreme]

Court and nevertheless arrives at a result different from [U.S. Supreme Court]

precedent." *Williams (Terry) v. Taylor*, 529 U.S. 362, 405, 406 (2000). A state court

does not act contrary to federal law simply because its application of federal law

was incorrect. Rather, the decision must have been "mutually opposed[,]" *id*. at 406,

to "clearly established Federal law, as determined by the Supreme Court," 28 U.S.C.

§ 2254(d)(1), which encompasses only the holdings of Supreme Court decisions, and

not their dicta. *Williams (Terry)*, 529 U.S. at 412.

The "unreasonable application" standard is distinct from and more

24

deferential than that of "clear error." "It is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court decision was erroneous. . . . Rather, that application must be objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75, 76 (2003) (internal quotation marks omitted). "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). However, this deferential standard applies only when the state court has addressed the merits of a claim raised on appeal; "[w]here a state court has not adjudicated a claim on the merits, the issue is reviewed *de novo* by a federal court on collateral review." *Trimble v. Bobby*, 804 F.3d 767, 777 (6th Cir. 2015).

## III. ANALYSIS

### A. Pretrial Claims

#### 1. Claim One: Wearing Stun Belt During Trial Proceedings

Roland Davis was Deprived of His Right to a Fair Trial, to Counsel, to Present a Defense and to Present Mitigation and Have that Mitigation Evidence Considered and Given Effect by the Jury When the Trial Court Ordered Him to Wear a Stun Belt Device on His Arm Without First Holding a Hearing on the Necessity for Shackling.

(Petition, ECF No. 133, PageID 11636.)

Petitioner argues that his rights to a fair trial, to counsel, and to present a defense and mitigation were violated by being forced to wear a "stun belt" under his shirt during the trial without a court hearing determining that such restraint was necessary. (Petition, ECF No. 133, PageID 11636.) As restraints interfere with a

defendant's ability to communicate with counsel or participate in defense, they should only be used as a last resort, as determined by the trial court after a hearing. (*Id.* at ¶¶ 76-77, citing *Deck v. Missouri*, 544 U.S. 622, 631 (2005), *abrogated on other grounds by Fry v. Pliler*, 551 U.S. 112 (2007)); *Holbrook v. Flynn*, 475 U.S. 560, 567, 569 (1986); *Illinois v. Allen*, 397 U.S. 337, 344 (1970); *Earhart v. Konteh*, 589 F. 3d 337, 349 (6th Cir. 2009); *Kennedy v. Cardwell*, 487 F.2d 101, 106, 111 (6th Cir. 1973).)  Petitioner was forced to wear a "Band-It" on his arm and had to wear a sweater in the summer to cover it up, in turn supposedly drawing attention to it. (*Id.* at PageID 11636-37, ¶ 78.)  He claims that this violated his rights "under the Fifth, Sixth, Eighth, and Fourteenth Amendments."  (*Id.* at PageID 11637-38, ¶ 81.)

The Warden notes that this issue was addressed by the Supreme Court of Ohio on direct appeal and argues that that court "reasonably found Davis' stun-belt claim meritless because there was nothing in the record to indicate that 'Davis was tried in shackles, or that any restraint used was visible to the jury.'" (Return of Writ, ECF No. 97, PageID 10811-12, quoting *Davis I*, 2008-Ohio-2, ¶ 343.)  The trial court similarly rejected this claim in postconviction, noting that Petitioner had declined a hearing and had, in fact, suggested the stun belt as the restraint to be used.  (*Id.* at PageID 10812, citing State Court Record, ECF No. 51-7, PageID 3184.) Finally, in the last reasoned state court decision, the Fifth District rejected the claim that he was prejudiced by wearing the restraint, noting that "the only evidence Davis presented to demonstrate jury knowledge and his alleged distraction was his own self-serving affidavit."  (*Id.*, citing *Davis II*, 2008-Ohio-6841, ¶ 40.)

26

For two reasons, the Warden argues, Petitioner's claim fails:

First, there *is no* clearly established federal law, as determined by the Supreme Court, concerning the use of non-visible restraints; therefore there is nothing for the Ohio courts to have contravened or unreasonably apply.  Second, the state courts' findings of fact were reasonable in light of the evidence presented.  Davis' self-serving affidavit was insufficient as a matter of law to establish he was prejudiced or that the result of his trial was unreliable or fundamentally unfair.  Not only that, but the type of non-visible restraint used was that which Davis' counsel suggested.

(Return of Writ, ECF No. 97, PageID 10812-13 (emphasis in original), citing *State v. Calhoun*, 86 Ohio St. 3d 279, 281 (1999); State Court Record, ECF No. 51-1, PageID 1069.)  Further, the cases cited by Petitioner are distinguishable.  "Unlike the security officers at issue in *Flynn*, the stun-belt worn by Davis was concealed under his clothing, and thus, invisible to the jury.  There is no evidence in the record to indicate the jury had any knowledge Davis was wearing the stun-belt."  (*Id*. at PageID 10813, citing *Holbrook v. Flynn*, 475 U.S. at 568-69; *Allen*, 397 U.S. at 344.)  Also, "[t]he *Deck* Court found the use of *visible* shackles without particularized justification violated due process.  It did not, as Davis suggests, address the type of non-visible restraint worn by him."  (*Id*. at PageID 10814 (emphasis in original), citing *Deck*, 544 U.S. at 629, 635.[6])  "Because the restraints used on Davis were not visible to the jury, there exists no clearly established federal law which mandates the relief Davis seeks.  Thus, the decisions of the Ohio courts could not be contrary to or an unreasonable application of any clearly established law."  (*Id*.)

Petitioner claims that the stun belt was visible (Traverse, ECF No. 104,

---

[6]Similarly, the recent Supreme Court case of *Brown v. Davenport* concerned the use of visible restraints.  142 S.Ct. 1510, 1518 (2022).

PageID 11010), and that "there is clearly a reasonable probability that Davis would have received a more favorable result at trial if he had not been subjected to physical restraints.  Habeas corpus relief is therefore warranted." (*Id.* at PageID 11013, citing *Kyles v. Whitley*, 514 U.S. 419, 435 (1995).)

The only evidence of visibility offered was Petitioner wearing a sweater during summer.  There is no evidence that any juror saw the stun-belt, or even its outline; nor is there any evidence of a juror thinking it unusual or drawing a negative inference from Petitioner wearing a sweater.  Hence, contrary to the above conclusory statement, there is no reasonable likelihood that Petitioner would have received a more favorable outcome at trial had he not worn the stun belt.  Further, as the Warden points out, there is no clearly established law as to the use of non-visible restraints.  Thus, the failure by the trial court to hold an evidentiary hearing, even if error under state law, may not form the basis for a federal constitutional claim.  As the state court adjudications were neither contrary to Supreme Court precedent nor an unreasonable determination based on the facts, Claim One is dismissed.

### 2.    Claim Two:  Court Violated Petitioner's Fifth, Sixth, and Fourteenth Amendment Rights by Forcing Him to Stand Trial in Licking County

Roland Davis was Deprived of His Rights to Due Process, a Fair Trial, and an Impartial Jury Contrary to the Fifth, Sixth, and Fourteenth Amendments When He Was Forced to Stand Trial in Licking County, Ohio, Amidst Pervasive Pre-trial Publicity.

(Petition, ECF No. 133, PageID 11639.)

Petitioner argues that it is well established law that Defendants are entitled

to impartial jurors and a trial not overwhelmed by publicity (Petition, ECF No. 133, PageID 11639, ¶¶ 84-85, quoting *Irvin v. Dowd*, 366 U.S. 717, 722 (1961); citing *Sheppard v. Maxwell*, 384 U.S. 333 (1966); *Rideau v. State of Louisiana*, 373 U.S. 723 (1963).)  Yet, because of media coverage, many jurors knew about the case.  (*Id*. at ¶ 86, citing State Court Record, ECF No. 51-5, PageID 2646; Trial Tr., ECF No. 52-1, PageID 6394, 6406.)  "[S]everal prospective jurors admitted that they had formed opinions about Davis' culpability from publicity they had seen or read."  (*Id*. at PageID 11640, citing Trial Tr., ECF No. 52-1, PageID 6393, 6394, 6409, 6410, 6419, 6482, 6483.)  "The trial court denied counsel's motion for individual sequestered voir dire, so voir dire on publicity was done in groups of six jurors. Thus, other jurors were exposed to the viewpoints of jurors who had already formed opinions based on publicity."  (*Id*. at ¶ 87, citing Trial Tr., ECF No. 52-2, PageID 6535-36.)  Petitioner claims that the case generated so much publicity that by denying a change of venue, he was deprived of the presumption of innocence, because the Supreme Court of Ohio did not follow the requisite two-step process:  (1) Was there presumed prejudice, such that the trial court could not rely on venire member assurances of impartiality?; and (2) What measures were taken to ensure jury impartiality in the wake of pretrial publicity?  (*Id*. at ¶¶ 88-90, PageID 11640-41 citing *Patton v. Yount*, 467 U.S. 1025, 1031 (1984); *Estes v. Texas*, 381 U.S. 532, 542-44 (1965); State Court Record, ECF No. 51-5, PageID 2146.)

The Warden argues that "[t]he Ohio Supreme Court on direct appeal reasonably found Davis' pretrial publicity claim, raised as a part of his first

proposition of law, meritless." (Return of Writ, ECF No. 97, PageID 10815, citing

*Davis I*, 2008-Ohio-2, ¶¶ 42-45.)

> After the extensive general voir dire of the entire panel, the trial court
> excused those prospective jurors who indicated they could not be fair
> and impartial because of the pretrial publicity or were otherwise
> unsuitable.  Not only is this decision afforded deference under the
> AEDPA, but the clearly established federal law of *Mu'Min v. Virginia*,
> 500 U.S. 415 (1991), establishes a deferential standard by which
> appellate review of pretrial publicity voir dire must be conducted.

(*Id*. at PageID 10816, citing *Davis I*, 2008-Ohio-2, ¶ 45.)  The Supreme Court of

Ohio's deference to the trial court was proper, the Warden claims, because the trial

judge is in the best position to judge the effect of the publicity.  (*Id*. at PageID

10816-17, quoting *Skilling v. United States*, 561 U.S. 358, 386 (2010); *Mu'Min*, 500

U.S. at 427.)  "A trial court's findings of juror impartiality 'may be overturned only

for manifest error.'"  (*Id*. at PageID 10817, quoting *Skilling*, 561 U.S. at 396 (citing

*Mu'Min*, 500 U.S. at 428).)  While Petitioner complains of jurors knowing about the

case, the Warden claims that the constitution does not require total ignorance of the

underlying facts.  "Rather, what is required is that the juror can lay aside his

opinions and render a verdict based only on the evidence presented in court."  (*Id*.,

citing *Irvin v. Dowd*, 366 U.S. 717, 722, 723 (1961).)  Additionally, venire members

were not questioned on what specifically they knew about the case, and the Warden

argues that "the prospective jurors that had fixed opinions based upon the pretrial

publicity were questioned out of the hearing of the entire panel and were ultimately

excused." (*Id*. at PageID 10817-18, citing Trial Tr., ECF No. 52-1, PageID 6393-94.)

Petitioner notes that this was one of only two recent capital cases to be tried

in Licking County, and that the years-long investigation generated considerable

interest in the community (Traverse, ECF No. 104, PageID 11020.) Indeed, multiple venire members had already formed an opinion against Petitioner based on the extensive media coverage. (*Id*. at PageID 11021, citing Trial Tr., ECF No. 52-1, PageID 6393-95, 6397, 6409-10, 6419, 6482-83.) Had counsel been able to conduct more extensive *voir dire*, Petitioner argues, he would have uncovered even more bias among the panel members who did not volunteer their preconceptions. (*Id*. at PageID 11023.) The refusal to allow this more extensive questioning deprived Petitioner of the opportunity to develop the basis for challenges for cause and, consequently, the opportunity to have a fair and impartial factfinder. (*Id*. at PageID 11025-26, citing *Morgan*, 504 U.S. at 729-30, 733, 735-36.)

The Supreme Court of Ohio held as follows:

{¶ 42} ***Jury selection.*** In proposition of law I, Davis asserts that he was denied a fair and impartial jury.

{¶ 43} **1. Denial of careful and searching voir dire.** First, Davis argues that he was denied a careful and searching voir dire about pretrial publicity. Davis also claims that his counsel were ineffective by failing to fully question jurors about pretrial publicity.

{¶ 44} "The manner in which voir dire is to be conducted lies within the sound discretion of the trial judge." *State v. Lorraine* (1993), 66 Ohio St.3d 414, 418, 613 N.E.2d 212. A trial court has " 'great latitude in deciding what questions should be asked on voir dire.' " *State v. Wilson* (1996), 74 Ohio St.3d 381, 386, 659 N.E.2d 292, quoting *Mu'Min v. Virginia* (1991), 500 U.S. 415, 424, 111 S.Ct. 1899, 114 L.Ed.2d 493. Absent a clear abuse of discretion, prejudicial error cannot be assigned to the examination of the venire. *State v. Jackson,* 107 Ohio St.3d 53, 2005-Ohio-5981, 836 N.E.2d 1173, ¶ 28.

{¶ 45} The record shows that the voir dire on pretrial publicity was comprehensive. The trial court asked the prospective jurors whether any of them knew about the case through firsthand information or media coverage. The trial court then asked prospective jurors who had indicated some familiarity with the case whether they could lay aside

31

what they had heard and decide the case solely upon the evidence presented at trial.  Counsel were then given the opportunity to fully question the prospective jurors about their exposure to pretrial publicity.  Following thorough questioning, the trial court excused members of the venire who had formed fixed opinions due to pretrial publicity or were otherwise unsuitable.

*Davis I*, 2008-Ohio-2.

The Supreme Court of Ohio accurately applied the binding United States Supreme Court precedent, *Mu'Min*, in making the above specific factual findings. *Davis I*, 2008-Ohio-2, ¶ 45.  The cases cited by Petitioner are no longer good law— *Estes* and *Patton* have been abrogated by *Mu'Min*.  *See Jackson v. Houk*, 687 F.3d 723, 733-34 (6th Cir. 2012) ("The older standards articulated in the 1960's and repeated in the 1984 *Patton v. Yount* case no longer represent the current state of the law, and we are constrained to apply the new standards of *Mu'Min*.")  *Mu'Min* replaced the two-step *Estes/Patton* inquiry with an understanding of the wide latitude trial courts have in conducting *voir dire* and preventing a biased jury from being seated.  500 U.S. at 424.  The standard for habeas relief is high:  did the trial court's failure to inquire about pretrial publicity "render the defendant's trial fundamentally unfair"?  *Id.* at 425-26.

Petitioner falls well short of that standard.  This Court has reviewed the trial transcript, and that transcript shows that Petitioner's counsel, far from being limited in ability to question the venire, had the opportunity to, and did, conduct extensive *voir dire*. (Trial Tr., ECF No. 52-1, PageID 6475-88.)  Therein, counsel discussed at length pretrial publicity and media coverage of crimes, along with the importance of the presumption of innocence.  (*Id.* at PageID 6478-82.)  Counsel also

successfully struck a venire member for cause whose sibling relationship with a law enforcement member led counsel to conclude that the potential juror could not be fair and impartial.  (*Id.* at PageID 6492.)  Petitioner's argument that counsel lacked a suitable basis to challenge for cause is specious, and the trial judge's *voir dire* was reasonable, falling well short of the "manifest error" and "fundamentally unfair trial" required to find a constitutional violation.  Based on the foregoing, the Supreme Court of Ohio's rejection of the claim was not an unreasonable application of law and Claim Two is dismissed.

### 3.     Claim Three:  Underrepresentation of African Americans on Jury

> Davis was Denied a Trial By Jury Drawn From a Fair Cross Section of the Community and Equal Protection Under the Fifth, Sixth, Eighth, and Fourteenth Amendments Because of the Under-Representation of African Americans on His Jury.

(Petition, ECF No. 133, PageID 11642.)

Petitioner claims that he was deprived of equal protection and a fair cross-section of the community due to the racial composition of the jury, in violation of Fifth, Sixth, Eighth, and Fourteenth Amendments (Petition, ECF No. 133, PageID 11642, ¶ 93, quoting *Taylor v. Louisiana*, 419 U.S. 522, 527 (1975).)  He argues that no African Americans served as jurors in Petitioner's case or in the previous capital case in Licking County, which is disproportionate to the number of African Americans in Licking County.  (*Id.* at PageID 11643, ¶ 95, citing State Court Record, ECF No. 51-5, PageID 2637, 2639-40, 2643.)  Petitioner brings both a jury bias/"fair cross section" claim and an equal protection claim.

The Fifth District considered and rejected these claims in Petitioner's

postconviction action:

{¶ 96} In the ninth ground for relief the petition claimed that his rights were violated by the absence of African Americans on his jury. We disagree.

{¶ 97} Appellant has not claimed that the state failed to follow Ohio's statutory procedure for selecting jurors under R.C. Chapter 2313, or that said procedure itself intentionally or systematically excludes any cognizable group. Instead, appellant argues only that counsel was ineffective for not arguing that *his* venire did not represent a fair cross-section of the community because it did not include a sufficient number of blacks or other minorities. *State v. Elmore, supra,* 2005-Ohio-5940 at ¶ 54.

{¶ 98} The Sixth Amendment guarantee to a jury trial "contemplates a jury drawn from a fair cross section of the community." *Taylor v. Louisiana* (1975), 419 U.S. 522, 527, 95 S.Ct. 692, 696, 42 L.Ed.2d 690, 696. To establish a violation of this requirement, the "defendant must prove: (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that the representation is due to systematic exclusion of the group in the jury-selection process." *State v. Fulton* (1991), 57 Ohio St.3d 120, 566 N.E.2d 1195, paragraph two of the syllabus, citing *Duren v. Missouri* (1979), 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579, 586-587.

{¶ 99} A criminal defendant has no affirmative right to a jury of a particular racial, gender or age composition. *See United States v. Mack,* 159 F.3d 208 (6th Cir.1998); see also *Taylor v. Louisiana,* 419 U.S. 522, 538, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975).

{¶ 100} Moreover, appellant's systematic-exclusion claim is based solely on alleged under representation on *his* venire. But under representation on a single venire is not *systematic* exclusion. *State v. McNeill* (1998), 83 Ohio St.3d 438, 444, 700 N.E.2d 596. See, also *Ford v. Seabold* (C.A.6, 1988), 841 F.2d 677, 685. Cf. *Duren,* 439 U.S. at 366, 99 S.Ct. at 669, 58 L.Ed.2d at 588 (discrepancy "not just occasionally, but in every weekly venire for a period of nearly a year" showed systematic exclusion). *State v. McNeill* (1998), 83 Ohio St.3d 438, 445, 1998-Ohio-293, 700 N.E.2d 596, 604; *State v. Elmore, supra* at ¶ 57. Appellant's failure to point to any evidence supporting a prima facie violation of the fair cross-section requirement defeats this claim. See, e.g., *United States v. Allen,* 160 F.3d 1096, 1103-04 (6th Cir.1998) (finding no Sixth

Amendment fair cross-section violation where defendants failed to meet second and third prongs of prima facie case).

{¶ 101} Appellant failed to present evidence outside of the record to make the necessary showing under *Fulton, Seabold, Duren,* and the other authorities mentioned to indicate deliberate exclusion of "distinctive groups" of the jury venire or jury panel involved. The statistical data does nothing to demonstrate intentional, systematic exclusion of minorities in the jury-selection process. *State v. Elmore, supra,* at ¶ 61.

{¶ 102} This was not a case of a racially motivated crime. Race was simply never an issue in appellant's case. Moreover, each impaneled juror confirmed that he or she had not formed an opinion about the guilt or innocence of the accused, or could put aside any opinion, and that he or she could render a fair and impartial verdict based on the law and evidence. *State v. Treesh* (2001), 90 Ohio St.3d 460, 464, 739 N.E.2d 749, 759.

{¶ 103} To establish an equal protection violation, the defendant must "adduc[e] statistical evidence which shows a significant discrepancy between the percentage of a certain class of people in the community and the percentage of that class on the jury venires, which evidence tends to show discriminatory purpose." *Id.* This evidence is then subject to rebuttal evidence suggesting that either no discriminatory purpose was involved or that such purpose had no "determinative effect." *Id.; Duren,* 439 U.S. at 368, 99 S.Ct. at 670, 58 L.Ed.2d at 589, fn. 26. *State v. Jones* (2001), 91 Ohio St.3d 335, 340-41, 2001-Ohio-57, 744 N.E.2d 1163, 1173. Importantly, "[t]he challenger must show under representation over a significant period of time [.]" *State v. McNeill,* 83 Ohio St.3d 438, 444, 700 N.E.2d 596.

{¶ 104} In the present matter, appellant did not attempt to demonstrate under representation over a significant period of time; consequently, this court concludes that the trial court did not err in determining that appellant failed to set forth sufficient operative facts establishing substantive grounds for relief on his equal protection claim.

{¶ 105} Appellant's ninth ground for relief is denied.

*Davis II*, 2008-Ohio-6841.

The Warden argues that Petitioner failed to meet his burden because all he showed was that two venires (his own and that of fellow capital defendant Philip Elmore) lacked any African Americans. Petitioner did not show a systematic

35

underrepresentation, as is required for a jury bias claim.  (Return of Writ, ECF No. 97, PageID 10821-22.)  Nor did he show underrepresentation over a significant amount of time, as is required for an equal protection claim.  (*Id*. at PageID 10822-23, citing *Castaneda v. Partida*, 430 U.S. 482, 494 (1977).)  Thus, the Fifth District's rejection of the claim was proper.  (*Id*. at PageID 10823.)

Petitioner counters that the complete exclusion of African Americans from both juries is itself sufficient evidence that the exclusion was systematic.  (Traverse, ECF No. 104, PageID 11030-31, citing State Court Record, ECF No. 51-6, PageID 2886.)  Further, he argues, the Fifth District's mention that racial animus was not a factor in the case was immaterial and improper in determining if the jury was racially biased.  (*Id*. at PageID 11031, citing *Duren v. Missouri*, 439 U.S. 357, 364 (1979); *Castaneda*, 430 U.S. 482; *Davis II*, 2008-Ohio-6841, ¶ 102.)  As the state court decision was contrary to established law, it should be accorded no deference. (*Id*.)

A systematic bias/fair cross section claim has three elements:  (1) the group excluded is distinctive within community; (2) representation in venires is disproportionate to representation in community; (3) under-representation is due to systematic exclusion through selection process.  *Duren*, 439 U.S. at 364.  For an equal protection claim, Petitioner concedes that he must show "a significant discrepancy in the number of persons of a certain class in the community and the number of those persons on the jury venires, which evidence suggests discrimination."  (Petition, ECF No. 133, PageID 11642, ¶ 94, citing *Washington v.*

36

*Davis*, 426 U.S. 229, 239-41 (1976).)

Petitioner is correct that the issue of racial animus (or lack thereof) in the facts of the case is immaterial as to either the systematic bias or equal protection claim, and that he did not rely solely on his venire as the basis for his claim. However, the balance of the appellate court's opinion was proper application of federal law on both the fair cross section and equal protection claims. The Supreme Court held in *Duren* that an "undisputed demonstration that a large discrepancy occurred *not just occasionally but in every weekly venire* for a period of nearly a year manifestly indicates that the cause of the underrepresentation was systematic[.]" 439 U.S. 357, 366 (1979) (emphasis added). Putting forth two isolated venires falls well short of either a systematic pattern of biased venires or a discrepancy between the population of Licking County and the composition of venires over a significant period of time. While it is true that these were the only two recent capital cases in Licking County, Petitioner put forth no evidence that the venire or jury selection process is any different for a capital versus non-capital case. Nor did he show either that: (a) non-capital venires and juries also systemically lack African Americans; or (b) the composition of non-capital venires and juries differed significantly from the venires and juries for Elmore and Petitioner.

In the absence of such a showing, Petitioner cannot meet his *prima facie* burden for either a systematic bias or equal protection claim. Thus, as the Fifth District's decision was not erroneous, much less unreasonable, Claim Three is still unavailing and must be dismissed.

4.       **Claim Four:  Jury Selection Process Denied Petitioner a Fair and Impartial Jury**

a.       **Inadequate *Voir Dire* to Develop Peremptory and For-Cause Challenges Based on Pretrial Publicity or Bias Regarding Guilt or Sentence**

> Davis was denied the thorough and adequate voir dire necessary to develop the factual bases for challenges for cause and to exercise peremptory challenges of jurors who were exposed to extensive pretrial publicity or who were biased on questions of guilt, innocence, or sentence.

(Petition, ECF No. 133, PageID 11644.)

Petitioner claims that, with more than forty venire members at least somewhat aware of the facts surrounding the case, a thorough *voir dire* was necessary as to the extent of their knowledge (Petition, ECF No. 133, PageID 11646, ¶ 105.)  Yet, while six venire members claimed they could not be impartial, only two were questioned about the extent of their knowledge.  (*Id.* at PageID 11647, ¶ 106, citing Trial Tr., ECF No. 52-1, PageID 6226-27, 6481-83.)  Further, the final two panels of venire members were not asked any questions by counsel, despite being kept in the courtroom past 6:30 p.m.  (*Id.* at PageID 11649, ¶ 114, citing Trial Tr., ECF No. 52-2, PageID 6960, 6998-7001.)

> The voir dire examination here did not elicit adequate information so that counsel could intelligently and knowingly develop challenges for cause or exercise peremptory challenges or for the court to be able to rule on them.  The voir dire did not provide counsel or the court with sufficient information with which to decide those challenges.

(*Id.* at ¶ 107.)  "Because the voir dire was inadequate, Davis' ability to exercise his peremptory challenges in an informed manner as well as his ability to develop challenges for cause was denied."  (*Id.* at PageID 11648, ¶ 110, citing *J.E.B. v.*

*Alabama*, 511 U.S. 127, 143-44 (1996).)  Petitioner argues that there was no way to

tell via *voir dire* which jurors harbored prejudices against him, meaning he was

deprived of his right not to be tried by such persons.  (*Id.* at ¶ 111, citing *Morgan v,*

*Illinois*, 504 U.S. 719, 733-35 (1992).)  "Because of the trial court's and counsel's

own limitations on voir dire, it is impossible to determine whether the jury was free

from outside knowledge or free from bias."  (*Id.* at PageID 11659-60, ¶ 115.)

In the Return of Writ, the Warden concedes that the Sixth Amendment

guarantees the right to an impartial jury, and that *voir dire* to eliminate

unqualified jurors is part of that right.  Nonetheless, the Warden argues, courts and

attorneys have wide discretion in conducting *voir dire* (Return of Writ, ECF No. 97,

PageID 10823-24, citing *Morgan*, 504 U.S.at 726-27, 729; *Mu'Min*, 500 U.S. at 422,

427; *Wainwright v. Witt*, 469 U.S. 412, 418 (1985); *Jackson v. Houk*, 687 F.3d 723,

733 (6th Cir. 2012); *Miller v. Webb*, 385 F.3d 666, 672-73 (6th Cir. 2004); *Hughes v.*

*United States*, 258 F.3d 453, 457 (6th Cir. 2001).)

> The critical question is whether the state court decision was "so lacking
> in justification that there was an error well understood and
> comprehended in existing law beyond any possibility for fairminded
> disagreement.  That federal judges might have "reached a different
> conclusion had they been presiding over [the] voir dire" does not
> overcome the deference owed to the state court decision.

(*Id.* at PageID 10824, quoting *White v. Wheeler*, 577 U.S. 73, 77, 80 (2015).)

Moreover, counsel's performance in *voir dire* is entitled to deference under

*Strickland v. Washington.*  (*Id.* at PageID 10824-25, citing 466 U.S. 668 (1984).)

The Warden argues that Petitioner omits important points that, taken

together, show a lack of prejudice from any deficiencies in *voir dire.  First,* while

only two of the six venire members with fixed opinions were questioned as to the extent of their knowledge of the case, all six of those venire members were excused prior to the death qualification of the venire (Return of Writ, ECF No. 97, PageID 10826, citing Trial Tr., ECF No. 52-1, PageID 6491, 6493-94, 6496-99.) *Second*, while Petitioner complains that *voir dire* went until 6:30 p.m. and the last two panels were not even questioned specifically, none of the jurors in those two panels was seated on the jury. (*Id*. at PageID 10829.) *Third*, the Supreme Court of Ohio rejected the ineffective assistance claim and the underlying merits claim. (*Id*. at PageID 10826-27, quoting *Davis I*, 2008-Ohio-2, ¶¶ 43-51.)

In rejecting the *voir dire* claim, the Supreme Court of Ohio held:

{¶ 43} **1. Denial of careful and searching voir dire.** First, Davis argues that he was denied a careful and searching voir dire about pretrial publicity. Davis also claims that his counsel were ineffective by failing to fully question jurors about pretrial publicity.

{¶ 44} "The manner in which voir dire is to be conducted lies within the sound discretion of the trial judge." *State v. Lorraine* (1993), 66 Ohio St.3d 414, 418, 613 N.E.2d 212. A trial court has "'great latitude in deciding what questions should be asked on voir dire.'" *State v. Wilson* (1996), 74 Ohio St.3d 381, 386, 659 N.E.2d 292, quoting *Mu'Min v. Virginia* (1991), 500 U.S. 415, 424, 111 S.Ct. 1899, 114 L.Ed.2d 493. Absent a clear abuse of discretion, prejudicial error cannot be assigned to the examination of the venire. *State v. Jackson,* 107 Ohio St.3d 53, 2005-Ohio-5981, 836 N.E.2d 1173, ¶ 28.

{¶ 45} The record shows that the voir dire on pretrial publicity was comprehensive. The trial court asked the prospective jurors whether any of them knew about the case through firsthand information or media coverage. The trial court then asked prospective jurors who had indicated some familiarity with the case whether they could lay aside what they had heard and decide the case solely upon the evidence presented at trial. Counsel were then given the opportunity to fully question the prospective jurors about their exposure to pretrial publicity. Following thorough questioning, the trial court excused members of the venire who had formed fixed opinions due to pretrial

40

publicity or were otherwise unsuitable.

. . .

{¶ 50} We also reject Davis's assertion that his counsel were ineffective by failing to develop the record about the level of pretrial publicity in his case. The trial court was well aware of the extent of pretrial publicity because many prospective jurors acknowledged that they had heard something about the case. Thus, Davis has failed to show how trial counsel's failure to submit newspaper clippings and other media stories was prejudicial.

{¶ 51} Third, Davis argues that the trial court and counsel failed to adequately question prospective jurors to develop challenges for cause or exercise peremptory challenges. However, Davis fails to explain the additional information that should have been obtained. Thus, this claim lacks merit.

{¶ 52} Finally, Davis complains that the trial court required counsel to conduct voir dire after regular court hours. Before concluding voir dire, the trial court informed counsel, "I'm inclined to finish this group. * * * We have two more sets of six. Generally get those done tonight and come back in the morning and start." The court completed voir dire and recessed at 6:30 p.m.

{¶ 53} Davis argues that the voir dire examination conducted late in the day became increasingly incoherent because counsel were tired. The prosecutor remarked, "I'm getting punchy. * * * It's 25 'til six." Davis also points out that his trial counsel's voir dire of the last group of jurors comprised only three and one-half pages of the transcript.

{¶ 54} "The scope of voir dire is within the trial court's discretion and varies depending on the circumstances of each case." *State v. Bedford* (1988), 39 Ohio St.3d 122, 129, 529 N.E.2d 913. The trial court's action ensured the orderly flow of the case and did not constitute an abuse of discretion. Moreover, Davis suffered no prejudice, because none of the prospective jurors questioned after hours actually served on the jury.

*Davis I*, 2008-Ohio-2.

Nowhere, in the Traverse or anywhere else, does Petitioner identify how the knowledge of venire members affected the impartiality of jurors actually seated.

Petitioner fails to state what information he needed to be obtained through *voir dire*

but did not get.  He does not explain how he was prejudiced by the late and perfunctory examining of the final two panels, as none of those panel members actually sat on the jury.  In *Jackson*, the United States Court of Appeals for the Sixth Circuit upheld a *voir dire* in which:

> Although all of the jurors knew something about the case, the trial judge did not allow questions about the "content" of what they knew or the source of their knowledge. All of the jurors who were accepted on the jury by the trial court did state, however, that they could render a fair and unbiased verdict without regard to their knowledge of the case arising from the extensive pretrial publicity.

687 F.3d at 733.  Similarly here, pretrial publicity was discussed, venire members were expressly told not to state what they knew about the case, and the importance of impartiality was stressed. (Trial Tr., ECF No. 52-1, PageID 6390, 6402, 6409.)  In the absence of any evidence that biased jurors were seated, the trial court's *voir dire* falls well short of the "manifest error" required for habeas relief.  *Mu'Min*, 500 U.S. at 428.

Moreover, it is well-established under *Strickland* that an ineffective assistance claim will not lie unless a party is prejudiced.  466 U.S. at 687.  For the reasons set forth above, Petitioner's claims of trial court error and of ineffective assistance are speculative, a point the Supreme Court of Ohio made time and again in its rejection of Petitioner's claim.  *Davis I*, 2008-Ohio-2, ¶¶ 50-51, 54.  As the state court's decision was neither contrary to clearly established law nor an unreasonable determination of the facts, the decision may not be disturbed, and this subclaim is dismissed.

   **b.**  **Trial Court Improperly Excused Jurors who merely had Reservations about Capital Punishment, but never said they could not Impose a Sentence**

  The trial court applied an improper standard in excusing prospective jurors who expressed objections to capital punishment but who were not unequivocally opposed to capital punishment under all circumstances and could fairly consider death as a sentence.

(Petition, ECF No. 133, PageID 11650.)

  Petitioner argues that, under Ohio law, jurors with reservations about imposing the death penalty may only be excused for cause if they say unequivocally that they could not impose the death penalty (Petition, ECF No. 133, PageID 11650, ¶ 118, citing Ohio Rev. Code § 2945.25(C).)  Ohio Rev. Code § 2945.25(C) was adopted in light of the Supreme Court decision in *Witherspoon v. Illinois*, 391 U.S. 510, 521-22 (1968), which set forth the standard for removal of a juror—the panel member must be unequivocally opposed to the imposition of the death penalty. (Petition, ECF No. 133, PageID 11650, ¶ 118.)  However, the standard was relaxed in *Wainwright v. Witt*, which held that a general unwillingness to impose the death penalty could constitute an impairment sufficient for removal for cause.  (*Id.* at PageID 11651, ¶ 119, citing *Witt*, 469 U.S. 412, 423-24 (1985).)  Petitioner claims that he "has a due process right in having the state of Ohio apply its own legislative enactments even if those standards are more strict than those dictated by the federal constitution."  (*Id.* at ¶ 120, citing *Evitts v. Lucey*, 469 U.S. 387, 401 (1985).)  Yet, "[t]he trial court consistently applied the less stringent *Witt* standard rather than the more stringent Ohio Rev. Code § 2945.25(C) standard in excusing jurors for cause based on their views on the death penalty."  (*Id.* at PageID 11651-52, ¶

43

120, citing Trial Tr., ECF No. 52-2, PageID 6767, 6830-31, 6928-30.)  Petitioner argues that this deprived him of a fair cross section of the community, in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments and Ohio Rev. Code § 2945.25(C).  (*Id*. at PageID 11652, ¶¶ 121-22.)

The Warden counters that the Petition, as pleaded, is challenging the decision of an Ohio court applying Ohio law, which is not cognizable in habeas. (Return of Writ, ECF No. 97, PageID 10830.)  Further, the Warden continues, the claim is meritless, because, while a jury cannot be "uncommonly willing" to condemn a man to death, the state must be able to obtain a verdict of death. (Return of Writ, ECF No. 97, PageID 10831, quoting *White v. Wheeler*, 577 U.S. 73, 77 (2015) (*per curiam*).)  To the extent Petitioner actually raised a federal constitutional claim, the Warden reasons, *Witt* removed the requirement that bias be proved with "unmistakable clarity."  Rather, the Warden claims, it is now enough to remove a juror for cause if "the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law." *Witt*, 469 U.S. at 425-26.  The Supreme Court of Ohio properly applied the law, the Warden argues, by applying *Witt*.  (Return of Writ, ECF No. 97, PageID 10832, quoting *Davis I*, 2008-Ohio-2, ¶ 55.)  As the state court decision was not contrary to clearly established federal law, the Warden argues that it must be affirmed.

In the Traverse, Petitioner reiterates his argument that he "has a due process right in having the state of Ohio apply its own legislative enactments even if those standards are more strict than those dictated by the federal constitution."

44

(Traverse, ECF No. 104, PageID 11038, citing *Lucey*, 469 U.S. at 401.)

Petitioner misinterprets *Lucey*, which holds that, when a state implements a discretionary process, "it must nonetheless act in accord with the dictates of the Constitution-and, in particular, in accord with the Due Process Clause." 469 U.S. at 401. Here, the dictates of the Constitution and the Due Process Clause are set out not in Ohio Rev. Code § 2945.25, but in *Witt*, which the Supreme Court of Ohio accurately applied:

> {¶ 55} **2. Standard for excusing jurors**. Davis argues that the trial court erred in applying the standard set forth in *Wainwright v. Witt* (1985), 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841, instead of the standard in R.C. 2945.25(C), in excusing prospective jurors who expressed reservations about capital punishment. However, *Witt* enunciates the correct standard for determining when a prospective juror may be excluded for cause based on his or her opposition to the death penalty. See *State v. Rogers* (1985), 17 Ohio St.3d 174, 17 OBR 414, 478 N.E.2d 984, paragraph three of the syllabus. Moreover, Davis's claim that his counsel were ineffective by failing to object lacks merit, because the *Witt* standard was properly applied.

*Davis I*, 2008-Ohio-2, ¶ 55. Petitioner does not argue, much less offer evidence, that the trial court misapplied *Witt* in its removal of jurors for cause. To the extent that Petitioner is claiming that the trial court satisfied *Witt* but ran afoul of Ohio Rev. Code § 2945.25, that is a matter of state law that is not cognizable in federal habeas. Lacking any basis for habeas relief, this subclaim must be dismissed.

### c.    Counsel Failed to Examine Jurors Fully About Whether They Could Impose the Death Penalty

> Trial counsel failed to fully examine jurors about whether their opinions on the death penalty would prevent them from following the court's instructions and fairly considering the imposition of the death penalty.

(Petition, ECF No. 133, PageID 11653.)

Petitioner argues that "[w]henever a juror indicated any hesitancy about imposing the death penalty, counsel failed to make sufficient inquiry into the juror's feeling before the court granted the state's challenge for cause. Counsel likewise failed to object or fully object to these cause challenges." (Petition, ECF No. 133, PageID 11653, ¶ 125, citing Trial Tr., ECF No. 52-2, PageID 6766, 6767, 6812-29, 6830, 6922-26, 6927.)

The Warden rejoins that "Davis has not even attempted to meet his burden to show the merits decision of the Ohio Supreme Court was contrary to or an unreasonable application of clearly established federal law." (Return of Writ, ECF No. 97, PageID 10833.)  The Warden notes that the Supreme Court of Ohio rejected the claim, finding that counsel had done their best to rehabilitate the venire members who stated that they could not sign a death verdict, and that Petitioner had not stated what more his counsel should have done.  (*Id*. at PageID 10833-34, quoting *Davis I*, 2008-Ohio-2, ¶¶ 56-58.)  The Warden also argues that the dismissal of those jurors was proper under *Witt*, and thus, the Supreme Court of Ohio's decision was correct.  (*Id*. at PageID 10834.)

The Supreme Court of Ohio considered and rejected this claim as follows:

{¶ 56} **3. Examination of death-penalty-opposed jurors**. Davis contends that trial counsel failed to fully question and rehabilitate prospective jurors who said they opposed the death penalty and that counsel failed to object to the state's challenge of these jurors.

{¶ 57} Davis cites five veniremen whom counsel should have rehabilitated: Spearman, Smith, Barsky, Hanson, and Harden.  During voir dire, all of these jurors stated they were opposed to the death penalty and could not sign a death verdict.  Trial counsel did not object to the challenge of Spearman but did object to the challenge of the other four jurors.  The trial court excused all five jurors.

46

{¶ 58} Trial counsel attempted to rehabilitate each of the jurors before they were excused.  We reject Davis's claim that counsel should have asked these jurors more questions, because counsel were in the best position to determine whether the jurors could be rehabilitated.  See *State v. Jones* (2000), 90 Ohio St.3d 403, 410-411, 739 N.E.2d 300.  Moreover, trial counsel were not ineffective by failing to object to the exclusion of Spearman, because she clearly stated her unwillingness to sign a death verdict.

*Davis I*, 2008-Ohio-2.

This Court's review of the transcript corroborates the analysis by the Supreme Court of Ohio.  Spearman unequivocally answered that she could not impose the death penalty. (Trial Tr., ECF No. 52-2, PageID 6766.)  In light of that answer, it would not have been improper to strike her for cause under Ohio Rev. Code § 2945.25(C), much less under *Witt*.  Thus, any failure by Petitioner's counsel to rehabilitate Spearman or to object to the prosecution's challenge for cause was not prejudicial.  The transcript shows Petitioner's counsel repeatedly attempting to qualify Barsky, Hanson, and Smith's opposition to the death penalty, and subsequently objected to their being struck for cause.  (*Id*. at PageID 6826-29, 6830, 6920-22, 6928-30.)  Moreover, counsel did successfully object to a juror Way being struck for cause despite Way's reservations about imposing the death penalty.  (*Id*. at PageID 6927-29.)

While Petitioner argues that there were "[i]mproper limitations on voir dire," (Traverse, ECF No. 104, PageID 11039), he fails to state what those limitations actually were, and as discussed above, the *voir dire* by the trial court and counsel was extensive.  Moreover, while Petitioner makes conclusory statements about counsel "[f]ailing to fully question and rehabilitate [death penalty-hesitant] jurors"

47

and "fail[ing] to object or fully object to . . . cause challenges" of those jurors (*id*.), he

fails to articulate what fully questioning or fully objecting would have looked like.

Given that counsel *did* object to the removal of death penalty-hesitant jurors, it is

speculative what else counsel could have reasonably done. Accordingly, the

Supreme Court of Ohio's rejection of this subclaim was proper, and the subclaim is

dismissed.

### d. Counsel was not Allowed to and/or did not Examine Jurors About Openness to Mitigating Evidence

> The trial court refused to permit counsel to fully examine prospective jurors about potential mitigating evidence, about whether they could consider a life sentence for someone who had killed an elderly woman in her home or whether they would automatically vote for death upon a showing of guilt. The failure to fully examine on these subjects resulted in jurors who would automatically vote for the death penalty and who would not consider mitigating evidence.

(Petition, ECF No. 133, PageID 11654.)

Petitioner argues that the court and counsel failed to ask pro-death penalty

venire members if there were circumstances under which they would consider

imposing a life sentence (*i.e.*, "life-qualifying" the jury). (Petition, ECF No. 133,

PageID 11654-55, ¶ 131, citing Trial Tr., ECF No. 52-2, PageID 6804, 6831-32.)

"This failure to uncover these biases was particularly critical here where the

prosecutor consistently and improperly attempted to exploit these facts in seeking a

conviction and a sentence of death." (Petition, ECF No. 133, PageID 11655, ¶ 132).

Further, he claims that the court improperly denied challenges for cause of jurors

who indicated that they automatically favored the death penalty. (*Id*. at PageID

11655-56, ¶ 134.)

The Warden argues that the claim was reviewed and rejected by the Supreme Court of Ohio in the First Proposition of Law on direct appeal, concluding that the trial court gave counsel significant leeway in *voir dire*. The Warden claims that "Davis points to nothing in the record to indicate the trial court posed any restrictions on counsel's *voir dire*. As such, Davis has failed to meet his burden[.]" (Return of Writ, ECF No. 97, PageID 10835, quoting *Davis I*, 2008-Ohio-2, ¶ 59.) As to counsel's allegedly ineffective performance, "[a] review of the transcripts shows that counsel did question the two prospective jurors who expressed an initial willingness to favor a death sentence. As the Ohio Supreme Court reasonably found, and the record supports, both ultimately agreed they could consider mitigation evidence before making a decision." (Return of Writ, ECF No. 97, PageID 10836, quoting *Davis I*, 2008-Ohio-2, ¶¶ 60-64.)

> Moreover, the record indicates that counsel *did* challenge for cause juror Marston, but *lost* the challenge. Davis does not indicate any clearly established federal law which states that counsel must *win* an objection in order to provide constitutionally effective counsel. Davis does not indicate what more he expected his trial counsel to do to "successfully challenge" these two jurors. Furthermore, neither of these prospective jurors served on Davis' jury, so Davis was not prejudiced by the trial court not excusing them.

(*Id.* at PageID 10837 (emphasis in original, citing Trial Tr., ECF No. 52-2, PageID 6831-32).) Finally, the Warden argues, there was no violation by the trial court failing to life-qualify the jury, because no such duty exists, and counsel not life-qualifying a jury is not so deficient as to render the entire trial unfair, and thus does not constitute ineffective assistance. (*Id.* at PageID 10837-38.)

In his Traverse and elsewhere, Petitioner again makes conclusory allegations

49

that the trial court and counsel did not "fully question jurors who expressed a willingness to impose the death penalty for any murder." (Traverse, ECF No. 104, PageID 11040.) He also claims, without citation to record or other evidence, that "[c]ounsel . . . failed to develop and exercise challenges for cause, and to exercise peremptory challenges against these jurors who could not fairly consider mitigation or a life sentence under the factors of this case." (*Id.*)

As discussed above, the Supreme Court of Ohio rejected Petitioner's subclaim:

> {¶ 59} **4. Failure to voir dire regarding mitigating evidence**. First, Davis argues that the trial court refused to permit counsel to fully examine prospective jurors about mitigating evidence. Consequently, the selected jurors would be likely to "automatically vote for the death penalty and * * * would not consider mitigating evidence." This claim lacks merit because trial counsel were given extensive leeway to examine prospective jurors regarding their willingness to consider mitigating evidence.

> {¶ 60} Second, Davis argues that jurors Marston and Cronin were not fully questioned about whether they could fairly consider mitigating evidence and impose a life sentence. Davis also claims that counsel's inadequate voir dire resulted in the failure to develop a successful challenge for cause against them.

> {¶ 61} "The conduct of voir dire by defense counsel does not have to take a particular form, nor do specific questions have to be asked." *State v. Evans* (1992), 63 Ohio St.3d 231, 247, 586 N.E.2d 1042. "[C]ounsel is in the best position to determine whether any potential juror should be questioned and to what extent." *State v. Murphy* (2001), 91 Ohio St.3d 516, 539, 747 N.E.2d 765.

> {¶ 62} During voir dire, juror Marston stated his belief that all people convicted of intentionally killing another person should face the death penalty. Trial counsel tested juror Marston's willingness to consider mitigating evidence by asking him whether the same crime committed by two separate people with different backgrounds had mitigating features. Juror Marston replied, "[S]ame crime, same penalty." During further questioning, juror Marston expressed his willingness to follow

the law, evaluate mitigating factors, and consider all four sentencing options. Trial counsel challenged juror Marston for cause, but the trial court denied the challenge.

{¶ 63} Trial counsel were not deficient in questioning juror Marston. Counsel asked probing questions about fairly considering mitigating evidence and all lesser sentencing options. Moreover, counsel had no basis to challenge juror Marston for cause, because Marston expressed his willingness to consider the mitigating evidence and all four sentencing options. See *Morgan v. Illinois* (1992), 504 U.S. 719, 729, 112 S.Ct. 2222, 119 L.Ed.2d 492; *State v. Braden,* 98 Ohio St.3d 354, 2003-Ohio-1325, 785 N.E.2d 439, ¶ 37.

{¶ 64} We also reject Davis's claim that counsel failed to fully question juror Cronin and challenge her for cause. During voir dire, juror Cronin expressed the view that identical crimes deserve identical punishment, regardless of the social backgrounds of the perpetrators. However, trial counsel questioned juror Cronin about her willingness to consider various mitigating evidence. Juror Cronin stated that she would consider the mitigating evidence and all potential sentencing options. Thus, counsel had no basis to challenge juror Cronin for cause.

{¶ 65} Finally, Davis claims that the court and trial counsel failed to question the jurors about whether they could consider mitigating evidence and impose a life sentence even though the victim was an elderly woman murdered in her own home.

{¶ 66} Davis invokes *State v. Jackson,* 107 Ohio St.3d 53, 2005-Ohio-5981, 836 N.E.2d 1173, ¶ 60–62, in making this argument. *Jackson* held that a "trial court abused its discretion by refusing *defense counsel's requests* to advise prospective jurors that one of the murdered victims was a three-year-old child and by refusing to allow voir dire on that fact." (Emphasis added.) Id. at ¶ 62. However, Jackson does not apply to this case, because trial counsel never sought to question the jurors about their views on imposing the death penalty when the victim was an elderly woman. Counsel's decision to forgo this line of questioning constituted a legitimate tactical decision. See *State v. Keith* (1997), 79 Ohio St.3d 514, 521, 684 N.E.2d 47. Indeed, counsel could have decided not to question the jurors about the victim's elderly status to avoid focusing the jury's attention on this issue at the very beginning of its case.

{¶ 67} We also hold that the trial court was not required to sua sponte question the jurors about the victim's elderly status because counsel failed to do so. See *Turner v. Murray* (1986), 476 U.S. 28, 37, 106 S.Ct.

1683, 90 L.Ed.2d 27, fn. 10.

*Davis*, 2008-Ohio-2 (emphasis and alteration in original).

This Court's review of the transcript reveals that the state court decision was sound, and that Petitioner's argument is dubious. Cronin was questioned extensively by the prosecution regarding whether she would be able to consider mitigating evidence and, under some circumstance, impose a sentence less than death (Trial Tr., ECF No. 52-2, PageID 6804-07, 6819-20.) Similarly, Marston was questioned by Petitioner's counsel and, while he did say, "[s]ame crime, same [death] penalty" as to all aggravated murders (*id*. at PageID 6822), he later indicated that he would need to hear mitigating evidence before deciding on a punishment. (*Id*. at PageID 6825.) In light of this extensive questioning, and the wide latitude trial courts have in conducting *voir dire*, the trial court was under no obligation to question those venire members further before deciding as to whether they were to be seated. Moreover, counsel made a vociferous challenge for cause as to Marston (*id*. at PageID 6831-32), and Petitioner does not indicate what more counsel should have done.

Finally, the issue of life-qualification of a jury appears to be a matter of Ohio state law, *Davis I*, 2008-Ohio-2, ¶¶ 65-66, and Petitioner cites no caselaw suggesting that failing to life-qualify a jury would violate a federal constitutional right. In light of the above, the Supreme Court of Ohio's rejection of the claim, *Davis I*, 2008-Ohio-2, ¶¶ 59-67, was proper, and this subclaim is dismissed.

> ### e. Failure to Excuse Jurors who Knew too Much About the Crime, Victim, or Petitioner

The trial court failed to excuse jurors who knew too much about the crime, the victim or Roland Davis.

(Petition, ECF No. 133, PageID 11662.)

Petitioner notes that several jurors expressed in *voir dire* that they knew a lot about the case, but the trial court failed to examine these jurors further and allowed them to be seated (Petition, ECF No. 133, PageID 11662-63, ¶¶ 150, 152).

Consequently, Petitioner claims:

> The jury was comprised of persons acquainted with the victim or her family, persons who were intimately familiar with the facts of the case, and persons who were familiar with the history of Roland Davis. Because of this familiarity, the jury that tried Davis could not have been fair and impartial.

(*Id.* at PageID 11663, ¶ 152.)  The Warden argues that the claim is vague, speculative, and meritless, as "Davis fails to indicate who seated on the jury should have been removed for 'knowing too much' or being related to the victim or her family."  (Return of Writ, ECF No. 97, PageID 10839.)

The Supreme Court of Ohio rejected the claim:

> {¶ 73} **6. Failure to excuse jurors.** Davis also complains that he was denied a fair and impartial jury because many of the jurors knew too much about the crime, the victim, or Davis and his family.
>
> {¶ 74} Davis fails to mention any specific juror who should have been excused.  However, prospective jurors who indicated some familiarity with the crime, the victim, or the witnesses were identified.  Following thorough questioning, the trial court excused members of the venire who had formed a fixed opinion about the case or indicated an association with the victim or the witnesses that made them unsuitable to serve on the jury.  This claim lacks merit.

*Davis I*, 2008-Ohio-2.

53

Indeed, Petitioner does not specify any juror who had specific knowledge of the crime, the victim, or Petitioner and his family.  The only reference Petitioner makes to any jurors having knowledge is a statement that "[t]hroughout voir dire, many potential jurors explained they had some knowledge that might render them unfit to sit as jurors."  (Petition, ECF No. 133, PageID 11662, ¶ 150, citing Trial Tr., ECF No. 52-1, PageID 6061-62.)  Yet, the pages cited by Petitioner detail jurors seeking hardship exemptions; there is no mention of jurors having knowledge of the case, and this Court is not required to scour the record to find what Petitioner is referring to.

Thus, Petitioner is left with only a general argument that because "a majority of the jurors are acquainted with or related to the family of the victim, there is not even an appearance of impartiality[,]" and that "[g]eneral inquiries about whether the juror 'could be fair' or 'could they follow the law' were not enough to uncover bias."  (Traverse, ECF No. 104, PageID 11041-42.)  As discussed above, the trial court's *voir dire* on publicity was sufficient under *Mu'Min*, and Petitioner offers no support for his assertion that a majority of the venire was related to or familiar with the victim.  In sum, the claim is speculation.  Accordingly, the Supreme Court of Ohio's well-reasoned decision may not be disturbed, and this subclaim is dismissed.

> ### f. Court and Counsel Failed to Question Juror Regarding Personal issues that might Distract, but did not Disqualify Juror
>
> The court and counsel failed to question a juror about personal problems that would distract from performing duties as a juror and failed to remove that juror.

(Petition, ECF No. 133, PageID 11666.)

During *voir dire*, Juror Wallace revealed that she had been harassed at and temporarily fired from her job as a result of her being in the venire.  Despite the opportunity to *voir dire*, Petitioner's counsel never asked her whether this would have any effect on her ability to sit and judge impartially.  Wallace stayed on and acted as the foreperson. (Petition, ECF No. 133, PageID 11666-67, ¶¶ 164-66, citing Trial Tr., ECF No. 52-3, PageID 7028, 7281-82, ECF No. 52-5, PageID 8524.)

Petitioner argues that:

> [C]ounsel have an obligation in voir dire to determine if there are any personal matters concerning the juror that would make it difficult or impossible for the juror to fully concentrate on the job of the jury—to give full attention to the matters being presented in the courtroom and to be able to dispassionately decide the case based solely on the evidence presented in the courtroom

(*Id.* at PageID 11667, ¶ 168.)  He further claims that counsel were ineffective in failing to *voir dire* Juror Wallace and that a "prospective juror who is being harassed (and fired) from her job for serving on this jury will have some distractions that could interfere with her ability to perform adequately as a juror."  (Traverse, ECF No. 104, PageID 11043.)

The Warden counters that this subclaim is speculative:

> Davis makes bald assertions that his rights were violated by the lack of questioning of the affected juror.  He cites to no clearly established federal law to suggest that the decision of the Ohio Supreme Court was unreasonable.  Without citing any case law, Davis appears to claim his attorneys were ineffective for not questioning the juror in light of the representations that she gave to the trial court, through the court's bailiff, that her work situation only strengthened her desire to do her civic duty of jury service.  Nothing in the record even begins to suggest that the juror was compromised.  Moreover, nothing in the record supports an assertion that Davis was prejudiced by having the juror

55

serve[.]

(Return of Writ, ECF No. 97, PageID 10841.)

The Supreme Court of Ohio held as follows:

{¶ 78} **8. Failure to question juror about an outside influence**. Davis argues that he was denied a fair trial because the trial court and counsel failed to question juror Wallace after learning that she had been fired from her job for serving on the jury.

{¶ 79} Following voir dire, juror Wallace told the bailiff that she had received some pressure from her employer to get off the jury. The trial court informed counsel that Wallace, a cook at Applebee's, was told to wear white-supremacist clothing or lie about certain answers to avoid jury duty. Wallace told her employer that she was not going to lie or do anything wrong. She also called the corporate office to report her boss. The prosecutor asked whether the pressure would affect Wallace's behavior on the jury. The trial court said, "No. In fact, she indicated just the opposite. She felt that she couldn't do those things. She told us she's not a liar, she's not going to take any steps like that. * * * [Y]ou saw her yesterday, all the jurors * * * [take] their obligation seriously and I felt were honest * * *." Both counsel stated that further voir dire of Wallace was unnecessary.

{¶ 80} On the next day, the trial court informed counsel that juror Wallace reported that she had been fired after telling her boss that she had been selected as a juror. Juror Wallace said she had "talked to the boss' boss who told her all the right things; you're on the payroll; * * * you're going to get paid; do your duty, and after you're done, come talk to me and we'll take care of it then." Trial counsel said, "I was kind of led to believe that she's okay with all of this." The trial court said, "That's the impression I certainly received, too. In fact, I think the owner's position has been just what you would hope it would be, and he seems to be supportive of her * * *. [T]hey seem to have that under control and she seems to be in a fine state of mind, too." Both counsel declined to conduct any further voir dire of juror Wallace.

{¶ 81} In cases involving outside influences on jurors, trial courts are granted broad discretion in dealing with the contact and determining whether to declare a mistrial or to replace an affected juror. *State v. McKnight,* 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 191. A trial court is permitted to rely on a juror's testimony in determining that juror's impartiality. *State v. Herring* (2002), 94 Ohio St.3d 246, 259, 762 N.E.2d 940. Juror Wallace assured the court that her job situation

> would not affect her ability to serve as a juror.  Counsel were obviously
> convinced that juror Wallace could remain a fair and impartial juror.
> Thus, the trial court and counsel could allow juror Wallace to remain on
> the jury without conducting further inquiry.

*Davis I*, 2008-Ohio-2 (alteration in original).

Petitioner raises this only as an ineffective assistance of counsel claim.  Yet,
Petitioner does not explain how Juror Wallace was compromised or allowed the
admittedly bizarre surrounding circumstances to affect her performance.  Thus,
even if counsel's failure to *voir dire* Wallace fell below the norms of professional and
competent representation, he has failed to show the requisite prejudice under
*Strickland*.  Accordingly, the subclaim is dismissed.

### B.    Trial Phase Claims for Relief

#### 1.    Claim Six:   Refusal to Admit Reports Relied upon by State's DNA Expert Violated His Rights to Confrontation and Due Process

The Trial Court's Refusal to Grant Davis' Request to Admit Reports
Prepared and Relied Upon by the Witness of a Party Opponent—The
State's DNA Expert Witness—Denied Davis His Right to Confront
Witnesses Against Him, a Fair Trial, Due Process and a Reliable
Sentencing Determination In Violation of the Fifth, Sixth, Eighth and
Fourteenth Amendments.

(Petition, ECF No. 133, PageID 11679.)

According to Petitioner, one of the State's most important witnesses was
"Meghan Clement, the technical director of the forensic identity testing department
at Laboratory Corporation of America Holdings, Incorporated." (Petition, ECF No.
133, PageID 11679, ¶ 196, citing Trial Tr., ECF No. 52-4, PageID 7861.)  Clement
supervised the technologists and ensured quality control in the lab.  She also
prepared a certificate of analysis for the testing she had performed.  (*Id*. at ¶¶ 197-

57

98.)  "Clement testified that there were three areas on the fitted sheet taken from the victim's bedroom that contained male DNA, based on Y-STR testing."  (*Id*. at ¶ 199.)  In her report, Clement stated that Petitioner and his male paternal relatives could not be excluded as suspects.  (*Id*. at PageID 11681, ¶ 205, quoting State Court Record, ECF No. 58, PageID 8867.)  At times, she testified that the testing could not rule out Petitioner as a match, which Petitioner concedes is an accurate summation of the results.  (*Id*. at PageID 11680, ¶ 200.)  "At other times, however, Clement misleadingly individualized the test results by testifying that the tests 'matched' Roland Davis, using this improper individualizing language repeatedly throughout her testimony."  (*Id*. at ¶ 201, citing Trial Tr., ECF No. 52-4, PageID 7892, 7894-96, 7898-99, 7901-02, 7971.)  This distinction was vital to Petitioner's defense that it was Randy Davis, Petitioner's brother, who killed Sheeler.  (*Id*. at PageID 11685, ¶ 223.)  Petitioner's counsel used the report on cross-examination without objection from the State.  (*Id*. at PageID 11683, ¶ 215.)  However, when Petitioner's counsel attempted to admit the report into evidence, the State objected to it as hearsay, and the trial court sustained the objection.  (*Id*. at PageID 11683-84, ¶¶ 216-17, citing Trial Tr., ECF No. 52-4, PageID 8001-04.)  During deliberations, the jury requested the document, but the trial judge refused, as the report was not in evidence.  (*Id*. at PageID 11684, ¶ 219, citing Trial Tr., ECF No. 52-4, PageID 8180-81.)

Petitioner argues that "[t]he trial court's exclusion of this report was prejudicial constitutional error and a denial of due process and a fair trial. It is not entirely clear on what basis the court actually excluded the exhibit." (Petition, ECF

No. 133, PageID 11684, ¶ 221, citing Trial Tr., ECF No. 52-4, PageID 8004.)  He claims that the transcript suggests two possibilities for the trial court's decision to exclude:  (1) the information had already been testified to; or (2) the record was not a business record and thus was hearsay.  (*Id.* at PageID 11684-85.)  Neither is persuasive, Petitioner argues:

> The fact that Clement testified regarding those facts—and was cross examined on this document—does not substitute for the probative value of the actual exhibit which contained the table demonstrating each of those alleles in each of the persons and samples tested, and other information critical to properly understanding and weighing Clement's testimony.  The actual exhibit demonstrated the differences and discrepancies raised on cross examination.

(*Id.* at PageID 11685, ¶ 224.)  Also, "[b]ecause the report and its preparer were subject to cross examination, the report was not hearsay."  (*Id.* at PageID 11686, ¶ 228.)

The exclusion of the report was prejudicial, Petitioner argues, because "[t]he fact that Clement testified to the information, or that the jury saw from a distance the charts in the report during counsel's closing argument does not mean that the detailed and complex information contained in the report could be easily recalled by the jury during deliberations." (Petition, ECF No. 133, PageID 11687, ¶ 230.)  He claims that the report would have buttressed Petitioner's third-party culpability defense, the linchpin of his defense strategy.  (*Id.* at PageID 11688, ¶ 232.)  "The actual data contained in the report raised significant and legitimate questions about Clement's conclusions which were the subject of cross examination by defense counsel."  (*Id.* at ¶ 234.)  Compounding the prejudice was that all of the State's evidence was re-introduced in the penalty phase, but the report could not be.  (*Id.* at

¶ 233.) Taken together, Petitioner claims, "[t]he court's exclusion of Defense Exhibit L denied Davis his right to confront witnesses, to due process, to a fair trial, and to a fair and reliable sentencing determination as well as the effective assistance of counsel in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments." (*Id.* at PageID 11689, ¶ 237.)

The Warden rejoins that "[w]hile Davis attempts to cast this issue as a constitutional violation, it is not. Davis cannot escape the fact that he is asking this Court to correct what he alleges is a violation of state evidence rules; this is not the purpose of federal habeas review." (Return of Writ, ECF No. 97, PageID 10843.) "Because Davis' claim is based on an allegation of state evidentiary error, he may only be granted relief if the state ruling was so egregious that it 'so infected the entire trial that the resulting conviction violates due process.'" (*Id.*, quoting *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).) Further, according to the Warden, the Supreme Court of Ohio concluded that the report was cumulative of Clement's testimony. (*Id.* at PageID 10844, quoting *Davis I*, 2008-Ohio-2, ¶ 174.) "As Davis cannot show that the exclusion of Defense Exhibit L was such an egregious error that it so infected his entire trial, he cannot show that his trial was fundamentally unfair, and thus cannot show a violation of due process." (*Id.* at PageID 10845.)

Petitioner argues in his Traverse that the state court misinterpreted his claim, and thus, no deference should be accorded that decision: "Despite the fact that Davis raised this claim as a Federal Constitutional issue on direct appeal to the Supreme Court of Ohio, the Court addressed it only as a state evidentiary ruling

60

and did not address any of the federal constitutional claims raised by Davis[.]"

(Traverse, ECF No. 104, PageID 11051, citing *Davis I*, 2008-Ohio-2, ¶¶ 165-76.)

The Supreme Court of Ohio held that:

{¶ 165} ***Admissibility of DNA report.*** In proposition of law VII, Davis argues that the trial court erred by failing to admit defense exhibit L, the DNA lab report, into evidence. In the alternative, Davis argues that trial counsel were ineffective by failing to fully object to exclusion of the report.

{¶ 166} Meghan Clement, the Technical Director for Forensic Identity Training at LabCorp, testified that Y-chromosome testing identified Davis's DNA on the bloodstained fitted sheet in Sheeler's bedroom. Clement also testified that autosomal STR testing identified Davis's DNA profile as a contributor to a mixture on two of the bloodstains.

{¶ 167} During cross-examination, trial counsel used defense exhibit L in questioning Clement about the DNA results. Defense exhibit L included two charts showing the results of DNA testing. Trial counsel's questions focused on the chart showing the results of autosomal DNA testing. This chart compared the alleles found at the 13 loci showing that Davis's and Sheeler's DNA matched the DNA found on two of the bloodstains. Trial counsel elicited Clement's explanation for scientific data, footnotes, and other information included on the chart.

{¶ 168} Trial counsel offered defense exhibit L into evidence. Counsel argued that this exhibit was "foundational evidence for [Clement] to get to her conclusions and, therefore, the report should be admissible." The trial court did not admit defense exhibit L.

{¶ 169} Trial counsel used Clement's chart as a demonstrative exhibit during final argument. Trial counsel argued that the comparison of Davis's DNA profile with the DNA profile of the bloodstains suggested that Davis's deceased brother, Randy, might be the source of the DNA attributed to Davis.

{¶ 170} During jury deliberations, the jury sent a note stating: "Can we have the DNA statistics of 4.6, 4.7 of Ms. Clement? It was one of the three charts used in Defense's closing statements." Trial counsel stated that the jury should not be given the chart, because it was not admitted at trial. However, trial counsel asked the trial court to reconsider its ruling and admit defense exhibit L. The trial court refused, stating: "[T]he DNA charts prepared by witnesses such as the ones here * * *

they're hearsay, not admissible as business records or anything else." The trial court informed counsel that he would tell the jurors, "[Y]ou must rely on your collective memories for the testimony."

{¶ 171} Davis argues that defense exhibit L should have been admitted because it was a business record under Evid.R. 803(6) and therefore an exception to the hearsay rule.  "To qualify for admission under Rule 803(6), a business record must manifest four essential elements: (i) the record must be one regularly recorded in a regularly conducted activity; (ii) it must have been entered by a person with knowledge of the act, event or condition; (iii) it must have been recorded at or near the time of the transaction; and (iv) a foundation must be laid by the 'custodian' of the record or by some 'other qualified witness.' "  Weissenberger, Ohio Evidence Treatise (2007) 600, Section 803.73.  Even after these elements are established, however, a business record may be excluded from evidence if "the source of information or the method or circumstances of preparation indicate lack of trustworthiness."  Evid.R. 803(6).

{¶ 172} "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court."  See *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, paragraph two of the syllabus.  Even relevant evidence may be excluded under Evid.R. 403(A) if its "probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

{¶ 173} Trial counsel did not offer defense exhibit L into evidence as a business record and did not lay the necessary foundation for doing so. Defense exhibit L indicates that Clement independently reviewed the DNA results.  However, Clement offered no testimony showing that defense exhibit L was "generated by a systematic entry kept in the ordinary course of business." *State v. Lane* (1995), 108 Ohio App.3d 477, 488, 671 N.E.2d 272.

{¶ 174} Even assuming the trial court erred, any error was harmless. Clement's testimony was compelling and credible evidence from which the jury could conclude that Davis's DNA was found on the bloodstained sheet.  Clement's testimony, though based in part on the report, was admissible expert opinion.  The information and charts on defense exhibit L were merely cumulative of her testimony.  Moreover, the jury saw the chart showing the autosomal DNA results during trial counsel's final argument.

{¶ 175} We also reject Davis's ineffectiveness claim.  The defense made no proffer.  Thus, it is speculative whether further questioning of Clement would have established the necessary foundation for admitting

defense exhibit L as a business record.

*Davis I*, 2008-Ohio-2.

From the decision, it appears that the state court evaluated Petitioner's claim solely under state evidentiary rules.  Thus, assuming Petitioner did raise a federal constitutional claim, there is no state court decision to defer to, and *de novo* review is appropriate.  Nonetheless, his claim still fails.  Petitioner does not dispute the Warden's accurate recitation of the standard for constitutional error:  that the exclusion of the report was so egregious as to render the trial fundamentally unfair and a violation of due process.  *Estelle*, 502 U.S. at 72-73.  As the Warden correctly argues, the report was used in cross-examination of Clement and as a demonstrative aid during closing argument.  Thus, Petitioner cannot reasonably argue that he was denied his right to confrontation. (Return of Writ, ECF No. 97, PageID 10844-45, citing *Delaware v. Fensterer*, 474 U.S. 15, 22 (1985) (*per curiam*).) Moreover, the extensive use of the report—and the clear consideration of its contents by the jury during deliberations—meant that its exclusion as an actual exhibit, even if error, did not render the trial fundamentally unfair.  Accordingly, Petitioner has no viable ground for relief, and the claim is dismissed.

### 2.      Claim Seven:  Improper Expert Testimony

The Presentation of "Expert" Testimony Without First Establishing Either the Scientific Basis or the Qualifications of the "Expert" Deprived Davis of Due Process and a Fair Trial.

(Petition, ECF No. 133, PageID 11690.)

Petitioner argues that Detective Timothy Elliget, a self-proclaimed criminalist, was improperly allowed to testify on matters normally reserved for

63

qualified experts, and that the state court failed in its gatekeeper role (Traverse, ECF No. 104, PageID 11059, citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999); *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579, 589-95 (1993).) "The failure of defense counsel and the court to require the state to establish an appropriate foundation for Detective Elliget's 'expert' testimony denied Davis' rights to confront witnesses against him, due process, a fair trial and the effective assistance of counsel under the Fifth, Sixth, Eighth, and Fourteenth Amendments." (Petition, ECF No. 133, PageID 11691-92, ¶ 244.)

Petitioner argues that Elliget's testimony was concentrated in three main categories and one residual category, and each category was problematic. *First*, although Detective Elliget testified that he was trained by the Federal Bureau of Investigation in fingerprint collection, identification, and verification, he "failed to identify the extent, scope, nature, or duration of this training through the FBI, or any assessment requirements associated with this training." (Petition, ECF No. 133, PageID 11692, ¶ 245.) While Detective Elliget testified at length regarding fingerprint and related evidence, "[a]t no time did Detective Elliget offer, nor did defense counsel demand that he establish, the scientific basis or the scientific validity for this 'expert' testimony[.]" (*Id*. at PageID 11692-93, ¶¶ 247-48.) *Second*, Detective Elliget testified about the meaning of blood type patterns and his analysis of them, but the prosecution had not established his qualifications to testify about the subject matter. (*Id*. at, PageID 11693-94, ¶¶ 250-53.) "Detective Elliget gave his unsupported 'expert' opinion that 'the patterns here that are present appeared

to be consistent with a pattern of a hand being blood covered and the hand grabbing the item and pulling off.'  No basis for such an opinion was ever offered."  (*Id.* at PageID 11695, ¶ 256, quoting Trial Tr., ECF No. 52-4, Page ID 7680.)  *Third*, as to bodily fluids, "[d]espite establishing no scientific basis for this analysis, or that Detective Elliget had any specific training in this technique, Detective Elliget was permitted to give his 'expert' opinion on the meaning of this evidence."  (Petition, ECF No. 133, PageID 11696, ¶ 260, citing Trial Tr., ECF No. 52-4, PageID 7654, 7656.)  *Finally*, Detective Elliget offered opinion evidence on numerous other topics despite not being an expert or having established his scientific or other basis for testifying. (Petition, ECF No. 133, PageID 11696, ¶ 261.)

> Throughout the direct examination, Detective Elliget repeatedly was asked and answered questions that required either a scientific basis or considerable training and education in order to form the basis for his 'expert' opinion.  None was offered.  None was requested by defense counsel, despite the development in recent years of a wide body of evidence and study demonstrating substantial and serious flaws with the forensic "science" and its application that was the entire basis of Detective Elliget's testimony.

(*Id.* at PageID 11697, ¶ 266.)

Petitioner argues the four categories of testimony summarized above were improper and prejudicial for several reasons.  *First*, Detective Elliget was never tendered as an expert, and there was no stipulation or any establishment of his qualifications. (Petition, ECF No. 133, PageID 11699, ¶¶ 272-73.)  *Second*, there was no external validation of the validity of his methods, and his methods failed *Daubert*'s reliability requirements.  (*Id.* at PageID 11700-01, citing ¶¶ 275, 278.)  *Third*, the testimony was prejudicial, as Elliget's testimony was vital to the State's

65

theory that Petitioner, and Petitioner alone, was responsible for killing Sheeler.

(*Id.* at PageID 11701, ¶ 280.)[7]

The Warden argues that, for three reasons, Petitioner's claim fails. *First*, the

claim is non-cognizable; "because *Daubert* involved the requirements of Federal

Rule of Evidence 702 and not any constitutional right, the Sixth Circuit has held

that *Daubert* does not apply to the states." (Return of Writ, ECF No. 97, PageID

10847-48, citing *Norris v. Schotten*, 146 F.3d 314, 335 (6th Cir. 1998).) *Second*, the

claim was analyzed and rejected on its merits by the Supreme Court of Ohio as

"waived, alternatively meritless, and that he had constitutionally effective counsel.

The state court's decisions were not unreasonable." (*Id.* at PageID 10851, citing

*Davis I*, 2008-Ohio-2, ¶¶ 134-64.)

> Davis does not show how his trial would have been different had he *not*
> stipulated to Detective Elliget's qualifications. In light of the training
> Detective Elliget had already testified about, it is highly likely that the
> trial court would have still found him to be qualified as an expert and
> allowed the same testimony.

(*Id.* at PageID 10855 (emphasis in original).) The Warden claims that Petitioner

provides no support for his assertion that the stipulations were erroneous, and

"completely ignores the reasonable and legitimate tactical strategy of entering into

stipulations regarding Detective Elliget's testimony." (*Id.*) Further, the Warden

argues, Petitioner's claim of prejudice is dubious—Detective Elliget testified that

Petitioner's fingerprints were not found in the victim's home, and it is difficult to

---

[7]Paragraphs 265, 269, and 283 through 320 have been procedurally defaulted
as not fairly presented to the state courts. (Return of Writ, ECF No. 97, PageID
10845, citing Opinion and Order, ECF No. 94, PageID 10699-10705.) The Court
does not consider those allegations.

understand how Petitioner was prejudiced by that information being admitted. (*Id.* at PageID 10856.)

*Third*, the merits review by the state court means that this Court's review is limited to the state court record (Return of Writ, ECF No. 97, PageID 10857, citing *Cullen v. Pinholster*, 563 U.S. 170, 182, 184 (2011).) The Warden reasons that much of Petitioner's attack on Detective Elliget's testimony and the reliability of the forensic evidence came from a report of the National Academy of Sciences from 2009, "nine years *after* Davis murdered Ms. Sheeler and four years *after* Davis' trial." (Return of Writ, ECF No. 97, PageID 10856 (emphasis in original).) Petitioner "concedes he has never presented the report to the Ohio courts—even in his most recent state court litigation regarding his motion for a new trial. Therefore, the NAS report cannot be considered by this Court." (Return of Writ, ECF No. 97, PageID 10857, citing Response to Mtn. to Dismiss, ECF No.72, PageID 9477, 9479.) Without the NAS report, the Warden argues, there is no basis upon which to attack Detective Elliget's testimony. (*Id.* at PageID 10858.)

Petitioner claims that contrary to the Warden's argument that this is a non-cognizable *Daubert* claim, Petitioner raised this claim under his rights to due process and a fair trial, which are cognizable in habeas. (Traverse, ECF No. 104, PageID 11067, citing *Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2007); *Norris*, 146 F.3d at 335 (6th Cir. 1998); State Court Record`, ECF No. 51-3, PageID 1754-61; Return of Writ, ECF No. 97, PageID 10847-48.) "The Supreme Court also has suggested that due process concerns may be triggered in cases where erroneously

admitted evidence 'is almost entirely unreliable and . . . the factfinder and the adversary system [would] not be competent to uncover, recognize, and take due account of its shortcomings.'"  (Traverse, ECF No. 104, PageID 11069 (alterations in original), quoting *Barefoot v. Estelle*, 463 U.S. 880, 889 (1983), *superseded on other grounds by* 28 U.S.C. § 2253).)  Moreover, Petitioner argues, the Supreme Court of Ohio only adjudicated the state court claim, meaning the federal constitutional claim must be reviewed *de novo*.  (*Id.* at PageID 11065-66.)

As with Claim Six, the state court did not review the federal constitutional claim, rejecting the Ohio state law claim solely on state law grounds.  *Davis I*, 2008-Ohio-2, ¶¶ 134-64.  Nonetheless, even when reviewed *de novo*, Petitioner's claim is unavailing.  As the Warden correctly notes, *Daubert* does not apply against the states.  Thus, even if the trial court's failure to ensure the reliability of Elliget's testimony would constitute a *Daubert* violation in federal court, that failure would not by itself constitute a federal constitutional claim.  Rather, to obtain relief, the trial court errors, if any, must have been so egregious that they rose to the level of an unfair trial or a denial of due process.  Petitioner admits that he must show *first* an error of "constitutional dimension"—that is, where "the admission of evidence 'violated a bedrock principle of justice sufficient to deprive [him] of a fundamentally fair trial' under the Due Process Clause"; and "that 'the state courts' decision finding no error in the state court evidentiary ruling contravened or unreasonably applied clearly established Supreme Court precedent' under the standard of review set forth in 28 U.S.C. § 2254(d)."  (Traverse, ECF No. 104, PageID 11069, quoting

*Loza v. Mitchell*, 705 F. Supp. 2d 773, 885 (S.D. Ohio 2010).) *Second*, the error must have "had a substantial and injurious effect or influence in determining the jury's verdict." (*Id.* (internal quotation marks omitted), quoting *Calderon v. Coleman*, 525 U.S. 141, 147 (1998); *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).)

Petitioner has not met this exacting standard. Petitioner has not identified valid evidence that would undermine Detective Elliget's qualifications—as the Warden correctly notes, consideration of the 2009 NAS Report is precluded by *Pinholster*. Thus, this Court cannot conclude that the decision made by trial counsel to stipulate to Detective Elliget's qualifications fell outside the scope of acceptable representation. Additionally, the waiver of any objection to his qualifications did not deprive Petitioner of due process or a fair trial. Further, Petitioner cites no caselaw supporting his argument that the admission of Detective Elliget's testimony contravened Supreme Court precedent. Petitioner's argument for prejudice is speculative—he fails to account for the fact that Detective Elliget's testimony on the lack of fingerprint evidence *helped* Petitioner's defense. Petitioner does not explain how this helpful evidence is so far outweighed by any inculpatory evidence introduced by Detective Elliget's testimony as to render his trial unfair.

The remainder of Claim Seven is dismissed.

### 3. Claim Eight: Insufficient Evidence for Conviction on Aggravating Circumstance of Kidnapping

Davis was Denied a Fair Trial, Due Process of Law and a Fair and Reliable Sentencing Determination Because the State Offered Insufficient Evidence to Support a Conviction on the Aggravating Circumstance of Kidnapping or the Charge of Kidnapping.

(Petition, ECF No. 133, PageID 11713.)

Petitioner argues that the evidence "was not sufficient to sustain Davis' conviction on the separate count of kidnapping pursuant to Ohio Rev. Code § 2905.01 or the statutory aggravating circumstance that the murder occurred during the course of a kidnapping, under Ohio Rev. Code § 2929.04(A)(7)."  As the Fourteenth Amendment requires every element of a crime to be proved beyond a reasonable doubt, Petitioner claims that his conviction for kidnapping and death sentence cannot stand. (Petition, ECF No. 133, PageID 11713, ¶ 323, citing *Tibbs v. Florida*, 457 U.S. 31, 37-38 (1982); *Jackson v. Virginia*, 443 U.S. 307, 313-14 (1979); *In re Winship*, 397 U.S. 358, 361-63 (1970).)

Petitioner argues that the state's evidence was insufficient for two reasons. *First*, there was insufficient evidence of Petitioner's purpose to engage in sexual activity with the victim.  "The only evidence properly relied on by the state for this element was the placement of the victim's underwear which was rolled up around her stomach.  This is not sufficient evidence from which a reasonable juror could find this separate animus to sustain the conviction for kidnapping." (Petition, ECF No. 133, PageID 11714, ¶ 326.)  While there was presumptive evidence of semen on the victim, Detective Elliget conceded "that there are other substances that may cross-react with the chemicals." (*Id.* at PageID 11715, ¶ 327.)  Further, "testing on the oral swab did not confirm the presumptive test.  No DNA was found other than the victim's." (*Id.*, citing Trial Tr., ECF No. 52-4, PageID 7785-86.)  *Second*, "[t]here is no evidence in the record establishing by proof beyond a reasonable doubt that the restraint or movement occurred for the purpose of engaging in sexual activity."

70

(Petition, ECF No. 133, PageID 11716, ¶ 330.)  "Since it is unclear which of the three felonies caused the jury to vote in favor of guilt in Count One (kidnapping, burglary, aggravated robbery), Davis' convictions and sentence of death must be vacated."  (*Id.* at ¶ 331.)

The Warden notes that the Supreme Court of Ohio considered and rejected this claim on its merits (Return of Writ, ECF No. 97, PageID 10859, citing *Davis I*, 2008-Ohio-2, ¶¶ 194-201), and that a sufficiency of the evidence challenge under *Jackson* is subject to double deference—first, to the jury's sufficiency determination, and second, to the appellate court's consideration of that verdict.  (*Id.* at PageID 10859-60, citing *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (*per curiam*).)  The Warden argues that because the Supreme Court of Ohio's rejection of the claim was not objectively unreasonable, this Court may not disturb it.  (*Id.* at PageID 10860-61.)  Further, the Warden notes, this Court is bound by the state court's interpretation of state law on kidnapping.  (*Id.* at PageID 10861-62, citing *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle*, 502 U.S. at 67-68; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).)

In his Traverse, Petitioner argues that he "is entitled to relief under AEDPA's limitations because the state court decision was both based on an unreasonable determination of the facts in the record and represented an unreasonable application of the clearly established law of insufficient evidence." (Traverse, ECF No. 104, PageID 11076.)  He claims that the Supreme Court of Ohio improperly determined Petitioner's purpose to engage in sexual activity through the

following:  (1) the victim's body lying on the floor with her legs spread; (2) the

victim's underwear being torn and cut in the crotch area; and (3) the presumptive

presence of semen from an oral swab of the victim, when in fact the first and third

determinations are belied by the evidence of record. (Traverse, ECF No. 104,

PageID 11076-77, citing *Davis I*, 2008-Ohio-2, ¶ 197.)  Petitioner also takes issue

with the state court's determination that there existed sufficient evidence of

significant movement or restraint, which it determined from:  (1) Petitioner being

allowed in because the victim knew him, then moving the victim to the bedroom and

killing her; (2) the victim's underwear being rolled up in such a way consistent with

assault; and (3) certain injuries of the victim being consistent with a knife being

placed against her throat.  (*Id.* at PageID 11077, citing *Davis I*, 2008-Ohio-2, ¶199.)

He notes that three justices concluded that there was insufficient evidence of

movement or restraint to support the kidnapping charge.  (*Id.* at PageID 11078,

citing *Davis I*, 2008-Ohio-2, ¶¶ 406-07 (Pfeiffer, J., dissenting in part).)  Specifically,

Petitioner claims, there was no evidence of:  (1) Petitioner moving the victim before

killing her; (2) the victim being tied up, by her underwear or anything else, before

she was killed; (3) rape or sexual assault prior to the murder; or (4) the marks on

the victim's neck being made while she was alive.  (*Id.*, citing *Davis I*, 2008-Ohio-2,

¶¶ 407-08.)

     In rejecting the claim, the Supreme Court of Ohio opined:

> {¶ 194} ***Sufficiency of the evidence.*** In proposition of law IX, Davis
> challenges the sufficiency of the evidence to support the kidnapping
> specification, R.C. 2929.04(A)(7), and the underlying kidnapping charge,
> R.C. 2905.01(A)(4).

{¶ 195} In reviewing a claim of insufficient evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.

{¶ 196} Count 3 charged Davis with kidnapping by removing or restraining Sheeler "with purpose to engage in sexual activity." Davis argues that the state introduced insufficient evidence that he had this purpose.

{¶ 197} "R.C. 2905.01(A)(4) requires only that the restraint or removal occur for the purpose of non-consensual sexual activity—*not that sexual activity actually take place.*" (Emphasis added.) *State v. Powell* (1990), 49 Ohio St.3d 255, 262, 552 N.E.2d 191. The state proved Davis's purpose to engage in sexual activity. Sheeler's body was found lying on the bedroom floor with her legs spread. Her panties were torn and cut in the crotch area and rolled up underneath her breasts. Moreover, presumptive testing of an oral swab obtained during the autopsy showed the presence of semen. Thus, this claim lacks merit.

{¶ 198} We further determine that sufficient evidence of movement or restraint was presented to support the kidnapping charge and specification. For a kidnapping conviction to be upheld, "there must be significant restraint or movement, not just that incident to the killing itself." *State v. Cook* (1992), 65 Ohio St.3d 516, 524, 605 N.E.2d 70. See also *State v. Elmore,* 111 Ohio St.3d 515, 2006-Ohio-6207, 857 N.E.2d 547, ¶ 48–49.

{¶ 199} The evidence suggests that Sheeler allowed Davis to enter her apartment because she knew him, and that at some point, she was moved against her will from the front of the apartment to the bedroom, where she was eventually killed. Additionally, the way Sheeler's panties were both torn and cut by a sharp instrument and then rolled up underneath her breasts indicates that she was significantly restrained for some period of time as Davis forcibly assaulted her. Finally, the state presented evidence establishing that certain injuries on Sheeler's neck were consistent with a knife being held against her throat under her chin. As the trial court noted in its sentencing opinion, these wounds showed "[e]vidence of restraint."

{¶ 200} The victim's movement from the living room to the bedroom and her subsequent restraint distinguishes this situation from *State v.*

*Adams,* 103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d 29, ¶ 93, in which we found no evidence that the victim was moved to or from the bedroom where she was killed, and also found no evidence of significant restraint.

*Davis I*, 2008-Ohio-2. In partial dissent, Justice Pfeiffer, joined by Chief Justice

Moyer and Justice Cupp, opined:

> {¶ 406} I dissent only from the portion of the majority opinion regarding the sufficiency of the evidence of kidnapping in this case. In proposition of law IX, Davis challenges the sufficiency of the evidence to support the kidnapping specification, R.C. 2929.04(A)(7), and the underlying kidnapping charge, R.C. 2905.01(A)(4).

> {¶ 407} I would hold that the state failed to present sufficient evidence of the "significant restraint or movement, not just that incident to the killing itself" required to prove kidnapping. *State v. Cook* (1992), 65 Ohio St.3d 516, 524, 605 N.E.2d 70. First, there is insufficient evidence of movement to support kidnapping. The evidence suggests that Davis gained entry into Sheeler's apartment because she knew him. Sheeler's body was found inside her bedroom. However, there is no evidence that Davis moved Sheeler to her bedroom before killing her.

> {¶ 408} Second, there appears to be insufficient evidence of restraint beyond that necessary to kill Sheeler. There is no evidence that Sheeler was tied up before she was killed. Admittedly, the victim's torn panties above her breasts and the presence of semen on the oral swabs suggest that Sheeler was orally raped or sexually assaulted. However, no evidence shows whether Sheeler was orally raped or sexually assaulted before she died.

> {¶ 409} Based on the foregoing, proposition IX has merit. Thus, I would reverse Davis's convictions on the kidnapping charge and the separate kidnapping specification because of insufficient evidence. Reversal of Davis's kidnapping specification does not require that his death sentence be vacated.

*Id*.

Petitioner does not dispute that the Supreme Court of Ohio made findings of fact with respect to the sufficiency of the evidence; nor does he dispute that those findings must be presumed by this Court to be correct—a presumption that may

74

only be rebutted by clear and convincing evidence. (Traverse, ECF No. 104, PageID 11078-79, citing 28 U.S.C. § 2254(d)(2), (e)(1); *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005); *Haliym v. Mitchell*, 492 F.3d 680, 690 (6th Cir. 2007).)  Petitioner claims to have met this burden by showing that the first and third determinations with respect to sufficient movement or restraint were directly contradicted by the record. Specifically, Petitioner argues that "[t]he photographic evidence from the crime scene clearly demonstrates that the state court's determination that the victim's legs were spread was false.  Further, the record demonstrates conclusively that the possibility of the presence of semen suggested by the presumptive test was negated by a later conclusive test."  (*Id*. at PageID 11079.)

Even if the possibility of the presence of semen was negated by that later conclusive test, that negation falls short of clear and convincing evidence in the context of all the evidence considered by the Supreme Court of Ohio.  At least one of the two pictures cited by Petitioner (State Court Record, ECF No. 55, PageID 8659) is sufficiently ambiguous that this Court cannot determine whether the victim's legs were spread apart; thus, this Court must defer to the state court's finding.  Further, while the other picture (*id*. at PageID 8679) does show the victim's legs pressed together, it cannot be said that that position demonstrates clearly and convincingly that there was no sexual purpose, as Petitioner argues (Traverse, ECF No. 104, PageID 11078-79)—indeed, Sheeler's crotch was exposed in the photo.  In light of this ambiguity, the Court must defer to the state court's interpretation of the evidence.  Further, Petitioner does not dispute that the victim's underwear was

torn.  Thus, even if the Court were to disregard the presumptive presence of semen, there exists enough evidence to conclude reasonably that Petitioner intended to engage in sexual activity.

Petitioner's reliance on the dissent in *Davis I* as to a lack of significant movement or restraint ignores the majority's opposite conclusion, stated above. *Davis I*, 2008-Ohio-2, ¶¶ 199-200.  Viewed in the light most favorable to the prosecution, the evidence relied upon by the majority—the victim allowing Davis into her apartment but then ending up in the bedroom on the floor and having been partially undressed with a knife pressed to her neck—is sufficient to show restraint. Thus, the state court's decision upholding his convictions for kidnapping and the kidnapping specification was supported by sufficient evidence, and thus was not an unreasonable determination of the facts within the meaning of 28 U.S.C. § 2254(d)(2).

Alternatively, Petitioner argues that the Supreme Court of Ohio's application of *Jackson* was unreasonable (Traverse, ECF No. 104, PageID 11079, citing *Jackson*, 443 U.S. 307; *Davis I*, 2008-Ohio-2, ¶¶ 195-96.)  This Court disagrees.  The Supreme Court of Ohio's decision, discussed above, set forth evidence which, taken together, proves the elements of the kidnapping charge and specification beyond a reasonable doubt  Aside from the evidentiary issues discussed and resolved above, Petitioner does not explain how the Supreme Court of Ohio's adjudication ran afoul of 28 U.S.C. § 2254(d)(1).  Thus, Claim Eight is dismissed.

### 4.      Claim Nine:  Omitted Jury Instruction

> The Trial Court's Erroneous Jury Instructions During the Trial Phase
> Deprived Davis of a Fair and Reliable Determination of His Guilt or
> Innocence in Violation of the Fifth, Sixth, Eighth and Fourteenth
> Amendments.

(Petition, ECF No. 133, PageID 11719.)

Defense counsel requested an instruction cautioning the jury against drawing

inferences solely from inferences already drawn, *i.e.*, "stacking inferences." (Trial

Tr., ECF No. 52-4, PageID 8016.)  The trial court denied that motion, concluding

that the Ohio Jury Instructions limited such an instruction to civil cases.  (*Id.*)

Petitioner claims that this was an error so serious as to deprive him of due process

and a fair trial:

> There is no rule or caselaw in Ohio prohibiting this instruction from
> being given in a criminal case.  There is no reason for such a prohibition
> to only apply to civil cases.  Given the burden of proof in a criminal case
> this instruction is even more appropriate than in a civil case.

(Petition, ECF No. 133, PageID 11720, ¶ 337.)  Such an instruction was appropriate

and necessary in this case, Petitioner argues, because the only way that he could

have been found guilty of the kidnapping charge and specification was by the jury

stacking inferences:

> First, the jury would have had to infer that the presumptive test was
> correct and actually indicated semen, then it must have inferred that it
> was Davis' semen, for which no evidence was presented.  Finally, the
> jury must have inferred that the presumed presence of semen from the
> oral swab was from unwanted sexual activity that occurred during the
> restraint.

(*Id.* at PageID 11720, ¶ 339.)

The Warden rejoins that this is not a federal constitutional claim, but rather

a non-cognizable state law claim. (Return of Writ, ECF No. 97, PageID 10862.)  The Warden further argues that, even if it were a constitutional claim, the state court reasonably rejected the claim on its merits.  (*Id.*)  "The question on habeas review is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'"  (Return of Writ, ECF No. 97, PageID 10863, quoting *Estelle*, 502 U.S. at 72.)  That burden is greater than showing plain error on direct appeal, and is greater still, the Warden argues, because a failure to give an instruction is less likely to be seen as erroneous than an improperly given instruction.  (*Id.*, citing *Henderson v. Kibbe*, 431 U.S. 145, 154, 155 (1977).)  The Warden claims that Petitioner has not attempted to meet this burden; rather, "[h]e basically is asking this Court to substitute its judgment on a state law issue for that of the Ohio courts.  This is not the purpose of federal habeas review."  (*Id.* at PageID 10864, citing *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011).)

Petitioner argues that despite raising the claim as a federal constitutional one, the Supreme Court of Ohio considered it only as a matter of state law. "Although the Supreme Court of Ohio is presumed to have adjudicated Davis' federal claim on the merits even though it did not specifically address it, the presumption is rebuttable."  Petitioner claims that the presumption should be rebutted here, and *de novo* review be conducted, because there is no indication that the Supreme Court of Ohio adjudicated the claim at all. (Traverse, ECF No. 104, PageID 11085, citing *Johnson v. Williams*, 568 U.S. 289, 301-03 (2013); *Davis I*, 2008-Ohio-2, ¶¶ 177-93; *State v. Palmer*, 80 Ohio St. 3d 543 (1997); State Court

Record, ECF No. 51-3, PageID 1771.)  Moreover, even if there was an adjudication, Petitioner argues that it was objectively unreasonable:  "The jury instruction that was given at trial was confusing, and it failed to ensure that the jury would apply the reasonable doubt standard correctly."  (*Id.* at PageID 11086, citing *Williams (Terry)*, 529 U.S. at 409-10 (2000); *Davis I*, 2008-Ohio-2, ¶¶ 177-81.)

In *Davis I*, the Supreme Court of Ohio held:

{¶ 177} ***Instructions.*** In proposition of law VIII, Davis argues that he was deprived of a fair trial because of erroneous jury instructions. However, except where noted, trial counsel failed to object and waived all but plain error.  *State v. Underwood* (1983), 3 Ohio St.3d 12, 13–14, 3 OBR 360, 444 N.E.2d 1332.  Additionally, Davis argues that counsel's failure to object constituted ineffective assistance of counsel.

{¶ 178} First, Davis argues that the trial court erred by failing to give an instruction prohibiting the jury from stacking inferences, i.e., drawing one inference from another.  The trial court refused to give this proposed instruction, but did instruct the jury:

{¶ 179} "Circumstantial evidence is the proof of facts or circumstances by direct evidence from which you may reasonably infer other related or connected facts which naturally and logically follow according to the common experience of mankind.

{¶ 180} " * * *

{¶ 181} "To infer or to make an inference is to reach a reasonable conclusion or deduction of fact which you may, but are not required to, make from other facts which you find have been established by direct evidence.  Whether an inference is made rests entirely with you."

{¶ 182} In *State v. Palmer* (1997), 80 Ohio St.3d 543, 561, 687 N.E.2d 685, we held that an instruction on stacking inferences was unnecessary when the trial court had given an instruction on inferences similar to the one given in this case.  Thus, the trial court did not err by failing to give the requested instruction.

{¶ 183} Second, Davis argues that the following instructions on Count 1 deprived him of a unanimous verdict:

{¶ 184} "While committing or attempting to commit, or while fleeing

immediately after committing or attempting to commit means that the death must occur as part of acts leading up to, or occurring during or immediately after the commission of kidnapping, *or* aggravated robbery, *or* aggravated burglary, and that the death was directly associated with the commission * * * of kidnapping, *or* aggravated robbery, *or* aggravated burglary.

{¶ 185} " * * *

{¶ 186} "Before you can find the Defendant guilty of aggravated murder as alleged in Count 1 of the indictment, the State must also prove beyond a reasonable doubt that the Defendant committed or attempted to commit kidnapping, aggravated robbery *or* aggravated burglary." (Emphasis added.)

{¶ 187} Davis argues that the instruction deprived him of his right to a unanimous jury verdict because some of the jurors may have convicted him of aggravated murder based on the underlying offense of kidnapping and others on the basis of aggravated robbery or aggravated burglary. However, the trial court's instructions did not result in error, plain or otherwise.

{¶ 188} Jurors need not agree on a single means for committing an offense. The United States Supreme Court has stated, "'[D]ifferent jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict.'" *Schad v. Arizona* (1991), 501 U.S. 624, 631–632, 111 S.Ct. 2491, 115 L.Ed.2d 555, quoting *McKoy v. North Carolina* (1990), 494 U.S. 433, 449, 110 S.Ct. 1227, 108 L.Ed.2d 369 (Blackmun, J., concurring); see *State v. McKnight,* 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 226–228 (applying *Schad* rationale in rejecting unanimity claims).

{¶ 189} Davis invokes *Apprendi v. New Jersey* (2000), 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435, and *Ring v. Arizona* (2002), 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556, in arguing that the Sixth Amendment requires any finding of fact that makes a defendant eligible for the death penalty to be unanimously made by a jury. In *Apprendi,* the Supreme Court held that the Sixth Amendment does not permit a defendant to be "expose[d] * * * to a penalty *exceeding* the maximum he would receive if punished according to the facts reflected in the jury verdict alone." (Emphasis sic.) Id., 530 U.S. at 483, 120 S.Ct. 2348, 147 L.Ed.2d 435. In *Ring,* a capital case, the Supreme Court held that a trial judge may not make findings of fact on an aggravating circumstance necessary to

80

impose the death penalty, as these findings are within the province of the jury. Id., 536 U.S. at 609, 122 S.Ct. 2428, 153 L.Ed.2d 556. Davis's reliance on *Apprendi* and *Ring* is misplaced because the jury's verdict, and not the judge's findings, made Davis eligible for the death penalty. Thus, this argument lacks merit.

{¶ 190} Third, Davis claims that the trial court's instructions erroneously defined reasonable doubt. However, these instructions conformed to R.C. 2901.05(D), whose constitutionality we have repeatedly affirmed. *State v. Hancock,* 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 76; *State v. Stallings* (2000), 89 Ohio St.3d 280, 293–294, 731 N.E.2d 159. No plain error was committed.

{¶ 191} Fourth, Davis contends that the trial court's instructions on "purpose" improperly made Davis responsible for any foreseeable result that flowed from his unlawful acts, relieved the state of its burden of proof on the mens rea element of aggravated murder, and created a mandatory, rebuttable presumption of the mens rea element from the mere use of a deadly weapon. The giving of this instruction was not error. The instruction does not contain the foreseeability language claimed by Davis. Cf. *State v. Burchfield* (1993), 66 Ohio St.3d 261, 263, 611 N.E.2d 819; *State v. Goodwin* (1999), 84 Ohio St.3d 331, 346, 703 N.E.2d 1251. As to his remaining claims attacking the "purpose" instruction, we have previously rejected these claims. See *State v. Taylor,* 98 Ohio St.3d 27, 2002-Ohio-7017, 781 N.E.2d 72, ¶ 71–75; *State v. Loza* (1994), 71 Ohio St.3d 61, 80–81, 641 N.E.2d 1082.

{¶ 192} Finally, we overrule Davis's ineffectiveness claims. The jury was properly instructed on the elements of the offense under Count 1, reasonable doubt, and purpose. Thus, counsel were not deficient by failing to object to these instructions. See *Campbell*, 69 Ohio St.3d at 49, 630 N.E.2d 339.

*Davis I*, 2008-Ohio-2.

From its mention of Petitioner's fair trial claim, *Davis I*, 2008-Ohio-2, ¶ 177, to its repeated consideration of Supreme Court precedent, *id*. at ¶¶ 188-89, the Supreme Court of Ohio clearly evaluated and rejected Petitioner's federal constitutional claim. Thus, this Court's review is sharply circumscribed. 28 U.S.C. § 2254(d)(1). Petitioner cites to no clearly established law that failure to instruct

against stacking inferences deprives a defendant of a fair trial, even if, as Petitioner claims, drawing inferences was essential to finding him guilty. Petitioner's statement that the instructions caused the jury to fail to apply the reasonable doubt standard correctly is speculative, and as the Supreme Court of Ohio pointed out, the trial court properly instructed on circumstantial evidence and inferences. *Davis I*, 2008-Ohio-2, ¶¶ 179, 181. Because the Supreme Court of Ohio's decision was not an unreasonable application of clearly established federal law, it may not be disturbed, and Claim Nine must be dismissed.

### 5. Claim Ten: Gruesome and Cumulative Photos Deprived Petitioner of Due Process, Fair Trial, and Fair and Reliable Sentencing

> The Cumulative and Gruesome Photographs Admitted at the Trial and Penalty Phases Deprived Roland Davis of Due Process, a Fair Trial, and a Fair and Reliable Sentencing Determination in Violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments.

(Petition, ECF No. 133, PageID 11731.)

Petitioner argues that "[t]he constitutional standard for determining whether gruesome photographic evidence is admissible in a capital case is stricter than the standard used in noncapital cases." (Petition, ECF No. 133, PageID 11731, ¶ 370.) Petitioner's counsel filed a motion *in limine* to limit the number of photographs and objected at trial, but numerous, allegedly gruesome, photographs were introduced over counsel's objections. (*Id.* at PageID 11732-34 (citations omitted); Traverse, ECF No. 104, PageID 11087, citing State Court Record, ECF No. 51-1, PageID 992-97; Trial Tr., ECF No. 52-3, PageID 7018, 7024, 7191-92, ECF No. 52-4, PageID 7988-90, ECF No. 52-5, PageID 8407-08.) Petitioner argues that "[w]hatever

82

marginal probative value these photographs may have had was offset by the prejudicial impact they undoubtedly had on the jurors and Davis' right to a fair trial." (Petition, ECF No. 133, PageID 11736, ¶ 378.)

The Warden argues that the claim is meritless, asserting that Petitioner has raised a question of state evidentiary, not federal constitutional, law, which is not cognizable in habeas. (Return of Writ, ECF No. 97, PageID 10868, citing *Franklin v. Bradshaw*, 695 F.3d 439, 456 (6th Cir. 2012); *Cooey v. Coyle*, 289 F.3d 882, 893-94 (6th Cir. 2002); *Gerlaugh v. Stewart*, 129 F.3d 1027, 1032 (9th Cir. 1997).) According to the Warden, the only way the claim is cognizable is if the admissions were so pernicious as to deprive Petitioner of a fair trial. (*Id.* at PageID 10868-69, citing *Franklin*, 695 F.3d at 456.) This is not the case here, the Warden argues:

> The Ohio Supreme Court reviewed the action taken by the trial court and reasonably found the crime scene and autopsy photographs used during the guilt phase, although gruesome, were limited in number, noncumulative, and had substantial probative value of Davis' intent to murder Ms. Sheeler as well as the manner and circumstances of her death.

(*Id.* at PageID 10869, citing *Davis I*, 2008-Ohio-2, ¶¶ 100-15.)

In the Traverse, Petitioner argues that the photographs were so gruesome and repetitive that the jury could not judge the balance of the evidence fairly. (Traverse, ECF No. 104, PageID 11092, citing *Romano v. Oklahoma*, 512 U.S. 1, 12 (1994); *Spears v. Mullin*, 343 F.3d 1215, 1226 (10th Cir. 2003).) "[W]hile the autopsy photographs were not readmitted at the penalty phase, it is wholly unrealistic to believe that the jurors could have simply disregarded them in determining Davis' sentence." (*Id.* at PageID 11093, citing *Spears*, 343 F.3d at

83

1226.)  "While the showing required to obtain relief based on the introduction of

gruesome photographs is undoubtedly a 'high standard,' Davis satisfies it and his

claim is cognizable."  (*Id*. at PageID 11094, quoting *Franklin*, 695 F.3d at 457.)

Further, Petitioner argues that the Supreme Court of Ohio only examined the state

law claim, meaning that *de novo* review is appropriate.  (Traverse, ECF No. 104,

PageID 11094-95, citing *Davis I*, 2008-Ohio-2, ¶¶ 100-15; State Court Record, ECF

No. 51-3, PageID 1736-37, 1742.)

In rejecting the claim, the Supreme Court of Ohio held:

{¶ 100} ***Gruesome photographs***. In proposition of law IV, Davis argues that the trial court erred in admitting gruesome autopsy and crime-scene photographs during both phases of the trial.

{¶ 101} In capital cases, nonrepetitive photographs, even if gruesome, are admissible as long as the probative value of each photograph outweighs the danger of material prejudice to the accused.  *State v. Morales* (1987), 32 Ohio St.3d 252, 257, 513 N.E.2d 267; *State v. Maurer* (1984), 15 Ohio St.3d 239, 15 OBR 379, 473 N.E.2d 768, paragraph seven of the syllabus.  Decisions on the admissibility of photographs are "left to the sound discretion of the trial court."  *State v. Slagle* (1992), 65 Ohio St.3d 597, 601, 605 N.E.2d 916.

{¶ 102}  **1. Crime-scene photographs**. Davis complains about five gruesome crime-scene photographs that the defense objected to at trial. Davis claims that the photographs were cumulative and introduced to inflame the jury.

{¶ 103} State's exhibit 4–X shows Sheeler's body as she was found on the bedroom floor after the sheets and bedspread were removed from her body.  State's exhibit 4–X was relevant in showing the position of Sheeler's body at the crime scene.  See *State v. Gapen,* 104 Ohio St.3d 358, 2004-Ohio-6548, 819 N.E.2d 1047, ¶ 85.

{¶ 104} State's exhibit 4–V shows that Sheeler's panties had been removed.  This photo supported the state's theory that Davis kidnapped Sheeler for the purpose of engaging in sexual activity.

{¶ 105} State's exhibit 4–Y is a photograph of Sheeler's upper chest area

showing numerous sharp instrument wounds on her neck and chest area. This photograph also shows a blood trail leading from the victim's head and running down her chest. State's exhibit 4–Y supported Detective Elliget's testimony that the blood trail showed that Sheeler was standing when she was attacked and then later ended up on her back.

{¶ 106} State's exhibit 4–N shows bloodstained bedding covering the victim's foot and hand. State's exhibit 4–O is a distant shot taken across the bedroom showing some bloodstained bedding. State's exhibits 4–N and 4–O are not gruesome photographs but show that Sheeler's bedroom had been ransacked after she was killed.

{¶ 107} We hold that the trial court did not abuse its discretion in admitting these few selected photographs. State's exhibits 4–V, 4–X, and 4–Y, although gruesome, were probative of Davis's intent and the manner and circumstances of Sheeler's death. See *State v. Craig,* 110 Ohio St.3d 306, 2006-Ohio-4571, 853 N.E.2d 621, ¶ 92.

{¶ 108} **2. Autopsy photographs**. Davis argues that the trial court erred in admitting 12 autopsy photographs that the defense objected to at trial. State's exhibit 7–B depicts Sheeler's body prior to the autopsy and shows extensive wounds to her head and face. State's exhibits 7–E and 7–F are photographs showing that Sheeler received blunt-force injuries to her face and a sharp-injury wound to the left side of her neck. These photographs illustrated Dr. Fardal's testimony and provided an overall perspective of the victim's wounds.

{¶ 109} State's exhibit 7–C depicts marbling and skin slippage on Sheeler's face. This photograph supported Dr. Fardal's conclusion that Sheeler was killed two to three days before the autopsy was conducted. State's exhibit 7–D shows Sheeler's bruised lips, bruised and lacerated tongue, and toothlessness. This photograph supported Dr. Fardal's testimony that Sheeler could have lost her dentures as a result of her attack.

{¶ 110} State's exhibits 7–G and 7–J focus on different sharp-injury wounds on Sheeler's neck. Dr. Fardal testified that these wounds are consistent with a knife being held underneath Sheeler's chin. State's exhibits 7–H and 7–I depict different sharp-injury wounds to Sheeler's upper trunk. Each photograph has a ruler showing the length of the separate injuries. These exhibits supported Dr. Fardal's conclusion that a single-edged knife caused these wounds.

{¶ 111} State's exhibit 7–L shows a hemorrhage in the temporalis muscle

and an injury in the frontal scalp area caused by two points of impact. State's exhibit 7–M shows a hemorrhage to the back part of her head caused by a separate impact.  Using these photographs, Dr. Fardal testified that Sheeler did not suffer a fatal brain injury but may have received a concussion resulting in a loss of consciousness.

{¶ 112} Finally, state's exhibit 7–K depicts the victim's trachea and esophagus and shows that blood was aspirated into her trachea.  This photograph supported Elliget's testimony that blood spatter on the bedroom wall shows that Sheeler was standing when hit in the head.

{¶ 113} We hold that the trial court did not abuse its discretion in admitting the autopsy photographs.  The autopsy photographs were limited in number, noncumulative, and had substantial probative value. Each of these photographs supported Dr. Fardal's testimony and demonstrated Davis's intent to murder Sheeler.  See *Gapen,* 104 Ohio St.3d 358, 2004-Ohio-6548, 819 N.E.2d 1047, ¶ 90.

{¶ 114} **3. Gruesome photographs during the penalty phase**. During the penalty phase, no autopsy photographs were admitted into evidence.  The trial court admitted, over defense objection, state's exhibits 4–V, 4–X, and 4–Y.  However, a trial court may properly allow repetition of much or all that occurred in the guilt phase, pursuant to R.C. 2929.03(D)(1).  *State v. DePew* (1988), 38 Ohio St.3d 275, 282–283, 528 N.E.2d 542.  The trial court did not abuse its discretion by admitting these photographs.  The trial court also committed no plain error in admitting, without objection, two nongruesome photographs, state's exhibits 4–N and 4–O.

*Davis I*, 2008-Ohio-2.

As Petitioner concedes, even in the absence of an explicit evaluation of a federal constitutional claim, this Court must presume that the claim was adjudicated. (Traverse, ECF No. 104, PageID 11095, citing *Williams*, 568 U.S. at 300-01.)  Petitioner argues that this presumption should be rebutted, as "there is no indication that the Supreme Court of Ohio gave any consideration at all to the federal aspect of Davis' claim." (*Id*.)  The Court disagrees.  In the above-cited decision, the state court made specific factual findings which, taken together, reveal

86

the court's conclusion that the admission of the photographs did not create an unfair trial or violate constitutional due process.  Thus, the state court decision is one to which deference is required under AEDPA.

However, even under a *de novo* standard, the claim is unavailing.  As stated above, the standard is whether the introduction was so prejudicial as to infect the entire trial and render conviction and sentencing a denial of due process.  *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974); *Franklin*, 695 F.3d at 456-57; *Kelly v. Withrow,* 25 F.3d 363, 370 (6th Cir. 1994).  In the cases cited by Petitioner (Traverse, ECF No. 104, PageID 11092), the Tenth Circuit set forth the governing law in that Circuit for the evaluation of photographs in habeas:  "When, as here, habeas petitioners challenge the admission of photographic evidence as violative of the Constitution, this court considers 'whether the admission of evidence . . . so infected the sentencing proceeding with unfairness as to render the jury's imposition of the death penalty a denial of due process.'"  *Spears v. Mullin*, 343 F.3d 1215, 1226 (10th Cir. 2003), quoting *Romano*, 512 U.S. at 12; *see also Willingham v. Mullin*, 296 F.3d 917, 928 (10th Cir. 2002) (photographs must have been "so grossly prejudicial that [their introduction] fatally infected the trial and denied the fundamental fairness that is the essence of due process.").  The court must "consider whether the jury could judge the evidence fairly in light of the admission of the photographs."  *Spears*, 343 F.3d at 1226.

Petitioner claims that "[w]hatever marginal probative value these photographs may have had was offset by the prejudicial impact they undoubtedly

87

had on the jurors and Davis' right to a fair trial." (Petition, ECF No. 133, PageID 11736, ¶ 378.) This Court agrees with the Supreme Court of Ohio's conclusions, discussed above, that every one of the photos had independent, significant probative value. Even if some of the photographs were, as Petitioner argues, different angles of the same basic image, the mere introduction of repetitive images does not, by itself, give rise to a constitutional violation. Further, as the Supreme Court of Ohio discussed, the different angles were probative of different portions of the prosecution's case. Thus, they were not cumulative. Finally, the pictures were not so numerous such that their prejudice more than offset their highly probative nature. Accordingly, Claim Ten is meritless and is dismissed.

### C.    Penalty Phase Grounds for Relief

#### 1.    Claim Thirteen:  Improper Reference to Victim's Age

Roland Davis was Convicted and Sentenced To Death In A Trial Conducted in an Emotional Atmosphere Where the Prosecutor Exploited the Emotional Impact of Evidence About the Victim in Violation of the Fifth, Sixth, Eighth And Fourteenth Amendments.

(Petition, ECF No. 133, PageID 11751.)

As discussed above, the entire claim except for the reference to Sheeler's age in the penalty-phase closing argument has been procedurally defaulted. During closing argument of the penalty phase, the prosecutor mentioned that the victim was 86 years old at the time of her murder. (Traverse, ECF No. 104, PageID 11099-11100.) Petitioner argues that the mention of Sheeler's age was unduly prejudicial, as it had no probative value and served only to inflame the passions of the jury. (*Id.* at PageID 11100-01.) "This emphasis on the victim's age resulted in a death

sentence obtained in violation of the Fifth, Sixth, Eighth and Fourteenth
Amendments." (*Id.* at PageID 11101, 11102, citing *Payne v. Tennessee*, 501 U.S.
808, 825 (1991).) Specifically, Petitioner claims that the jury improperly considered
Sheeler's age as a non-enumerated aggravating factor:

> The indictment did not include a specification of an aggravating
> circumstance addressing the advanced age of the victim, and the jury
> did not find such a statutory aggravating circumstance proven beyond a
> reasonable doubt at the trial phase. Nevertheless, the prosecutor during
> penalty phase closing argument argued this factor as a non-statutory
> aggravating circumstance[.]

(*Id.* at PageID 11103.) Under Ohio law, aggravating circumstances may only be
considered if they are statutorily prescribed and proven beyond a reasonable doubt.
(Traverse, ECF No. 104, PageID 11102, citing Ohio Rev. Code §§ 2929.03(D),
2929.04(A); *State v. Wogenstahl*, 75 Ohio St. 3d 344, paragraph one of the syllabus
(1996); *State v. Johnson*, 24 Ohio St. 3d 87, syllabus (1986).) As the jury relied on
an improper aggravating circumstance, Petitioner argues, his death sentence is
invalid. Petitioner further argues that the AEDPA is not a bar to granting relief
"because there was no adjudication on the merits of Davis [*sic*] federal
constitutional claim. The Supreme Court of Ohio resolved this claim solely on the
Ohio Rules of Evidence and its own state law precedent without mentioning due
process or a fair trial or the Federal Constitution." (Traverse, ECF No. 104, PageID
11103, citing *Davis I*, 2008-Ohio-2, ¶ 227.)

   The Warden notes that the Petitioner raised this as his twelfth proposition of
law on direct appeal and that the Supreme Court of Ohio ruled that Petitioner was
not prejudiced by mention of the victim's age (Return of Writ, ECF No. 97, PageID

89

10872, citing *Davis I*, 2008-Ohio-2, ¶ 227.)  The Warden argues that this was the

correct decision, as the misconduct, if any, was not so egregious and flagrant as to

infect the entire trial with unfairness.  (*Id.*, citing *Darden v. Wainwright*, 477 U.S.

168, 181 (1986); *Goff v. Bagley*, 601 F.3d 445, 480 (6th Cir. 2010).)

> The jury was already aware of Ms. Sheeler's age, and overwhelming
> evidence was properly admitted during the penalty phase to support the
> sentence of death.  Therefore, there was nothing unreasonable in the
> Ohio Supreme Court's decision that, while the prosecutor did not need
> to mention the victim's age in making the argument that there was no
> connection between his abusive childhood and the murder which
> occurred 30 years later, doing so did not prejudice Davis.

(*Id.* at PageID 10873.)

> In rejecting the claim, the Supreme Court of Ohio held:

> {¶ 227} During the penalty-phase closing argument, the prosecutor
> noted Sheeler's age in arguing that there was nothing mitigating in the
> nature and circumstances of the offense.  This was a valid argument.
> See *State v. Bryan*, 101 Ohio St.3d 272, 2004-Ohio-971, 804 N.E.2d 433,
> ¶ 179.  Over defense objection, the prosecutor also discussed Sheeler's
> age in arguing that there was no connection between Davis's abusive
> childhood and his murder of an 86–year–old woman 30 years later.  The
> prosecutor did not need to mention the victim's age in making this
> argument.  However, Davis suffered no prejudice from the mention of
> Sheeler's age.

*Davis I*, 2008-Ohio-2.  The state court decision appears to rest solely on state law.

Thus, the presumption of adjudication could reasonably be rebutted.

However, even if the AEDPA does not circumscribe this Court's review of this

claim, the claim still fails.  The prosecutor mentioned Sheeler's age six times in the

context of the actual, statutorily prescribed aggravating circumstances (Trial Tr.,

ECF No. 52-5, PageID 8436-47, 8491.)  While mentioning Sheeler's age may not

have been necessary to prove the aggravating circumstances, it was not a

90

predominant focus of the prosecutor's closing argument, such that the jury would have focused on it at the expense of the proper aggravating circumstances and mitigating factors. Petitioner offers no evidence that any juror was improperly swayed by the victim's age. As there was no apparent prejudice resulting from any impropriety, Petitioner was not denied due process or a fair trial. Claim Thirteen is dismissed.

### 2. Claim Fourteen: Failure to Merge Kidnapping and Aggravated Robbery Aggravating Circumstances

The Failure to Merge the Kidnapping and Aggravated Robbery Specifications of Statutory Aggravating Circumstances Resulted in the Jury Weighing Duplicative and Cumulative Aggravating Circumstances Thereby Denying Davis Due Process and a Fair and Reliable Sentencing Phase as Guaranteed By The Fifth, Sixth, Eighth and Fourteenth Amendments.

(Petition, ECF No. 133, PageID 11754.)

"Roland Davis was charged with four statutory aggravating circumstances pursuant to Ohio Rev. Code § 2929.04(A):

1) escaping detection, apprehension, trial, or punishment for one or more of the offenses of a) kidnapping; b) aggravated robbery; c) aggravated burglary d) felonious assault; e) theft; in violation of R.C. 2929.04(A)(3);

2) committing or attempting to commit, or fleeing immediately after committing or attempting to commit kidnapping and being the principal offender in the commission of the aggravated murder in violation of R.C. 2929.04(A)(7);

3) committing or attempting to commit, or fleeing immediately after committing or attempting to commit aggravated robbery and being the principal offender in the commission of the aggravated murder in violation of R.C. 2929.04(A)(7);

4) committing or attempting to commit, or fleeing immediately after committing or attempting to commit aggravated burglary and being the principal offender in the commission of the aggravated murder in

91

violation of R.C. 2929.04(A)(7)." (Petition, ECF No. 133, PageID 11754, ¶ 424.)  He was found guilty of all four.  (*Id.* at ¶ 425.)  "Prior to the beginning of the penalty phase, counsel requested merger of the four statutory aggravating circumstances. . . . However, the state argued that the second specification should not merge and the trial court refused to merge the kidnapping specification with the aggravated robbery specification."  (*Id.* at PageID 11754-55, citing Trial Tr., ECF No. 52-5, PageID 8208, 8210.)

Petitioner argues that the second and third specifications were duplicative and cumulative; consequently, the court "artificially inflate[d] the weight and number of the aggravating circumstances which the sentencer must weigh." (Petition, ECF No. 133, PageID 11755, ¶ 426.)  "Here the state established no separate animus for the kidnapping or the aggravated robbery. This was all one indivisible course of conduct that resulted in the death of the victim."  (Petition, ECF No. 133, PageID 11755, ¶ 427.)  Petitioner reasons that the trial court's "failure to merge those duplicative specifications prior to the penalty phase permitted the state to cumulate them in a manner that made it impossible for the jury to fairly balance the aggravating circumstances and mitigating factors. As such Davis' death sentences lack the reliability required in a capital case[.]"  (*Id.* at PageID 11756, ¶ 428.)  Specifically, the court and State "forc[ed] the jury to consider duplicative statutory aggravating circumstances in a manner that made it impossible for the jury to fairly balance the aggravating circumstances against the mitigating factors."  (Traverse, ECF No. 104, PageID 11108.)

The Warden counters that, for two reasons, Petitioner's claim must fail.

*First*, it is non-cognizable in habeas.  "Davis' claim is entirely a state law issue, as evidenced by the fact that he cites to no federal cases supporting his allegations; Davis only makes a conclusory assertion that the failure to merge the aggravating circumstances violated his constitutional rights."  (Return of Writ, ECF No. 97, PageID 10874.)  *Second*, the Supreme Court of Ohio considered and rejected this claim in the tenth proposition of law on direct appeal.  (*Id.* at PageID 10874-75, quoting *Davis I*, 2008-Ohio-2, ¶¶ 202-06.)  The Warden argues that this decision was not an unreasonable application of clearly established federal law:  "There is no clearly established federal law which mandates merger of allegedly duplicative specifications."  (*Id.* at PageID 10875, citing *Jones v. United States*, 527 U.S. 373, 398 (1999).)

Petitioner argues that he did raise the claim as both a state law and federal constitutional claim, but that the Supreme Court of Ohio only analyzed it as a state law claim. (Traverse, ECF No. 104, PageID 11109, citing *Davis I*, 2008-Ohio-2, ¶¶ 202-06.)  He further claims that he "has explained why the cumulation of duplicative statutory aggravating circumstances arising out of one course of conduct upsets the critical weighing process the jury must perform to authorize a sentence of death under Ohio law and the Federal Constitution."  (*Id.* at PageID 11110, citing *Hurst v. Florida*, 577 U.S. 92, 102 (2016).)

The state court adjudicated the claim as follows:

{¶ 202} ***Merger.*** In proposition of law X, Davis contends that the kidnapping specification should have been merged with the aggravated-robbery specification.

{¶ 203} Before the penalty phase, trial counsel requested merger of

Specification 1 (escaping detection) and Specification 2 (kidnapping) with Specification 3 (aggravated robbery) and Specification 4 (aggravated burglary). The trial court merged the escaping-detection specification with the three other specifications. The trial court declined to merge the kidnapping offense because the "kidnapping charge contained a separate animus or intent than that of the aggravated robbery or aggravated burglary."

{¶ 204} This court has held that a kidnapping is implicit within every aggravated robbery. *State v. Jenkins* (1984), 15 Ohio St.3d 164, 198, 15 OBR 311, 473 N.E.2d 264, fn. 29. Hence, the kidnapping and aggravated-robbery specifications must merge unless a separate animus exists as to each specification. *State v. Fears* (1999), 86 Ohio St.3d 329, 343–344, 715 N.E.2d 136.

{¶ 205} Davis invokes *State v. Logan* (1979), 60 Ohio St.2d 126, 14 O.O.3d 373, 397 N.E.2d 1345, in arguing that there was no separate animus for the kidnapping and aggravated-robbery specifications. *Logan* established guidelines to determine whether kidnapping and another offense are committed with a separate animus to permit separate punishment under R.C. 2941.25(B). Id. at syllabus. The test to determine whether the kidnapping was committed with a separate animus is whether the "restraint or movement of the victim is merely incidental to a separate underlying crime" or whether instead, it has a "significance independent of the other offense." Id.

{¶ 206} Davis was charged with and convicted of kidnapping Sheeler for the purpose of engaging in sexual activity. The facts indicate that Davis had an animus to sexually assault or rape Sheeler that was separate from his animus to commit aggravated robbery, a theft-related offense. Thus, we reject Davis's argument that *Logan* requires merger of the kidnapping and aggravated-robbery specifications. Accordingly, proposition X lacks merit.

*Davis I*, 2008-Ohio-2.

Even assuming that the federal constitutional claim was fairly presented to but ignored by the state court, it is still meritless. As with so many other claims in this Petition, the gravamen is an alleged violation of state law. The only way such a claim is cognizable in habeas is if the violation of law was so egregious as to deny Petitioner a fair trial or due process. Petitioner has not met that standard here.

94

There is no federal constitutional right to have certain specifications merged, and the cases cited by Petitioner (Traverse, ECF No. 104, PageID 11109-10), have nothing to do with the issue at hand.  *Hurst* dealt with whether "a sentencing judge [may] find an aggravating circumstance, independent of a jury's factfinding, that is necessary for imposition of the death penalty."  577 U.S. at 102.  There is nothing in the record suggesting that the trial judge engaged in such independent analysis.  *Brown v. Sanders* dealt with whether "the invalid sentencing factor allowed the sentencer to consider evidence that would not otherwise have been before it[.]"  546 U.S. 212, 220-21 (2006).  There is no indication that the failure to merge the specifications caused any evidence to be improperly considered by Petitioner's jury.  Finally, *Stringer v. Black* concerned an aggravating circumstance that was not defined for the jury.  503 U.S. 222, 226 (1992).  Petitioner does not argue that any aggravating circumstance was inadequately defined.  Because Petitioner has failed to set forth a viable constitutional claim, Claim Fourteen is dismissed.

### 3. Claims Sixteen and Seventeen:  Prosecutorial Misconduct and *Brady*

**Claim Sixteen:**  The Prosecutor Violated Davis' Rights Under the Fifth, Sixth, Eighth and Fourteenth Amendments by Failing to Meet His Obligation to Seek Justice and to Refrain from Unfairly Seeking a Conviction or Sentence of Death Based on Improper Evidence, Improper Argument and Other Misconduct.

(Petition, ECF No. 133, PageID 11768.)

**Claim Seventeen:**  Davis was Denied his Right to Due Process and to a Fair Trial When the State Failed to Disclose Material, Favorable Evidence.

(*Id.* at PageID 11796.)

95

As stated above, all but paragraphs 465, 474, 524 through 529, and the last sentence in paragraph 473 from Claim Sixteen have been procedurally defaulted. In Claim Seventeen, paragraphs 541 through 545 have been procedurally defaulted (Opinion and Order, ECF No. 94, PageID 10729-39.)

### a.     Prosecutorial Misconduct

Petitioner argues that the prosecutor improperly vouched for the State's witnesses' credibility (Petition, ECF No. 133, PageID 11769, ¶ 465), planted an improper inference as to Petitioner not presenting his own DNA expert (*id.* at PageID 11773-74, ¶¶ 473-74), and improperly withheld exculpatory material in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  (*Id.* at PageID 11792-94, ¶¶ 524-29.)  He claims that:

> The prosecuting attorney crossed far over the line of permissible conduct with arguments and [used] tactics long condemned for their capacity to mislead and unfairly prejudice the jury.  The misconduct was so pronounced and persistent that it can only be understood as deliberate and calculated to unfairly influence the jury.

(Traverse, ECF No. 104, PageID 11112.)

The Warden responds by stating the high standard the Petitioner must meet: "In habeas corpus, a claim that prosecutorial misconduct at trial violated the Due Process Clause requires a petitioner to prove the prosecutor's alleged misconduct was so egregious that the petitioner was deprived of fundamental due process." (Return of Writ, ECF No. 97, PageID 10876, citing *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Donnelly*, 416 U.S. at 643.)  "A prosecutor's improper comments will be held to violate due process only if they so infected the trial with unfairness as to make the resulting conviction fundamentally unfair."  (*Id.* at PageID 10876-77,

citing *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (*per curiam*).) The test for prosecutorial misconduct is highly generalized, and the more general the issue, the greater leeway state courts have in making case-by-case determinations. (*Id.* at PageID 10877, citing *Renico v. Lett*, 559 U.S. 766, 776 (2010).)

"In paragraph 465, Davis argues his constitutional rights were violated because the prosecutor expressed his opinions about the credibility of experts [Susan] Fowls and [Tarianne] Pax[s]on who testified in Davis' trial. Davis raised the allegations in paragraph 465 in his direct appeal as part of his twelfth proposition of law." (Return of Writ, ECF No. 97, PageID 10879, citing *Davis I*, 2008-Ohio-2, ¶¶ 232-35.)

The Supreme Court addressed the claim as follows:

{¶ 232} **1. Vouching.** Davis argues that the prosecutor improperly vouched for several of the state's witnesses. An attorney may not express a personal belief or opinion as to the credibility of a witness. *State v. Williams* (1997), 79 Ohio St.3d 1, 12, 679 N.E.2d 646. Vouching occurs when the prosecutor implies knowledge of facts outside the record or places his or her personal credibility in issue. See *State v. Jackson,* 107 Ohio St.3d 53, 2005-Ohio-5981, 836 N.E.2d 1173, ¶ 117.

{¶ 233} First, Davis claims that the prosecutor improperly vouched for the credibility of Tarianne Paxson and Susan Fowls. During closing argument, defense counsel questioned the truthfulness of Paxson's and Fowls's testimony. During rebuttal, the prosecutor argued: "These folks are not the type of people that would come in here and identify somebody in this kind of case unless they were absolutely, positively certain."

{¶ 234} Trial counsel objected to this argument as vouching, and the trial court sustained the objection. Without further objection, the prosecutor argued: "Do these people appear to you to be people that would come in here and identify the person as a murderer unless they were certain? You answer that."

{¶ 235} In rephrasing his comments, the prosecutor did not express an opinion about the witnesses' credibility because he asked the jurors to

97

decide for themselves whether these witnesses were being truthful. *State v. Gapen,* 104 Ohio St.3d 358, 2004-Ohio-6548, 819 N.E.2d 1047, ¶ 95. No improper vouching occurred.

*Davis I*, 2008-Ohio-2.

As the Supreme Court of Ohio noted, when the prosecutor actually vouched for Fowls and Paxson, counsel objected to the vouching, and the trial court sustained the objection. After the objection was sustained, the prosecutor rephrased his argument properly, emphasizing that it was up to the jury to determine whether Fowls and Paxson were being truthful. *Davis I*, 2008-Ohio-2, ¶ 234. An isolated incident of vouching, properly objected to and promptly corrected, falls well short of the prosecutor's behavior creating an unfair trial, and this portion of Claim Sixteen is dismissed.

Also, Petitioner argues that:

[H]is constitutional rights were violated by the prosecution for eliciting testimony from expert Meghan Clement that she had given Davis access to her notes and DNA reports. Davis raised the allegations in the last sentence of paragraph 473 and paragraph 474 in his direct appeal as part of his twelfth proposition of law.

(Return of Writ, ECF No. 97, PageID 10881, citing *Davis I*, 2008-Ohio-2, ¶¶ 248-52.)

The Supreme Court of Ohio rejected Petitioner's claim:

{¶ 248} **2. Defense access to lab results.** Davis argues that the prosecutor improperly commented on the absence of a defense DNA expert witness. To the extent that counsel failed to object, Davis argues that his counsel provided ineffective assistance. These claims lack merit.

{¶ 249} During direct examination, Ramen Tejwani testified that she had provided the defense with all the notes and results from the DNA testing.

{¶ 250} During redirect examination, Meghan Clement was asked by the

prosecution whether she had provided "documentation regarding [her] laboratory, about [her] processes and [her] specific testing in this case for access to a defense expert." Trial counsel objected and requested a mistrial, which the trial court overruled. Clement then testified that all material related to this case was provided to the defense through the discovery process.

{¶ 251} Testimony that the DNA material and test results were provided to the defense for independent evaluation helped establish the credibility of the state's experts. Moreover, to the extent the testimony highlighted the absence of a defense expert, no error was committed. The prosecutor may comment upon the failure of the defense to offer evidence in support of its case. *State v. Clemons* (1998), 82 Ohio St.3d 438, 452, 696 N.E.2d 1009; *State v. D'Ambrosio* (1993), 67 Ohio St.3d 185, 193, 616 N.E.2d 909.

{¶ 252} We also reject Davis's ineffectiveness claim because trial counsel did object to Clement's testimony. Moreover, counsel were not deficient by failing to object to Tejwani's testimony, because her testimony was admissible.

*Davis I*, 2008-Ohio-2.

The Supreme Court of Ohio's rejection was not unreasonable. Petitioner does not argue that there was any further alleged misconduct with respect to the vouching or to the above particular line of questioning. This isolated question and the single instance of vouching did not deprive Petitioner of a fair trial, meaning that declaring a mistrial would have been a disproportionate remedy to any misconduct that took place. Accordingly, this portion of Claim Sixteen is also dismissed.

### b. *Brady* Material

Petitioner argues that the State improperly withheld information that jailhouse witness Richard Hummel had violated his probation, in violation of *Brady*. (Petition, ECF No. 133, PageID 11796, ¶ 536.) The Warden notes that this issue

was raised and denied on both direct appeal and in postconviction.  (*Id.* at PageID 10882-83, citing *Davis I*, 2008-Ohio-2, ¶¶ 335-40; *Davis II*, 2008-Ohio-6841, ¶¶ 49-58.)  The Warden argues that the courts' decisions were not unreasonable applications of clearly established federal law.  The Warden claims that because Hummel's misdemeanor probation for driving under the influence was a matter of public record, the information regarding Hummel's violation of probation was not in the sole possession of the prosecution, and *Brady* does not apply.  (*Id.* at PageID 10885-86, citing *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998).)  Moreover, the Warden argues that "it is only speculation that the jury would have given less credibility to Hummel's testimony if they had known Hummel's probation status in light of the overwhelming evidence of Davis' guilt."  (*Id.* at PageID 10886; *see also Davis I*, 2008-Ohio-2, ¶ 339 ("Information about a probation violation might have impeached Hummel's credibility.  However, impeachment evidence would not have been significant in the outcome of the case because DNA evidence established Davis's guilt.").)

A *Brady* violation has three elements:  (1) The evidence must be favorable; (2) the evidence must have been willfully or inadvertently suppressed by the state; and (3) the suppression resulted in prejudice; *i.e.*, the evidence must be material. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

Petitioner argues that:

There was no evidence or argument presented in either the trial court or the Court of Appeals that Davis or anyone else could access Richard Hummel's probation violation through a public records request or through access to the public records of the courts.  Nor was there any

100

evidence presented to demonstrate that Richard Hummel's probation violation appeared on the public records of any of the courts in Licking County, Ohio, or elsewhere.

(Traverse, ECF No. 104, PageID 11126.)

There is considerable uncertainty as to whether the probation violation, even if a public record, was ever accessible to Petitioner, and thus, whether that information was wholly in control of the State as defined by *Coe*.  161 F.3d at 344. The Court need not reach that issue, however, because the Warden is correct that the information about Hummel's probation violation, even if suppressed, was not material under *Brady*.  For information to be material, Petitioner must convince this Court "that 'there is a reasonable probability' that the result of the trial would have been different if the suppressed documents had been disclosed to the defense." *Strickler*, 527 U.S. at 289, quoting *Kyles*, 514 U.S. at 433.  "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles*, 514 U.S. at 434.

Petitioner has not met this standard.  While Petitioner argues that "the evidence here was far from overwhelming[,]" (Traverse, ECF No. 104, PageID 11124), there was, in fact, substantial evidence supporting Petitioner's guilt. Petitioner was familiar with the victim and had gone on a buying spree around the time of murder.  *Davis I*, 2008-Ohio-2, ¶ 123.  The DNA evidence did not exclude Petitioner as a suspect. (Petition, ECF No. 133, PageID 11680, ¶ 200.)  While the probation violation may have impeached Hummel's credibility for truthfulness, Hummel's testimony was not the linchpin of the state's case.  The Court is not

101

persuaded that the lack of such evidence undermined confidence in a fair trial.

As Petitioner has failed to meet the materiality element, he has not made a sufficient *Brady* claim.  Consequently, the remaining portions of Claims Sixteen and Seventeen are dismissed.

### D.  Claim Eighteen:  Ineffective Assistance of Counsel

Roland Davis was Denied the Effective Assistance of Counsel Under the Fifth, Sixth, Eighth and Fourteenth Amendments.

(Petition, ECF No. 133, PageID 11800.)

Petitioner raises numerous subclaims of ineffective assistance of trial counsel.  The Court examines them in turn, noting that when the issue is ineffective assistance of counsel, the federal habeas court is required to be doubly deferential. *Harrington*, 562 U.S. at 105.

The law on ineffective assistance of counsel was established in *Strickland*:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.  In other words, "[t]o establish ineffective assistance of counsel, a defendant 'must show both deficient performance by counsel and prejudice.'" *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), quoting *Knowles v. Mirzayance,* 556 U.S. 111, 122 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded that :

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689 (citation omitted). As to the second prong, the Supreme Court held that "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome." *Id.* at 694.

### 1. Subclaim 18(A)(1): Counsel Failed to Recognize, Request, or Show the Need for Expert and Investigative Assistance.

Petitioner alleges that:

Trial counsel failed to recognize or request or demonstrate the need for the investigative and expert assistance reasonably necessary for counsel to fully and thoroughly investigate the state's case, Davis' life history and background and to fully present that life history and background, and explain the effect of that history on his development at the penalty phase of the trial.

. . .

To the extent Davis' trial counsel failed to request or to make a particularized demonstration of the need for expert and investigative assistance, such failure fell below the prevailing professional norms for counsel representing indigent capital defendants in 2005, and as such was unreasonable thereby denying Davis the effective assistance of counsel.

103

(Petition, ECF No. 133, PageID 11802, ¶¶ 556-57, citing *Ake v. Oklahoma*, 470 U.S. 68, 78-79 (1985); *State v. Broom*, 40 Ohio St. 3d 277, 283-84 (1988).)  Petitioner argues that failure of counsel to request investigators and experts *ex parte* fell below the objective reasonableness standard and prejudiced Davis by denying him a fair trial.  (*Id.* at PageID 11803, ¶¶ 559, 561.)

The Warden counters that this argument is internally inconsistent, as within the subclaim, Petitioner concedes that counsel asked for funding for experts, although counsel did not do so *ex parte*. (Return of Writ, ECF No. 97, PageID 10891-92, citing Petition, ECF No. 133, PageID 11803, ¶ 558.)  Further, "[a]s the Ohio Supreme Court noted in reasonably rejecting the merits of Davis' thirteenth proposition of law on direct appeal, Davis' attorneys *did* request experts, were granted funds for experts, and had experts appointed."  (*Id.* at PageID 10892 (emphasis in original), citing *Davis I*, 2008-Ohio-2, ¶ 342.)

The Supreme Court of Ohio, in rejecting Petitioner's claim, held:

> {¶ 342} **1. Expert and Investigative Assistance.** Davis contends that his counsel were ineffective for failing to request or demonstrate the need for expert or investigative assistance to fully investigate the case and present an effective penalty-phase defense.  However, defense counsel did request funds for a private investigator, a mitigation specialist, a DNA expert, and a defense psychologist.  The trial court granted each of these requests.  Thus, this claim lacks merit.

*Davis I*, 2008-Ohio-2.

Petitioner does not claim that counsel failed to request funds, and the Supreme Court of Ohio's adjudication was not contrary to clearly established law. Thus, to the extent that subclaim 18(A)(1) seeks relief on the issue of seeking funding for and retaining experts, it is unavailing, and the only issue before the

Court is whether the failure to make requests *ex parte* constituted prejudicial ineffective assistance.

Petitioner argues that "[c]ounsel alone is responsible for determining what resources are needed and demonstrating to the court the necessity of authorizing funds for those resources and should not disclose privileged communications or strategy in order to secure these resources." (Traverse, ECF No. 104, PageID 11129, citing Am. Bar Ass'n, *Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases* ("*ABA Guidelines*"), Commentary to Guideline 10.4.) Yet, Petitioner does not argue, and there is no evidence, that counsel disclosed privileged communications or strategy or attorney work-product in the requests. Thus, even if a failure to submit *ex parte* the requests for experts falls outside the wide range of reasonable professional assistance—and this Court is not holding that it does—there is no indication that Petitioner was prejudiced by such error. Subclaim 18(A)(1) is dismissed.

> **2.** **Subclaim 18(A)(2): Counsel Failed to Sufficiently Object to the Restraints on Davis During Trial, and Failed to Request a Hearing on the Need for Restraints on Davis During Trial**

Counsel filed a motion for Petitioner to appear without restraints, which the trial court denied. Yet, counsel failed to object to court's decision or the court's failure to hold a hearing on the issue. (Petition, ECF No. 133, PageID 11804-05, ¶¶ 562, 566, citing *Deck*, 544 U.S. at 624, *Holbrook*, 475 U.S. at 568-69; *Allen*, 397 U.S. at 343-44; State Court Record, ECF No. 51-1, PageID 1185.) Petitioner argues that "[c]ounsel should have objected to the court's order, demanded that the court comply

with the controlling law, and insisted on a hearing to determine whether it was necessary to use these excessive security measures throughout Davis' trial." (Petition, ECF No. 133, PageID 11805, ¶ 568.)  Petitioner claims that counsel's failure to do so was prejudicial:  Petitioner was forced to wear a "Band-It" underneath a sweater during the hot summer months, which drew attention to himself and his attire, making conviction more likely.  (*Id*. at PageID 11805-06, ¶ 570.)

The Warden notes that both the Supreme Court of Ohio and Fifth District considered and rejected this argument (Return of Writ, ECF No. 97, PageID 10904, citing *Davis I*, 2008-Ohio-2, ¶ 343; *Davis II*, 2008-Ohio-6841, ¶¶ 35-42.)  In *Davis I*, the Supreme Court of Ohio simply rejected the claim on the ground that there were no restraints visible to the jury.  2008-Ohio-2, ¶ 343.  In *Davis II*, as discussed above, the Fifth District noted with regret that the trial court failed to hold a hearing, 2008-Ohio-6841, ¶ 42, but held that it did not amount to plain error because "[t]he evidence against appellant was overwhelming."  *Id*. at ¶ 43.  The Warden argues that the decisions were proper, as "there *is no* clearly established federal law, as determined by the Supreme Court, concerning the use of non-visible restraints; therefore there is nothing for the Ohio courts to have contravened or unreasonably appl[ied]."  (Return of Writ, ECF No. 97, PageID 10904 (emphasis in original).)

While Petitioner argues that the right to be free from restraint was established prior to *Deck* (Traverse, ECF No. 104, PageID 11134, quoting *Adams v.*

*Bradshaw*, 817 F.3d 284, 294-95 (6th Cir. 2016), *amended and superseded on other grounds at* 826 F.3d 306 (6th Cir. 2016)), an analysis of the caselaw, as discussed above, shows that the law is clearly established only as to *visible* restraints. *Adams*, 826 F.3d at 314-15.  Petitioner's argument that the jury drew negative inferences from him wearing a sweater during summer is speculative.  As there is no clearly established right to be free from non-visible restraints, counsel's failure to request a hearing as to the propriety of Petitioner wearing such a restraint did not constitute ineffective assistance, and subclaim 18(A)(2) is dismissed.

### 3.  Subclaim 18(A)(3):  Counsel Failed to Investigate, Prepare, and Litigate Their Motion in Limine Regarding the Admissibility of DNA Evidence and Instead Prejudiced Davis by Stipulating to the Admission of the Evidence

Petitioner's counsel initially filed a motion *in limine* contesting the admissibility of DNA evidence offered by the State. (Petition, ECF No. 133, PageID 11806, ¶ 573.)  However, counsel abandoned that motion and instead stipulated to the admission of ten exhibits as to the validation studies done with respect to the State's DNA evidence.  (*Id.*, citing State Court Record, ECF No. 51-1, PageID 1246-47.)  Petitioner argues that "[c]ounsel had an obligation to prepare for, and present evidence to support their contention that the DNA evidence in this case was not admissible.  Instead, counsel stipulated every fact necessary for the Court to overrule the Motion without an evidentiary hearing."  (*Id.* at PageID 11807, ¶ 574)  Because counsel did not challenge the qualifications of the State's DNA experts or the reliability of their methods, it was all the more important to attack the evidence itself, especially since "DNA obtained from Y-STR testing is a recent

107

development[.]" (*Id.* at PageID 11807-08, ¶¶ 575-76.) Petitioner argues that, but for the stipulations, the evidence would have been excluded or at least one juror would have had reasonable doubt as to guilt or punishment. (*Id.* at PageID 11808, ¶ 577.)

This subclaim was adjudicated by the Supreme Court of Ohio:

{¶ 344} **3. Stipulating to Admissibility of DNA Evidence.** Davis argues that his counsel were ineffective by stipulating to evidence establishing the admissibility of DNA evidence. Before trial, the prosecution and defense stipulated to the chain of custody, the qualifications of the DNA experts, and the accreditation of the DNA testing labs, and that DNA testing was conducted under generally accepted means within the scientific community. The trial court admitted the stipulation and ten validation studies to support the DNA testing. The trial court then ruled that the DNA evidence was admissible.

{¶ 345} Davis fails to specify any evidence that his counsel should have presented in lieu of the stipulation that would have undermined the chain of custody, the expert's qualifications, or the admissibility of the DNA test results. In *State v. Pierce* (1992), 64 Ohio St.3d 490, 497, 597 N.E.2d 107, we held that "the theory and procedures used in DNA typing are generally accepted within the scientific community." Moreover, "[n]o pretrial evidentiary hearing is necessary to determine the reliability of the DNA evidence." Id. at 501, 597 N.E.2d 107. Thus, trial counsel's use of stipulations was a legitimate tactical decision that does not constitute ineffective assistance of counsel. *State v. Nicholas* (1993), 66 Ohio St.3d 431, 437, 613 N.E.2d 225 ("the failure to challenge the admissibility of [DNA] evidence cannot be considered ineffective assistance of counsel").

*Davis I*, 2008-Ohio-2.

While the state court decision was based on Ohio law, there is a presumption that the federal constitutional claim was adjudicated on its merits. Further, the Supreme Court of Ohio's decision provided detailed reasoning as to why counsel's decisions about the DNA evidence fell within the wide range of professional conduct

under prong one of *Strickland*. Thus, the presumption that Petitioner's federal claim was adjudicated cannot be rebutted. Yet, Petitioner does not address that decision in his Traverse or anywhere else. As Petitioner has failed to explain why the state court decision was contrary to clearly established federal law or an unreasonable factual determination, that decision must be upheld, and subclaim 18(A)(3) is dismissed.

### 4. Subclaim 18(A)(4): Counsel Failed to Move for a Change of Venue

Petitioner argues that counsel should reasonably have known that Petitioner could not get a fair trial in Licking County and moved for change of venue. (Petition, ECF No. 133, PageID 11808-09, ¶¶ 579-82). According to the Warden:

> Davis raised this claim in his direct appeal to the Ohio Supreme Court as a part of his first proposition of law, and again as a part of his fourteenth ground for relief in postconviction. Both the Ohio Supreme Court and the Ohio Court of Appeals reasonably concluded counsel was not ineffective in not seeking a change of venue.

(Return of Writ, ECF No. 97, PageID 10907-08, citing *Davis I*, 2008-Ohio-2, ¶ 49; *Davis II*, 2008-Ohio-6841, ¶ 144.) Moreover, the Warden notes, this Court has already found that not seeking change of venue was reasonable trial strategy (Return of Writ, ECF No. 97, PageID 10908, quoting Opinion and Order, ECF No. 94, PageID 10673-74.) "Because this Court has already concluded that Davis failed to satisfy *Strickland* and that the Ohio Supreme Court's decision was reasonable, Davis' ineffective assistance of counsel subclaim regarding not seeking a change of venue lacks merit and must be denied." (*Id.*)

As this Court has already agreed that the underlying change of venue claim

is not meritorious, it could not have been ineffective assistance to fail to move for such a change. Accordingly, subclaim 18(A)(4) must be dismissed.

> **5.** **Subclaims 18(A)(5-6): Counsel Failed to Challenge the Venire to Ensure a Fair Cross-Section of the Community, and Counsel's Performance Fell Below the Prevailing Professional Norms for Counsel in a Capital Case During the Jury Selection Process**

Petitioner argues that "[c]ounsel unreasonably failed to investigate or challenge the venire to ensure a fair cross-section of the community . . . to Davis' prejudice." (Petition, ECF No. 133, PageID 11809, ¶ 584.) Because the Court ruled *supra* that Petitioner's fair cross-section claim was not meritorious, it could not have been ineffective assistance to fail to challenge the venire. Thus, subclaim 18(A)(5) must be dismissed.

> In addition to the foregoing, Petitioner claims that:

> Counsel did not zealously demand the right to fully examine jurors on their ability to fully consider a sentence of death, on their ability to consider theories of defense and/or mitigation, or their ability to fully consider a life sentence. Counsel failed to fully inquire into the knowledge the prospective jurors had of the facts of the case. Counsel failed to rehabilitate prospective jurors with scruples against the death penalty.

(Petition, ECF No. 133, PageID 11810, ¶ 588.) Specifically, Petitioner asserts that counsel not questioning "automatic death penalty" venire members about their willingness to impose life sentence was unreasonable. (*Id.* at PageID 11810-11, ¶ 589.) Absent such questioning, counsel could not reasonably make challenges for cause or peremptory challenges. (*Id.* at PageID 11811, ¶ 591.)

Again, this Court ruled *supra* that the underlying claim as to improper jury selection was not meritorious, and aside from conclusory statements, Petitioner

does not articulate what more counsel should have done during jury selection. Thus, Petitioner's ineffective assistance claim is speculative, and Subclaim 18(A)(6) must be dismissed.

> **6.     Subclaim 18(B)(1):     Counsel Entered into Excessive Stipulations to Witnesses' Qualifications, Evidence, and Facts**

Petitioner claims that counsel entered into inappropriate stipulations that harmed his case, including Detective Elliget's qualifications and facts that supported the state's theory of the case, specifically that Petitioner was employed by Yellow Cab and that the victim was alive on the night in question. "Counsel conducted no adversarial testing of any of this stipulated evidence, all of which was critical to the state's case." (Petition, ECF No. 133, PageID 11812-13, ¶¶ 594-96.)

The Warden argues that, for three reasons, the claim is meritless. *First*, the Supreme Court of Ohio rejected the claim, holding that none of the stipulated testimony would have been different had witnesses been called at trial to testify to those matters. (Return of Writ, ECF No. 97, PageID 10910-11, quoting *Davis I*, 2008-Ohio-2, ¶ 347.) *Second*, this is a state evidentiary issue, which is rarely cognizable in habeas. (*Id*., PageID 10911, citing *Estelle*, 502 U.S. at 67.) *Third*, the claim fails on its merits: "Davis does not articulate any support for his claim; rather he implies that because counsel entered into stipulations counsel must have been deficient and that he must have been prejudiced." (*Id*.) The Warden argues that the Yellow Cab records are consistent with witness testimony; as to the testimony that the victim was alive on the night in question, there is no reason to think that fact would have been in dispute. (*Id*. at PageID 10912, citing Trial Tr., ECF No. 52-

3, PageID 7340-42, 7363.)  Further, as the Supreme Court of Ohio concluded, entering into stipulations can be a reasonable trial strategy, "portray[ing] an air of candor before the jury."  (*Id.*, quoting *Davis I*, 2008-Ohio-2, ¶ 347.)

Petitioner argues that "[t]he Warden's arguments miss the point of this claim. . . . [C]ounsel enter[ed] into excessive stipulations without first thoroughly investigating the subject of the stipulation."  (Traverse, ECF No. 104, PageID 11146.)

> While the underlying question of whether a stipulation is appropriate may involve state evidentiary rulings, the question of whether counsel's performance was deficient and whether that deficient performance prejudiced Davis, thus denying him the effective assistance of counsel guaranteed by the U.S. Constitution, is clearly a question of federal constitutional law that is cognizable in habeas.

(*Id.*)

> Rejecting this claim, the Supreme Court of Ohio and applied *Strickland*:
>
> {¶ 346} **4. Stipulations.** Davis also complains that his counsel were ineffective by entering into ten joint stipulations.  Davis claims that this number of stipulations suggested to the jury that the defense agreed with the state's theory of the case and that the verdict was a foregone conclusion.
>
> {¶ 347} Trial counsel's decision to enter into these stipulations was a "tactical decision" that falls "'within the wide range of reasonable professional assistance.'"  *State v. Green* (1993), 66 Ohio St.3d 141, 148, 609 N.E.2d 1253, quoting *Strickland v. Washington,* 466 U.S. at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674.  Nothing in the record suggests that any of the stipulated testimony would have been different had the witnesses been called to the stand.  Trial counsel's stipulations allowed the defense to portray an air of candor before the jury.  They also prevented a stream of additional prosecution witnesses from testifying in court.  This claim lacks merit.

*Davis I*, 2008-Ohio-2.

The Supreme Court of Ohio correctly explained the advantages that

Petitioner gained by counsel agreeing to stipulations, as the subject matter of the stipulations would have been identical had they been introduced via live testimony instead. Thus, any failure by counsel to sufficiently investigate the subject matter of the stipulations before agreeing to them did not prejudice Petitioner. As Petitioner does not cite any clearly established law that would suggest that the state court's application of *Strickland* was unreasonable, this Court may not disturb the state court's rejection of this subclaim, and it must be dismissed.

> **7. Subclaim 18(B)(2): Counsel permitted the state to introduce an unidentified tape recording that was never played in open court but was given to the jury during deliberations**

Petitioner claims that counsel acquiesced to the transcript and tapes of interviews between officers and Petitioner being admitted for the jury's consideration in deliberations, even though they were never played in court, or even identified or authenticated. (Petition, ECF No. 133, PageID 11813, ¶ 599.) Petitioner argues this acquiescence amounted to a complete absence of counsel during a critical stage of the capital trial, for which prejudice may be presumed. (*Id.* at PageID 11814, ¶ 600, citing *United States v. Cronic*, 466 U.S. 648, 658-59 (1984).) Moreover, prejudice was apparent because the tapes, as unauthenticated hearsay, were inadmissible. (*Id.* at PageID 11814-15, ¶¶ 601-02.)

The Warden argues that "[t]his Court, in determining that the underlying claims contained in habeas grounds eleven and twelve were procedurally defaulted, already found that counsel were not ineffective for stipulating to the admission of the tape and transcript." (Return of Writ, ECF No. 97, PageID 10913, citing

113

Opinion and Order, ECF No. 94, PageID 10713-21.) The Warden further asserts that "[b]ecause this Court has already concluded that Davis failed to satisfy *Strickland* and that the Ohio Supreme Court's decision was reasonable, Davis' ineffective assistance of counsel subclaim regarding the admission of the tape and transcript into evidence lacks merit and must be denied." (Return of Writ, ECF No. 97, PageID 10914, quoting Opinion and Order, ECF No. 94, PageID 10719-20.)

Because this Court already determined that "counsel's decision to stipulate to the admission of the tape and transcript was a tactical one borne of sufficient investigation[,]" (Opinion and Order, ECF No. 94, PageID 10719), and Petitioner has presented no evidence or argument that would cause the Court to depart from its previous Opinion, this subclaim is dismissed.

### 8. Subclaim 18(B)(3): Counsel Failed to Effectively Object to the Exclusion of State's Witness Meghan Clement's Written Analysis

As discussed *supra*, "[t]he trial court refused to admit Defense Exhibit L, an Amended Certificate of Analysis prepared by the state's expert Meghan Clement. The court continued to refuse to admit the exhibit even after the jury requested it during deliberations." (Petition, ECF No. 133, PageID 11815, ¶ 607.) Petitioner argues that "[t]o the extent that trial counsel had not researched the admissibility of this exhibit, prepared argument to rebut the trial court's reasoning, and more zealously objected to its exclusion, counsel's performance fell below the prevailing professional norms for counsel representing capital defendants in 2005." (*Id.* at PageID 11816, ¶ 608.)

The Supreme Court of Ohio considered and rejected this claim, concluding

114

that: "[t]he defense made no proffer. Thus, it is speculative whether further questioning of Clement would have established the necessary foundation for admitting defense exhibit L as a business record." *Davis I*, 2008-Ohio-2, ¶ 175.

Indeed, Petitioner's entire claim is speculative. Beyond conclusory statements that counsel failed to research the claim of admissibility and a recitation of ABA Guidelines as to the need to forcefully present claims (Traverse, ECF No. 104, PageID 11151, citing *ABA Guidelines*, 10.8.B.1, C.2), Petitioner fails to explain what counsel should have done to attempt to get the report admitted. As the Warden points out, counsel vigorously questioned Clement, used her report as demonstrative evidence, and referenced it extensively in closing argument. (Return of Writ, ECF No. 97, PageID 10914-15.) Given that counsel attempted to use Exhibit L in every permissible way, counsel's performance did not fall below the objective reasonableness standard in *Strickland*. Thus, even if, as Petitioner claims, the state court only adjudicated the state law claim (Traverse, ECF No. 104, PageID 11150), the federal constitutional claim is unsuccessful and must be dismissed.

> **9.** **Subclaim 18(B)(4): Counsel Failed to Investigate, to Present Evidence to Challenge the State's Case, to Present a Viable Defense, and to Defend the Case as Related to the State's DNA and Other Forensic Evidence and Witnesses**

Petitioner argues that counsel failed to reasonably investigate the DNA and forensic evidence, present evidence in support of the third-party culpability theory, and rebut the DNA and forensic evidence presented by the State. Petitioner lists fifteen areas in which counsel allegedly failed. They can be broadly grouped in two

categories:  failure to investigate and counter DNA and forensic evidence (areas one through six); and failure to counter and undermine the prosecution's evidence and expert witnesses (areas seven through fifteen) (Petition, ECF No. 133, PageID 11817-19, ¶ 614 (citations omitted).)

As to areas one through six, Petitioner argues that counsel's failure to investigate and prepare left them unable to counter the false narrative that Petitioner had to be guilty based on DNA evidence. (Traverse, ECF No. 104, PageID 11152, citing *Wiggins v. Smith*, 539 U.S. 510, 525 (2003); *Strickland*, 466 U.S. at 690-91; *ABA Guidelines* 10.8, 10.11.)  The State's witness, Meghan Clement, testified that Petitioner "matched" the DNA evidence, when in reality, he simply could not be excluded as a match; counsel's inadequate preparation meant that they could not adequately counter the State's framing of the case. (Traverse, ECF No. 104, PageID 11152-53.)  Further, Petitioner claims that, contrary to the Warden's assertion and the Supreme Court of Ohio's conclusion, the attorney and expert timesheets show little, if any, preparation with respect to DNA strategy.  (*Id.* at PageID 11153-54, citing *Davis I*, 2008-Ohio-2, ¶ 342; State Court Record, ECF No. 51-2, PageID 1535-40, 1544, ECF No. 51-3, PageID 1559-60.)

As to the sufficiency of evidence that Petitioner offered in support of his claim, Petitioner argues that he raised this claim in postconviction with substantial evidence *dehors* the record, but the trial court denied discovery and an evidentiary hearing, a decision the Fifth District affirmed. (Traverse, ECF No. 104, PageID 11155, citing *Davis II*, 2008-Ohio-6841, ¶¶ 153-67; State Court Record, ECF No. 51-

116

6, PageID 2895-96, ECF No. 51-7, PageID 3069-95, 3169-75, 3188-90.)  In sum,

Petitioner claims:

> Counsel failed to thoroughly investigate and present any defense to the State's DNA evidence, thereby prejudicing Davis by permitting the State to inaccurately describe a "match" between DNA evidence found at the scene and Roland Davis.  Absent the presentation of this misleading "match" evidence, there is a reasonable probability that, whether the errors are considered individually or cumulatively, at least one juror would have entertained a reasonable doubt as to Davis' guilt or the appropriateness of a sentence of death.

(*Id.* at PageID 11156.)

The Warden rejoins that Petitioner's subclaim is meritless.  Specifically, the

Warden asserts that Petitioner's allegation that counsel failed to reasonably

investigate the case before deciding on a trial strategy was belied by the record,

which "reflects that trial counsel conducted a reasonable investigation; they

retained a DNA expert and vigorously contested the state's evidence by way of

cross-examination."  (Return of Writ, ECF No. 97, PageID 10893.)  Counsel's "billing

records filed with the trial court following Davis' jury trial reveal numerous entries

indicating investigation and preparation with regards to the DNA evidence far in

advance of the beginning of trial which commenced on June 27, 2005."  (*Id* at

PageID 10894.)  As the Supreme Court of Ohio noted, a DNA expert was requested

and appointed.  (*Id.* at PageID 10894-95, citing *Davis I*, 2008-Ohio-2, ¶ 342.)

Further, the Warden argues, reliance on cross-examination to rebut state expert

testimony was a reasonable tactical decision because a DNA examination may not

have been favorable.  (*Id.* at PageID 10895, citing *Davis II*, 2008-Ohio-6841, ¶ 155.)

Finally, the only evidence presented by Petitioner to the state court was a hearsay

117

affidavit by his attorney during postconviction proceedings, which the Fifth District reasonably discounted because the attorney was neither a biochemist nor a statistician. (*Id.*, citing *Davis II*, 2008-Ohio-6841, ¶¶ 155-66.)

As a preliminary matter, the Court finds that the Warden overstates the scope of the Supreme Court of Ohio's decision with respect to alleged omissions one through six, failure to investigate DNA evidence and consult with an expert. (Return of Writ, ECF No. 97, PageID 10894-95.) Far from being a comprehensive refutation of the claim, the opinion was limited to one paragraph merely stating that "defense counsel did request funds for a private investigator, a mitigation specialist, a DNA expert, and a defense psychologist. The trial court granted each of these requests." *Davis I*, 2008-Ohio-2, ¶ 342. Yet, even under a *de novo* standard, Petitioner's claim fails. The record *does* reflect counsel requesting and retaining an expert and investigating and preparing a defense for the DNA and other evidence in the case. (State Court Record, ECF No. 51-1, PageID 1152-56; ECF No. 51-2, PageID 1543-44.) Petitioner does not state what additional actions counsel should have taken to prepare and defend the case adequately, aside from a barebones allegation that the record shows evidence of inadequate preparation. Nor does he cite any caselaw suggesting that counsel's preparations fell below prevailing norms. Accordingly, this portion of the subclaim must be dismissed.

As to alleged omissions seven through fifteen, failure to address expert evidence and testimony, the Fifth District adjudicated the merits, including of Petitioner's federal constitutional claim, in an extensively reasoned decision:

118

{¶ 153} In his sixteenth, and final, ground for relief, the appellant claimed that his convictions and sentences are void or voidable because his trial counsel failed to adequately address the state's DNA evidence.

{¶ 154} In addressing this conflicting testimony from the post-conviction relief proceeding, it is well-established that "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, 39 Ohio Op.2d 366, paragraph one of the syllabus.  As this court has recognized, "[a]n appellate court abuses its discretion when it substitutes its judgment for that of the trier of fact as to the credibility of witnesses." *State v. Kerr* (Nov. 1, 1996), Montgomery App. No. 15648, unreported, citing *State v. Walker* (1978), 55 Ohio St.2d 208, 378 N.E.2d 1049, 9 Ohio Op.3d 152.  Thus, in the instant case, the trial court had the ultimate responsibility of determining the weight of the evidence and the credibility of the affidavits.

{¶ 155} In his direct appeal, the Ohio Supreme Court noted, "defense counsel did request funds for a private investigator, a mitigation specialist, a DNA expert, and a defense psychologist. The trial court granted each of these requests."  2008-Ohio-2 at ¶ 342, 116 Ohio St.3d 404, 880 N.E.2d 31.  "Thus, the defense counsel's decision to rely on cross-examination should be viewed as a legitimate 'tactical decision' particularly since the results of a DNA examination may not necessarily have proven favorable for the defense.  See *State v. Watson* (1991), 61 Ohio St.3d 1, 13, 572 N.E.2d 97, 108." *State v. Hartman,* 93 Ohio St.3d 274, 299, 754 N.E.2d 1150, 1177, 2001-Ohio-1580.

{¶ 156} The affidavit submitted is that of Gregory W. Meyers, an attorney with the Ohio Public Defender Office.  The Ohio Public Defender Office is representing appellant on the instant appeal. Attorney Meyers is neither a biochemist nor a statistician.  Indeed, Attorney Meyers notes that he "consulted" with three such experts in preparation for rendering his opinion, however, the opinions expressed in the affidavit are not those of the expert witnesses. (Exhibit X at ¶ 9). Appellant presented no affidavit from an expert in the field of DNA to support any of the various theories or "opinions" in Attorney Meyers' affidavit.

{¶ 157} To the extent that the trial court could find that this affidavit contains or relies upon hearsay, the trial court could give it little or no weight.  *State v. Calhoun* (1999), 86 Ohio St.3d 279, 281, 714 N.E.2d 905; *State v. Elmore,* 5th Dist. No.2005-CA32, 2005-Ohio-5740 at ¶ 109.

{¶ 158} As the affidavit does not present evidence demonstrating the

probable testimony of any expert in the field of DNA testing, it is entitled to little or no weight. Nothing in the affidavit suggests that the experts for the state would have answered any question in a different manner if cross-examined in the method suggest by Attorney Meyers. In fact the witness was quite unequivocal in her testimony that based on her training and experience only identical twins have the exact same DNA. (7T. at 1712-1715; 1757; 1762-1763).

{¶ 159} In the case at bar Ramen Tejwani who conducted the DNA analysis for the Columbus Police crime lab has a Master degree in biochemistry and a Ph. D. in physiological chemistry. (6T. at 1659). He has been qualified as an expert witness in 35 to 40 cases. (*Id.* at 1660). Meghan Clement the technical director for forensic identity testing at Laboratory Corporation of America Holdings, Inc. ("LabCorp") has testified in approximately 285 cases in at least 28 states concerning DNA analysis. (7T. at 1700). Attorney Meyers, on the other hand, does not hold any degrees in science, or mathematics nor has he ever been qualified as an expert witness in the field of DNA analysis. As Attorney Meyers himself notes "To be qualified to render an expert opinion in the field of DNA, courts uniformly require the witness to have credentials in the area of science involving biochemistry." (Exhibit X at ¶ 15).

{¶ 160} Appellant did not proffer or present anything of evidentiary quality to challenge the reliability of the FBI database or the method of arriving at the statistical conclusion. See, e.g. *State v. Isley* (1997), 262 Kan. 281, 936 P.2d 275; *Watts v. State* (Miss.1999), 733 So.2d 214 at ¶ 28-31. Nothing in his affidavit provides any foundation or basis for the premises advanced. In light of the qualifications of the state's expert witnesses and the lack of any DNA expert supporting or testifying to support the hypotheses set forth by Attorney Meyers, the trial court could give the affidavit little or no weight.

{¶ 161} Additionally, some courts have found that, "Attorney's affidavits explaining prevailing norms do not constitute evidence *dehors* the record and are akin to a notarized legal argument." *State v. Hill* (Nov. 21, 1997), Hamilton App. No. C961052.

{¶ 162} It would seem that in most cases a more objective standard than simply a countervailing opinion of another attorney is a more appropriate standard by which to determine whether counsel's performance fell "below an objective standard of reasonableness," "under prevailing professional norms." *Strickland v. Washington,* 466 U.S. at 688, 104 S.Ct. 2052, 80 L.Ed.2d 674.

{¶ 163} The United States Supreme Court has suggested that the ABA

Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases provide the "guiding rules and standards to be used in defining the 'prevailing professional norms' in ineffective assistance cases." *Rompilla v. Beard* (2005), 545 U.S. 374, 387, 125 S.Ct. 2456, 162 L.Ed.2d 360; *Wiggins v. Smith* (2003), 539 U.S. 510, 524-525, 123 S.Ct. 2527, 2536-2537, 156 L.Ed.2d 471; *Van Hook v. Anderson* (6th Cir.2008), 535 F.3d 458, 462.

{¶ 164} Nothing in Attorney Meyers' affidavit suggests appellant's trial counsel violated any objectively established standards or guidelines, such as the ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases.

{¶ 165} Further, nothing in the affidavit suggests that Roland Davis can be conclusively excluded as a possible source of the DNA found inside the victim's apartment.  In the same vein nothing within the affidavit submitted by Attorney Meyers suggests that it can be conclusively established that the DNA found inside the victim's apartment matches the DNA of appellant's deceased brother and no one else.

{¶ 166} Accordingly, we find that the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that appellant set forth sufficient operative facts to establish substantive grounds for relief.  *Calhoun,* 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21(C).

*Davis II*, 2008-Ohio-6841.

The only evidence put forth in support by Petitioner was the affidavit of postconviction counsel Gregory Meyers, to which the state courts reasonably accorded little weight.  *Davis II*, 2008-Ohio-6841, ¶ 160.  Further, to the extent that the ABA Guidelines constitute professional norms, the Fifth District reasonably found that trial counsel's performance was not in violation of those Guidelines.  *Id.* at ¶¶ 163-64 (citations omitted).  Petitioner has cited no caselaw as to why the Fifth District's decision was an unreasonable application of clearly established law.  Thus, it will not be disturbed, and the subclaim must be dismissed in its entirety.

**10.** **Subclaim 18(B)(5):  Counsel Failed to Investigate and**

121

## Failed to Present a Viable Defense to the Charges Davis Faced

Petitioner claims that "[c]ounsel failed to offer viable defenses to the charges Davis faced, including a defense to the state's circumstantial evidence, or an alibi defense." (Petition, ECF No. 133, PageID 11822, ¶ 623, citing State Court Record, ECF No. 51-6, PageID 2907, 2909, 2951, 2955, 2978, ECF No. 51-7, PageID 3020, 3066.) Specifically, Petitioner argues that counsel failed to challenge witness identifications of Petitioner that, if disproven, would have provided Petitioner with an alibi. (*Id.* at PageID 11822-23, ¶¶ 625-27.) "Counsel also failed to thoroughly and reasonably investigate DNA or other forensic evidence and any forensic expert witnesses, before advancing third-party-culpability as a defense even though they had not consulted or employed an independent DNA or other forensic expert to overcome the state's evidence." (*Id.* at PageID 11823, ¶ 631.) Finally, "[c]ounsel failed to investigate and consult forensic experts who could assist during trial in such matters as effectively cross examining the state's forensic evidence witnesses, including regarding contextual bias, or countering the state's forensic expert testimony with their own expert testimony." (*Id.* at PageID 11824, ¶ 635.)

The Fifth District rejected this claim:

{¶ 111} In the eleventh ground for relief the petition alleged that trial counsel failed to investigate the case and presented "no defense" to the charges in this case. We disagree.

{¶ 112} Appellant first contends that his trial counsel were ineffective for failing to present evidence that he was a "drug mule" to explain how he came into a large sum of money in July 2000.

{¶ 113} This evidence was already before the jury as part of his statement to Newark Police Detectives. (See, State's Exhibits Nos. 12-

A.1, 12-A.2 and the transcript thereof, Exhibit 12-B, at 73-75.)  See, also, *State v. Davis,* supra, at ¶ 24; 29. Accordingly, we find this matter is *res judicata.  State v. Johnson,* supra, 112 Ohio St.3d at 229, 2006-Ohio-6404 at ¶ 136-138, 858 N.E.2d at 1167-78.

{¶ 114} Appellant next argues that there was some form of evidence that would support a conclusion that Teri Pax[s]on and Susan Fowls were mistaken as to the appellant being the person in their restaurant engaging them in conversation about a reward poster regarding Mrs. Sheeler's murder.  *See, Davis,* supra, 116 Ohio St.3d 404, 880 N.E.2d 31, 2008-Ohio-2 at ¶ 32-33.

{¶ 115} The only "evidence" presented is the appellant's unsupported claim that had Ms. Pax[s]on been asked to obtain the repair bill for an air conditioner service call, it would have placed this conversation at a time when the appellant claims he was in Florida.  Further, appellant contends that neither witness mentioned his significant speech impediment.

{¶ 116} As a "self-serving" affidavit the trial court could give it little or no weight. *State v. Calhoun* (1999), 86 Ohio St.3d 279, 281, 714 N.E.2d 905; *State v. Kapper* (1983), 5 Ohio St.3d 36, 38, 448 N.E.2d 823 (letter or affidavit from the court, prosecutors, or defense counsel alleging a defect in the plea process might be sufficient to warrant a hearing, although defendant's own affidavit alleging same defect would not, because the former are not self-serving declarations).

{¶ 117} Even if we were to consider the affidavit we would find that it is only marginally significant.  "[E]vidence presented outside the record must meet some threshold standard of cogency; otherwise it would be too easy to defeat the holding of *Perry* by simply attaching as exhibits evidence which is only marginally significant and does not advance the petitioner's claim beyond mere hypothesis and a desire for further discovery." *State v. Coleman* (March 17, 1993), 1st Dist. No. C-900811, at 7; *State v. Combs* (1994), 100 Ohio App.3d 90, 98, 653 N.E.2d 205, 209.

{¶ 118} Nothing prevented appellant from presenting any alibi evidence during his trial.  It does not appear that appellant's speech pattern was inquired into by the parties of Ms. Pax[s]on or Ms. Fowls, or any other non-mitigation related witness.  This may very well have been a tactical decision by appellant's trial counsel.  Had the witnesses testified to the speech impediment it would [have] strengthened the witnesses' identification of appellant. "When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for

tactical reasons rather than through sheer neglect. See *Strickland,* 466 U.S., at 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (counsel is 'strongly presumed' to make decisions in the exercise of professional judgment). Moreover, even if an omission is inadvertent, relief is not automatic. The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight. See *Bell, supra,* at 702, 535 U.S. 685, 122 S.Ct. 1843, 152 L.Ed.2d 914; *Kimmelman v. Morrison,* 477 U.S. 365, 382, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986); *Strickland,* supra, at 689, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *United States v. Cronic,* 466 U.S. 648, 656, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)". *Yarborough v. Gentry* (2003), 540 U.S. 1, 8, 124 S.Ct. 1, 6, 157 L.Ed.2d 1. The Ohio Supreme Court has stated "[w]e will ordinarily refrain from second-guessing strategic decisions counsel make at trial, even where counsel's trial strategy was questionable. *State v. Clayton* (1980), 62 Ohio St.2d 45, 49, 16 O.O.3d 35, 402 N.E.2d 1189." *State v. Myers* (2002), 97 Ohio St.3d 335, 362, 780 N.E.2d 186, 217.

{¶ 119} Appellant has not presented any evidence that such a repair bill exits; nor does he support his claim with an affidavit from Ms. Pax[s]on, Ms. Fowls or the person who repaired the air conditioner. No business records were presented to verify said repair. Appellant does not indicate on which dates he claims to have been in Florida, and why this information was not presented at trial.

{¶ 120} Accordingly, appellant failed in his initial burden to submit evidentiary material containing sufficient operative facts that demonstrate a substantial violation of any of defense counsel's essential duties to his client and prejudice arising from counsel's ineffectiveness. *Calhoun,* 86 Ohio St.3d at 289, 714 N.E.2d 905; *State v. Jackson* (1980), 64 Ohio St.2d 107, 413 N.E.2d 819, syllabus; see, also *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674, 693; *State v. Phillips,* supra.

{¶ 121} Appellant has further failed to demonstrate that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.

*Davis II*, 2008-Ohio-6841.

Despite this extensive rejection of his federal constitutional claim, in his

Traverse, Petitioner does little more than reiterate the arguments made in his

Petition:

> Counsel failed to thoroughly investigate and present several available witnesses and defenses. Whether the errors of counsel are considered individually or cumulatively, it is clear that had counsel presented the several witnesses and defenses at trial, there is a reasonable probability that at least one juror would have entertained a reasonable doubt as to Davis' guilt or to death being the appropriate sentence.

(ECF No. 104, PageID 11160.) These conclusory statements do not explain why the Fifth District's decision was wrong, much less why it was an unreasonable application of clearly established law. Consequently, that decision may not be disturbed, and the subclaim must be dismissed.

## 11. Subclaim 18(B)(6): Counsel Failed to Investigate and Subsequently Call Damien Turner to Testify

Counsel did not call as a witness Damien Turner, who Petitioner argues would have testified that Detective Vanoy offered to make a charge against Richard Hummel "go away" if Hummel, the State's key witness, testified against Petitioner. Petitioner claims that this would have undercut Hummel's credibility and reputation for truthfulness, as Hummel had testified that he had received no consideration in exchange for his testimony. (Petition, ECF No. 133, PageID 11825, ¶¶ 641-44.) "Davis was prejudiced by trial counsel's unreasonable failure to investigate thoroughly and to call Turner as a witness because counsel's failures deprived Davis of the opportunity to challenge Hummel's character for truthfulness." (*Id*. at PageID 11826, ¶ 647.)

The Fifth District rejected this claim, concluding that the decision not to call Turner was within the purview of sound trial strategy:

> {¶ 146} In his fifteenth ground for relief, the appellant claimed that his convictions and sentences are void or voidable because trial counsel failed to call Damien Turner as a defense witness.

{¶ 147} An attorney's selection of witnesses to call at trial falls within the purview of trial tactics and generally will not constitute ineffective assistance of counsel. See, e.g., *State v. Coulter* (1992), 75 Ohio App.3d 219, 598 N.E.2d 1324.

{¶ 148} "When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect. See *Strickland,* 466 U.S., at 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (counsel is 'strongly presumed' to make decisions in the exercise of professional judgment). Moreover, even if an omission is inadvertent, relief is not automatic. The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight. See *Bell,* supra, at 702, 535 U.S. 685, 122 S.Ct. 1843, 152 L.Ed.2d 914; *Kimmelman v. Morrison,* 477 U.S. 365, 382, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986); *Strickland,* supra, at 689, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *United States v. Cronic,* 466 U.S. 648, 656, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)". *Yarborough v. Gentry* (2003), 540 U.S. 1, 8, 124 S.Ct. 1, 6, 157 L.Ed.2d 1.

{¶ 149} The Ohio Supreme Court has stated "[w]e will ordinarily refrain from second-guessing strategic decisions counsel make at trial, even where counsel's trial strategy was questionable. *State v. Clayton* (1980), 62 Ohio St.2d 45, 49, 16 O.O.3d 35, 402 N.E.2d 1189." *State v. Myers* (2002), 97 Ohio St.3d 335, 362, 780 N.E.2d 186, 217.

{¶ 150} Only appellant's self-serving affidavit purporting to relate a conversation he had with Mr. Turner while in the Licking County jail was submitted in support of this claim for relief. As this affidavit contains or relies upon hearsay, the trial court could give it little or no weight. *State v. Calhoun* (1999), 86 Ohio St.3d 279, 281, 714 N.E.2d 905; *State v. Elmore,* 5th Dist. No.2005-CA-32, 2005-Ohio-5740 at ¶ 109. Further, the evidence against appellant was overwhelming. *See, State v. Davis,* supra, 116 Ohio St.3d 404, 880 N.E.2d 31, 2008-Ohio-2 at ¶ 123.

{¶ 151} The petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that appellant set forth sufficient operative facts to establish substantive grounds for relief.

*Davis II*, 2008-Ohio-6841.

The Warden argues that by "[r]efusing to second-guess counsel's decision,

especially based only on Davis' self-serving affidavit which amounted to hearsay,

the state court reasonably applied *Strickland*.  Davis does not contend or prove

otherwise."  (Return of Writ, ECF No. 97, PageID 10918, citing *Davis II*, 2008-Ohio-

6841, ¶ 150.)

Indeed, Petitioner's Traverse contains only a conclusory recitation of the

allegations in his Petition and a request for an evidentiary hearing (Traverse, ECF

No. 104, PageID 11162-63), the latter of which is precluded under *Pinholster*.  He

has failed to rebut the presumption that not calling Turner as a witness was a

sound, tactical decision.  Further, he has failed to show prejudice from Turner not

testifying.  Petitioner has fallen well short of showing why the appellate court's

well-reasoned opinion was contrary to clearly established federal law or an

unreasonable factual determination.  Consequently, the subclaim must be

dismissed.

### 12. Subclaim 18(B)(7):  Counsel Failed to Object to Numerous Instances of Prosecutorial Misconduct at Both the Trial and Penalty Phases

Petitioner argues that "[t]he prosecutor here engaged in what can only be

described as deliberate and repeated misconduct.  To the extent that counsel failed

to object and failed to request curative instructions, counsel's performance fell far

below prevailing professional norms."  (Petition, ECF No. 133, PageID 11827, ¶

651.)  Petitioner's claims arise from the instances of prosecutorial misconduct

outlined in Claims Thirteen and Sixteen.  Petitioner argues that "[t]o the extent

that counsel failed to object or request curative instructions for this prosecutorial

misconduct as outlined in the Thirteenth and Nineteenth [*sic*] Grounds for Relief[,]

Davis was deprived of the effective assistance of counsel."  (*Id.* at PageID 11826-27

127

n.1.)

The Warden notes that virtually the entire Thirteenth and Sixteenth Claims were found to be procedurally defaulted, except for instances in which counsel objected. "Within the analysis for those defaults, the Court examined Davis' allegations of ineffective assistance of counsel and found them lacking." (Return of Writ, ECF No. 97, PageID 10919, quoting Opinion and Order, ECF No. 94, PageID 10726, 10733-34.) Indeed, this Court has already "note[d] as a preliminary matter that the Ohio Supreme Court reasonably concluded that many of the challenged instances were not improper. Defense counsel's failure to object to those challenged instances was neither unreasonabl[y] deficient nor prejudicial." (Opinion and Order, ECF No. 94, PageID 10734, citing *Davis I*, 2008-Ohio-2, ¶¶ 227-337.)

In the Traverse, Petitioner concedes that:

> This Court previously addressed whether counsel was ineffective in failing to object to the numerous instances of prosecutorial misconduct in its cause and prejudice analysis on the underlying claims and did conclude that counsel's performance was not deficient and was not prejudicial to Davis. Based on this Court's prior conclusion, Davis will not address this subclaim any further in this pleading.

(ECF No. 104, PageID 11165, citing Opinion and Order, ECF No. 94, PageID 10733-37.) In light of this concession, and the Court seeing no reason to depart from its earlier ruling, this subclaim is dismissed.

### 13. Subclaim 18(B)(8): Counsel Failed to Object to Detective Vanoy's Commentary About his Interrogation and his Opinion Testimony

Petitioner claims that counsel failed to object to the improper opinion testimony of Detective Vanoy (Petition, ECF No. 133, PageID 11828, ¶ 654.) In the

Traverse, Petitioner concedes that:

> [T]his Court previously concluded in a cause and prejudice analysis that the state court's conclusions that counsel's performance in failing to object had not been deficient and that Davis had not been prejudiced thereby were not unreasonable. Based on the previous conclusion of this Court, Davis shall not address this subclaim further in this pleading.

(Traverse, ECF No. 104, PageID 11165, citing Opinion and Order, ECF No. 94,

PageID 10692.) In light of this concession, Subclaim 18(B)(8) must be dismissed.

### 14. Subclaim 18(B)(9): Counsel Failed to Object to Improper Jury Instructions

Petitioner argues that:

> The trial court in its trial phase instructions failed to give an instruction forbidding the jury from stacking inferences; failed to instruct the jurors to find unanimously that Davis either committed kidnapping, aggravated robbery *or* aggravated burglary; gave incorrect purpose and causation instructions; and gave an instruction of "beyond a reasonable doubt" that relieved the state of its burden of proof. . . . Counsel failed to object to these faulty instructions.

(Petition, ECF No. 133, PageID 11829, ¶¶ 658-59.)

In the Traverse, Petitioner withdraws the "stacking inferences" claim, and

concedes that the rest of the claim has been dismissed by this Court. (ECF No. 104,

PageID 11166, citing Opinion and Order, ECF No. 94, PageID 10711-13.) In light of

the withdrawal and concession, the Court dismisses this subclaim.

### 15. Subclaims 18(C)(1-2): Counsel Failed to Investigate, Develop, Present, and Explain Compelling Mitigating Evidence at the Penalty Phase, and Counsel Failed to Investigate and Present Compelling Mitigation Evidence from a Mental Health Expert

Petitioner claims that counsel failed to investigate and develop mitigation

evidence or a mitigation phase theory and strategy. (Petition, ECF No. 133, PageID

11830, ¶¶ 664-66.)  He argues that counsel had a duty to humanize Davis and try to explain individual psychological and mental factors that may have impacted his involvement.  (*Id.* at ¶¶ 667-68, citing *Lockett v. Ohio*, 438 U.S. 586, 602-05 (1978); *Woodson v. North Carolina*, 428 U.S. 280, 304 (1976); *Johnson v. Bagley*, 544 F.3d 592, 600-01 (6th Cir. 2008).)

Petitioner argues that, had counsel bothered to investigate, there were a number of witnesses who could have presented compelling mitigation evidence regarding his history, dating back to childhood, of abuse, head trauma, and speech and hearing difficulties. (Petition, ECF No. 133, PageID 11831-32, ¶ 671.)  Yet, he claims, counsel failed to investigate any of these "red flags," falling below the standard of competent representation.  (*Id.* at PageID 11832, ¶ 674, citing *Porter v. McCollum*, 558 U.S. 30, 39-40 (2009); *Wiggins v. Smith*, 539 U.S. 510, 524-26; 534-36 (2003).)

The Warden contends that this subclaim—that counsel should have developed and presented evidence on the above topics in the penalty phase—is directly at odds with Petitioner's claim of innocence and would have required Petitioner to pivot from "he did not kill Sheeler" in the guilt phase to "he is sorry he killed Sheeler" in the penalty phase.  Such a strategy is not likely to be successful, so Petitioner was not prejudiced by any failure to develop and present such evidence (Return of Writ, ECF No. 97, PageID 10898, citing *Florida v. Nixon*, 543 U.S. 175, 191-92 (2004).)

Petitioner further claims that counsel was ineffective in failing to retain a

130

mental health expert, despite having funds authorized for one. (Petition, ECF No. 133, PageID 11833, ¶ 679.) "Testimony from a competent forensic psychologist or other mental health expert . . . would have provided powerful mitigating evidence contrary to the prosecutor's repeated assertions that Davis' background had no mitigation value to this offense because it did not explain or excuse the crime." (*Id.* at PageID 11834, ¶¶ 682-83.)

> Given the importance of Davis' mental health and psychosocial background to understanding the crime and to accurately painting a compelling mitigation picture, which counsel failed to investigate and present for lack of employing a mental health expert, there is a reasonable probability that a competent attorney aware of the evidence would have introduced it at sentencing.

(*Id.* at PageID 11843, ¶ 723.)

Relatedly, Petitioner argues that counsel failed to develop and present evidence that would have humanized Petitioner; rather, he merely stipulated to past records showing his troubled past and borderline intellectual functioning. (*Id.* at PageID 11836-37, ¶¶ 694, 696-97, citing State Court Record, ECF No. 51-13, PageID 5942, 5956, 5960-61; Trial Tr., ECF No. 52-5, PageID 8431-34.) Petitioner alleges that counsel failed to "explain the content or meaning of these records in closing argument. Without a mental health expert or counsel explaining the contents of these records as well as the significance of the record, or the events documented in the records, this critical evidence was meaningless to the jury." (*Id.* at PageID 11838, ¶ 700, citing *Johnson*, 544 F.3d at 600-01.) Consequently, the jury was unable to fully consider and comprehend the evidence that would have led at least one member to impose a sentence less than death. (*Id.* at PageID 11838-39,

¶¶ 705-06, 709.)

The Supreme Court of Ohio examined and rejected the ineffective assistance claims as to investigation, development, and presentation of mitigation evidence:

{¶ 348} **5. Failure to investigate and prepare for mitigation.** Davis argues that his counsel were ineffective during the penalty phase by failing to fully investigate, prepare, and present mitigating evidence.

{¶ 349} The presentation of mitigating evidence is a matter of trial strategy. *State v. Keith,* 79 Ohio St.3d at 530, 684 N.E.2d 47. "Moreover, 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *State v. Bryan,* 101 Ohio St.3d 272, 2004-Ohio-971, 804 N.E.2d 433, ¶ 189, quoting *Wiggins v. Smith* (2003), 539 U.S. 510, 521, 123 S.Ct. 2527, 156 L.Ed.2d 471.

{¶ 350} First, Davis argues that his counsel were ineffective by failing to thoroughly investigate his "psychosocial history" and failing to present the testimony of a psychologist during mitigation. The defense hired Dr. Dennis Eshbaugh, a psychologist, several weeks before the penalty phase to assist in preparing mitigation. The record does not show why Dr. Eshbaugh was not called to testify or what testimony he would have provided. Thus, nothing in the record establishes that counsel were deficient by not calling Dr. Eshbaugh or that, if called, he would have provided relevant mitigating evidence. See *State v. Conway,* 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 118.

{¶ 351} Second, Davis contends that his counsel were ineffective by failing to present a mitigation theme or strategy. Trial counsel's strategy was to convince the jury that Davis should receive a life sentence by showing that he was raised in an abusive home, suffered hearing problems while growing up that hindered his development, and had a low intelligence.

{¶ 352} In support of this strategy, trial counsel presented the testimony of Davis's mother, brother, aunt, and two lifelong family friends. The witnesses testified that Davis had an alcoholic father who frequently beat his mother and abused other family members. Davis's mother and brother testified about his ear problems, and his school records showed that he was a poor student with a low IQ. The defense theory, although unsuccessful, was coherent and fit into the testimony. Counsel made a strategic trial decision in presenting the defense mitigation theory and were not ineffective. See *State v. Hand,* 107 Ohio St.3d 378, 2006-Ohio-

18, 840 N.E.2d 151, ¶ 233.

{¶ 353} Third, Davis argues that his counsel were deficient by failing to present testimony about the significance of evidence that he was abandoned at a children's home and suffered from hearing problems when he was young.

{¶ 354} "The decision to forgo the presentation of additional mitigating evidence does not itself constitute proof of ineffective assistance of counsel." *State v. Keith,* 79 Ohio St.3d at 536, 684 N.E.2d 47. "'Attorneys need not pursue every conceivable avenue; they are entitled to be selective.'" *State v. Murphy,* 91 Ohio St.3d at 542, 747 N.E.2d 765, quoting *United States v. Davenport* (C.A.7, 1993), 986 F.2d 1047, 1049.

{¶ 355} Rose Weimer, the defendant's mother, testified that she left home for three months to escape her husband's abuse. Weimer returned home after learning that her husband had placed their children in a children's home. Weimer then "got all of them back." She also testified about Davis's hearing problems, which his father ignored. Thus, the jury heard testimony that Davis spent time at a children's home and suffered from hearing problems when he was young. It is highly speculative whether additional noncumulative testimony could have been provided about these matters.

{¶ 356} Finally, Davis asserts that counsel were deficient by failing to stipulate to records without calling a witness to explain their significance to the jury. Counsel presented records during the penalty phase including: (1) Davis's medical records from Children's Hospital, (2) a statement that Davis had not been disciplined while in pretrial confinement, and (3) his education records. Counsel made a legitimate tactical choice in introducing Davis's records without highlighting specific information for the jury's consideration. These records were not voluminous, and the jury could readily review this information during their deliberations. See *State v. Hanna,* 95 Ohio St.3d 285, 2002-Ohio-2221, 767 N.E.2d 678, ¶ 136.

*Davis I*, 2008-Ohio-2.

Petitioner's claims fared no better in the Fifth District:

{¶ 59} In his fourth ground for relief the appellant claimed that his convictions and sentences were void or voidable because he was denied the effective assistance of counsel at the mitigation phase of the trial by his trial attorneys not adequately investigating and presenting mitigation evidence.

{¶ 60} A claim which attacked trial counsels' decisions regarding mitigation witnesses was actually presented on direct appeal. *Davis,* 116 Ohio St.3d 404 at ¶ 348-353, 880 N.E.2d 31. The material presented with the petition, although perhaps from new sources, and therefore not in the original trial record, was merely cumulative that which was presented at trial. Evidence that is merely cumulative to that which was presented at trial does not overcome res judicata. *Elmore, at ¶ 36.* Although the trial court did not appear to directly deny this ground on the basis of res judicata, in light of the decision in *Davis,* it certainly could have. As noted below, the materials presented with the petition were largely cumulative to what was offered at trial.

{¶ 61} The Supreme Court of Ohio noted, "trial counsel presented the testimony of Davis's mother, brother, aunt, and two lifelong family friends. The witnesses testified that Davis had an alcoholic father who frequently beat his mother and abused other family members. Davis's mother and brother testified about his ear problems, and his school records showed that he was a poor student with a low IQ ... Rose Weimer, the defendant's mother, testified that she left home for three months to escape her husband's abuse. Weimer returned home after learning that her husband had placed their children in a children's home. Weimer then "got all of them back." She also testified about Davis's hearing problems, which his father ignored. Thus, the jury heard testimony that Davis spent time at a children's home and suffered from hearing problems when he was young. It is highly speculative whether additional noncumulative testimony could have been provided about these matters." *Davis, supra* at ¶ 352; 355.

{¶ 62} "The decision to forgo the presentation of additional mitigating evidence does not itself constitute proof of ineffective assistance of counsel." *State v. Keith,* 79 Ohio St.3d at 536, 684 N.E.2d 47. "'Attorneys need not pursue every conceivable avenue; they are entitled to be selective.'" *State v. Murphy,* 91 Ohio St.3d at 542, 747 N.E.2d 765, quoting *United States v. Davenport* (C.A.7, 1993), 986 F.2d 1047, 1049. *Davis, supra* at ¶ 354.

{¶ 63} Further, decisions regarding what witnesses to call fall within trial strategy and, absent prejudice, generally will not constitute ineffective assistance of counsel. *State v. Hessler,* Franklin App. No. 01AP-1011, 2002-Ohio-3321. To demonstrate prejudice, a petitioner must show not only that there was mitigating evidence counsel failed to present, but, also, "there is a reasonable probability that the evidence would have swayed the jury to impose a life sentence." *Keith* at 536, 684 N.E.2d 47. We find no such evidence here.

{¶ 64} In support of his amended PCR petition appellant presented affidavits of an aunt, his mother, his sister and his wife. Appellant's mother and aunt both testified during the mitigation phase of appellant's jury trial. Accordingly, their affidavits are cumulative to the testimony presented at trial. The remaining affidavits simply reiterate the evidence concerning appellant's upbringing, hearing problems and low IQ.

{¶ 65} We conclude that the evidence outside the record is only cumulative of the evidence that was presented to the jury. *State v. Madrigal* (Nov. 17, 2000), 6th Dist. No. L-00-1006 at 7. The petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that appellant set forth sufficient operative facts to establish substantive grounds for relief. *Calhoun,* 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21(C).

{¶ 66} We find there is no reasonable probability that the testimony by family members or other mitigating evidence set forth in appellant's fourth claim for relief would have swayed the jury to impose a life sentence.

{¶ 67} Appellant's fourth ground for relief is denied.

. . .

{¶ 123} In the twelfth ground for relief the appellant claimed that his counsel was ineffective for not using a clinical or forensic psychologist as a witness. We disagree.

{¶ 124} Appellant has in fact raised this issue in his direct appeal in the Ohio Supreme Court…

{¶ 134} In the case at bar, appellant failed to demonstrate a reasonable probability that, but for his counsel's failure to employ a different mitigation specialist, the mitigating factors would have been assigned such weight as to compel the conclusion that the aggravating factors did not outweigh the mitigating factors. *State v. Keith* (1997), 79 Ohio St.3d 514, 530, 684 N.E.2d 47, certiorari denied (1998), 523 U.S. 1063, 118 S.Ct. 1393, 140 L.Ed.2d 652.

{¶ 135} Appellant's twelfth ground for relief is denied.

*Davis II*, 2008-Ohio-6841.

The Warden argues that "[a]t every opportunity, Davis asks this Court to

engage in the hindsight review which the *Strickland* Court warned against.  And

nowhere does he attempt to establish the state courts' merits determinations

contravened or unreasonably applied the clearly established law of *Strickland*."

(Return of Writ, ECF No. 97, PageID 10903.)  Further, the Warden claims that

despite Petitioner's allegations to the contrary, a mental health expert testifying

was not without risk:

> Had a mental health expert such as Dr. [Monique] Coleman testified,
> Davis' past conviction for burglary, his propensity for violence against
> women, and his pending sexual assault charges, would all have been
> proper avenues of inquiry.  This information can hardly be seen as
> helpful to a mitigation theory, especially in light of his guilt phase theory
> that it was his deceased brother that committed this horrific murder.
> Highlighting Davis' priors would seem to indicate that his violence
> toward women escalated to the point of murder.  Therefore, it seems to
> be sound strategy to *not* put that information to the jury.

(*Id*. at PageID 10897-98 (emphasis in original).)

In his Traverse, Petitioner argues that the mere introduction of negative

evidence from the mental health expert is not reason to exclude such evidence

altogether, because competent counsel can put that negative evidence in proper

perspective.  (ECF No. 104, PageID 11176, quoting *Sears v. Upton*, 561 U.S. 945,

951 (2010).)

Petitioner's reliance on *Sears* is misplaced, since *Sears* did not appear to

address the scenario here, in which Petitioner maintained his innocence in the guilt

phase.  Thus, the concern about whipsawing from "I did not kill Sheeler," to "I killed

Sheeler, but these are the mitigating factors," simply did not apply in *Sears*.

Beyond that, Petitioner has failed to explain why the state courts' extensive, well-

reasoned decisions as to counsel's effectiveness were contrary to clearly established

law.  Indeed, the Warden is correct that Petitioner is asking this court to engage in second-guessing based on the efficacy of counsel's strategy.  That is neither the role of habeas review nor proper *Strickland* analysis.  Consequently, these subclaims must be dismissed.

### 16. Subclaim 18(C)(3):  Counsel Failed to Object to Improper Jury Instructions

Petitioner argues that the "court in its penalty phase instructions failed to limit consideration of the trial phase evidence in the penalty phase; failed to properly allocate the burden of proof; failed to properly define the burden of proof; refused to instruct on residual doubt and mercy; and gave incorrect parole instructions."  Petitioner's counsel did not object to these instructions (Petition, ECF No. 133, PageID 11844, ¶¶ 727-28.)  The Warden notes that "[t]his Court found procedurally defaulted, in its entirety, the underlying [jury instruction] claim contained in habeas ground fifteen[,]" (Return of Writ, ECF No. 97, PageID 10922, citing Opinion and Order, ECF No. 94, PageID 10727-29), and that the Supreme Court of Ohio rejected the instant ineffective assistance claim on the merits (*Id.* at PageID 10922-23, citing *Davis I*, 2008-Ohio-2, ¶¶ 209-14, 219-20.)  Petitioner rejoins that the Supreme Court of Ohio "summarily and without analysis of any kind concluded that counsel were not ineffective for failing to [object] to the instructions at either phase of the trial." (Traverse, ECF No. 104, PageID 11181, citing *Davis I*, 2008-Ohio-2, ¶ 357.)

Petitioner and the Warden are analyzing different portions of the opinion. Petitioner is correct that the Supreme Court of Ohio did summarily overrule

137

counsel's failure to object to instructions as part of the ineffective assistance claim. *Davis I*, 2008-Ohio-2, ¶ 357. However, in so doing, the Supreme Court of Ohio refers to its previous discussion of counsel's performance as to the substantive claims of the instructions themselves. *Id*. Thus, the portion cited by the Warden (and recited below) is correct and forms the basis of this Court's analysis.

With respect to each purportedly objectionable instruction, the state court provided a reason why counsel's performance was not ineffective—the required analysis of the federal constitutional issue:

{¶ 208} First, Davis contends that the trial court erred by admitting trial-phase evidence during the penalty phase and then advising the jury that "only that evidence admitted in the trial phase that is relevant to the aggravating circumstances and to any of the mitigating factors is to be considered by you." To the extent that the jury may have interpreted the instructions as allowing them to determine relevancy, the trial court erred. "It is the trial court's responsibility to determine the admissibility of evidence." *State v. Getsy* (1998), 84 Ohio St.3d 180, 201, 702 N.E.2d 866. However, much of the trial-phase evidence was relevant to the aggravating circumstances, the nature and circumstances of the offense, and the mitigating factors. Thus, the trial court's misstatement did not result in plain error. See *State v. McKnight,* 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 261.

{¶ 209} Davis's ineffective-assistance claim also lacks merit. Davis was not prejudiced by his counsel's failure to object, because overwhelming evidence was properly admitted during the penalty phase that supported the jury's sentencing recommendation.

. . .

{¶ 213} Third, Davis claims that the instructions on reasonable doubt are constitutionally defective. However, this claim has no merit. See *State v. Goff* (1998), 82 Ohio St.3d 123, 132, 694 N.E.2d 916. We also reject Davis's claim that the burden of proof in capital cases must be proof beyond all doubt. *State v. Jenkins,* 15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264, paragraph eight of the syllabus. Moreover, trial counsel were not ineffective, because "it was reasonable not to object." *State v. Campbell,* 69 Ohio St.3d at 53, 630 N.E.2d 339.

138

{¶ 214} Fourth, Davis argues that the trial court erred by failing to instruct on residual doubt. We overrule this claim. See *State v. McGuire,* 80 Ohio St.3d 390, 686 N.E.2d 1112, syllabus. Moreover, trial counsel were not ineffective by failing to request such instructions, because no evidence supported a finding of residual doubt.

{¶ 215} Fifth, Davis contends that the trial court erred in failing to instruct on the true meaning of parole eligibility. The trial court instructed the jury that if the state failed to prove beyond a reasonable doubt that the aggravating circumstances outweighed the mitigating factors, then the jurors must decide which of the life sentences should be imposed:

{¶ 216} "1) Life imprisonment without the possibility of parole until the Defendant has served *25 full years* in prison;

{¶ 217} "2) Life imprisonment without the possibility of parole until the Defendant has served *30 full years* in prison;

{¶ 218} "3) Life imprisonment without the possibility of parole." (Emphasis added.)

{¶ 219} These instructions adequately conveyed to the jurors when Davis would be eligible for parole if they chose one of the life-sentence options. See *State v. Jackson,* 107 Ohio St.3d 53, 2005-Ohio-5981, 836 N.E.2d 1173, ¶ 102–103; *State v. Carter* (1995), 72 Ohio St.3d 545, 559, 651 N.E.2d 965. Thus, there was no plain error. Davis's ineffectiveness claim also lacks merit because counsel could reasonably conclude that the trial court's instructions adequately explained the actual length of time Davis must serve in prison before becoming parole eligible.

{¶ 220} Finally, Davis argues that the trial court erred by not instructing on mercy. However, the trial court did not commit plain error by failing to give such instructions. *State v. Lorraine,* 66 Ohio St.3d at 417, 613 N.E.2d 212. Davis's ineffectiveness claims also lacks merit because the defense was not entitled to such an instruction.

*Davis I*, 2008-Ohio-2.

The above is a merits adjudication to which deference is required. The Supreme Court of Ohio evaluates each of Petitioner's ineffective assistance claims and persuasively explains why counsel's performance was not objectively unreasonable.

Despite this comprehensive adjudication, Petitioner offers only a conclusory argument as to why the state court's decision was contrary to established law:

> Clearly where long-standing state law requires a contemporaneous objection to proposed jury instructions, the failure to lodge an objection to those instructions fell far below prevailing professional norms for counsel in a capital case.  The failure to object to the instructions prejudiced Davis in that no court has reviewed the propriety of the instructions or any prejudice arising therefrom.  The arguments of the Warden to the contrary lack merit.

(Traverse, ECF No. 104, PageID 11183.)  Yet, as the state court held, there were good reasons to decide not to object to each of the disputed instructions.  Petitioner offers no caselaw as to why counsel's decision not to object violated *Strickland*.  Further, merely improper jury instructions are generally a matter of state law that do not support habeas relief, and Petitioner does not offer a cogent argument that there was a reasonable probability of a different outcome had the instructions been objected to.  Lacking any basis for relief, this subclaim is dismissed.

### E.    Systemic Claims

#### 1.    Claim Nineteen:  Sentence is Disproportionate

The Death Sentence Imposed on Roland Davis is Disproportionate in Violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments.

(Petition, ECF No. 133, PageID 11861.)

Petitioner argues that the Fifth, Sixth, Eighth, and Fourteenth Amendments require that sentences "be proportional and not disparate, a requirement that is most stringently imposed in capital cases."  (Petition, ECF No. 133, PageID 11861, ¶ 798, citing *Harmeling v. Michigan*, 501 U.S. 957, 997 (1991) (Kennedy, J., concurring); *Gregg v. Georgia*, 428 U.S. 153, 187 (1976).)  He claims that the

140

Supreme Court of Ohio's repeated refusal to consider life sentences in proportionality review renders any death sentence grossly disproportionate. (*Id.* at PageID 11862, ¶ 801, citing *Davis I*, 2008-Ohio-2, ¶ 405; *State v. Eley*, 77 Ohio St. 3d 174, 185-86 (1996), *abrogated on other grounds by State v. Wesson*, 137 Ohio St. 3d 309, 2013-Ohio-4575; *State v. Steffen*, 31 Ohio St. 3d 111, 123-24 (1987).)

Petitioner asserts that "[w]hile state court proportionality review is not constitutionally required, Ohio has required proportionality review as part of the appellate review process. The state thereby created a liberty interest that cannot be ignored or administered in an arbitrary manner." (Petition, ECF No. 133, PageID 11863, ¶ 803, citing *Lucey*, 469 U.S. at 395-96 ; *Pulley v. Harris*, 465 U.S. 37, 42-43 (1984); Ohio Rev. Code § 2929.05(A).) "Therefore, all required components of the appellate review system for death penalty cases—including this statutorily mandated proportionality review—must be enforced within the requirements of due process and equal protection." (*Id.*, citing *Evitts*, 469 U.S. at 403-04.) Petitioner argues that, despite this requirement:

> The Supreme Court of Ohio did not conduct any comparison to "similar" cases where death was not imposed. Instead, it merely listed cases where similar aggravating circumstances were found, ignoring whether those so-called "similar" cases also had additional aggravating circumstances, or whether some or substantial mitigating evidence had been presented, or whether there was in fact any similarity between the cases.

(*Id.* at ¶ 804.) This failure to weigh non-death cases meant that the sentence was imposed arbitrarily and irrationally. (*Id.* at PageID 11864, ¶ 805, citing *Parker v. Dugger*, 498 U.S. 308, 321 (1991).)

Further, Petitioner argues, proportionality review is essential to ensuring

death sentences are not imposed capriciously, and such review is premised on non-death cases being part of the comparison. (Traverse, ECF No. 104, PageID 11187-89, citing *Walker v. Georgia*, 555 U.S. 979, 980 (2008) (statement of Stevens, J., respecting the denial of writ of certiorari); *Gregg v. Georgia*, 428 U.S. 153, 198, 205 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.); *Furman v. Georgia*, 408 U.S. 238 (1972).) Yet, "[h]ere, the Supreme Court of Ohio simply asserted that the case before it did not present a disproportionate sentence, citing cases presenting the same aggravating circumstances in which the death sentence was imposed, without acknowledging whether other aggravating factors, mitigating circumstances or factual differences existed in the other cases." (*Id.* at PageID 11190, citing *Davis I*, 2008-Ohio-2, ¶ 405.) Petitioner argues that this purportedly inadequate review meant that the death sentence imposed was unconstitutional. (*Id.* at PageID 11190-92.)

> This claim was raised and rejected on direct appeal:
>
> {¶ 381} We summarily reject Davis's challenges in proposition of law XV to the constitutionality of Ohio's death-penalty proportionality review based on our precedents. See *State v. LaMar,* 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 23; *State v. Steffen,* 31 Ohio St.3d 111, 31 OBR 273, 509 N.E.2d 383, paragraph one of the syllabus.
>
> . . .
>
> {¶ 405} Finally, we hold that the death penalty is proportionate to death sentences approved for other robbery-murder and burglary-murder cases. See *State v. Elmore,* 111 Ohio St.3d 515, 2006-Ohio-6207, 857 N.E.2d 547, ¶ 168; *State v. Thomas,* 97 Ohio St.3d 309, 2002-Ohio-6624, 779 N.E.2d 1017, ¶ 124; and *State v. Stallings,* 89 Ohio St.3d at 301, 731 N.E.2d 159. The death penalty is also proportionate to death sentences approved for other cases involving a kidnapping specification. *State v. Foust,* 105 Ohio St.3d 137, 2004-Ohio-7006, 823 N.E.2d 836, ¶ 204; *State v. Hartman,* 93 Ohio St.3d at 306, 754 N.E.2d 1150; and *State v. Ballew*

142

(1996), 76 Ohio St.3d 244, 258, 667 N.E.2d 369.

*Davis I*, 2008-Ohio-2.

The Warden argues that the claim is non-cognizable in habeas, as there is no federal constitutional right to proportionality review, except when the review is "patently unjust" or "shocks the conscience." (Return of Writ, ECF No. 97, PageID 10925, quoting *Scott v. Houk*, No. 4:07-cv-0753, 2011 WL 5838195, at *44 (N.D. Ohio Nov. 18, 2011), *aff'd*, 760 F.3d 497 (6th Cir. 2014).) According to the Warden, this occurs only when the sentence is grossly disproportionate to the crime for which the person has been convicted, not disproportionate to the sentences received by others for the same crime. (*Id*. at PageID 10926, quoting *Getsy v. Mitchell*, 495 F.3d 295, 305 (6th Cir. 2007); citing *Beuke v. Houk*, 537 F.3d 618, 652 (6th Cir. 2008).) Showing that similarly situated defendants did not receive the death penalty does not, by itself, state a constitutional violation. (*Id*. at PageID 10926-27, citing *McCleskey v. Kemp*, 481 U.S. 279, 306-07 (1987).) Thus, the Warden argues, Petitioner's claim is meritless even if cognizable.

Petitioner concedes that the Supreme Court of Ohio summarily rejected the challenge to the constitutionality of Ohio's proportionality review. (Traverse, ECF No. 104, PageID 11193, citing *Davis I*, 2008-Ohio-2, ¶ 381.) Yet, he argues that "no deference is warranted under AEDPA because there is no reasonable basis for concluding that Ohio's proportionality framework is constitutional. No fair-minded jurist could believe that deliberately excluding all of the cases that resulted in a life sentence from a state's proportionality review is constitutional." (*Id*. at PageID 11194, citing *State v. Murphy*, 91 Ohio St. 3d 516, 562 (2001) (Pfeifer, J.,

143

dissenting).)

Petitioner's statement is belied by the Sixth Circuit repeatedly holding that

Ohio's proportionality review does not violate due process or equal protection. (*See*

Return of Writ, ECF No. 97, PageID 10926 (collecting cases).) Petitioner concedes

that the Sixth Circuit has upheld Ohio's review scheme but claims that "the

decisions are incorrect statements of law that must be reversed." (Traverse, ECF

No. 104, PageID 11194, citing *Getsy*, 495 F.3d at 305-06.) Yet, a district court may

not depart from, much less reverse, a published decision by its controlling circuit

court. Petitioner does not claim that Ohio misapplied its well-established

proportionality review. Thus, there has been no constitutional violation, and Claim

Nineteen must be dismissed.

### 2. Claim Twenty: Ohio Sentencing Review Process Subjected Davis to Arbitrary and Capricious Imposition of Death Penalty

The Ohio Sentencing Review Process as Implemented Denied Roland Davis an Adequate Safeguard Against the Arbitrary and Capricious Imposition of the Death Penalty. the Death Penalty in this Case is Inappropriate Under the Fifth, Sixth, Eighth and Fourteenth Amendments.

(Petition, ECF No. 133, PageID 11866.)

Under Ohio's death penalty law, there are two procedural safeguards to

protect against the death penalty being imposed arbitrarily or capriciously. *First*,

the trial court must find that the aggravating circumstances outweigh the

mitigating factors. Ohio Rev. Code § 2929.03(F). *Second*, the Supreme Court of

Ohio must conduct an independent weighing of the aggravating circumstances and

mitigating factors, ensuring the former outweigh the latter beyond a reasonable

doubt and that the sentence was proportional to the crime. Ohio Rev. Code §
2929.05. Petitioner argues that "[t]he trial court failed to explain why the
aggravating circumstances outweighed the mitigating factors beyond a reasonable
doubt." (Petition, ECF No. 133, PageID 11867, ¶ 813.) "The trial court simply
stated that it was affording 'great weight' to the aggravating circumstances. It then
proceeded to state, in great detail, facts that do not constitute statutory aggravating
circumstances[.]" (*Id*.) Further, "[t]he trial court did not explain why very little or
no weight was given to any particular piece of mitigation (other than that Davis was
47 years old) or why the mitigation as a whole was outweighed by the statutory
aggravating circumstances." (Petition, ECF No. 133, PageID 11867, ¶ 814.) He
claims that "[t]he cumulative weight of these [mitigating] factors outweighs the
statutory aggravating circumstances in this case. The sentence of death is thus
inappropriate." (*Id*. at PageID 11868, ¶ 817, citing *Rompilla v. Beard*, 545 U.S. 374,
390-91 (2005); *Wiggins v. Smith*, 539 U.S. 510, 534-35 (2003).)

Petitioner also argues that "[t]he review of Davis' death sentence by the
Supreme Court of Ohio pursuant to Ohio Rev. Code § 2929.05 was no more thorough
or complete." (Petition, ECF No. 133, PageID 11869, ¶ 819.) The Supreme Court of
Ohio "reviewed the aggravating factors and the evidence presented in mitigation,
but then concluded that his was a 'horrific crime' before rejecting summarily the
significance of all of the mitigating evidence presented." (*Id*.) He claims that the
court erred in failing to give significant weight to his abusive childhood and limited
intellectual capacity. (*Id*. at ¶ 820.) Had appropriate weight been given to these

145

mitigating factors, Petitioner argues, the appropriate sentence would not have been death. (*Id*. at PageID 11870, ¶ 822.)

The trial court's weighing of the evidence was raised by Petitioner in the Sixteenth Proposition of Law, and that weighing was affirmed by the Supreme Court of Ohio:

> {¶ 359} In proposition of law XVI, Davis asserts that there are numerous flaws in the trial court's sentencing opinion.
>
> {¶ 360} First, Davis argues that the trial court failed to explain *why* the aggravating circumstances outweighed the mitigating factors beyond a reasonable doubt. This claim lacks merit because the opinion contains extensive discussion of the aggravating circumstances and the mitigating factors. Furthermore, our independent reassessment of the sentence will eliminate any deficiencies in the trial court's sentencing opinion. *State v. Fox* (1994), 69 Ohio St.3d 183, 191, 631 N.E.2d 124.
>
> {¶ 361} Second, Davis argues that the trial court improperly evaluated evidence of his abusive childhood and limited intellectual abilities. However, the "assessment and weight to be given mitigating evidence are matters for the trial court's determination." *State v. Lott* (1990), 51 Ohio St.3d 160, 171, 555 N.E.2d 293. Moreover, the fact that mitigation evidence is admissible "does not automatically mean that it must be given any weight." *State v. Steffen* (1987), 31 Ohio St.3d 111, 31 OBR 273, 509 N.E.2d 383, paragraph two of the syllabus. Here, the sentencing opinion fully reviewed testimony about Davis's abusive childhood and evidence about his limited intellectual abilities. The trial court could reasonably assign any or no weight to such evidence. See *State v. Hanna,* 95 Ohio St.3d 285, 2002-Ohio-2221, 767 N.E.2d 678, ¶ 103. Thus, no error was committed.
>
> {¶ 362} Finally, Davis asserts that the trial court ignored mitigating evidence of Davis's abandonment as a child, bullying by other children because he stuttered, his father's verbal abuse in calling him a "retard," and his low IQ indicating borderline intellectual functioning.
>
> {¶ 363} "While a sentencing court must consider all evidence of mitigation, it need not discuss each factor individually." *State v. Phillips* (1995), 74 Ohio St.3d 72, 102, 656 N.E.2d 643, citing *Parker v. Dugger* (1991), 498 U.S. 308, 314–315, 111 S.Ct. 731, 112 L.Ed.2d 812. The trial court discussed Davis's speech problems, including stuttering, his

abandonment at the local children's home, and his limited intellectual ability as shown in his school records. The trial court also stated that it "has considered all the mitigating factors raised at any stage of the trial that are relevant to the issue of whether the defendant should be sentenced to death." Therefore, this claim also lacks merit.

*Davis I*, 2008-Ohio-2.

As to the Supreme Court of Ohio's independent weighing of the aggravating circumstances and mitigating factors, *Davis I*, 2008-Ohio-2, ¶¶ 384-404, the Warden argues that this is a matter of a state court's interpretation of state law, which is generally not cognizable in habeas (Return of Writ, ECF No. 97, PageID 10928, citing *Richter*, 562 U.S. at 102-03.) In reality, the Warden claims, Petitioner is not attempting to show that the state court's reweighing was contrary to established law but is asking this Court to stand in the shoes of the Supreme Court of Ohio and independently reweigh the aggravating circumstances and mitigating factors. (*Id.*)

Petitioner counters that the Supreme Court of Ohio's decision is incomplete. The state court examined only the trial court's weighing and could not evaluate its own weighing of the aggravating circumstances and mitigating factors. As the claim was raised cumulatively—that the combined failure by the trial court and Supreme Court of Ohio deprived Petitioner of his constitutional safeguards—there is no merits decision to defer to. (Traverse, ECF No. 104, PageID 11198-99.) Alternatively, he argues, the Supreme Court of Ohio's decision, even if on the merits, was an unreasonable application of clearly established law. (*Id.* at PageID 11199, citing *Davis I*, 2008-Ohio-2, ¶¶ 359-64.) Moreover, to the extent "that the Supreme Court of Ohio did make a factual finding that the trial court had not considered non-statutory aggravating factors, the finding was objectively

147

unreasonable under § 2254(d)(2), and as a result no deference is warranted."
(Traverse, ECF No. 104, PageID 11199-11200, quoting State Court Record, ECF No.
51-3, PageID 1888; citing *Brumfield v. Cain*, 576 U.S. 305, 307 (2015); State Court
Record, ECF No. 51-2, PageID 1521-22.)

Petitioner does not argue that there is a federal constitutional right to a
weighing of aggravating and mitigating circumstances; nor could he reasonably do
so. *See, e.g., Buell v. Mitchell*, 274 F.3d 337, 368 (6th Cir. 2001) , citing *Franklin v.
Lynaugh*, 487 U.S. 164, 172-73 (1988); *Zant v. Stephens*, 462 U.S. 862, 875 (1983)
("The [Supreme] Court also has approved of a statute that did not enunciate specific
factors to consider or a specific method of balancing the competing considerations.")
Thus, the question is whether the weighing by the trial court and Supreme Court of
Ohio was so egregious as to violate due process. *Lucey*, 469 U.S. at 396.

Petitioner falls well short of meeting that exacting standard. While he claims
that the trial court considered non-statutory aggravating circumstances (Petition,
ECF No. 133, PageID 11867, ¶ 813), there is no indication from the trial court's
opinion that those non-statutory circumstances were dispositive or were anything
more than reasons for why the trial court found that the statutory aggravating
circumstances outweighed the mitigating factors beyond a reasonable doubt. (State
Court Record, ECF No. 51-2, PageID 1517, 1521-22.) Meanwhile, the trial court
discussed in-depth the statutory aggravating circumstances and the evidence
presented in mitigation prior to assigning them great and little weight, respectively.
(*Id.* at PageID 1521-23.) Much of the remainder of Petitioner's claim is that the

148

trial court and Supreme Court of Ohio weighed the mitigation factors incorrectly. (Petition, ECF No. 133, PageID 11869, ¶ 817.)  As stated above, however, there is no constitutional right to any particular weighing process, and this Court may not step into the shoes of the state court and conduct an independent weighing.  As there is no viable ground for relief, Claim Twenty must be dismissed.

> **3.    Claim Twenty-One:    Ohio's Postconviction Scheme is Inadequate to Address Constitutional Claims in State Courts**

> The Ohio Sentencing Review Process as Implemented Denied Roland Davis an Adequate Safeguard Against the Arbitrary and Capricious Imposition of the Death Penalty.  The Death Penalty in this Case is Inappropriate Under the Fifth, Sixth, Eighth and Fourteenth Amendments.

(Petition, ECF No. 133, PageID 11871.)

Petitioner concedes that there is no requirement for a state to implement a postconviction regime, but notes that if a state chooses to do so, it must conform to constitutional due process. (Petition, ECF No. 133, PageID 11871, ¶ 825, quoting *Lucey*, 469 U.S. at 401; *Case v. Nebraska*, 381 U.S. 336, 346-47 (1965) (Brennan, J., concurring).)  He argues that Ohio's postconviction regime fails to do so, as "every aspect of post conviction relief is discretionary. . . . The trial court can deny a petition without even holding an evidentiary hearing if the trial court does not find grounds for granting relief."  (*Id.* at PageID 11871-72, ¶ 827, citing Ohio Rev. Code § 2953.21(F); *State v. Calhoun*, 86 Ohio St. 3d 279, 289-90 (1999).)  "Indigent inmates face the insurmountable burden of collecting evidence in support of valid claims prior to the filing of a petition without the means to collect information critical to their claims."  (*Id.* at PageID 11872, ¶ 828.)

149

Petitioner claims that he attempted to develop and present evidence but was thwarted at every turn. (Petition, ECF No. 133, PageID 11873-74, ¶¶ 829-31.) "Discovery was necessary to develop the factual bases for Davis' claims. Nevertheless, the trial court denied all of his discovery requests and ultimately denied Davis' petition, criticizing the lack of evidence submitted by Davis." (*Id*. at PageID 11875, ¶ 835, citing State Court Record, ECF No. 51-7, PageID 3187-88.) Moreover, Petitioner argues that he was denied redress even though he "at a minimum, pleaded sufficient operative facts supported by credible evidence *dehors* the record to entitle him to a hearing." (*Id*. at PageID 11876, ¶ 837.) "As a result, Davis was denied equal protection, due process, and a full and fair opportunity to present and litigate his federal constitutional claims in state post conviction proceedings, in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments[.]" (*Id*. at PageID 11875, ¶ 836.)

The Warden claims that, for several reasons, Petitioner's claim is unavailing. *First*, "[i]t is well-established that Davis' attack on Ohio's postconviction procedures cannot sustain relief in federal habeas corpus." (Return of Writ, ECF No. 97, PageID 10929, citing *Pennsylvania v. Finley*, 481 U.S. 551, 557-58 (1987); *Cornwell v. Bradshaw*, 559 F.3d 398, 411 (6th Cir. 2009); *Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir. 2001); *Kirby v. Dutton*, 794 F.2d 245, 247 (6th Cir. 1986).) *Second*, it is barred by *Teague v. Lane*, because Petitioner's "request for relief on the ground that he is constitutionally entitled to adequate procedures for state postconviction review necessarily implicate new rules of constitutional law." (*Id*. at PageID 10930, citing

489 U.S. 288 (1988).)  *Finally*, the Fifth District denied the claim, holding that

"[t]he petition, the supporting affidavits, the documentary evidence, the files, an[d]

the records do not demonstrate that appellant set forth sufficient operative facts to

establish substantive grounds for relief."  (*Id.* at PageID 10930-31, quoting *Davis II*,

2008-Ohio-6841, ¶ 84.)  The Warden asserts that "[t]he state court's rejection of

Davis' claim was objectively reasonable in light of there being no constitutional

right to postconviction review.  As such, Davis' challenge to Ohio's postconviction

process is without merit and must be denied."  (*Id.* at PageID 10931.)

Petitioner argues that, for two reasons, the Warden's non-cognizability

argument lacks merit.  *First*, "Ohio can provide whatever kind of corrective process

it prefers, but whatever process Ohio chooses must still be adequate"; and *second*,

collateral review, if it is the chosen corrective process, must comply with federal

constitutional guarantees. (Traverse, ECF No. 104, PageID 11207, citing *Carter v.

People of State of Illinois*, 329 U.S. 173, 175-76 (2011); *Yates v. Aiken*, 484 U.S. 211,

217-18 (1988); Return of Writ, ECF No. 97, PageID 10929.)

Petitioner does not address the fact that claims challenging the adequacy

Ohio's postconviction regime have been found to be non-cognizable by the Sixth

Circuit so his arguments are unavailing.  *Cornwell*, 559 F.3d at 411; *Kirby*, 794 F.2d

at 247.  *Kirby* is still good law as to alleged errors arising solely out of

postconviction procedures.  Claim Twenty-One is dismissed.

### 4.    Claim Twenty-Three:   Ohio Death Penalty Statute is Unconstitutional

Ohio's Death Penalty Law is Unconstitutional.  Ohio Rev. Code Ann. §§
2903.01,  2929.02,  2929.021,  2929.022,  2929.023,  2929.03,  2929.04,

2929.05, and 2929.06 are Unconstitutional on Their Face and as Applied to Roland Davis under the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution.  Further, Ohio's Death Penalty Statute Violates the United States' Obligations under International Law.

(Petition, ECF No. 133, PageID 11879.)

Petitioner raises several arguments as to why Ohio's capital sentencing scheme is unconstitutional.  *First*, "Ohio's scheme allows the death penalty to be imposed in an arbitrary and discriminatory manner because prosecutors have virtually uncontrolled charging discretion which has resulted in the discriminatory imposition of death throughout the state."  (Petition, ECF No. 133, PageID 11880, ¶ 844.)  *Second*, "[t]he weight to be assigned to a given mitigating factor is within the individual decision-maker's discretion.  Permitting so much discretion inevitably leads to arbitrary and capricious judgments.  The scheme further permits juries to ignore constitutionally relevant mitigating factors[.]"  (*Id.* at PageID 11882, ¶ 852 (citation omitted).)

> *Third*:
>
> A defendant who pleads guilty or no contest benefits from a trial judge's discretion to dismiss the specifications "in the interest of justice."  Accordingly, a capital indictment may be dismissed regardless of aggravating circumstances.  There is no corresponding provision for a capital defendant who elects to proceed to trial before a jury.  This disparity needlessly burdens the defendant's exercise of his right to a trial by jury.

(*Id.* at PageID 11883, ¶ 853, quoting Ohio R.Crim.P. 11(C)(3); citing *Lockett v. Ohio*, 438 U.S. 586, 617 (1978) (Blackmun, J., concurring).)  *Fourth*, "Ohio Rev. Code § 2929.03(D)(1) makes Ohio's death penalty weighing scheme unconstitutionally vague because it gives the sentencer unfettered discretion to weigh a statutory

152

mitigating factor as an aggravator." (*Id.* at PageID 11883, ¶ 854.) *Fifth*, "[t]he failure to divide the determination of guilt/innocence from the determination of aggravating circumstances upon which the death penalty may be premised prohibits a sufficiently individualized determination of sentence under the Fifth, Sixth, Eighth and Fourteenth Amendments." (*Id.* at PageID 11885, ¶ 858, citing *Barclay v. Florida*, 463 U.S. 939, 958 (1983); *Zant v. Stephens*, 462 U.S. 862, 878-79 (1983); *Woodson*, 428 U.S. at 304-05.)

> *Sixth*:
>
> The Ohio scheme precludes the jury and the judge from exercising their mercy and imposing a life sentence even if they find that the aggravating circumstances outweigh the mitigating factors. Ohio Rev. Code §§ 2929.03 and 2929.04 require death. The sentencer is prohibited from exercising discretion to impose a life sentence.

(*Id.* at ¶ 859.) *Finally*, "International law binds each of the states that comprise the United States. Ohio is bound by international law whether found in treaty or in custom. Because the Ohio death penalty scheme violates international law, Davis' capital convictions and sentences cannot stand." (*Id.* at PageID 11887, ¶ 862.)

The Warden argues that "[t]he Ohio Supreme Court reasonably rejected Davis' constitutional and international law challenges to Ohio's death penalty system. And Davis presents no clearly established federal law which would overcome the deference that must be afforded to Ohio's reasonable denial of his claims." (Return of Writ, ECF No. 97, PageID 10931-32, citing *Davis I*, 2008-Ohio-2, ¶¶ 382-83.) Further, "[t]he Sixth Circuit has repeatedly held that the constitutional challenges of Ohio's death sentenced prisoners are meritless." (*Id.* at PageID 10932, citing *Beuke*, 537 F.3d at 652-653.)

153

The Warden is correct that the Sixth Circuit, in binding precedent, has repeatedly upheld the constitutionality of Ohio's capital sentencing scheme. *Beuke*, 537 F.3d at 653, citing *Getsy*, 495 F.3d at 306; *Williams v. Bagley*, 380 F.3d 932, 962-63 (6th Cir. 2004); *Smith v. Mitchell*, 348 F.3d 177, 214 (6th Cir. 2003); *Wickline v. Mitchell*, 319 F.3d 813, 824-25 (6th Cir. 2003); *Cooey e*, 289 F.3d at 927-28; *Buell*, 274 F.3d at 368; *Byrd v. Collins*, 209 F.3d 486, 539-40 (6th Cir. 2000), *superseded on other grounds by* 28 U.S.C. § 2254(d)(1).  Thus, the above challenges fail.

In the Traverse, Petitioner attempts to save his claim by arguing for the first time that the Supreme Court case of *Hurst v. Florida* invalidates Ohio's capital sentencing scheme because in Ohio, like Florida, the jury's death verdict is a mere recommendation.  According to Petitioner, the trial judge still must make a factual finding that aggravating circumstances outweigh mitigating factors before imposing death or life imprisonment. (Traverse, ECF No. 104, PageID 11215-16, quoting Ohio Rev. Code § 2929.03; citing *Hurst*, 577 U.S. 92.)  The Supreme Court ruled that such a scheme is unconstitutional because it takes factfinding on crucial issues out of the hands of the jury.  (*Id.*, quoting *Hurst*, 577 U.S. at 99; *Walton v. Arizona*, 497 U.S. 639, 648 (1990), *overruled by Ring v. Arizona*, 536 U.S. 584 (2002).)  Similarly, Petitioner argues:

> The Ohio statute does not require the jury to make any specific findings of fact about mitigating factors nor does it require the jury to make any specific findings about the weighing of the mitigating and aggravating factors. Therefore, the trial court is left to make these determinations without guidance from the jury and without those critical findings.

(*Id.* at PageID 11217.)

In the Sur-Reply, the Warden lists several reasons why *Hurst* does not make Petitioner's claim viable. *First*, the argument was raised for the first time in the Traverse, which is impermissible. (Sur-Reply, ECF No. 107, PageID 11238, quoting *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005); citing *Hurst*, 577 U.S. 92; Traverse, ECF No. 104, PAGEID 11107, 11213-17.) *Second*, "[b]ecause the state courts adjudicated on the merits his merging aggravating circumstances and his death penalty constitutionality claims, should he attempt to raise a *Hurst* challenge in state court he likely would be procedurally barred due to the doctrine of res judicata." (*Id.*) *Third*, the claim is procedurally defaulted because it has never been presented to and exhausted in the state court.  (*Id.* at PageID 11239, citing 28 U.S.C. § 2254(b)(2); *Jones v. Jones*, 163 F.3d 285, 299 (5th Cir. 1998).) *Finally*, the claim is meritless because it interprets *Hurst* too broadly.  The Warden argues that all *Hurst* held was that characteristics rendering a defendant death-eligible must be presented to the jury and proved beyond a reasonable doubt.  (Sur-Reply, ECF No. 107, PageID 11239, citing *Hurst*, 577 U.S. at 102-03.)  The Warden claims that the Petitioner is conflating the "eligibility phase," in which the jury considers aggravating circumstances to narrow the class of defendants who are death-eligible, with the "selection phase," in which the decision is made whether to impose a death sentence. (*Id.* at PageID 11239, quoting *Buchanan v. Angelone*, 522 U.S. 269, 275 (1998); citing *Tuilaepa v. California*, 512 U.S. 967, 971-72 (1994).)

In Ohio, the Warden argues, the jury—and only the jury—determines whether a defendant is death-eligible.  (Sur-Reply, ECF No. 107, PageID 11240,

quoting *Hurst*, 577 U.S. at 98; citing *State v. Belton*, 149 Ohio St. 3d 165, 2016-Ohio-1581, ¶¶59-60.)  Thus, Florida's "circumstance is not present in Ohio's statutory scheme where the defendant's case never gets to the mitigation phase **unless** the jury first determines guilt of enumerated capital specifications beyond a reasonable doubt during the guilt phase of the case."  (*Id.* (emphasis in original), citing Ohio Rev. Code § 2929.04(A).)  Moreover, the Warden argues, weighing the aggravating circumstances and mitigating factors is not a fact-finding process subject to Sixth Amendment protections, because the sentence cannot be enhanced through the weighing process.  (*Id.* at PageID 11241, quoting *Belton*, 2016-Ohio-1581, at ¶ 60.)  "Because Davis' claimed error only implicates the weighing process in the penalty phase, it simply does not implicate the right to a jury trial on which *Ring* and *Hurst* were based."  (*Id.*)

This Court, in denying leave to amend to include a *Hurst claim*, concluded that any such claim would be futile, as Ohio's sentencing scheme is fundamentally different from Florida's, and that *Hurst* is not applicable on collateral review (Opinion and Order, ECF No. 127, PageID 11562, 11563, citing *Smith v. Pineda*, No. 1:12-cv-196, 2017 WL 631410, at * 3-4, 5 (S.D. Ohio Feb. 16, 2017); *see also McKinney v. Arizona*, 140 S.Ct. 702, 708 (2020) (" *Hurst* do[es] not apply retroactively on collateral review.").)  The Court sees no reason to depart from its earlier, well-founded conclusions, much less binding Supreme Court precedent.  For these reasons, Claim Twenty-Three must be dismissed.

156

## IV.     CONCLUSION

For the foregoing reasons, the Third Amended Petition (ECF No. 133) is

**DENIED** and the action is **DISMISSED WITH PREJUDICE**.  Judgment shall

enter in favor of the Warden and against Petitioner.  The Court concludes that no

reasonable jurist would find that Petitioner "has made a substantial showing of the

denial of a constitutional right," 28 U.S.C. § 2253(c)(2), or would disagree with this

conclusion as to any of Petitioner's claims.  This Court certifies to the Sixth Circuit

that any appeal would be objectively frivolous and therefore should not be permitted

to proceed *in forma pauperis*.

**IT IS SO ORDERED.**

 /s/ Sarah D. Morrison
Sarah D. Morrison
United States District Judge

157